LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB NO. 205790)
tnewby@fenwick.com
LESLIE A. KRAMER (CSB NO. 253313)
lkramer@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendant Sawabeh Information
Services Co.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHLOE SAS, a French Corporation; ALFRED DUNHILL LIMITED, a UK Corporation; OFFICINE PANERAI AG, a Swiss Corporation; and MONTBLANC-SIMPLO GMBH, a German Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SAWABEH INFORMATION SERVICES CO. (d/b/a "SISCOM", tradekey.com, saudicommerce.com, and b2bfreezone.com), a Saudi Arabian Corporation; TRADEKEY (PVT) LTD, a Pakistani Corporation; TRADEKEY, LLC, a Delaware Corporation; WALEED ABALKHAIL; JUNAID MANSOOR; BOSUN INTERNATIONAL TRADE CO.; CCTRUE INTERNATIONAL TRADE CO., LTD.; FANCYSALER TRADING CO.; FUZHOU SUNSHINE TRADE CO., LTD; HENGTAI INTERNATIONAL; KK FASHION LOVE ZONE; LOVE IN APPAREL TRADE CO., LTD.; MELCHIC INTERNATIONAL TRADE CO., LTD; MYSTOCK WATCH CO., LTD.; OFFRUNWAYBAGS.COM; ORIENT-ONLINE CO., LTD; PARK CO. LTD; RICHEN-ONLINE CO., LTD; SEASON-ONLINE CO., LTD; SEASONS- | Case No. 11-cv- 4147 GAF (MANx)<br><br>DEFENDANT SAWABEH INFORMATION SERVICES CO.'S EX PARTE EMERGENCY APPLICATION AND MEMORANDUM FOR CLARIFICATION OF TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER<br><br>Date: May 25, 2011<br>Time: 9:30 a.m.<br>Courtroom: 740<br>Judge: Hon. Gary A. Feess |

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S
MEMORANDUM IN SUPPORT OF ITS EMERGENCY

CASE NO. 11-CV-04147 GAF (MANX)

LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB NO. 205790)
tnewby@fenwick.com
LESLIE A. KRAMER (CSB NO. 253313)
lkramer@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendant Sawabeh Information
Services Co.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHLOE SAS, a French Corporation; ALFRED DUNHILL LIMITED, a UK Corporation; OFFICINE PANERAI AG, a Swiss Corporation; and MONTBLANC-SIMPLO GMBH, a German Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SAWABEH INFORMATION SERVICES CO. (d/b/a "SISCOM", tradekey.com, saudicommerce.com, and b2bfreezone.com), a Saudi Arabian Corporation; TRADEKEY (PVT) LTD, a Pakistani Corporation; TRADEKEY, LLC, a Delaware Corporation; WALEED ABALKHAIL; JUNAID MANSOOR; BOSUN INTERNATIONAL TRADE CO.; CCTRUE INTERNATIONAL TRADE CO., LTD.; FANCYSALER TRADING CO.; FUZHOU SUNSHINE TRADE CO., LTD; HENGTAI INTERNATIONAL; KK FASHION LOVE ZONE; LOVE IN APPAREL TRADE CO., LTD.; MELCHIC INTERNATIONAL TRADE CO., LTD; MYSTOCK WATCH CO., LTD; OFFRUNWAYBAGS.COM; ORIENT-ONLINE CO., LTD; PARK CO. LTD; RICHEN-ONLINE CO., LTD; SEASON-ONLINE CO., LTD; SEASONS- | Case No. 11-cv- 4147 GAF (MANx)<br><br>DEFENDANT SAWABEH INFORMATION SERVICES CO.'S EX PARTE EMERGENCY APPLICATION AND MEMORANDUM FOR CLARIFICATION OF TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER<br><br>Date: May 25, 2011<br>Time: 9:30 a.m.<br>Courtroom: 740<br>Judge: Hon. Gary A. Feess |

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S
MEMORANDUM IN SUPPORT OF ITS EMERGENCY
APPLICATION FOR CLARIFICATION OF COURT ORDER

CASE NO. 11-CV- 04147 GAF (MANX)

| | |
|---|---|
| 1 | ONLINE CO. LTD-ELAINE; SEVEN STAR REPLICASS; SHANGHAI TAOLAN INTERNATIONAL TRADE LIMITED COMPANY; SHOP STAR STYLE; SINOESTAR CO., LTD; SUPEROCEANS CO., LTD.; V52 INTERNATIONAL TRADE CO., LTD; VERTEX ONLINE CO., LTD.; WIN-WIN TRADE CO., LTD.; WWW.ECWATCH.NET; YONGCHUANG TRADE CORP; ZHONGSHENG TRADE CO., LTD; and DOES 1 through 5 inclusive, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | Defendants. |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY APPLICATION FOR CLARIFICATION OF COURT ORDER

CASE NO. 11-CV-04147 GAF (MANX)

**TO EACH PARTY AND ATTORNEY OF RECORD IN THIS ACTION:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 65(b)(4), Civil Local Rules 7-19 and 65, and 15 U.S.C. § 1116(d)(7), at 9:30 a.m., May 25, 2011, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable U.S. District Judge Gary A. Feess, at 255 East Temple Street, Los Angeles, CA, Defendant Sawabeh Information Services Co. ("SISCOM") ("Defendant") will and hereby does appear for the limited purpose of applying to this Court for an order clarifying this Court's May 17, 2011 *Ex Parte* Order Granting Plaintiffs a Temporary Restraining Order, Seizure Order and Substitute Custodian Order (the "May 17 TRO"): (1) requiring Plaintiffs to immediately make available to Defendant the servers necessary to operate their websites at issue in this action, with any copying of the contents of those servers to occur in a manner that does not prevent the operation of the websites at issue; (2) requiring Plaintiffs to provide to Defendant the identity of all persons who have been involved in the copying of the content of Defendant's servers on site or who have had access to the content of those servers; and (3) entering a protective order pursuant to 15 U.S.C. § 1116(d)(7) to provide adequate protections from use and disclosure of the voluminous confidential, private, proprietary or privileged information seized from Defendant's servers; and (4) requiring Plaintiffs to post bond in the minimum amount of $10 million to protect against the devastating damage inflicted by their shutdown of the websites at issue.

This Application is made for good cause on the grounds that:

(1) Plaintiffs have exceeded the scope of the May 17 TRO and 15 U.S.C. § 1116(d)(1)(A), taking Defendant's websites, located at tradekey.com, and other cites, offline and making them therefore unavailable to Defendant's customers for more than 36 hours. As of the time of this application, Defendant's website is still

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S
MEMORANDUM IN SUPPORT OF ITS EMERGENCY     1     CASE NO. 11-CV- 04147 GAF (MANX)
APPLICATION FOR CLARIFICATION OF COURT ORDER

1 unavailable to its customers. Such conduct is causing irreparable damage to Defendant's business, the vast majority of which has no relation to the conduct alleged in the Complaint, and runs contrary to this Court's finding that "an injunction preventing Defendant from continuing their infringing activities would not harm Defendant because ***it would not disrupt any lawful business***." Civil Minutes of May 17, 2011 Order Re: *Ex Parte* Application (emphasis asdded)

(2) Plaintiffs' have executed the May 17 TRO in a manner that far exceeds what that Order permitted, including, seizing all of Defendant's web servers on which its website is hosted and seizing *all* data from Defendant's web servers, including extremely sensitive data with no relevance to Plaintiffs' alleged trademarks, without adequate safeguards for the protection of such information from disclosure or use.

(3) Defendant has potentially seized the contents of electronic communications in violation of the Stored Communications Act, Title 18, United States Code, Section 2701, *et. seq.*

Defendant's appearance in this matter is solely for the purpose of clarifying the Court's Ex Parte Order Granting Expedited Discovery, Asset Freeze, and Domain Name Lock Down and Ex Parte Order Granting Plaintiffs a Temporary Restraining Order, Seizure Order, and Substitute Custodian Order, and bringing this proceeding into compliance with law. Defendant hereby reserves the right to raise any and all defenses, including, but not limited to, Plaintiffs' failure to effectuate service, lack of personal jurisdiction and improper venue.

This Application is based on the accompanying Memorandum of Points and Authorities; the Declaration of Laurence F. Pulgram in Support of Defendant's Emergency Motion; the Declaration of Haitham Saead in Support of Defendant's Emergency Motion; and the accompanying [Proposed] Order Granting the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S
MEMORANDUM IN SUPPORT OF ITS EMERGENCY
APPLICATION FOR CLARIFICATION OF COURT ORDER

2

CASE NO. 11-CV-04147 GAF (MANX)

Defendant's Emergency Motion; and such other argument and evidence as may be presented at the *ex parte* hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant's affiliated business-to-business e-commerce (B2B) websites, tradekey.com, saudicommerce.com and b2bfreezone.com, which have more than five million users, have been, and as of the time of this application, remain offline for more than 36 hours due to the Plaintiffs having improperly exceeded the scope of this Court's May 17 TRO, in violation of both this Court's order and 15 U.S.C. § 1116(d)(1)(A). Indeed, to Defendant's knowledge, this is the first instance of Section 1116(d)(1)(A) having been applied to completely shut down all operations of a major online business on an *ex parte* basis. Plaintiffs' conduct here is entirely unprecedented.

Plaintiffs' conduct has gone far beyond what they asked this Court to Order, and beyond what the Court authorized in its May 17 TRO. That Order prohibited Defendant from infringing certain federally registered trademarks alleged to be owned by the Plaintiffs. The Court also permitted Plaintiffs to seize certain data relating to the alleged infringement of Plaintiffs' marks and to take expedited discovery of the alleged infringement. What the May 17 Order did not permit, but which the Plaintiffs have carried out under the leverage provided by an armed Deputy United States Marshal, is the complete shutdown of Defendant's websites and businesses for nearly two days and the seizure of apparently all of its proprietary and sensitive customer and corporate data. Plaintiffs' conduct is causing, and will continue to cause irreparable harm to Defendant's business, the vast majority of which has no relation to Plaintiffs.

Accordingly, Defendant respectfully requests that the Court clarify its May 17 TRO to require Plaintiffs to relinquish control over Defendant's computer

servers and permit the site to resume operation in full. Defendant also requests that the Court enter a Protective Order, pursuant to 15 U.S.C. § 1116(d)(7) restricting the access, use and disclosure of the voluminous confidential, proprietary and sensitive data seized by Plaintiffs, so as to fully protect that information. Defendant further requests that Plaintiffs be required to increase their bond to the minimum amount of $10 million to protect Defendant from the damages caused by their execution of the May 17 TRO.

## II. PLAINTIFF'S CONDUCT VIOLATES THE MAY 17 TRO AND THE PLAIN LANGUAGE OF 15 U.S.C. §1116(D)(1)(A)

The May 17 TRO and the manner in which Plaintiffs' have carried out the seizure order violate established law that "*ex parte* seizure orders against established ongoing businesses are disfavored." *Wangson Biotechnology Grp., Inc. v. Tan Tan Trading Co., Inc.*, 2008 WL 4239155, at *5 (N.D. Cal. Sept. 11, 2008). This is particularly true in this instance, where Plaintiffs have not just preserved data, but have shut down Defendant's entire business, which the second largest B2B site in the world. Declaration of Haitham Saead in Support of Defendant's *Ex Parte* Emergency Application, ("Saead Decl." ¶6). Defendant has been in operation for six years, has more than 5 million users and receives approximately 250,000 site visits per day, the vast majority of which have no bearing on the Plaintiffs or Plaintiffs' marks. *Id.* Despite this, Plaintiffs' conduct has effectively put the Defendant out of business for nearly two days, impacting both the Defendant and its users around the globe who have never had any connection with Plaintiffs' marks or goods. [Id.] This stands in stark contrast to the intended purpose of § 1116(d) to seize goods and records from "fly by night" street vendors. *See Lorillard Tobacco Co. v. Bisan Food Corp.*, 377 F.3d 313, at 321-22 (3d Cir. 2004); Joint Statement, 130 Cong. Rec. at H12081. Indeed, Defendant believes that this is the first instance in which a seizure order under § 1116(d) has been used by a Plaintiff to shut down a commercial web site.

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S
MEMORANDUM IN SUPPORT OF ITS EMERGENCY
APPLICATION FOR CLARIFICATION OF COURT ORDER

4

CASE NO. 11-CV- 04147 GAF (MANX)

Nowhere in the Plaintiffs' moving papers did they mention that they intended to take all of Defendant's servers and business offline for two days or more while seizing all of its company and customer data, including data with no relevance to its claims. Furthermore, this Court's own order stated that "an injunction preventing Defendant from continuing their infringing activities would not harm Defendant because it would not disrupt any lawful business." Civil Minutes of May 17, 2011 Order Re: *Ex Parte* Application at 6. To the contrary, in disregard of the May 17 Order, Plaintiffs have done just that. From the moment they arrived at Defendant's server location without notice on February 23, 2011, Plaintiffs unplugged Defendants' website, began copying all their servers, holding the main, Travelkey.com cite down for at least 36 hours. *See* Saead Declaration ¶¶10, 12.

In addition to going far beyond this Court's May 17 TRO, Plaintiffs' conduct violates the plain language of 15 U.S.C. § 1116(d)(1)(A) of the Trademark Counterfeiting Act (TCA). That civil seizure authority of the TCA is limited to "goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation." Nowhere does the TCA permit the seizure of a business' entire business infrastructure, which is what has been seized here, particularly where the majority of that infrastructure has no relevance to the alleged manufacture, sale or receipt of the alleged counterfeit marks. Plaintiffs have effectively seized not just Defendant's records, but its entire business infrastructure.

Plaintiffs' conduct purports to seek to remedy the sale, by vendors using Defendant's website, of a relatively small number of allegedly counterfeited items—as to which Defendant is *not* the seller, and is entitled to substantial defenses. *See Tiffany v. eBay, Inc.*, 600 F. 3d 93 (2d Cir. 2010) (host of e-commerce cite generally not liable, despite knowledge that infringing activity can occur, when it takes down infringing materials upon notice). By contrast,

DEFENDANT SAWABEH INFORMATION SERVICES CO.'S
MEMORANDUM IN SUPPORT OF ITS EMERGENCY APPLICATION FOR CLARIFICATION OF COURT ORDER

5

CASE NO. 11-CV- 04147 GAF (MANX)

Plaintiffs' condut has shut down a major website, causing Defendant substantial and irreparable harm, the probability of which Plaintiffs failed to address in their moving papers. As Plaintiffs well know, the shutdown of a website of this nature causes its ranking in search results published by search engines like Google to plummet. Those search engines, seeing a website offline, even for a brief moment—much less for days—deems the site unreliable and reduces its priority in reporting results. *See* Saead Decl. ¶13. As a result, the shutdown of the sites has caused and will continue to cause Defendants massive and irreparable harm, as the recovery of rankings in Google can take months if not years, if ever, after such an event. *Id.* This is, in short, a catastrophic event, procured without notice and in a draconian fashion. Plaintiffs should be ordered immediately to take corrective action and to allow Defendant's to resume their business operations, within the confines of the TRO, until the TRO is modified.

### III. THE COURT SHOULD RESCIND ITS ORDER APPOINTING PLAINTIFF'S COUNSEL AS SUBSTITUTE CUSTODIANS OF THE SEIZED DATA, OR, IN THE ALTERNATIVE, ISSUE A PROTECTIVE ORDER PURSUANT TO 15 U.S.C. § 1116(D)(7)

Of significant concern is the Plaintiffs' wholesale seizure and custody of *all* data from Defendant's web servers, including data of potentially millions of customers who have never sold or bought products referencing Plaintiffs' marks. This conduct was also not authorized by the May 17 TRO, which, while broadly worded, did restrict Plaintiffs to seizing records relating to the infringement of Plaintiffs' marks. Ignoring these limitations, Plaintiffs have copied nearly all data about Defendant's business and its millions of customers without regard to whether those data have any relevance to its claims. Indeed, many of Defendant's customers use its site as a platform to offer and purchase items including raw materials, manufacturing tools, and many other types of items of no relevance to Plaintiffs' complaint. *See* Saead Decl. ¶10. Plaintiffs are now in possession of these customers and others' purchase histories, bank account numbers and other

sensitive information. Moreover, the data on the servers seized by Plaintiffs includes the proprietary software that runs Defendants' computer system, including trade secret information as to the operation of their business that provides them their competitive advantage—and value—in the marketplace. The data seized by Plaintiffs will even include attorney-client privileged communications belonging to Defendant. *See* Saead Decl. ¶10(e).

Plaintiffs should not be permitted to rifle at will through millions of records of highly sensitive data of no relevance to its claims and defenses. They should be ordered forthwith to transfer custody of the seized data to the Court or a court-appointed neutral. "The purpose of the ex parte seizure is to protect materials from destruction or concealment; it is not to permit the plaintiff to bypass the normal discovery process." *Compaq Computer Corp. v. Hardware 4 Less, Inc.*, 184 F. Supp.2d 128, 129-130 (D. N.H. 2002) (quoting J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, Vol. 6, App. A8-22 (4th ed.2001)). Furthermore, providing custody of seized data to the Plaintiffs is not authorized by the plain language of § 1116(d). *See Compaq*, 184 F. Supp.2d at 129-130 (Holding that "nothing in the statute authorizes the district court to appoint a substitute custodian.") Accordingly, the Court should rescind its order appointing Plaintiffs' counsel as custodian of Defendant's seized data and retain custody of the data itself. This course will not prejudice Plaintiffs. The data purportedly "at risk" has been preserved. A copy exists. It is time to allow a sensible process to determine what access to it Plaintiffs are genuinely entitled.

Furthermore, to protect the confidentiality of the sensitive data seized by Plaintiffs, Defendant respectfully requests that that Court grand a protective order pursuant to § 1116(d)(7) prohibiting any access to or use of the seized data by the Plaintiffs, their agents or counsel, until an order concerning the proper scope and protocol for discovery is entered. The plain language of § 1116(d)(7) makes clear

that the entry of such a protective order is mandatory and provides that "the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been seized."

### IV. PLAINTIFFS' SEIZURE OF THE CONTENTS OF STORED ELECTRONIC COMMUNICATIONS VIOLATES THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

Finally, Plaintiffs' seizure of electronic communications of third parties that are hosted by Defendant violates the Stored Communications Act of the Electronic Communications Privacy Act ("ECPA"), Title 18 United States Code, Section 2701 *et seq.* Defendant's sites are both Remote Computing Services ("RCS") and Electronic Communications Services ("ECS") under ECPA. An RCS is a site engaged in the "provision to the public of computer storage or processing services by means of an electronic communications system," 18 U.S.C. § 2711, effectively covering any interactive web site, like Defendant's. An ECS is any service that provides the ability to transmit or receive electronic communications, which includes email. *See* 18 U.S.C. § 2510. As the Ninth Circuit has held, stored email communications hosted by an ECS are subject to the restrictions of the Stored Communications Act. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075-77 (9th Cir. 2004).

Under ECPA, only law enforcement may seize the contents of electronic communications from an ECS, and only pursuant to a search warrant or, in more limited circumstance, a court order. *See* 18 U.S.C. §§ 2702(a)(b), 2703(a). Yet the May 17 TRO, as prepared by the Plaintiffs and submitted to the Court without any opportunity for comment by Defendants, permits Plaintiffs to seize "all data" from Defendant's servers, and, more specifically, "member data, email communications and/or payment records for said members referenced above." TRO, p.9, line 24. This runs afoul of ECPA, and Defendant's respectfully request that the TRO be modified to strike this provision. In addition, the fact that Plaintiffs have already

violated this provision in collecting information in violation of federal law (Saead Decl. ¶10(b)) provides additional necessity, for this Court to immediately freeze the materials obtained by Plaintiffs' seizure, turn them over the Court, and proceed thereafter in a fashion that protects the rights of Defendants and third parties.

## V. CONCLUSION

Accordingly, Plaintiffs should be ordered to immediately put all of Defendant's servers back online and, to the extent they are entitled to copy portions of them, do so in a manner that does not require Defendant's websites to be offline.

Furthermore, Plaintiffs should be required to post bond in the minimum amount of $10 million, subject to additional proof going forward. Saead Decl.¶15. The $20,000 bond originally posted did not contemplate that Plaintiffs would effect the shutdown of Defendant's businesses, which has occasioned Defendant massive harm from which it may never recover. The posting of the Bond is essential, as it is the available remedy for an injunction wrongfully enforced.

Furthermore, Defendant request that the Court immediately clarify and modify its order to provide that any materials obtained by Plaintiffs from Defendant through the seizure shall be turned over to a neutral officer of the Court, or at a minimum sequestered and maintained inviolate, without access to any agent of the Plaintiffs, until further stipulation of the parties or order of the Court to address the accommodation of the need to preserve evidence and the legitimate interests of the Defendant, their customers, their attorney client relationships, and the ECPA.

Dated: May 25, 2011

Respectfully,

FENWICK & WEST LLP

By:/s/ Laurence F. Pulgram
Laurence F. Pulgram
Attorneys for Defendant

violated this provision in collecting information in violation of federal law (Saead Decl. ¶10(b)) provides additional necessity, for this Court to immediately freeze the materials obtained by Plaintiffs' seizure, turn them over the Court, and proceed thereafter in a fashion that protects the rights of Defendants and third parties.

## V. CONCLUSION

Accordingly, Plaintiffs should be ordered to immediately put all of Defendant's servers back online and, to the extent they are entitled to copy portions of them, do so in a manner that does not require Defendant's websites to be offline.

Furthermore, Plaintiffs should be required to post bond in the minimum amount of $10 million, subject to additional proof going forward. Saead Decl.¶15. The $20,000 bond originally posted did not contemplate that Plaintiffs would effect the shutdown of Defendant's businesses, which has occasioned Defendant massive harm from which it may never recover. The posting of the Bond is essential, as it is the available remedy for an injunction wrongfully enforced.

Furthermore, Defendant request that the Court immediately clarify and modify its order to provide that any materials obtained by Plaintiffs from Defendant through the seizure shall be turned over to a neutral officer of the Court, or at a minimum sequestered and maintained inviolate, without access to any agent of the Plaintiffs, until further stipulation of the parties or order of the Court to address the accommodation of the need to preserve evidence and the legitimate interests of the Defendant, their customers, their attorney client relationships, and the ECPA.

Dated: May 25, 2011

Respectfully,

FENWICK & WEST LLP

By: /s/ Laurence F. Pulgram
Laurence F. Pulgram
Attorneys for Defendant