

1  MARK A. FINKELSTEIN (State Bar No. 173851)
   mafinkelstein@jonesday.com
2  JONES DAY
   3161 MICHELSON DRIVE
3  SUITE 800
   IRVINE, CA 92612-4408
4  949.851.3939
   949.553.7539 (Facsimile)
5
   SUSAN M. KAYSER (admitted *pro hac vice*)
6  skayser@jonesday.com
   JESSICA D. BRADLEY (admitted *pro hac vice*)
7  jbradley@jonesday.com
   JONES DAY
8  51 LOUISIANA AVE, NW
   WASHINGTON, DC 20001
9  202.879.3939
   202.626.1700 (Facsimile)
10
   Attorneys for Plaintiffs Chloé SAS, Alfred Dunhill Limited,
11 Officine Panerai AG, Montblanc-Simplo GmbH, Cartier
   International AG, and Lange Uhren GmbH
12
                 UNITED STATES DISTRICT COURT
13        FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 CHLOE SAS, a French          ) Case No: 11-cv-04147 GAF (MANx)
   Corporation, *et al.*,       )
15                              ) **PLAINTIFFS' MEMORANDUM IN SUPPORT**
              Plaintiffs,       ) **OF MOTION FOR DEFAULT JUDGMENT**
16                              ) **AGAINST DEFENDANTS EUROMED**
   vs.                          ) **INTERNATIONAL TRADING CO., LIMITED,**
17                              ) **ORIENT-ONLINE CO. LTD., RICHEN-**
   SAWABEH                      ) **ONLINE CO., LTD, WIN INTERNATIONAL**
18 INFORMATION                  ) **TRADE CCTRUE INTERNATIONAL TRADE**
   SERVICES CO, *et al.*,       ) **CO., LTD., FANCYSALER TRADING CO.,**
19                              ) **FUZHOU SUNSHINE TRADE CO., LTD.,**
              Defendants.       ) **HENGTAI INTERNATIONAL, KK FASHION**
20                              ) **LOVE ZONE, LOVE IN APPAREL TRADE**
                               ) **CO., LTD., MELCHIC INTERNATIONAL**
21                              ) **TRADE CO, .LTD., MYSTOCKWATCH CO.,**
                               ) **LTD., SEVEN STAR REPLICASS, SHANGHAI**
22                              ) **TAOLAN INTERNATIONAL TRADE**
                               ) **LIMITED COMPANY, SINOESTAR CO.,**
23                              ) **LTD, V52 INTERNATIONAL TRADE CO.,**
                               ) **LTD., WIN-WIN TRADE CO., LTD., and**
24                              ) **WWW.ECWATCH.NET**
                               )
25                              ) **FILED UNDER SEAL**
                               )
26                              ) **Hearing: Judge Feess**
                               ) **Date: April 9, 2012**
27                              ) **Time: 9:30 AM**
                               ) **Courtroom: 740 - Roybal**
28                              )

ORIGINAL



1  MARK A. FINKELSTEIN (State Bar No. 173851)
    mafinkelstein@jonesday.com
2  JONES DAY
    3161 MICHELSON DRIVE
3  SUITE 800
    IRVINE, CA 92612-4408
4  949.851.3939
    949.553.7539 (Facsimile)
5
6  SUSAN M. KAYSER (admitted *pro hac vice*)
    skayser@jonesday.com
7  JESSICA D. BRADLEY (admitted *pro hac vice*)
    jbradley@jonesday.com
    JONES DAY
8  51 LOUISIANA AVE, NW
    WASHINGTON, DC 20001
9  202.879.3939
    202.626.1700 (Facsimile)
10
11  Attorneys for Plaintiffs Chloé SAS, Alfred Dunhill Limited,
    Officine Panerai AG, Montblanc-Simplo GmbH, Cartier
    International AG, and Lange Uhren GmbH

**FILED**
CLERK, U.S. DISTRICT COURT

**APR – 4 2012**

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

12

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13

14  CHLOE SAS, a French
    Corporation, *et al.*,

15             Plaintiffs,

16

17  vs.

18  SAWABEH
    INFORMATION
    SERVICES CO, *et al.*,

19

20         Defendants.

Case No: 11-cv-04147 GAF (MANx)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS EUROMED INTERNATIONAL TRADING CO., LIMITED, ORIENT-ONLINE CO. LTD., RICHEN-ONLINE CO., LTD, WIN INTERNATIONAL TRADE CCTRUE INTERNATIONAL TRADE CO., LTD., FANCYSALER TRADING CO., FUZHOU SUNSHINE TRADE CO., LTD., HENGTAI INTERNATIONAL, KK FASHION LOVE ZONE, LOVE IN APPAREL TRADE CO., LTD., MELCHIC INTERNATIONAL TRADE CO, .LTD., MYSTOCKWATCH CO., LTD., SEVEN STAR REPLICASS, SHANGHAI TAOLAN INTERNATIONAL TRADE LIMITED COMPANY, SINOESTAR CO., LTD, V52 INTERNATIONAL TRADE CO., LTD., WIN-WIN TRADE CO., LTD., and WWW.ECWATCH.NET**

**FILED UNDER SEAL**

**Hearing: Judge Feess**
**Date: April 9, 2012**
**Time: 9:30 AM**
**Courtroom: 740 - Roybal**

21
22
23
24
25
26
27
28

Memorandum in Support of Motion for Default Judgment

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS .................................................................... 2
    A. Default Defendants Were Properly Served ................................ 2
    B. Plaintiffs' Trademarks ............................................................... 3
        1. Chloé SAS ....................................................................... 3
        2. Alfred Dunhill Ltd .......................................................... 4
        3. Officine Panerai AG ........................................................ 6
        4. Montblanc-Simplo GmbH ................................................ 7
        5. Cartier International AG .................................................. 8
        6. Lange Uhren GmbH ....................................................... 10
    C. Default Defendants' Infringing Conduct ................................. 11

III. LEGAL ARGUMENT ........................................................................ 11
    A. Standard For Entry Of Default Judgment ............................... 11
        1. Possibility of Prejudice to Plaintiff ................................ 12
        2. Merits of Plaintiffs' Claim and Sufficiency of the Complaint ...................................................................... 13
        3. Sum of Money at Stake ................................................... 15
        4. Possibility of Dispute Concerning Material Facts ......... 16
        5. Whether the Default was Due to Excusable Neglect ....... 16
        6. Strong Policy Favoring Decisions on the Merits ............ 17
    B. Plaintiffs Are Entitled To Statutory Damages Under 15 USC § 1117(c) ................................................................................ 17
        1. As Willful, Large Scale Counterfeiters, Default Defendants   Should Pay the Maximum Statutory Damages ........................................................................ 19
        2. Statutory Damages Against Default Defendants Should Be Calculated on a Per Mark Per Good Basis ............... 43
    C. Plaintiffs Are Entitled to Costs ............................................... 48
    D. Plaintiffs are Entitled to Transfer of the Domains Used to Counterfeit Plaintiffs' Marks .................................................. 48
    E. Plaintiffs Are Entitled to a Permanent Injunction .................. 49

IV. CONCLUSION ................................................................................. 49

**TABLE OF AUTHORITIES**

Page

CASES

*AMF Inc., v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) .................................................... 14

*Brookfield Communications v. West Coast Entertainment,*
   174 F.3d 1036 (9th Cir. 1999) .................................................. 14

*Mattel Inc., v. Walking Mountain Prods.,*
   353 F.3d 792 (9th Cir. 2003) ................................................... 14

*Chanel, Inc. v. Paley,*
   Case No. 3:09-cv-04979-MHP ................................................. 49

*Coach Services, Inc. v. YNM, Inc.,*
   2011 WL 1752091 (C.D.Cal. 2011) .......................... 12, 16, 41, 42

*Eitel v. McCool,*
   782 F.2d 1470 (9th Cir. 1986) ........................................... passim

*Geddes v. United Financial Group,*
   559 F.2d 557 (9th Cir. 1977) ................................................... 12

*Gucci Am., Inc. v. Duty Free Apparel Ltd.,*
   315 F.Supp. 2d 511 (SDNY 2004) ........................................... 43

*Gucci America v. Wang Huoqing,*
   2011 WL 30972 (N.D.Cal. 2011) ............................................. 49

*K and N Engineering, Inc. v. Bulat,*
   510 F.3d 1079 (9th Cir. 2007) ................................................. 18

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.,*
   725 F.Supp.2d 916 (C.D.Cal. 2010) ............................... 13, 15, 17

*Lau Ah Yew v. Dulles,*
   236 F.2d 415 (9th Cir. 1956) ................................................... 11

*Lindy Pen Co., Inc. v. Bic Pen Corp.,*
   982 F.2d 1400 (9th Cir. 1993) ........................................... 20, 48

*Lorillard Tobacco Co. v. S&M Central Service Corp.,*
   2004 U.S. Dist. LEXIS 22563 (N.D. Ill. 2004) ......................... 20

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions,*
   658 F.3d 936 (9th Cir. 2011) ................................................... 42

1

*M2 Software, Inc. v. Madacy Entertainment,*
 421 F.3d 1073 (9th Cir. 2005) ............................................................. 14

*Nike Inc. v. Variety Wholesalers, Inc.,*
 274 F. Supp. 2d 1352 (S.D. Ga. 2003) ................................................ 43

*Pearson Educ., Inc. v. Wong,*
 2010 WL 476685 (N.D.Cal. 2010) ....................................................... 12

*PepsiCo, Inc. v. California Security Cans,*
 238 F.Supp.2d 1172 (C.D.Cal. 2002) ........................................... passim

*Philip Morris U.S.A. Inc. v. Castworld Prods.,*
 219 F.R.D. 494 (C.D. Cal. 2003) (Feess, J.) ................................. passim

*Philip Morris USA, Inc. v. Banh,*
 2005 WL 5758392 (C.D. Cal. 2005) (Feess, J.) .................................. 43

*Philip Morris USA Inc. v. Liu,*
 489 F.Supp.2d 1119 (C.D.Cal. 2007) ................................................. 42

*Philip Morris USA, Inc. v. Marlboro Express,*
 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) ................... 19

*Philip Morris USA Inc. v. Otamedia Limited,*
 331 F. Supp. 2d 228 (S.D.NY 2004) .................................................... 49

*Philip Morris USA, Inc. v. Sheng Chen Lin,*
 2004 U.S. Dist. LEXIS 29904 (C.D. Cal. Oct. 25, 2004) .................... 19

*Phillip Morris USA Inc. v. Shalabi,*
 352 F.Supp.2d 1067 (C.D.Cal. 2004) (Fees, J.) ............................ 14, 43

*Polo Fashions v. Dick Bruhn,*
 793 F.2d 1132 (9th Cir. 1986) .............................................................. 17

*Power Balance LLC v. Power Force LLC,*
 2010 WL 5174957 (C.D.Cal. 2010) ..................................................... 14

*Silhouette Int'l Schmied AG v. Chakhbazian,*
 2004 U.S. Dist. LEXIS 19787 (S.D.N.Y. 2004) .................................. 20

*Televideo Systems, Inc. v. Heidenthal,*
 826 F.2d 915 (9th Cir. 1987) ................................................................ 12

*Walters v. Statewide Concrete Barrier, Inc.,*
 No. C 04-2559 JSW, 2006 WL 2527776 (N.D.Cal. Aug. 30, 2006) ....................................... 16

2

1

**STATUTES**

2

15 U.S.C. § 1114 ................................................................................... 13

3

15 U.S.C. § 1116 ................................................................................... 13

4

15 U.S.C. §1117 .............................................................................. passim

5

15 U.S.C. § 1125(a) .............................................................................. 13

6

Cal. Bus. & Prof. Code § 17200 et seq. ................................................ 13

7

**OTHER AUTHORITIES**

8

FRCP 55 .................................................................................................. 1

9

Local Rule 54-3 ..................................................................................... 48

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Memorandum in Support of Motion for Default Judgment

## I.    INTRODUCTION

On May 13, 2011, Plaintiffs Chloé SAS, Alfred Dunhill Limited, Officine Panerai AG, and Montblanc-Simplo GmbH filed a Verified Complaint in the above-entitled matter against Defendants Cctrue International Trade Co., Ltd., Fancysaler Trading Co., Fuzhou Sunshine Trade Co., Ltd., Hengtai International, Kk Fashion Love Zone, Love In Apparel Trade Co., Ltd., Melchic International Trade Co, Ltd., Mystockwatch Co., Ltd., Seven Star Replicass, Shanghai Taolan International Trade Limited Company, Sinoestar Co., Ltd, V52 International Trade Co., Ltd., Win-Win Trade Co., Ltd., and Www.Ecwatch.Net, for trademark infringement, counterfeiting, and related claims regarding the manufacture, distribution and sale of goods bearing counterfeit reproductions of the Plaintiffs' trademarks. (Compl., Dkt. No. 1.) All of these Defendants were properly served with the Verified Complaint but failed to respond, and thus default was entered against them as to the Verified Complaint. (February 27, 2012 Declaration of Susan M. Kayser ("Kayser Decl.") ¶¶4-9; Dkt. No. 179).

On October 21, 2011 Plaintiffs Chloé SAS, Alfred Dunhill Limited, Officine Panerai AG, Montblanc-Simplo GmbH and new Plaintiffs Cartier International A.G. and Lange Uhren GmbH filed a Verified First Amended Complaint against the aforementioned Defendants and additional Defendants Euromed International Trading Co., Limited, Orient-Online Co. Ltd., Richen-Online Co., Ltd, and Win International Trade (collectively, "Default Defendants"). (Dkt. No. 153.) All of these Default Defendants were duly served with the Verified First Amended Complaint but failed to respond, and default was entered against them as to the Verified First Amended Complaint. (Kayser Decl. ¶¶ 4-9; Dkt. No. 200).

Plaintiffs have satisfied the requirements of FRCP 55. Consequently, Plaintiffs respectfully request that this Court grant Plaintiffs' Application for Default Judgment against Default Defendants.

1

## II.    STATEMENT OF FACTS

### A.    Default Defendants Were Properly Served

Default Defendants Cctrue International Trade Co., Ltd., Love In Apparel Trade Co., Mystockwatch Co., Ltd, Seven Star Replicass, Shanghai Taolan International Trade Limited Company and www.ecwatch.Net were served on June 10, 2011 with the Verified Complaint via certified email with a proof of posting certificate confirming delivery and receipt per the Court's *Ex Parte* May 17, 2011 Order (Dkt. No. 33). (Kayser Decl. ¶4).  These Defendants were also served with the Verified First Amended Complaint via certified email with a proof of posting certificate confirming delivery and receipt per the Court's *Ex Parte* May 17, 2011 Order (Dkt. No. 33) on January 25, 2012. (*Id.*).  To date these Defendants have failed to make any appearance in this case or file responsive pleadings, and consequently the Clerk of this Court entered a default against these defendants on January 6, 2012 (Dkt. No. 179) with respect to the Verified Complaint  and on February 15, 2012 with respect to the Verified First Amended Complaint. (Dkt. No. 200). (*Id.* ¶¶8-9).

Fancysaler Trading Co., Fuzhou Sunshine Trade Co., Ltd., Hengtai International, Kk Fashion Love Zone, Melchic International Trade CO, .Ltd, Sinoestar Co., Ltd, V52 International Trade Co., Ltd, Win-Win Trade Co., Ltd were served on June 23, 2011 via certified email with a proof of posting certificate confirming delivery and receipt per the Court's *Ex Parte* May 17, 2011 Order (Dkt. No. 33). (Kayser Decl. ¶5).  These Defendants were served with the Verified First Amended Complaint via certified email with a proof of posting certificate confirming delivery and receipt per the Court's *Ex Parte* May 17, 2011 Order (Dkt. No. 33) on January 25, 2012. (*Id.*).  To date these Defendants have failed to make any appearance in this case or file responsive pleadings, and consequently the Clerk of this Court entered a default against these defendants on January 6, 2012 (Dkt. No.

2

179) with respect to the Verified Complaint and on February 15, 2012 with respect to the Verified First Amended Complaint. (Dkt. No. 200). (*Id.* ¶¶8-9).

Defendants Euromed International Trading Co., Limited, Orient-Online Co. Ltd., Richen-Online Co., Ltd, and Win International Trade were served with the Verified First Amended Complaint on December 16, 2011 via certified email with a proof of posting certificate confirming delivery and receipt per the Court's December 2, 2011 Order. To date these Defendants have failed to make any appearance in this case or file responsive pleadings, and consequently the Clerk of this Court entered a default against these defendants on February 15, 2012. (Dkt. No. 200). (*Id.* ¶¶6, 9).

## B.    Plaintiffs' Trademarks

Plaintiffs are sellers and distributors of luxury goods in the United States and worldwide. (Ver. First Am. Compl. (Dkt. No. 153) ¶¶ 28-32, 42-45, 56-59, 70-72, 82-89, 99-106). Plaintiffs distribute goods under a variety of famous marks which have become well known by the purchasing public throughout the United States and world as products of the highest quality and exclusively originating from Plaintiffs. (*Id.*). Plaintiffs trademarks are widely recognized and add enormous value to Plaintiffs products. (*Id.*)

### 1.    Chloé SAS

Plaintiff Chloé SAS ("Chloé") and its licensees and affiliates are the sole and exclusive distributors in the United States of handbags, clothing, footwear, jewelry, and accessories bearing the CHLOÉ mark and related marks. (Am. Compl. (Dkt. No. 153) ¶1). A list of these marks from the Verified First Amended Complaint is attached as Exhibit A ("Chloé Marks"). (*Id.* ¶33). Plaintiff Chloé owns the federal registrations for its Chloé brand, copies of which were attached to the Verified First Amended Complaint. (*Id.*; *id.* ¶¶34-35, Ex.1). For decades, the Chloé Marks have received enormous exposure in the marketplace. (*Id.* ¶29). Over the years, millions

3

1  of consumers have been exposed to the Chloé Marks through advertising
2  campaigns, in mainstream and fashion magazines and other periodicals, as depicted
3  on television and in motion pictures, on the Internet, and in other forms of
4  unsolicited media coverage. (*Id.*)

5  Plaintiff's Chloé Marks have been widely promoted, both in the United
6  States and throughout the world, and are widely recognized. (*Id.* ¶30).  Plaintiff
7  displays the Chloé Marks in many advertising and promotional materials.  To date,
8  Plaintiff Chloé has spent millions of dollars in advertising and promoting the Chloé
9  Marks in connection with handbags, clothing, footwear, and accessories, and
10  Plaintiff, its predecessors-in-interest and its affiliated companies have achieved
11  hundreds of millions of dollars in sales of genuine CHLOÉ branded products. (*Id.*)
12  In the last year alone, sales of Chloé brand products in the United States exceeded
13  $17 million, with over $5 million in sales in California, and over $2 million of sales
14  in Los Angeles. (*Id.* ¶39).

15  Due to Chloé's long use, extensive sales, and significant advertising and
16  promotional activities, the Chloé Marks have achieved widespread acceptance and
17  recognition among the consuming public and trade throughout the United States.
18  (*Id.* ¶31, 40).  Based on the extensive sales of Plaintiff Chloé's branded goods and
19  wide popularity, the Chloé Marks have developed significance in the minds of the
20  relevant purchasing public, and the products and services utilizing and/or bearing
21  this mark are singularly associated and identified by the purchasing public as
22  originating with Plaintiff Chloé. (*Id.* ¶41).  For the aforementioned reasons, the
23  Chloé Marks are highly valuable. (*Id.* ¶¶28-32, 39-41).

24  **2.  Alfred Dunhill Ltd.**

25  Plaintiff Alfred Dunhill Limited ("Alfred Dunhill") has manufactured and
26  distributed formal and casual menswear, handcrafted leather goods, fine men's
27  jewelry and timepieces, pens, men's designer clothes and accessories bearing the
28  mark ALFRED DUNHILL and related marks since 1893. (Am. Compl. ¶42.)  A list

4

of these marks from the Verified First Amended Complaint is attached as Exhibit B ("Dunhill Marks"). (*Id.* ¶46). Plaintiff Alfred Dunhill owns the federal registrations for its Alfred Dunhill brand, copies of which were attached to the Verified First Amended Complaint. (*Id.*; *id.* ¶¶47-48, Ex.2). Luxury menswear and accessories bearing the Dunhill Marks have come to be well-known by the purchasing public throughout the United States as products of the highest quality and exclusively originating from Plaintiff Alfred Dunhill for over 100 years. (*Id.* ¶43).

Over the years, millions of consumers have been exposed to the Dunhill Marks through advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, on the Internet, and in other forms of unsolicited media coverage. (*Id.* ¶¶43-44). As a result, Plaintiff's Dunhill Marks are widely-recognized trademarks in the United States, and popular with consumers, which add enormous value to the officially manufactured menswear, leather goods, watches and accessories that bear Plaintiff's Dunhill Marks. (*Id.* ¶ 44).

Plaintiff's Dunhill Marks have been widely promoted in California, the United States and throughout the world, and are widely recognized. (*Id.* ¶53). Plaintiff displays the Dunhill Marks in many advertising and promotional materials. To date, Plaintiff has spent millions of dollars in advertising and promoting the Dunhill Marks in connection with menswear and accessories, and Plaintiff, its predecessors-in-interest and its affiliated companies have achieved hundreds of millions of dollars in sales. (*Id.*). Plaintiff's extensive and continuous use of the Dunhill Marks has enabled Plaintiff to achieve fame and celebrity in the menswear and leather goods market. (*Id.* ¶54). Based on the extensive sales and wide popularity of Plaintiff's menswear and accessories, the Dunhill Marks have developed significance in the minds of the relevant purchasing public, including in the United States and California, and the products and services utilizing and/or bearing this mark are singularly associated and identified by the purchasing public

5

1  as originating with Alfred Dunhill. (*Id.* ¶55). For the aforementioned reasons, the

2  Dunhill Marks are highly valuable. (*Id.* ¶¶42-45, 52-55).

3      **3.**    **Officine Panerai AG**

4      Plaintiff Officine Panerai AG ("Panerai") is well known for producing high

5  precision mechanisms and instruments and professional divers' instruments for

6  over 150 years. (*Id.* ¶56). Watches bearing the mark PANERAI and related marks

7  have come to be well-known by the purchasing public throughout the United States

8  and worldwide as products of high technical quality exclusively originating from

9  Plaintiff Panerai. (*Id.* ¶57). A list of these marks from the Verified First Amended

10 Complaint is attached as Exhibit C ("Panerai Marks"). (*Id.* ¶60). Plaintiff Panerai

11 owns the federal registrations for its Panerai brand, copies of which were attached

12 to the Verified First Amended Complaint. (*Id.*; *id.* ¶¶61-62, Ex.3).

13     Over the years, millions of consumers have been exposed to the Panerai

14 Marks through advertising campaigns, in mainstream and fashion magazines and

15 other periodicals, as depicted on television and in motion pictures, on the Internet,

16 and in other forms of unsolicited media coverage. (*Id.* ¶58). As a result, Plaintiff's

17 Panerai Marks are widely-recognized trademarks in the United States, and popular

18 with consumers, which add enormous value to the officially manufactured and

19 authorized watches that bear Plaintiff's luxury Panerai Marks. (*Id.*). To date,

20 Plaintiff, its predecessors-in-interest and its affiliated companies have achieved

21 hundreds of millions of dollars in sales. (*Id.* ¶66).

22     Plaintiff's Panerai Marks have been widely promoted in California, the

23 United States and throughout the world, and are widely recognized. (*Id.* ¶67). To

24 date, Plaintiff has spent millions of dollars in advertising and promoting the Panerai

25 Marks in connection with watches and timepieces. (*Id.*). In fiscal year 2011 in

26 excess of $1 million was spent advertising Panerai brand products in the United

27 States, including advertising directed toward consumers in California. (*Id.*).

28     Plaintiff's extensive and continuous use of the Panerai Marks has enabled

6

Memorandum in Support of Motion for Default Judgment

Plaintiff to achieve fame and celebrity in the watches and timepieces market. Plaintiff's reputation is a direct result of the robustness, high technical quality and craftsmanship of Plaintiff's timepieces and watches, Plaintiff's extensive advertising, promotion, sales, and exclusive sales through boutiques and authorized distributors. (*Id.* ¶68). Indeed, Plaintiff has experienced extensive sales and fame as a result of the popularity of a number of highly sought-after watches, including but not limited to watches bearing the "Luminor" and "Radiomir" Panerai Marks that are enormously popular with celebrities and the consuming public. (*Id.*). Based on the foregoing, the Panerai Marks have developed significance in the minds of the relevant purchasing public, and the watches bearing the Panerai Marks are singularly associated with and identified by the purchasing public as originating with Panerai. (*Id.* ¶69).  For the aforementioned reasons, the Panerai Marks are highly valuable. (*Id.* ¶¶56-59, 66-69).

### 4.    Montblanc-Simplo GmbH

Plaintiff Montblanc-Simplo GmbH ("Montblanc") is well known for manufacturing and distributing writing instruments under the mark MONTBLANC, and over time has expanded the products offered under the mark MONTBLANC to include leather goods, jewelry and watches. (*Id.* ¶70). Montblanc has become well-known in the United States and worldwide for quality design, tradition and master craftsmanship in connection with luxury writing instruments, watches, jewelry, and leather goods bearing the mark MONTBLANC and related marks. (*Id.*). A list of these marks from the Verified First Amended Complaint is attached as Exhibit D ("Montblanc Marks"). (*Id.* ¶73).  Plaintiff Montblanc owns the federal registrations for its Montblanc brand, copies of which were attached to the Verified First Amended Complaint. (*Id.*; *id.* ¶¶74-75, Ex.4).

For fiscal year 2010-2011, sales of Montblanc brand products in the United States exceeded $70 million, with over $10 million in sales in California, and over $2 million in sales in Los Angeles. (*Id.* ¶79). Montblanc's extensive and continuous

7

use of the Montblanc Marks has enabled Montblanc to achieve fame and celebrity in the writing instrument market and in connection with watches, jewelry and leather goods in California, the United States and throughout the world. (*Id.* ¶80). Montblanc's reputation and the association of the Montblanc Marks with perfection, achievement and quality is a direct result of Plaintiff's high quality standards, and extensive advertising and promotion. (*Id.*).  Indeed, Montblanc has experienced extensive sales and fame as a result of the popularity of a number of highly sought-after writing instruments, including but not limited to the "MEISTERSTÜCK" style MONTBLANC fountain pen that is enormously popular with the consuming public. (*Id.*).  Based on the extensive sales and wide popularity of Plaintiff Montblanc's writing instruments, watches, jewelry, and leather goods with celebrities and the consuming public, the Montblanc Marks have developed significance in the minds of the relevant purchasing public, and the products bearing the Montblanc Marks are singularly associated with and identified by the purchasing public as originating with Montblanc. (*Id.* ¶81.). For the aforementioned reasons, the Montblanc Marks are highly valuable. (*Id.* ¶¶70-72, 79-81).

## 5.    Cartier International AG

Cartier International AG ("Cartier") manufactures and authorizes fine jewelry, watches, leather goods, writing instruments and accessories. (*Id.* ¶81). The Cartier brand dates back to 1859 and is well-known for high quality and expertly crafted artistic jewelry. (*Id.* ¶81). The well-known Cartier brand includes such famous marks as Trinity and Love Bracelet. (*Id.*). The Cartier mark and related marks have come to be well-known by the purchasing public throughout the United States and worldwide as products of high technical quality exclusively originating from Plaintiff Cartier. (*Id.* ¶84). A list of these marks from the Verified First Amended Complaint is attached as Exhibit E ("Cartier Marks"). (*Id.* ¶90).  Plaintiff Cartier owns the federal registrations for its Cartier brand, copies of which were attached to the Verified First Amended Complaint. (*Id.*; *id.* ¶¶91-92, Ex.5).

Over the years, millions of consumers have been exposed to the Cartier Marks through advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, on the Internet, and in other forms of unsolicited media coverage. (*Id.* ¶85). Legendary Hollywood actress Gloria Swanson appeared in the motion picture Sunset Boulevard wearing Cartier bracelets. (*Id.* ¶86). Cartier loaned its Art Deco jewelry collection to the filming of The Great Gatsby starring Robert Redford and Mia Farrow. (*Id.*). Cartier jewelry has also been featured in popular television series including Gossip Girl and HBO's Entourage series. (*Id.*). Actresses such as Renée Zellweger, Helen Mirren, Amy Adams and Jessica Alba have highlighted Cartier jewelry as part of their ensembles for the Oscars. (*Id.*). Kate Middleton wore the Cartier "halo" tiara for her wedding to Prince William. (*Id.*).

In June 2003, the City of New York officially renamed the intersection of Fifth Avenue and 52nd Street, the location of Cartier's New York landmark boutique since 1917, "Place de Cartier". (*Id.* ¶87). In 2009, Cartier celebrated its 100 year anniversary in America with a star-studded gala at the New York boutique which featured photographs from famed photographer Bruce Weber's book "Cartier, I Love You," and with guests including Elton John, Anne Hathaway, Justin Timberlake, and Demi Moore. (*Id.*). As a result, Plaintiff's Cartier Marks are widely-recognized trademarks in the United States, and popular with consumers, which add enormous value to the officially manufactured and authorized jewelry, watches, leather goods, writing instruments and accessories that bear Plaintiff's Cartier Marks. (*Id.* ¶88).

Annual sales of Cartier brand products in the United States average in the hundreds of millions, with sales in California alone averaging in the tens of millions. (*Id.* ¶96). Over 50% of the sales in California in 2011 occurred in Los Angeles. Millions of dollars are spent advertising Cartier brand products in the United States, including advertising directed toward consumers in California. (*Id.*). Plaintiff's

9

1   extensive and continuous use of the Cartier Marks has enabled Plaintiff to achieve
2   fame and celebrity in the jewelry and watches market and in connection with
3   leather goods, writing instruments and accessories in California, the United States
4   and throughout the world. (*Id.* ¶97).  Plaintiff's reputation and association of the
5   Cartier Marks with perfection, achievement and quality is a direct result of
6   Plaintiff's high quality standards, and extensive advertising and promotion. (*Id.*).
7   For the aforementioned reasons, the Cartier Marks are highly valuable. (*Id.* ¶¶82-89,
8   96-98).

9   **6.    Lange Uhren GmbH**

10  Plaintiff Lange Uhren GmbH ("Lange") manufactures and distributes
11  watches and accessories under the mark A. LANGE & SÖHNE and related marks.
12  (*Id.* ¶99). A list of these marks from the Verified First Amended Complaint is
13  attached as Exhibit F ("Lange Marks"). (*Id.* ¶107).  Plaintiff Lange owns the federal
14  registrations for its Lange & Söhne brand, copies of which were attached to the
15  Verified First Amended Complaint. (*Id.*; *Id.* ¶¶108-109, Ex.6).  The watch-making
16  tradition of the members of the Lange family dates back to 1845 and the A. Lange
17  & Söhne brand is well-known for high quality and expertly crafted precision
18  timepieces. (*Id.*).  Each watch is individually engraved and is a one of a kind
19  masterpiece. (*Id.* ¶100).

20  Watches bearing the Lange Marks have come to be well-known by the
21  purchasing public throughout the United States and worldwide as products of high
22  technical quality exclusively originating from Plaintiff Lange. (*Id.* ¶103).  Over the
23  years, millions of consumers have been exposed to the Lange Marks through
24  advertising campaigns, in mainstream and fashion magazines and other periodicals,
25  as depicted on television and in motion pictures, on the Internet, and in other forms
26  of unsolicited media coverage. (*Id.* ¶104). As a result, Plaintiff's Lange Marks are
27  widely-recognized and highly regarded trademarks in the United States, which add
28  enormous value to the officially manufactured and authorized watches that bear

10

Lange's luxury marks. (*Id.* ¶105).   For the aforementioned reasons, the Lange Marks are highly valuable. (*Id.* ¶¶99-105, 113-114).

### C.    Default Defendants' Infringing Conduct

Default Defendants are consciously engaging in the importation, promotion, distribution, advertisement, offering for sale, and/or sale of counterfeit Chloé, Alfred Dunhill, Panerai, Montblanc, Cartier, and/or Lange & Sohne branded goods to consumers in the United States, including California. (Am. Compl. ¶ 19.)   All Default Defendants are members of TradeKey.com, where each of the Defendants has offered for sale counterfeit branded goods bearing one or more of the Plaintiffs' marks. (*Id.* ¶¶ 131-34, 135-38, 139-42, 143-46, 147-50, 151-55).

Default Defendants have imported, manufactured, offered for sale, promoted, advertised, sold and/or distributed counterfeit Chloé, Alfred Dunhill, Panerai, Montblanc, Cartier, and/or Lange & Sohne branded goods without Plaintiffs' permission, authorization, or approval. (*Id.* ¶155-56). Default Defendants' conduct is likely to cause, and has caused, consumers to mistakenly believe that the products sold and promoted by the Default Defendants are endorsed by or affiliated with Plaintiffs and/or dilute the distinctive quality of the Plaintiffs' marks. (*Id.* ¶159). Default Defendants have acted deliberately, willfully, and intentionally with full knowledge and in conscious disregard of Plaintiffs' rights in its Chloé, Alfred Dunhill, Panerai, Montblanc, Cartier, and/or Lange & Sohne Marks. (*Id.* ¶158).

### III.   LEGAL ARGUMENT

#### A.    Standard For Entry Of Default Judgment

Pursuant to FRCP Rule 55(b)(2), a default judgment may be entered by the court. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956). In the Ninth Circuit, a district court may consider the following factors in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the

11

Memorandum in Support of Motion for Default Judgment

1  sum of money at stake in the action; (5) the possibility of a dispute concerning
2  material facts; (6) whether the default was due to excusable neglect, and (7) the
3  strong policy underlying the Federal Rules of Civil Procedure favoring decisions on
4  the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

5      In applying this discretionary standard, the factual allegations contained in
6  the plaintiffs' complaint will be taken as true, except for those relating to the
7  amount of damages. *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir.
8  1977); *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

9      **1.    Possibility of Prejudice to Plaintiff**

10      Plaintiffs will be seriously prejudiced if default judgment is not granted
11  against the Default Defendants.   By selling, distributing, and/or manufacturing
12  counterfeit versions of Plaintiffs' luxury goods, Default Defendants have injured
13  Plaintiffs' businesses and reputation in the luxury goods market.   Specifically,
14  consumers who purchased the counterfeit products sold and/or manufactured by
15  Default Defendants were confused as to their source, believing them to be genuine,
16  and were inevitably disappointed by the inferior quality, design and style of Default
17  Defendants' counterfeit products.   As purveyors of luxury goods, Plaintiffs'
18  reputation is based on the rarity, exceptional quality, and exclusivity of their
19  products. By flooding the market with cheap and poorly made imitations, Default
20  Defendants have seriously damaged Plaintiffs' goodwill and reputation with the
21  consuming public. *Coach Services, Inc. v. YNM, Inc.*, 2011 WL 1752091, at *2
22  (C.D.Cal. 2011) (holding plaintiff would be prejudiced by denial of default
23  judgment where plaintiff needed means to enforce intellectual property rights due to
24  damage to reputation from defendant's trademark infringement).

25      None of the Default Defendants have bothered to respond to this lawsuit, and
26  have in many cases continued to openly sell counterfeit versions of Plaintiffs'
27  goods in a number of ways. *Pearson Educ., Inc. v. Wong*, 2010 WL 476685, at *4
28  (N.D.Cal. 2010) (finding prejudice factor for default judgment where defendant

12

1   would continue to sell counterfeits absent judgment).  Thus Default Defendants
2   continue to cause irreparable harm to Plaintiffs' business and reputation.  If default
3   judgment is not granted, Default Defendants will continue to cause irreparable harm
4   to Plaintiffs, and Plaintiffs will be left with no further recourse. *Landstar Ranger,*
5   *Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d 916, 920 (C.D.Cal. 2010) (holding
6   plaintiff would be prejudiced by denial of default judgment where it would leave
7   plaintiffs without a remedy).  This outcome would be prejudicial to Plaintiffs, and
8   thus this factor favors granting default judgment against the Default Defendants.

9       **2.    Merits of Plaintiffs' Claim and Sufficiency of the Complaint**

10          "The second and third *Eitel* factors assess the substantive merit of plaintiff's
11   claim and the sufficiency of its pleadings." *Landstar Ranger*, 725 F.Supp.2d at 920.
12   These two factors require the Plaintiffs to "state a claim on which the [plaintiff]
13   may recover." *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1175
14   (C.D.Cal. 2002) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)).
15   Here, Plaintiffs have set forth a well pleaded and Verified First Amended
16   Complaint and listed all of the essential facts and elements as to each of its causes
17   of action against the Default Defendants.   Plaintiffs have alleged claims of
18   trademark infringement under 15 U.S.C. § 1114(1) of the Lanham Act and
19   California common law, trademark infringement, false designation of origin, and
20   federal unfair competition under 15 U.S.C. § 1125(a) of the Lanham Act, trademark
21   dilution under 15 U.S.C. § 1125(c) of the Lanham Act and California Dilution
22   Statute, Cal. Bus. & Prof. Code § 14247), counterfeiting under 15 U.S.C. § 1114(1)
23   and 1116(d)(1), and unfair competition under Cal. Bus. & Prof. Code § 17200 *et*
24   *seq.*

25          To prevail on its trademark infringement claim under the Lanham Act,
26   Plaintiffs must prove that, without its consent, Default Defendants used in
27   commerce a reproduction or copy of Plaintiffs' registered trademarks in connection
28   with the sale, offer for sale, or advertising of any goods or services, and that such

13

use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. §1114(a)(1); *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1046 (9th Cir. 1999). Likelihood of confusion is presumed in a case where, as here, the Default Defendants have manufactured, sold or distributed counterfeit goods. *AMF Inc., v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) ("Where a defendant knowingly adopts the plaintiff's mark with the intent to capitalize on plaintiff's reputation the courts may presume that the public will be deceived."), *abrogated in part on other grounds by Mattel Inc., v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003); *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) ("When the alleged infringer knowingly adopts a mark similar to another's, we must presume that the public will be deceived."); *Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D.Cal. 2004) (Feess, J.) (holding counterfeit marks are inherently confusing); *Power Balance LLC v. Power Force LLC*, 2010 WL 5174957, at *4 (C.D.Cal. 2010) ("Where ... one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion.").

To prevail on their trademark counterfeiting claim under 15 U.S.C. § 1114(1)(b), Plaintiffs must prove that Default Defendants "reproduced, counterfeited, copied, or colorably imitated a registered mark and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive." *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1175 (C.D.Cal. 2002); 15 U.S.C. § 1114(1)(b) (1997).

The attached Kayser Declaration and accompanying exhibits, along with the allegations in the Verified First Amended Complaint show that each Default

14

1    Defendant has engaged in trademark infringement and counterfeiting.   As such,

2    Plaintiffs properly allege the necessary elements for a cause of action for trademark

3    infringement and counterfeiting in violation of the Lanham Act.   The Verified First

4    Amended Complaint identifies Plaintiffs' ownership of and exclusive rights to use

5    the incontestable and registered Chloé, Alfred Dunhill, Panerai, Montblanc, Cartier

6    and Lange & Sohne Marks. (Am. Compl. ¶¶ 33-35, 46-48, 60-62, 73-75, 90-92,

7    107-109).   Default Defendants used Plaintiffs' Chloé, Alfred Dunhill, Panerai,

8    Montblanc, Cartier, and/or Lange & Sohne Marks in commerce, in connection with

9    the offering for sale of counterfeit products bearing Plaintiffs' Chloé, Alfred

10   Dunhill, Panerai, Montblanc, Cartier, and/or Lange & Sohne Marks without

11   Plaintiffs' consent. (*Id.* ¶¶20, 122-159).   In addition, Plaintiffs' Verified First

12   Amended Complaint alleges that Default Defendants use of Plaintiffs' Chloé,

13   Alfred Dunhill, Panerai, Montblanc, Cartier, and/or Lange & Sohne Marks is likely

14   to cause confusion or mistake or to deceive consumers and has thereby caused

15   damage to Plaintiffs. (*Id.* ¶¶133, 137, 141, 145, 149, 153, 159). Accordingly, the

16   second and third *Eitel* factors likewise favor entry of default judgment against

17   Default Defendants.

18       **3.    Sum of Money at Stake**

19       With respect to the fourth factor, "the court must consider the amount of

20   money at stake in relation to the seriousness of Defendants' conduct." *Pepsico, Inc.*

21   *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "This requires that

22   the court assess whether the recovery sought is proportional to the harm caused by

23   defendant's conduct." *Landstar Ranger*, 725 F.Supp.2d at 921.   Here, the Default

24   Defendants engaged in large scale unlawful transactions involving the sale,

25   manufacture and distribution of counterfeit products at a wholesale level. (*See*

26   Kayser Decl., Exs. 1-18).   The Default Defendants' counterfeiting encompasses

27   multiple distinct and highly valuable federally registered trademarks and different

28   types of goods.   Their actions have caused damage to Plaintiffs' reputations for

Memorandum in Support of Motion for Default Judgment

high quality goods and have diverted profits away from Plaintiffs, the legitimate owners of the Chloé, Alfred Dunhill, Panerai, Montblanc, Cartier and Lange & Sohne Marks. The Default Defendants have ignored this lawsuit and continue to engage in wholesale counterfeiting. Due to such reprehensible conduct on a massive scale on the part of Default Defendants, Plaintiffs are entitled to injunctive relief and substantial default judgment awards. *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted"). The damages and other relief requested in this Motion are fully consistent with and supported by the allegations in the Verified First Amended Complaint and the further evidence submitted with this Motion. *Coach Services*, 2011 WL 1752091 at *3 (finding this factor satisfied where damages requested were consistent with allegations of counterfeiting and request for statutory damages contained in complaint).

### 4.   Possibility of Dispute Concerning Material Facts

Plaintiffs have satisfied the fifth *Eitel* factor as well, since all well-pleaded facts in the Verified First Amended Complaint are to be taken as true upon entry of default. In this case, Plaintiffs have filed a well-pleaded and Verified Complaint alleging the facts necessary to establish its claims, furnished substantial evidentiary support with this Motion, and this Court has entered default against the Default Defendants. Consequently, there is no dispute regarding the facts alleged in the Verified First Amended Complaint, and thus "the likelihood that any genuine issue may exist is, at best, remote." *See Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (Feess, J.) (holding where complaint was well-pleaded and defendants defaulted, this factor favored entry of default).

### 5.   Whether the Default was Due to Excusable Neglect

Default Defendants were properly served with both the Verified Complaint

16

and the Verified First Amended Complaint.  Default Defendants have had over nine months to respond to the original Verified Complaint served upon them by Plaintiffs, and four months to respond to the Verified First Amended Complaint. However, Default Defendant have failed to file answers or otherwise make appearances in this case.  Such behavior by Default Defendants does not indicate excusable neglect.   Default Defendants' complete lack of response instead evidences a disregard for the laws of the United States and the State of California. *See Landstar Ranger,* 725 F.Supp.2d at 922 (holding this factor favored entry of default where defendants were properly served); *Castworld*, 219 F.R.D. at 500-01 (holding that where plaintiff served multiple notices of lawsuit and significant time had elapsed, but defendants failed to respond, default was from willful disobedience, not excusable neglect).

### 6.   Strong Policy Favoring Decisions on the Merits

Plaintiffs have produced overwhelming evidence both attached to this Motion and as part of their motions for a temporary restraining order that Default Defendants have engaged in massive counterfeiting using Plaintiffs' Marks. Because Default Defendants have failed to respond, Plaintiffs' only means of achieving a decision at all is through a default judgment. Therefore, the seventh *Eitel* factor also favors granting a default judgment in favor of Plaintiffs. *See also PepsiCo, Inc.*, 238 F.Supp.2d at 1177 (holding that where defendant failed to appear, decision on the merits was "impractical, if not impossible" and thus this factor did not preclude default judgment).

### B.   Plaintiffs Are Entitled To Statutory Damages Under 15 USC § 1117(c)

A trademark infringement plaintiff can be awarded statutory or actual damages under Section 1117 of the Lanham Act. *See* 15 U.S.C. §1117(a)-(c). "The purpose of section 1117 is to take all the economic incentives out of trademark infringement." *Polo Fashions v. Dick Bruhn*, 793 F.2d 1132, 1135 (9th Cir. 1986).

17

1    Typically, a plaintiff is entitled to either 1) defendants' profits or 2) plaintiffs' lost

2    profits. *K and N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1082 n.3 (9th Cir. 2007)

3    (holding trademark infringement plaintiffs were typically entitled to defendant's

4    profits or damages sustained by plaintiff, trebled where counterfeit marks were

5    involved).  However, since Default Defendants have not provided any discovery in

6    this case, Plaintiffs lack information sufficient to determine the exact amount of

7    Defendants' profits or the amount of counterfeit goods actually sold by them.  As

8    an alternative form of relief, Plaintiffs asks the Court to award them statutory

9    damages pursuant to 15 U.S.C. §1117(c). *See id.* at 1082 ("Finally, a plaintiff may

10   eschew actual damages under § 1117(a) and elect to seek statutory damages [where

11   case involved use of a counterfeit mark]").   Section 1117(c) of the Lanham Act

12   provides, in pertinent part:

13           (c) In a case involving the use of a counterfeit mark (as
             defined in section 34(d) (15 U.S.C. 1116(d)) in
14           connection with the sale, offering for sale, or distribution
             of goods or services, the plaintiff may elect, at any time
15           before final judgment is rendered by the trial court, to
             recover, instead of actual damages and profits under
16           subsection (a), an award of statutory damages for any
             such use in connection with the sale, offering for sale, or
17           distribution of goods or services in the amount of–

18           (2) if the court finds that the use of the counterfeit mark
             was willful, not more than $2,000,000 per counterfeit
19           mark per type of goods or services sold, offered for sale,
             or distributed, as the court considers just.

20           Thus under the Lanham Act, Default Defendants are liable for up to $2

21   million in statutory damages per mark per type of goods offered for sale or sold.

22   Copies of Default Defendants' listings on TradeKey.com are attached to the

23   February 27, 2012 Declaration of Susan M. Kayser as Exhibits 1-18.  A review of

24   these listings shows that Default Defendants have used counterfeits of Plaintiffs'

25   registered marks in connection with offers to sell the types of goods listed in the

26   registrations, as described in the chart herein at pages 44-48.  The registration for

27   each mark Default Defendants are alleged to have infringed is attached to the

28

                                          18

Memorandum in Support of Motion for Default Judgment

Verified First Amended Complaint. (Am. Compl., Exs. 1-6).

### 1.   As Willful, Large Scale Counterfeiters, Default Defendants Should Pay the Maximum Statutory Damages

The amount of damages that may be awarded depends on the facts of the case. Courts have considered the following factors in determining statutory damages in counterfeiting cases: the profits the defendant reaped from infringement, the difficulty of proving actual damages, the value of plaintiffs trademarks, the defendant's willfulness, the size of defendant's counterfeiting operation, defendant's efforts to mislead the court and the plaintiff, and the deterrent effect on the defendant and others. 2-5 Gilson on Trademarks § 5:19 (2011). Here, Default Defendants should be liable for the maximum amount of statutory damages.

First, evidence suggests that Default Defendants make significant profits through counterfeiting and actual damages are impossible to prove without knowing Default Defendants' sales figures.   Second, Plaintiffs' trademarks are highly valuable.  Third, Default Defendants acted willfully and with full knowledge of but complete disregard for Plaintiffs' and others intellectual property rights. Fourth, Default Defendants manufacture and distribute counterfeit goods on a massive scale. Fifth, Default Defendants have ignored this lawsuit and continue to openly sell counterfeits. Finally, a substantial award and injunctive relief, including the transfer of Default Defendants' domains used to sell counterfeits, will have a deterrent effect on Default Defendants and potential future counterfeiters. *Philip Morris USA, Inc. v. Marlboro Express*, 2005 U.S. Dist. LEXIS 40359, at *21-22 (E.D.N.Y. Aug. 26, 2005) ("Given the evidence of willfulness, demonstrated by defendant Snyder's own admissions, the size of the potential profit, the large quantities of cigarettes involved, and the need for a substantial deterrent to future misconduct by Snyder and other similarly situated counterfeit cigarette traffickers, I find that the maximum statutory award is warranted."); *Philip Morris USA, Inc. v. Sheng Chen Lin*, 2004 U.S. Dist. LEXIS 29904 (C.D. Cal. Oct. 25, 2004) (awarding

Memorandum in Support of Motion for Default Judgment

maximum statutory damages of $4 million against one defendant where defendants' actions were willful); *Lorillard Tobacco Co. v. S&M Central Service Corp.*, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. 2004) (considering the value of the trademarks, the defendants' conduct, and the need to deter future conduct by defendant and other potential counterfeiters in awarding statutory damages); *Silhouette Int'l Schmied AG v. Chakhbazian*, 2004 U.S. Dist. LEXIS 19787, at *6 (S.D.N.Y. 2004) (holding when deciding trademark statutory damages factors to consider were "the deterrent effect on defendants and others, and the defendants' failure to produce records from which more traditional damages could be computed.").

Courts in the Ninth Circuit particularly emphasize the importance of deterrence in statutory damages cases. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (stating "this circuit has announced a deterrence policy in response to trademark infringement."); *Castworld*, 219 F.R.D. at 501 (Feess, J.) (awarding maximum statutory damages to deter future counterfeiting). Since the focus of the statutory damages provision under § 1117(c) is on deterrence, statutory damages do not need to equal the amount of Plaintiffs' actual damages. *Castworld*, 219 F.R.D. at 501.

In *Castworld*, plaintiff sought a statutory damages award against defendant in default who imported counterfeit cigarettes bearing imitations of plaintiff's federally registered trademarks. *Id.* at 497. Despite the fact that defendant had yet to sell or distribute these counterfeit cigarettes to potential customers, the court awarded plaintiff $2,000,000 in statutory damages, for infringement of two of plaintiff's federally registered trademarks, the maximum award at the time. *Id.* at 502. The court reasoned that statutory damages should be awarded to plaintiff under the Lanham Act in order to deter defendant and similarly situated counterfeiters from future trademark infringement and to compensate plaintiff for the damages caused by defendant's counterfeiting activities. *Id.* at 501.

Consistent with the ruling in *Castworld*, Plaintiffs seek to discourage Default

20

Memorandum in Support of Motion for Default Judgment

1   Defendants and those similarly situated from selling, offering for sale, or
2   distributing products bearing counterfeit reproductions of Plaintiffs' famous Marks
3   on a massive scale.  If the Default Defendants -- the majority of whom have
4   infringed multiple marks, continue to blatantly sell counterfeits after being put on
5   notice, and have failed to appear -- were not required to pay statutory damages,
6   their counterfeiting activities would likely continue and expand, causing further
7   damage to both Plaintiffs and the consuming public.

8        Each of the Default Defendants meet the criteria for an award of maximum
9   statutory damages as set forth below.  Specifically:

10       **Cctrue International Trade Co.**

11       Default Defendant Cctrue International Trade Co. ("Cctrue") is a Chinese
12   company that offered to sell through products offers on TradeKey.com counterfeit
13   Chloé branded handbags, Panerai branded watches, A. Lange & Sohne branded
14   watches, Cartier pocketbooks and Alfred Dunhill branded pens, wallets, scarves,
15   and belts. *See* Kayser Decl., Exhibit 1, p. 22-29.[1]  Cctrue was a 3rd year GoldKey
16   member of TradeKey.com, which meant it paid several thousand dollars yearly for
17   membership and to list its offers on TradeKey.com, an indication that its trade in
18   counterfeit branded goods was profitable. (*Id.* at 22; Am. Compl. ¶ 163).  Cctrue
19   listed Chloé, along with other luxury brands in the titles of its listings, and
20   highlighted Plaintiffs Cartier, Montblanc and Dunhill in the titles of its listings as
21   well. (Kayser Decl., Ex. 1 at 22, 25, 28).

22       Cctrue claimed it could provide a customer with any one of a hundred
23   different high-end brands and that there is "No limit for quantity" for any brand,
24   including Plaintiffs' brands. (*Id.* at 22-23).  Cctrue in fact required a minimum
25   order of 10 for its counterfeit versions of Plaintiffs' brands, indicating that its sell

26

27   _____

    [1] All citations to evidence for each Default Defendant are to the exhibit
28   number and page number of the exhibits attached to the Kayser Declaration.

Memorandum in Support of Motion for Default Judgment

offers were targeting large scale distributors, not individual consumers. (*Id.* at 23). Cctrue described its goods as having "1:1" quality as the genuine versions of Plaintiffs' goods. (*Id.* at 28). Cctrue claimed: "All of our products are high quality and lower price." (*Id.*). Cctrue claimed: "We are an international company, integrating sales, processing and outsourcing. Products we sell are all famous, in-style and fashionable in USA, Europe, Canada, Japan and Korea." (*Id.*). Cctrue, as is typical of large scale counterfeiters, did not limit itself to any one brand or type of goods, and in fact offered "retail and wholesale many great quality . . . [of our over forty different types of products]." (*Id.*).

Cctrue's listings on TradeKey.com specifically included the name of its website, www.cctrue.com, and directed customers to go to that website, which contains pictures of huge numbers of goods bearing Plaintiffs' marks, further confirming the massive scale of CCtrue's counterfeiting enterprise. (*Id.* at 25). These listings on Cctrue's website included "Mont Blanc 1:1 Quality Pens", (*id.* at 44), "Dunhill Belts, the Min. Order is 10 pcs", (*id.* at 40), "Chloe High Quality Handbags", (*id.* at 38), and "Chloe Normal Quality Handbags", (*id.*), and "Cartier" watches (*id.* at 33-37), where "High-quality boxes must be purchased separately. The watch price includes normal quality watch boxes." (*Id.* at 33). This website was still operational as of February 27, 2012. (Kayser Decl. ¶14).

**Fancysaler Trading Co.**

Default Defendant Fancysaler Trading Co. ("Fancysaler") was a Chinese company that manufactured and offered to sell counterfeit Dunhill, Montblanc and Cartier pens and counterfeit Chloé wallets and purses on TradeKey.com. (Kayser Dec., Ex. 2). Fancysaler was a 4th year GoldKey member of TradeKey.com, which means it paid several thousand dollars yearly for membership and to list its sell offers on TradeKey.com, an indication that its trade in counterfeit branded goods was profitable. (*Id.* at 50). Fancysaler claimed "[w]e(www fancysaler com) specialize in manufacture & sell A & A++ quality global Name Brand pen such as:

22

1   Cartier, Dunhill, Dupont, Louis Vuitton and Mont Blanc etc.", (*id.*), boldly listing

2   counterfeits of three of Plaintiffs' brands.

3       In addition to Chloé purses and wallets, Fancysaler also manufactured and

4   sold "Balenciaga, Bally, Bottega Veneta, Burberry, BVLGAR, Cartier, Chanel,

5   Chloé, Christian Dior, Coach, D&G, DKNY, Ed hardy, Fendi, Ferragamo, Goyard,

6   Gucci, Hermes, JIMMY CHOO, Juicy, Kooba, Lacoste, Lancel, Loewe, Louis

7   Vuitton, Marc Jacobs, Marni, MiuMiu, Mulberry, Prada, Paul Smith, Thomaswylde,

8   Versace, Valentino, Tous, Yves Saint Laurent(YSL) etc." (*Id.* at 52).  Fancysaler

9   offered varying prices based on the quality of the reproduction, claiming: "For A

10  quality pen, only USD 12/pc, For A+++++ quality pen, only USD 22/pc". (*Id.* at

11  50).  Fancysaler offers both drop shipping and wholesale of its counterfeit goods

12  and offers samples so that distributors can view the counterfeit branded products

13  before ordering a large quantity. (*Id.*)  Fancysaler further offered: "Better price for

14  large quantity!", another indicia that Fancysaler offered and manufactured

15  counterfeit versions of Plaintiffs' goods on a massive scale. (*Id.* at 52).

16      Fancysaler's TradeKey.com listings specifically included the name of its

17  website and directed customers to Fancysaler's website, www.fancysaler.com,

18  which offers a huge variety of counterfeit branded goods, including Plaintiffs'

19  goods, and which allows for online ordering and live-chat options. (*Id.*)   The

20  Fancysaler website openly offers counterfeit products through its offers for

21  Montblanc pens of "A+++++ quality" or just "A+" quality. (*Id.* at 61, 63).  On its

22  website, Fancysaler states that it "sells mirror replica items inspired by the original

23  branded designer, they are made of the same materials as original. We manufacture

24  each item with special attention, because our QA/QC team make sure only the best

25  quality mirror replicas are shipped to clients. Each clothing we sell comes with

26  original tag, plastic bag; each shoes come with cards & original shoes box; each

27  handbag comes with dust bag, cards, serial numbers, care booklet, brand name

28  envelopes & hangtag etc." (*Id.* at 65).   The Fancysaler website encourages

23

1   customers to go to Fancysaler's other website www.sweetywoman.com, which also

2   sells replica Chloe bags, and uses the TradeKey.com logo. (*Id.*; *id.* at 66-69).   The

3   Fancysaler.com and Sweetywoman.com websites were both still up and operational

4   as of February 27, 2012. (Kayser Decl. ¶17).

5   **Fuzhou Sunshine Trade Co., Ltd.**

6          Default Defendant Fuzhou Sunshine Trade Co., Ltd. ("Fuzhou") through its

7   listings on TradeKey.com listed and sold a counterfeit Montblanc watch, a

8   counterfeit Alfred Dunhill belt, a counterfeit Panerai watch, and a counterfeit Chloé

9   handbag to Plaintiffs' investigators. (Third Declaration of  Rob Holmes (Dkt. No.

10  23 ) ¶¶ 33,36, Exs. 82, 85; Kayser Decl., Ex. 3).   Fuzhou shipped these products

11  from China. (Kayser Decl., Ex. 3 at 73, 96).   Plaintiffs' investigator approached

12  Fuzhou for the purpose of engaging in the wholesale trade of replicas of Plaintiffs'

13  products. (*Id.* at 104).   Fuzhou sold Plaintiffs' investigator samples of its products

14  at prices that are only a fraction of the cost of a genuine Panerai or Montblanc

15  watch or Chloé handbag. (*Id.* at 71, 100). Fuzhou encouraged Plaintiffs'

16  investigator to continue buying more counterfeit products in the future and

17  anticipated a long business relationship, indicating the Fuzhou is a wholesale

18  supplier of counterfeits of Plaintiffs' goods. (*Id.* at 107-108).   Fuzhou's products

19  were of significantly inferior quality compared to genuine Montblanc, Dunhill,

20  Chloé and Panerai branded goods, but featured identical copies of Plaintiffs' marks

21  and came with replicas of Plaintiffs' tags and boxes, indicating a clear intent to

22  deceive consumers. (Decl. of Catherine Lebrun (Dkt. No. 19) ¶¶ 18-19; Declaration

23  of Max Summerskill (Dkt. No. 14) ¶¶ 11-12; Declaration of Alessandro Ficarelli

24  (Dkt. No. 15) ¶¶ 10-11; Decl. of Sandra Milde-Rumke (Dkt. No. 11) ¶¶ 8-9).

25  **Hengtai International Trade Co., Ltd.**

26         Default Defendant Hengtai International Trade Co., Ltd. ("Hengtai") is a

27  Chinese wholesaler which through its sell offers on TradeKey.com offered to sell

28  "replica" counterfeit Panerai watches, Montblanc watches, Cartier watches, and

24

Chloé handbags.  Kayser Dec., Ex. 4.  Hengtai was a member of TradeKey.com since 2006, indicating that it was a well-established supplier of counterfeit branded products. (*Id.* at 118).  Hengtai was a 3rd year GoldKey member of TradeKey.com, which means it paid several thousand dollars yearly for membership and to list its sell offers on TradeKey.com, an indication that its trade in counterfeit branded goods was profitable. (*Id.*).

In Hengtai's sell offers on TradeKey.com it openly claimed to sell "replicas" or counterfeits, and stated: "There are More than 6800 hot styles of replicas watchs [sic] at favourable [sic] prices in our website, such as Rolex, Omega, Breitling, Cartier, Gucci, IWC, Bvlgari, Panerai, Louis Vuitton, Audemars Piaguet, Patek Philippe, U-boat, Hublot, Graham, Hermes, longines, TAG Heuer, Chopard, Montblanc, Movado, Franck Muller, Ferrari, Porsche, Benz, Audi, Rado. watches.AAA quality, Best price, best service". (*Id.*).  Hengtai also stated "we can offer high quality replicas worldwide well-kown [sic] watches, such as Rolex, Omega, Breitling, Cartier, Gucci, Chanel, IWC, Bvlgari, Panerai, Louis Vuitton, Audemars Piaguet, Patek Philippe, TAG Heuer, Hermes, Vacheron Constantin, CD, Chopard, Franck Muller, Emporio Armani,Jacob&Co, Movado, Piaget, Tissot, Zenith, Montblanc, watch, watches." (*Id.* at 120).  Hengtai also listed in the titles of its listings that it offered "AAA replica hangbags [sic], designer handbags, fashion handbags." (*Id.* at 126).

Hengtai made it clear that it was not a one-off seller, stating in one of its TradeKey.com listings, "We are looking forward to building sincere and long-term business relationships with you." (*Id.* at 124).  The scope of the counterfeiting by Hengtai was immense; as Hengtai explained in one of its TradeKey.com listings: "Panerai watches: There are More than 10000 hot styles of replicas watches at competitive prices in our website." (*Id.*)  Hengtai's listings included offers to provide replicas of many different brands and types of goods, including purses, pens, watches, hats, shoes, jeans, and clothing. (*Id.* at 126).  Hengtai's

Memorandum in Support of Motion for Default Judgment

1   TradeKey.com listings specifically included the name of its website,
2   www.watches138.com, and directed customers to go to www.watches138.com. (*Id.*
3   at 122).   At the Watches138.com site, Hengtai advertises and offers for sale
4   "replica" Montblanc and Cartier pens and "AAA replica" Montblanc, Panerai and
5   Cartier watches, and requires a minimum order of 100 pieces to qualify for a
6   wholesale discount. (*Id.* at 128, 132, 134-45).   The Watches138.com website was
7   still up and operational as of February 27, 2012. (Kayser Decl. ¶21).

8   **Kk Fashion Love Zone**

9       Default Defendant Kk Fashion Love Zone ("Kk Fashion") offered to sell
10   through product offers on TradeKey.com unlimited quantities of counterfeit Chloé
11   branded handbags, wallets and luggage. (Kayser Decl., Ex. 5).   Kk Fashion signaled
12   that its goods were counterfeit by listing them as "AAA Chloé Handbag" or
13   claiming that its wallets are "AAA quality, real leather, provide original
14   accessories." (*Id.* at 161).   Kk Fashion dealt in large quantities and pointed out in its
15   listing that customers could get free shipping for ordering 20 pieces or more. (*Id.*).
16   Kk Fashion encouraged bulk purchases, stating "Service:buy more, discount is
17   more!" (*Id.* at 155).   Kk Fashion explained that its item are "Super high quality,
18   beautiful designs, reasonable price." (*Id.* at 149).

19       In addition to offering Chloé branded products, Kk Fashion also offered a
20   wide variety of other luxury brands, including "LV, Coach, Juicy, Fendi, Gucci,
21   Dior, Chanel, Chloé, Prada, Burberry, D&G, Versace, MiuMiu, Hermes, Lacoste
22   and many many more brands". (*Id.* at 152).   Kk Fashion sold its counterfeit Chloé
23   bags for as much as $120 each[2], enabling it to make significant profits per
24   transaction. (*Id.* at 149).   Kk Fashion also supplied distributors with the tools to
25   deceive end consumers who Kk Fashion's bulk/distributor customers will
26
27   _____
    [2] This price is further indicia of counterfeit as it is approximately less than
28   10% of the cost of a genuine Chloé bag.

26

ultimately sell to, offering to also provide "dustproof bag, card, tags, original accessories." (*Id.*).   Kk Fashion also attempted to guide distributors seeking counterfeits to its listings by including "Replica Wallet" in the "Related Products" category in its listings. (*Id.* at 161).

### Love In Apparel Trade Co. Ltd.

Default Defendant Love In Apparel Trade Co. Ltd. ("Love In") through sell offers on TradeKey.com offered to sell wholesale quantities of what it advertises as "AAA" quality counterfeit Panerai branded watches and Chloé handbags. (Kayser Decl., Ex. 6).   Love In was a 2nd year GoldKey member, which means it paid several thousand dollars yearly for membership and to list its sell offers on TradeKey.com, an indication that its trade in counterfeit branded goods was profitable. (*Id.* at 164).  Love In was profitable enough to be able to pay over fifty employees, and described itself as: "a professional exporting company in china, We also deal in famous brand Apparel, Bag, Leather belt and watch, etc.". (*Id.*)  Love In trafficked in large quantities of counterfeit goods – it stated in its TradeKey.com listings "Larger quantity, more discount." (*Id.*).  Love In had almost 300 sell offers on TradeKey.com. (*Id.*).

Love In acted willfully and with full knowledge that the goods it sells were counterfeit.  It advertised that its products were "of AAA grade high quality with competitive prices". (*Id.* at 166).  Love In also attempted to deceive consumers, by providing deceptive packaging, stating that for its counterfeit products "the tags and style code number is 100% correct." (*Id.* at 164).  Love In also explained that it "wholesales brands" and has a "[l]ong strong relationship with more than 100 professional manufacturers, get good assortment from them. So we can supply these kinds of products in very good price as well." (*Id.*).

### Melchic International Trade Co.

Default Defendant Melchic International Trade Co. Ltd. ("Melchic") manufactured in China and offered to sell internationally counterfeit Dunhill

27

branded pens, scarves, wallets, belts and jackets and counterfeit Chloé branded handbags through sell offers on TradeKey.com. (Kayser Decl., Ex. 7). Melchic was a large scale manufacturer of counterfeit Dunhill and Chloé branded goods, stating: "All the pictures are taken from the actual products which are made by our factory." (*Id.* at 169). Melchic did not claim its branded goods were genuine items – Melchic acknowledged in its TradeKey.com listings: "[a]ll of our products are made in China with high quality and low prices." (*Id.*).   In Melchic's listings on TradeKey.com it offered to sell Dunhill pens, scarves, wallets, belts, and suits (*id.*), and promised "We provide various brands of Clothes, Jeans, DVD movies, headphone Games, T-shirts, Ourterwear, USB razor blades Bluetooth Accessories Jewelry Shirts Bags Lighters Demin Jacket Wallets Suits Bikini Polo handbags Shoes Boots Hats Sweaters Belts Ties Scarves Shorts Bedding sets winter clothes keychain Slippers men women Underwear water proof jacket, Sunglasses Watches Gloves Socks Pens Umbrella Car Electronics!!!" (*Id.*).

Melchic was a large scale trafficker in counterfeit goods.   It required a minimum order of 10 items, and offered lower prices for larger quantities. (*Id.*). Melchic presented itself as a well-financed and sophisticated operation – it stated "We go pace with worldwide brands with sufficient resources and rapid styles updating." (*Id.*).   In fact, Melchic claimed that it was "one of the biggest trading companies in China in this market," (*id.* at 171), and that Melchic "[has] been supplying [its] products to United States, Canada, Europe, etc. market and other foreign countries for a number of years." (*Id.*).

Melchic's TradeKey.com listings specifically included the name of its website, www.melchic.com, and directed customers to Melchic's website, www.melchic.com, stating "Please come to our web to see 217 brands and 50,000 style products now!!!!" and promising that the listings on TradeKey.com constitute "only the tip of iceberg of our products." (*Id.* at 169). The Melchic.com website offers a huge variety of counterfeit branded goods, including Plaintiffs' goods, and

28

1    allows for online ordering. (*Id.* at 174).  The Melchic.com website openly offers
2    counterfeit products, describing its Montblanc pens as "Mont Blanc 1:1 Quality
3    Pens," (*id.* at 180-84), and offering its "Chloé" handbags in both "high quality" and
4    "normal quality." (*Id.* at 176, 178).  The Melchic.com website was still up and
5    operational as of February 27, 2012. (Kayser Decl. ¶28).

6         **Mystockwatch Co. Ltd.**

7         Default Defendant Mystockwatch Co. Ltd. ("Mystockwatch") offered to sell
8    and manufacture counterfeit Panerai, Cartier and Montblanc branded watches
9    through product listings on TradeKey.com. (Kayser Decl., Ex. 8).  Mystockwatch
10   described itself as "the professional watch factory in Guangzhou of China,
11   supplying all brands of wrist watch, such as Vacheron Constantin watch, Longines
12   watch, Hublot, Chanel, Cartier, Tag heuer and so on more than 25 brands." (*Id.* at
13   194).  Mystockwatch was a manufacturer of large quantities of counterfeits, stating
14   "We are looking for the Distributor & reseller from all over the world." (*Id.*).
15   Mystockwatch was a large capacity supplier with an international reach, claiming it
16   could "Stably supply all kinds of watch," (*id.*) and offering "FREE WORLDWIDE
17   DELIVERY! Dropship Brand Watches WORLDWIDE." (*Id.* at 197).

18        Mystockwatch's listings evidenced willful counterfeiting and an intent to
19   deceive.   Mystockwatch titled its listings on TradeKey.com as "WHOLESALE
20   SWISS WATCHES: Rolex, Omega, Breitling, Panerai, Cartier, TA," (*id.* at 194),
21   and claimed that its watches had "Tianjin movement". (*Id.* at 191).  Mystockwatch
22   furnished distributors with the means to deceive consumers – its watches came with
23   a "Leather box, come with orginal [sic], cards, tags, booklets." (*Id.*).  Mystockwatch
24   listed "replica watch" in "Related Products" so that businesses searching
25   TradeKey.com for replicas would find the Mystockwatch listings. (*Id.* at 198).

26        **Seven Star Replicass**

27        Default Defendant Seven Star Replicass ("Seven Star") offered to sell
28   counterfeit Chloé branded handbags in various styles through offers on

29

Memorandum in Support of Motion for Default Judgment

1   TradeKey.com. (Kayser Dec., Ex. 9).  Seven Star held itself out as a seller who
2   routinely dealt in replica Chloé branded handbags. (*Id.* at 201).   Seven Star
3   blatantly advertised that it was a dealer of counterfeit products, titling its listing
4   "Replica Chloé Paddington Bag, Replica Hermes Birkin Bags, Replica Bags". (*Id.*).
5   Seven Star also claimed "We deal the best replica bags you can find in the world at
6   the best and unbeatable prices." (*Id.*).  Seven Star charged $99.99 for a sample of its
7   replica Chloé bags and had been selling its products on TradeKey.com since
8   October 2006, enabling it to realize substantial profits in the wholesale replica
9   handbag industry. (*Id.*).

10          **Shanghai Taolan International Trade Limited Company**

11          Default Defendant Shanghai Taolan International Trade Limited Company
12   ("Shanghai Taolan") offered to sell counterfeit Chloé branded handbags in various
13   styles through offers on TradeKey.com. (Kayser Decl., Ex. 10).  Shanghai Taolan
14   was a Chinese company and a 5th year GoldKey member, which means it paid
15   several thousand dollars yearly for membership and to list its sell offers on
16   TradeKey.com, an indication that its trade in counterfeit branded goods was
17   profitable. (*Id.* at 204).   Shanghai Taolan had 296 Sell Offers posted on
18   TradeKey.com. (*Id.*).

19          On TradeKey.com, Shanghai Taolan offered for sale "Chloé handbag" and
20   "Chloé wallet" in bulk, only offering to ship its products for a minimum order of 12
21   counterfeit Chloé items. (*Id.*).  Shanghai Taolan claimed it offers "Top, quality,
22   good price" Chloé handbags and wallets. (*Id.*).  Shanghai Taolan supplied its
23   counterfeit Chloé handbags to distributors with the intent to deceive consumers as it
24   also supplied "Oringinal [sic] box or package." (*Id.*).

25          In its listing on TradeKey.com, Shanghai Taolan specifically included the
26   name of its website, www.fumingapparel.com, and directed customers to its
27   website at www.fumingapparel.com.  (*Id.*).   At the FumingApparel website,
28   Shanghai sells massive quantities of counterfeit branded goods, including

30

1  counterfeit Chloé handbags, Montblanc watches, and Cartier watches. (*Id.* at 206-

2  15).  Shanghai Taolan also identifies itself as a 5th year GoldKey member on its

3  website. (*Id.* at 206).  At its website, Shanghai Taolan acknowledges that all of its

4  branded goods are counterfeits, stating under its F.A.Q. section: "Q2: Are your

5  items Authentic? A:  All products sold are replicas. But we guarantee that theyre

6  very good quality and come with tags such as cards, booklets etc." (*Id.* at 208).  The

7  Fuming Apparel website was still up and operational as of February 27, 2012.

8  (Kayser Decl. ¶34).

9  **Sinoestar Co., Ltd.**

10  Default Defendant Sinoestar Co., Ltd ("Sinoestar") offered to sell

11  "wholesale" counterfeit Cartier, Panerai and Montblanc watches and counterfeit

12  Alfred Dunhill belts through sell offers on TradeKey.com.  (Kayser Decl., Ex. 11).

13  Sinoestar was a Chinese company and a 4th year GoldKey member, which means it

14  paid several thousand dollars yearly for membership and to list its sell offers on

15  TradeKey.com, an indication that its trade in counterfeit branded goods was

16  profitable. (*Id.* at 217). Sinoestar had 357 Sell Offers posted on TradeKey.com.

17  (*Id.*).

18  Sinoestar stated that "we wholesale fashion accessories & stuff like watches

19  from famous brands like cartier, rolex, jacob & CO, breitling, BMW, Omega,

20  cartier, panerai, mont blanc, porsche, patek philippe, bapex, guess, bvlgari,

21  vacheron, iwc, tissot, CK, audemars, piguet, rado, vacheron constantin, etc." (*Id.*).

22  In addition to watches, Sinoestar offered to wholesale "hats, caps, belts, lighters,

23  sunglasses, silk scarf, waistband, shades, ipod, mp3, mp4, jewelry, necklace,

24  keychain, ***** Dupont, dunhill, new era, ny, dsquared, tiffany, golf hats, bracelet,

25  new york, von dutch, micky, baseball cap, knitted hat, etc." (*Id.* at 219).  Sinoestar

26  also claimed "Our amazing products cover name branded footwear, caps, garments,

27  bags, watches, sunglasses, belts and all kinds of fashion accessories." (*Id.*).  The

28  wide variety of brands and types of products offered indicate that Sinoestar was a

31

large scale professional counterfeiter. Sinoestar also targeted a worldwide market, claiming "We are interested and willing to cooperate with all the friends and customers through out the whole world on the basis of mutual benefit and trust." (*Id.*).

By identifying itself as a Chinese "wholesaler" of Cartier, Panerai, Dunhill and Montblanc branded goods, Sinoestar acknowledged that it was a willful counterfeiter, as the only way for a supplier to provide unlimited quantities of these items (and multiple other famous brands) is to counterfeit them. (*Id.* at 217). Sinoestar's offer that it would provide "samples" is another acknowledgement that it did not supply genuine goods. (*Id.*).

### V52 International Trade Co., Ltd.

Default Defendant V52 International Trade Co., Ltd. ("V52") offered to sell counterfeit Panerai, Montblanc, and Cartier branded watches and counterfeit Chloé handbags through sell offers on TradeKey.com. (Kayser Decl., Ex. 12). V52 was a Chinese company and a 3rd year GoldKey member, which means it paid several thousand dollars yearly for membership and to list its sell offers on TradeKey.com, an indication that its trade in counterfeit branded goods was profitable. (*Id.* at 222). V52 had 182 Sell Offers posted on TradeKey.com. (*Id.*).

V52 claimed to "Wholesale all brands name watches" and offers the "wholesale price, factory price $35-$58". (*Id.*). V52 sold in large quantities, inviting "Bulk order". (*Id.*). V52 offered a large number of luxury brands, including Plaintiffs' brands, such as "ALange&Sohne, Armani, Audemats Piguet, Bapex, Baume&Mercier, Bell Ross, Blancpain, Breguet, Breitling, BRM, Burberry, Bvlgari, Cartier, Chanel, Chopard, Concord, Corum, D&G, Dewitt, Ebel, Ferrabi, Franck Muller, Girard Perregaux, Glashutte, Graham, GUCCI, GUESS, Hamilton, Hermes, Hublot, IWC, Jaegerle Coulter, Longines, LV, Montblanc, Movado , Omega, Oris, Paket Philippe, Panerai, Parmigiani Fleurier, Piaget, Rolex." (*Id.*). In addition to watches, V52 also offers to "Sell name brand handbags", stating "We

32

1   can supply hot stylish products such as Coach, Fendi, LV, Burberry, GUCCI,
2   PRADA, CHANEL, Chloé, Balenciaga, Dior, Hermes, Kooba, Juicy couture, Nike,
3   Adidas, Red Monkey, Lrg, Evisu and so on. All the products are in good quality
4   with competitive price. Our promise: Top quality, fast delivery and excellent
5   service." (*Id.* at 224).

6        In its listings on TradeKey.com, V52 specifically included the name of its
7   website, www.v52trade.com, and referred customers to its website at
8   www.v52trade.com. (*Id.*).   At the V52Trade.com website, V52 sells massive
9   quantities of counterfeit branded goods, including counterfeit Chloé handbags, (*id.*
10  at 239), "A Quality" and "AAA Quality" Montblanc belts, (*id.* at 246, 250), "AAA
11  Quality" Dunhill belts (*id.* at 242), and Cartier jewelry, (*id.* at 235).   V52 also
12  identifies itself as a GoldKey member on its website. (*Id.* at 226).      On
13  V52Trade.com, V52 lists its branded goods as AAA or AAAA quality. (*Id.* at 236).
14  At its website, V52 acknowledges that all of its products may be stopped at customs
15  (presumably because they are counterfeits). (*Id.* at 232).   The V52Trade.com
16  website was still up and operational as of February 27, 2012. (Kayser Decl. ¶39).

17       **Win-Win Trade Co., Ltd.**

18       Default Defendant Win-Win Trade Co., Ltd. ("Win-Win") offered for sale a
19  counterfeit Panerai watch through a listing on TradeKey.com. (Kayser Decl., Ex.
20  13).  Plaintiffs' investigator purchased a counterfeit Panerai watch from Win-Win
21  Trade Co., Ltd. through its TradeKey.com listings. (*Id.*; Third Declaration of Rob
22  Holmes (Dkt. No. 23) ¶32, Ex. 81; Declaration of Alessandro Ficarelli (Dkt. No. 15)
23  ¶¶6-7).  Win-Win was a Chinese company that described itself as a "professional
24  manufacturer specialize[ing] in watches." (*Id.* at 275).   Win-Win manufactured
25  counterfeits of branded watches, claiming "We supply many kinds of watches such
26  as Rolex, Omega, Breitling, Panerai, Cartier, TAG Heuer and more than 30
27  brands." (*Id.*).   Win-Win sold and manufactured counterfeit watches in bulk,
28  incentivizing large purchases by stating: "Customers who buy more than 8pcs of

33

watches in our company, the delivery cost will be FREE!" (*Id.*).

Win-Win willfully sold counterfeit branded goods.  The title of one of its TradeKey.com sell offers was "Sell Replicas watches! Panerai, Rolex, Omega, TAG, Breitling." (*Id.*).  In the Related Products category for its listing, Win-Win listed "Replica Watches." (*Id.* at 276).   In correspondence with Plaintiffs' investigator, Win-Win described the counterfeit Panerai watch it planned to send as "very nice quality, same weight and same functions as original." (*Id.* at 267).

In its listings on TradeKey.com, Win-Win specifically included the name of its website, www.51winwintrade.com, and referred customers to its website at www.51winwintrade.com. (*Id.* at 276).  At the 51winwintrade.com website, Win-Win sells massive quantities of counterfeit branded goods, including counterfeit Panerai, Cartier and Montblanc "replica watches". (*Id.* at 277-283).  In the "About Us" section of the website, Win-Win states: "Replica watches is our Strength. We have factory to assemble all kinds of brand name replica watches." (*Id.* at 279).  Win-Win in fact encourages consumers to buy counterfeit watches instead of genuine ones, stating on its website:

> [O]nly limited amount of people could afford the original Cartier or Breitling watches.  There is a way to show your unique style and to catch the attention of friends and colleagues - replica fake watches. Replica watches have become even more popular then their original prototypes because of low price in combination with perfect clones appearance of watches . . . Quality replica watches copy watch of any popular brend: from Rolex to Corum. . . . **What does the term "replica watch" really mean? Of course, everyone understand that the deal is about fake watches. But one should not think that fake watch is some inferior commodity.** For example, what is the difference between original swiss watches and swiss replica watches? **High quality replica watches copy the design and functions of any popular Swiss brend brilliantly, so the difference is just in the place of constructing the goods.** Why should not one economize for such a difference?

(*Id.* at 278) (emphasis added).  The 51winwintrade.com website was still up and operational as of February 27, 2012. (Kayser Decl. ¶42).

34

## Www.Ecwatch.Net

Default Defendant Www.Ecwatch.Net ("Ecwatch") through offers on TradeKey.com offered to sell counterfeit Panerai, Cartier, Dunhill and Montblanc branded watches and counterfeit Montblanc branded pens. (Kayser Decl., Ex. 14). Ecwatch was a Chinese manufacturer and exporter and had been a TradeKey.com member since 2007. (*Id.* at 285). Ecwatch sold to distributors worldwide, stating "We have a big market at Europe and American [sic]." (*Id.* at 289).

Ecwatch repeatedly used Plaintiffs' marks in the titles of its listings, offering to "supply Rolex, Omega, Cartier, Breitling, TAG Heuer, Panerai" and "Rolex, Omega, Bvlgari, Cartier, Tag Heuer, watch box, Pen" (*Id.* at 285, 287). Ecwatch acknowledged that it sold counterfeits, offering to sell "all kinds of replicate brand watches such as Rolex, Omega, Bvlgari, Cartier, TAG Heuer, Panerai." (*Id.* at 285). Ecwatch was a large scale operation, engaging in the manufacture and export of "more than 45-brand watch." (*Id.*). According to Ecwatch, "Our company deal with series styles of watches (rolex, ck, cartier, breitling, patek, phillipe, corum, gucci, louis vuitton, iwc, dunhill, bvlgari, tag-heuer, zenith, montblanc, rado, versace, longines, Panerai luminor etc)." (*Id.* at 289).

In its listings on TradeKey.com, Ecwatch specifically included the name of its website, www.ecwatch.net, and referred customers to its website at www.ecwatch.net. (*Id.*). The www.ecwatch.net domain automatically redirects to the domain www.goecwatch.net, where a website titled Ecwatch.net is located. (*Id.* at 297). The Ecwatch website is interactive and extensive, offering live online help to prospective purchasers. (*Id.* at 297). At the Ecwatch.net website, Ecwatch sells massive quantities of counterfeit branded luxury watches and pens, including counterfeit Montblanc, Dunhill, and Cartier "replica" watches and Montblanc "replica" pens. (*Id.* at 298-299, 300-301, 302-306, 307-308). Ecwatch reveals on its website that it is fully aware that counterfeiting is illegal, attempting to disclaim responsibility by stating

35

1     **All products showed here are replicas NOT being represented as the original one.** They can be used for

2     entertainment, education or novelty purpose only. **Although the details looks like the original one, they**

3     **have no relationship** and this does not mean to damage the brands mentioned in any way. To buy original one

4     from an official dealer was strongly recommended. By visiting from this website, you declare to have read and

5     agree with all the above items in detail.

6     (*Id.* at 308) (emphasis added).  The Ecwatch.net/goecwatch.net website was still up

7     and operating as of February 23, 2012. (Kayser Decl., ¶45).  Ecwatch also appears

8     to continue to list watches for sale on TradeKey.com as "Ecwatch-Online", a

9     company that in its TradeKey.com listings names www.ecwatch.net, and directs

10    customers to that website, and offers to sell "more than 5,000 watch model" and

11    includes the terms "replica watch" as a "Related Product" and "Related Keyword."

12    (*Id.*, Ex. 14, at 309-310).

13          **Euromed International Trading Co., Limited**

14        Default Defendant Euromed International Trading Co., Limited ("Euromed")

15    offered to sell counterfeit Lange branded watches in massive quantities through a

16    sell offer on TradeKey.com. (Kayser Dec., Ex. 15).  Euromed was a Chinese

17    company and a GoldKey member, which means it paid several thousand dollars

18    yearly for membership and to list its sell offers on TradeKey.com, an indication that

19    its trade in counterfeit branded goods was profitable. (*Id.* at 312).  Euromed had 268

20    Sell Offers on TradeKey.com. (*Id.*).

21        Through its membership in TradeKey.com, Euromed was in the business of

22    selling wholesale counterfeit Lange branded watches. (*Id.*).  It advertised in the title

23    of its TradeKey.com listing "A.lange Sohne Watches Designer Watches Wholesale

24    and Retail Watches". (*Id.*).  Euromed was a bulk supplier of counterfeits with a

25    tremendous capacity – it advertised that it had a supplying ability of 100,000

26    watches (*id.*), enabling it to reap huge profits.

27        As of February 23, 2012, Euromed continues to sell "brand watches" through

28    sell offers on TradeKey.com. (*Id.* at 314). In its listings on TradeKey.com,

Euromed specifically includes the name of its website, www.hrywide.com, and refers customers to its website at www.hrywide.com. (*Id.* at 314-315). The www.hrywide.com website is interactive and extensive, and openly sells "replica" goods. (*Id.* at 316). At the Hrywide website, Euromed describes itself as a "professional manufacturer & wholesaler on brand designer products," (*id.* at 317), and openly acknowledges that "We offer the best top quality replica products, especially AAA handbags, AAA wallets, 1:1 quality sunglasses, 1:1 shoes, . . . handbags come with authentic accessories, card, label, dust cover and booklets, everything exactly same as the originals" (*id.* at 318). At present, on its website Euromed sells massive quantities of counterfeit branded luxury items, including "replica" Chloé handbags (*id.* at 319), "replica" Cartier handbags (*id.* at 320), and "replica" Lange watches (*id.* at 321).

### Win International Trade

Default Defendant Win International Trade ("Win") offered to sell and manufactured counterfeit Lange branded watches and counterfeit Chloé apparel through product and sell offers on TradeKey.com. (Kayser Dec., Ex. 16). Win is a Chinese company and a 2nd year GoldKey member (*id.* at 323), which means it pays several thousand dollars yearly for membership and to list its sell offers on TradeKey.com, an indication that its trade in counterfeit branded goods is profitable. Win previously had 260 Sell Offers on TradeKey.com. (*Id.*). Win has been in the counterfeit branded goods business for years, stating it had "5-year foreign trading experiences." (*Id.*).

Win offers "A Lange Sohne Watches, Branded Watches" currently (*id.* at 323, 328) and offered "Chloé Bikini" (*id.* at 326) in the past through its TradeKey.com listings. (*Id.* at 323, 328, 326). Win was a manufacturer and wholesaler of counterfeit Lange watches and other branded watches, stating "All the pictures are taken from the actual products which are made by our factory" and "Both wholesale and drop-ship are allowed". (*Id.* at 323). Win traded in massive

37

quantities of counterfeit goods, stating "we have displayed hundreds of our products, please go to our  official website 3ww.winfashionbiz.com for all 200 brands and 50,000 products." (*Id.*).   Win sold counterfeit Lange watches to distributors with the intent to deceive ultimate consumers, providing "Original packing with Tags and Labels, dust bag." (*Id.*).   Under Related Products, on its TradeKey.com listing, Win listed "Cheap Watches." (*Id.*).   The filing of this lawsuit did not deter Win -- as of February 23, 2012, Win remains a GoldKey member of TradeKey.com, has increased its number of sell offers to 282, and continues to offer "A. Lange Sohne Watches, Branded Watches" through its listings on TradeKey.com. (*Id.* at 328).

In its listings on TradeKey.com, Win specifically includes the name of its website, www.winfashionbiz.com, and refers customers to its website at www.winfashionbiz.com. (*Id.*). The Win website is interactive and extensive, offering live online help to prospective purchasers. (*Id.* at 330).   At the WinFashionBiz website, Win sells massive quantities of counterfeit branded luxury watches, including counterfeit Montblanc, Lange, Panerai and Cartier watches. (*Id.* at 333-339).   Win describes its goods on the website as "AAA" quality and states that it "specialize in selling of all kinds of famous brand shoes, jerseys, handbags, sunglasses, caps/hats coat, jeans, t-shirts and so on . . . We will be glad to supply authentic quality  products for you." (*Id.* at 330, 332).   The WinFashionBiz website is still in operation. (Kayser Decl., ¶50).

**Richen-Online Co. Ltd.**

Default Defendant Richen-Online Co. Ltd. ("Richen") offered to sell counterfeit Cartier, Dunhill, Panerai and Montblanc watches and counterfeit Montblanc and Cartier pens. (Kayser Decl., Ex. 17). Richen is a Chinese company and has been a member of TradeKey.com since 2007. (*Id.* at 341). Richen dealt in a large variety of counterfeit brands and types of goods, stating it had "all kind of brand, watch, Pen, Jewelry, Handbag, Shoes, Key Ring and so on." (*Id.* at 347).

1  Richen previously described the goods it offered as: "The watches are Rolex,
2  Omega, Panerai, Cartier, Chanel, Citizen, Bvlgair, Breitling. And the Pen are: Mont
3  Blanc, Gucci, LV, Cartier, Chanel," (*id.*), and "rolex, ck, cartier, breitling, patek,
4  phillipe, corum, gucci, louis vuitton, iwc, dunhill, bvlgari, tag-heuer, zenith,
5  montblanc, rado, versace, longines, Panerai luminor etc," (*id.* at 345).

6        Richen openly acknowledged that it sold counterfeit branded goods, stating
7  in the titles of TradeKey.com listings: "Sell retail top quality replica watch," (*id.* at
8  341), and "Sell high quality replica watches look like the original" (*id.* at 355).
9  Richen manufactured and wholesaled counterfeits, stating it "wholesale and retail
10  over 45 high quality watches mades [sic] of  Swiss, Chinese, Japanese quartz
11  movement. We have the professional watchmakers and strict checking process." (*Id.*
12  at 353).  For some of the counterfeit Panerai watches it sold, Richen required a
13  minimum order of 8 watches. (*Id.*).  The filing of this lawsuit did not deter Richen -
14  - as of February 23, 2012, Richen remains a member of TradeKey.com, and
15  continues to list on TradeKey.com Panerai watches it describes as "AAA quality,"
16  (*id.* at 357), and Cartier watches it describes as "looks like the original" (*id.* at 358).

17        **Orient-Online Co. Ltd.**

18        Default Defendant Orient-Online Co. Ltd. ("Orient-Online") offered to sell
19  counterfeit Cartier, Montblanc, and Panerai watches and counterfeit Dunhill belts.
20  (Kayser Decl., Ex. 18). Orient-Online is a Chinese company and was a member of
21  TradeKey.com since 2008. (*Id.* at 360).  Orient-Online was a large and successful
22  seller of counterfeit branded goods, stating in its listings on TradeKey.com: "At
23  present our company's products have already found a good sale in all parts of the
24  world, we have realized high-efficient management, brand expanded and developed
25  quickly. The more and more prosperous situation has appeared in the management
26  of the enterprise." (*Id.* at 362).  Orient-Online stated in its TradeKey.com listings
27  that it is "Professional manufacture in brand watches" offering "More than 46
28  brands and 1000 styles!". (*Id.* at 364).

39

1   Orient-Online was a willful counterfeiter. In its TradeKey.com listings it
2   claimed to offer "high quality replicas worldwide well-kown watches. Rolex,
3   Omega, Breitling, Cartier, Gucci, Chanel, IWC, Bvlgari, Panerai, Louis Vuitton,
4   Audemars Piguet, patek Philippe, TAG Heuer, Hermes, Vacheron Constantin, CD,
5   Chopard, Franck Muller, Emporio Armani, Jacob&Co, Hermes, Movado, Piaget,
6   Tissot, Zenith, Montblanc. Reasonable price, best service, high quality." (*Id.* at 370).
7   Orient-Online offered "wholesale chanel LV GUCCI DUNHILL BOSS BAPE CK
8   D&G BELTS" in its TradeKey.com listings. (*Id.* at 362). Orient-Online evidenced
9   an intent to deceive consumers by also offering to sell "watch box". (*See id.* at 368).
10  Orient-Online also claimed to sell "AAA quality watches!" (*Id.* at 364). Orient-
11  Online continues to openly infringe despite the filing of this lawsuit.  As of
12  February 23, 2012, Orient-Online remains a member of TradeKey.com, and
13  continues to claim in its TradeKey.com listings that it is "AAA watch manufacture
14  of brand watches" such as "Panerai". (*Id.* at 372). Orient-Online also continues to
15  claim in its TradeKey.com listings that it is "Professional manufacture in watches
16  wrist Swiss movement, high-grade! Best quality! Reasonable price!" while offering
17  to sell "Cartier" brand watches. (*Id.* at 374, 376).

18      In its TradeKey.com listings, Orient-Online specifically includes the name of
19  the websites, www.goec5.com and www.goecwatch.com, and directs customers to
20  those websites. (*Id.* at 360).  In fact the title of one of Orient-Online's listings on
21  TradeKey.com was: "Sell Welcome to our website :www goec5com to buy replica
22  wrist watch". (*Id.* at 360).  The domain www.goec5.com automatically redirects to
23  the website www.gowatch321.com where Orient-Online sells massive quantities of
24  counterfeit branded goods, including counterfeit Lange, Cartier, Montblanc, Panerai
25  and Dunhill watches. (*Id.* at 378-87).  Orient-Online reveals on its website that it is
26  fully aware that counterfeiting is illegal, attempting to disclaim responsibility by
27  stating in conjunction with its counterfeit listings:

28      **All products showed here are replicas NOT being**

1
2
3
4

**represented as the original one.** They can be used for entertainment, education or novelty purpose only. **Although the details looks like the original one, they have no relationship** and this does not mean to damage the brands mentioned in any way. To buy original one from an official dealer was strongly recommended. By visiting from this website, you declare to have read and agree with all the above items in detail.

5
6
7

(*Id.* at 387) (emphasis added).   The Orient-Online websites were still up and operational as of the February 27, 2012. (Kayser Decl. ¶55).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

8
9
10
11
12
13
14

As described above, each of the Default Defendants meets the criteria for an award of maximum statutory damages. Default Defendants are corporations that distribute counterfeit items in large quantities all over the world. All of Default Defendants are large scale counterfeiters, and many advertise that they also manufacture the counterfeits they sell. All of the Default Defendants target bulk distributors, not individual consumers, enabling them to realize significant profits through large and repeated transactions.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

As described above and detailed in the chart below, the Default Defendants have infringed multiple trademarks belonging to one or more of the Plaintiffs on different types of goods. The Default Defendants are flagrantly selling counterfeits of multiple Plaintiff brands and blatantly offer to sell/manufacture/distribute massive quantities of any brand (including the Plaintiffs' brands). The trademarks owned by Plaintiffs, as demonstrated by their federal registrations (Am. Compl., Exs. 1-6), and infringed by the Default Defendants, are all highly valuable. By failing to appear Default Defendants have deprived Plaintiffs of discovery of Default Defendants' profits from the infringement and have shown an intent to deceive Plaintiffs and the Court. The evidence described above and the allegations in the Verified First Amended Complaint establish that Default Defendants acted willfully and with open contempt for Plaintiffs' intellectual property rights. *Coach Services, Inc. v. YNM, Inc.*, 2011 WL 1752091, at \*5 (C.D.Cal. 2011) ("An

41

1    allegation of willful trademark infringement is deemed true on default.") (citing

2    *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008)).

3        Furthermore, through Default Defendants' individual websites and on their

4    TradeKey.com listings, there is evidence that most of the Default Defendants

5    continue to openly infringe, almost a year after this lawsuit was commenced.

6    (Kayser Decl. ¶¶14, 17, 21, 28, 34, 39, 42, 45, 47, 49-50, 52, 54-55).  As this Court

7    previously stated:

8            In addition to the harm caused the trademark owner, the
9    consuming public is equally injured by an inadequate
judicial response to trademark infringement.  Many
10    consumers are willing to pay substantial premiums for
particular items which bear famous trademarks based on
11    their belief that such items are of the same high quality as
is traditionally associated with the trademark owner. As a
12    result of this trademark infringement the consuming
public is denied the benefit of their bargains and the
13    reputation and goodwill of the trademark owner is
accordingly harmed. For these reasons, it is essential that
14    the trial courts carefully fashion remedies which will take
all the economic incentive out of trademark infringement.

15    *Coach Services, Inc. v. YNM, Inc.*, 2011 WL 1752091, at *6 (C.D.Cal. 2011)

16    (awarding Plaintiffs' requested statutory damages of $1 million for trademark

17    infringement).  In other cases where Defendants willfully infringed and participated

18    in large scale counterfeiting, this Circuit has determined that maximum or near-

19    maximum statutory damages are appropriate. *Louis Vuitton Malletier, S.A. v.*

20    *Akanoc Solutions*, 658 F.3d 936 (9th Cir. 2011) (affirming award of $10.5 million

21    statutory damages to one plaintiff for contributory infringement of 13 marks, where

22    statutory maximum was $1 million); *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d

23    1119, 1124 (C.D.Cal. 2007) (awarding maximum statutory damages of $2 million

24    based on infringement of two marks, where statutory max was $1 million per mark).

25        Based on the allegations in the Verified First Amended Complaint and the

26    Exhibits attached to the Kayser Declaration, Plaintiffs should be awarded the

27    requested maximum statutory damages against each of the Default Defendants as

28    large scale willful counterfeiters.

2. **Statutory Damages Against Default Defendants Should Be Calculated on a Per Mark Per Good Basis**

Under the Lanham Act, where the court finds that use of the counterfeit mark was willful, plaintiff is entitled to up to $2 million in statutory damages per counterfeit mark per type of goods sold, offered for sale, or distributed. 15 U.S.C. § 1117(c); *Phillip Morris*, 219 F.R.D. at 502. For instance, in *Nike*, the court awarded plaintiff Nike four separate statutory damages awards based on one trademark. *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1374 (S.D. Ga. 2003). The court held that despite the fact that only one trademark was infringed, four awards should be given because the trademark was placed on four "types of goods" for which the mark was registered: (1) socks, (2) shirts, (3) sweatshirts, and (4) sweatpants. *Id.*; *see also Philip Morris USA, Inc. v. Banh*, 2005 WL 5758392 (C.D. Cal. 2005) (Feess, J.) (awarding the maximum amount of statutory damages ($1 million at that time) for four marks as used on one type of good, i.e. cigarettes for a total award of $4 million); *Gucci Am., Inc. v. Duty Free Apparel Ltd.*, 315 F.Supp. 2d 511, 521 (S.D.N.Y. 2004) (awarding then statutory maximum of $1 million per mark for infringement of two marks as requested by plaintiff, noting *sua sponte* higher damages were likely available for separate uses of marks on different types of goods such as handbags, wallets and cosmetic bags).

The below chart calculates the requested statutory damages for each Default Defendant based on the number of distinct per mark/per good combinations used by each Default Defendant, pursuant to 15 U.S.C. § 1117(c). The Default Defendants' use of each of the registered mark/type of good combinations listed below can be found in the cited Exhibits to the Kayser Declaration. Charts showing each of Plaintiffs' registered marks listed below can be found as Exhibits A-F attached hereto. Therefore, Plaintiffs request that they be awarded statutory damages against the Default Defendants as follows:

43

| Defendant | Evidence (Kayser Decl.) | Plaintiff Mark, Federal Registration No. and Type of Goods Infringed | Total Damages per Plaintiff and Defendant |
|---|---|---|---|
| Cctrue International Trade Co. Ltd. | Ex. 1, p. 25 | 1. Montblanc (1,884,842) Watches | Montblanc: $2 million |
| | Ex. 1, p. 22 | 2. Chloé (1,491,810) Handbags | Chloé: $2 million |
| | Ex. 1, p. 25 | 3. Panerai (2,340,290) Watches | Panerai: $2 million |
| | Ex. 1, p. 25 | 4. Cartier (414,435) Pocketbooks | Cartier: $2 million |
| | Ex. 1, p. 25 | 5. Lange & Sohne (2,430,848) Watches | Lange: $2 million |
| | Ex. 1, p. 28<br>Ex. 1, p. 28<br>Ex. 1, p. 28<br>Ex. 1, p. 28 | 6. Dunhill (858,964) Pens<br>7. Dunhill (540,389) Wallets<br>8. Dunhill (1,734,900) Scarves<br>9. Dunhill (1,734,900) Belts | Dunhill: $8 million |
| | Bulk counterfeiting of 5 different brands, 8 federally registered marks, on 7 different types of goods, for a total of 9 registered mark / distinct good combinations. | | Total: $18 million |
| Fancysaler Trading Co. | Ex. 2, p. 50 | 1. Dunhill (858,964) Pens | Dunhill: $2 million |
| | Ex. 2, p. 50 | 2. Montblanc (776,208) Pens | Montblanc: $2 million |
| | Ex. 2, p. 50 | 3. Cartier (414,604) Pens | Cartier: $2 million |
| | Ex. 2, p. 52 | 4. Chloé (3,291,996) Wallet | Chloé: $2 million |
| | Sale and manufacturing of counterfeits of 4 different brands, 4 federally registered marks, on 2 different types of goods, for a total of 4 registered mark / distinct good combinations. | | Total: $8 million |
| Fuzhou Sunshine Trade Co. Ltd. | Ex. 3, p. 75 | 1. Dunhill (stylized) (1,734,900) Belt | Dunhill: $2 million |
| | Ex. 3, p. 95-6 | 2. Chloé (1,491,810) Handbag | Chloé: $2 million |
| | Ex. 3, p. 113<br>Ex. 3, p. 116<br>Ex. 3, p. 109 | Montblanc<br>3. Montblanc (1,884,842) Watch<br>4. Star Design (1,878,584) Watch<br>5. Mont Blanc (3,059,776) Box | Montblanc:$6 million |
| | Ex. 3, p. 91<br>Ex. 3, p. 93<br>Ex. 3, p. 88<br>Ex. 3, p. 83<br>Ex. 3, p. 89 | Panerai<br>6. Panerai (2,340,290) Watch<br>7. Luminor (3,035,995) Watch<br>8. Bridge Design (2,323,571) Watch<br>9. Watch Design (3,178,943) Watch<br>10. Arrow Design (3,004,529) Watch | Panerai: $10 million |
| | Wholesaler of counterfeits of 4 different brands, 10 federally registered marks, on 4 different types of goods, for a total of 10 registered mark / distinct good combinations. | | Total: $20 million |

44

| Defendant | Evidence (Kayser Decl.) | Plaintiff Mark, Federal Registration No. and Type of Goods Infringed | Total Damages per Plaintiff and Defendant |
|---|---|---|---|
| Hengtai International | Ex. 4, p. 126 | 1. Chloé (1,491,810) Handbags | Chloé: $2 million |
| | Ex. 4, p. 122<br>Ex. 4, p. 126 | 2. Montblanc (1,884,842) Watch<br>3. Montblanc (776,208) Pens | Montblanc: $4 million |
| | Ex. 4, p. 122 | 4. Cartier (759,201) Watch | Cartier: $2 million |
| | Ex. 4, p. 122<br>Ex. 4, p. 124<br>Ex. 4, p. 124<br>Ex. 4, p. 124 | Panerai<br>5. Panerai (2,340,290) Watch<br>6. Luminor (2,516,018) Watch<br>7. Watch Design (3,178,943) Watch<br>8. Bridge Design (2,323,571) Watc | Panerai: $8 million |
| | Bulk counterfeiting of 4 different brands, 8 federally registered marks, on 3 different types of goods, for a total of 8 registered mark / distinct good combinations. | | **Total: $16 million** |
| Kk Fashion Love Zone | Ex. 5, p. 152<br>Ex. 5, p. 149<br>Ex. 5, p. 158<br>Ex. 5, p. 158 | 1. Chloé (1,491,810) Handbag<br>2. Chloé (stylized) (3,291,996) Handbag<br>3. Chloé (3,291,996) Wallet<br>4. Chloé (3,291,996) Luggage | Chloé: $8 million |
| | Numerous listings with offers to sell Chloe branded goods in bulk encompassing 2 federally registered marks on 2 types of goods, for a total of 4 registered mark/ distinct good combinations. | | **Total: $8 million** |
| Love In Apparel Trade Co. Ltd. | Ex. 6, p. 164 | 1. Panerai (2,340,290) Watch | Panerai: $2 million |
| | Ex. 6, p. 166<br>Ex. 6, p. 166 | 2. Chloé (1,491,810) Handbag<br>3. Chloé (stylized) (3,291,996) Handbag | Chloé: $4 million |
| | Large wholesaler of counterfeits of 2 different brands, encompassing 3 federally registered marks, on 2 different types of goods, for a total of 3 registered mark / distinct good combinations. | | **Total: $6 million** |
| Melchic International Trade Co. Ltd. | Ex. 7, p. 169<br>Ex. 7, p. 169<br>Ex. 7, p. 169<br>Ex. 7, p. 169<br>Ex. 7, p. 169 | 1. Dunhill (858,964) Pen<br>2. Dunhill (540,389) Wallets<br>3. Dunhill (1,734,900) Belts<br>4. Dunhill (1,734,900) Suits<br>5. Dunhill (1,734,900) Scarves | Dunhill: $10 million |
| | Ex. 7, p. 171 | 6. Chloé (1,491,810) Handbag | Chloé: $2 million |
| | Claims to be one of China's biggest manufacturers of counterfeits, counterfeits of 2 different brands, encompassing 4 federally registered marks, on 6 different types of goods, for a total of 6 registered mark / distinct good combinations. | | **Total: $12 million** |

45

Memorandum in Support of Motion for Default Judgment

| Defendant | Evidence (Kayser Decl.) | Plaintiff Mark, Federal Registration No. and Type of Goods Infringed | Total Damages per Plaintiff and Defendant |
|---|---|---|---|
| Mystockwatch Co., Ltd. | Ex. 8, p. 191 | 1. Panerai (2,340,290) Watch | Panerai: $2 million |
| | Ex. 8, p. 194 | 2. Cartier (759,201) Watch | Cartier: $2 million |
| | Ex. 8, p. 197 | 3. Montblanc (1,884,842) Watch | Montblanc: $2 million |
| | Manufacturer of counterfeits of 3 different brands, using 3 federally registered marks on watches, for a total of 3 registered mark / distinct good combinations. | | Total: $6 million |
| Seven Star Replicass | Ex. 9, p. 201 | 1. Chloé Paddington (3,398,517) Handbag | Chloé: $4 million |
| | Ex. 9, p. 201 | 2. Chloé (1,491,810) Handbag | |
| | Dealer in counterfeit handbags encompassing two federally registered Chloe marks. | | Total: $4 million |
| Shanghai Taolan International Trade Limited Company | Ex.10, p. 204 | 1. Chloé (1,491,810) Handbag | Chloé: $4 million |
| | Ex.10, p. 204 | 2. Chloé (3,291,996) Wallet | |
| | Large scale seller of counterfeits encompassing 2 federally registered Chloe marks and 2 different types of goods, for a total of 2 registered mark / distinct good combinations. | | Total: $4 million |
| Sinoestar Co., Ltd | Ex.11, p. 217 | 1. Panerai (2,340,290) Watch | Panerai: $2 million |
| | Ex.11, p. 217 | 2. Cartier (759,201) Watch | Cartier: $2 million |
| | Ex.11, p. 217 | 3. Montblanc (1,884,842) Watch | Montblanc: $2 million |
| | Ex.11, p. 219 | 4. Dunhill (1,734,900) Belts | Dunhill: $2 million |
| | Wholesaler of counterfeits of 4 different brands, encompassing 4 federally registered marks and 2 different types of goods, for a total of 4 registered mark / distinct good combinations. | | Total: $8 million |
| V52 International Trade Co., Ltd. | Ex.12, p. 222 | 1. Panerai (2,340,290) Watch | Panerai: $2 million |
| | Ex.12, p. 222 | 2. Cartier (759,201) Watch | Cartier: $2 million |
| | Ex.12, p. 222 | 3. Montblanc (1,884,842) Watch | Montblanc: $2 million |
| | Ex.12, p. 224 | 4. Chloé (1,491,810) Handbag | Chloé: $2 million |
| | Wholesaler of counterfeits of 4 brands, encompassing 4 federally registered marks and 2 different types of goods, for a total of four registered mark / distinct good combinations. | | Total: $8 million |

Memorandum in Support of Motion for Default Judgment

| Defendant | Evidence (Kayser Decl.) | Plaintiff Mark, Federal Registration No. and Type of Goods Infringed | Total Damages per Plaintiff and Defendant |
|---|---|---|---|
| Win-Win Trade Co., Ltd. | Ex.13, p. 275 | 1. Cartier (759,201) Watch | Cartier: $2 million |
| | Ex.13, p. 263<br>Ex.13, p. 259<br>Ex.13, p. 259<br>Ex.13, p. 259<br>Ex.13, p. 259<br>Ex.13, p. 263<br>Ex.13, p. 263 | **Panerai**<br>2. Panerai (2,340,290) Watch<br>3. Luminor (2,516,018) Watch<br>4. Bridge Design (2,323,571) Watch<br>5. Design (3,178,943) Watch<br>6. Radiomir (2,418,830) Watch<br>7. Design (3,756,691) Watch | Panerai: $12 million |
| | | Manufacturer of counterfeits of 2 brands, encompassing 7 federally registered marks on watches, for a total of 7 registered mark / good combinations. | **Total: $14 million** |
| Www.Ecwatch.Net | Ex.14, p. 285<br>Ex.14, p. 289 | 1. Panerai (2,340,290) Watch<br>2. Luminor (2,516,018) Watch | Panerai: $4 million |
| | Ex.14, p. 287<br>Ex.14, p. 287<br>Ex.14, p. 293 | 3. Cartier (759,201) Watch<br>4. Cartier Design (2,322,769) Watch<br>5. Cartier Design (3,898,366) Watch | Cartier: $6 million |
| | Ex.14, p. 289<br>Ex.14, p. 295 | 6. Montblanc (776,208) Pens<br>7. Montblanc (1,884,842) Watch | Montblanc: $4 million |
| | Ex.14, p. 289 | 8. Dunhill (843,178) Watch | Dunhill: $2 million |
| | | Manufacturer of counterfeits of 4 brands, using 8 federally registered marks on 2 types of goods, for a total of 8 registered mark / good combinations. | **Total: $16 million** |
| Euromed International Trading Co., Ltd. | Ex.15, p. 312 | 1. A. Lange & Sohne ( 2,430,848) Watch | Lange: $2 million |
| | | A wholesaler of counterfeit Lange brand watches, encompassing 1 federal registration and type of good. | **Total: $2 million** |
| Win International Trade | Ex.16, p. 323 | 1. A. Lange & Sohne (2,430,848) Watch | Lange: $2 million |
| | Ex.16, p. 326 | 2. Chloé (1,491,810) Bathing Suit | Chloé: $2 million |
| | | Manufacturer and seller of counterfeits of 2 brands, using 2 federally registered marks on 2 types of goods, for a total of 2 registered mark / distinct good combinations. | **Total: $4 million** |

47

Memorandum in Support of Motion for Default Judgment

| Defendant | Evidence (Kayser Decl.) | Plaintiff Mark, Federal Registration No. and Type of Goods Infringed | Total Damages per Plaintiff and Defendant |
|---|---|---|---|
| Richen-online Co. Ltd. | Ex.17, p. 349 | 1. Dunhill (843,178) Watch | Dunhill: $2 million |
| | Ex.17, p. 341<br>Ex.17, p. 347<br>Ex.17, p. 347 | **Cartier**<br>2. Cartier (759,201) Watch<br>3. Watch Design (3,282,847) Watch<br>4. Cartier (414,604) Pens | Cartier: $6 million |
| | Ex.17, p. 355<br>Ex.17, p. 351<br>Ex.17, p. 353 | **Panerai**<br>5. Panerai (1,390,730) Watch<br>6. Luminor (2,516,018) Watch<br>7. Watch Design (3,178,943) Watch | Panerai: $6 million |
| | Ex.17, p. 355<br>Ex.17, p. 347 | **Montblanc**<br>8. Montblanc (1,884,842) Watch<br>9. Montblanc (776,208) Pen | Montblanc: $4 million |
| | Wholesaler of counterfeits of 4 brands, using 9 federally registered marks on 2 types of goods, for a total of 9 registered mark / distinct good combinations | | **Total: $18 million** |
| Orient-Online Co. Ltd. | Ex.18, p. 360 | 1. Cartier (759,201) Watch | Cartier: $2 million |
| | Ex.18, p. 370 | 2. Montblanc (1,884,842) Watch | Montblanc: $2 million |
| | Ex.18, p. 362 | 3. Dunhill (1,734,900) Belt | Dunhill: $2 million |
| | Ex.18, p. 364<br>Ex.18, p. 366<br>Ex.18, p. 366 | **Panerai**<br>4. Panerai (1390730) Watch<br>5. Luminor (2,516,018) Watch<br>6. Bridge (2,323,571) Watch | Panerai: $6 million |
| | Manufacturers counterfeits of 4 brands, using 6 federally registered marks on 2 types of goods, for a total of 6 registered mark / distinct good combinations | | **Total: $12 million** |

## C.   Plaintiffs Are Entitled to Costs

In addition to damages under the Lanham Act, Plaintiffs are also entitled to their costs. 15 U.S.C. §1117(a); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993).  Pursuant to Local Rule 54-3, Plaintiff will submit its Bill of Costs within 15 days of entry of judgment.

## D.   Plaintiffs are Entitled to Transfer of the Domains Used to Counterfeit Plaintiffs' Marks

In order to give practical effect to any judgment, this Court should also order the transfer of the domains used to host Default Defendants' websites through

48

which they sell counterfeit goods bearing Plaintiffs' marks, including but not limited to www.cctrue.com, www.fancysaler.com, www.sweetywoman.com, www.watches138.com, www.melchic.com, www.fumingapparel.com, www.v52trade.com, www.51winwintrade.com, www.ecwatch.net, www.goecwatch.net, www.winfashionbiz.com, www.goec5.com, www.gowatch321.com, and www.hrywide.com. In the Exhibits attached to the February 27, 2012 Declaration of Susan M. Kayser, Plaintiffs have furnished evidence showing Defendants control and/or operate the websites in question, and sell goods bearing counterfeit of Plaintiffs' marks through those websites. Therefore the Court should order the transfer of the above-listed domains to Plaintiffs. *See Philip Morris USA Inc. v. Otamedia Limited*, 331 F. Supp. 2d 228 (S.D.NY 2004) (transferring domains yesmoke.com and yessmoke.com, which were used to sell counterfeits, to Plaintiffs in counterfeiting case); *Gucci America v. Wang Huoqing*, 2011 WL 30972, at *2 (N.D.Cal. 2011) (awarding the transfer of twenty-eight domain names used to sell counterfeits such as b2do.com, bag2do.cn, and bag2do.com, as part of final default judgment); *Louis Vuitton Malletier, S.A. v. Absolutee Corp.*, Ltd., Case No. 3:09-cv-05612-MMC, Default Judgment, Dkt. No. 27 (N.D. Cal. April 19, 2010) (awarding the transfer of four domain names used to sell counterfeits as part of grant of final default judgment and permanent injunction); *Chanel, Inc. v. Paley*, Case No. 3:09-cv-04979-MHP, Default Judgment, Dkt. No. 56 (N.D. Cal. March 25, 2010) (awarding transfer of seventeen domain name used to sell counterfeits, including generic domains such as wristfavorite.com and zenroad.com).

### E.   Plaintiffs Are Entitled to a Permanent Injunction

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); 15 U.S.C. §1116(a). Permanent

49

1    injunctions are routinely granted in cases where, like the instant case, defendants

2    have not appeared in the action at all. *Philip Morris*, 219 F.R.D. at 502; *Pepsico*,

3    238 F. Supp. 2d at 1178.  As such, Plaintiffs also request that this Court order a

4    permanent injunction against Default Defendants to enjoin them from using the

5    Chloé Marks, Cartier Marks, Dunhill Marks, Montblanc Marks, Panerai Marks and

6    Lange Marks  in connection with the sale and offer for sale of infringing products.

7    **IV.    CONCLUSION**

8          Based upon the foregoing, Plaintiffs respectfully request that this Court: 1)

9    enter default judgment in the amounts listed above as to the Default Defendants; 2)

10    Permanently Enjoin Default Defendants from using the Chloé Marks, Cartier Marks,

11    Dunhill Marks, Montblanc Marks, Panerai Marks and Lange Marks in connection

12    with the sale and offer for sale of infringing products; and 3) transfer the domains

13    used to infringe Plaintiffs' marks and award the costs of this action, as set forth in

14    the Proposed Order submitted herewith.

15

16    Dated: February 27, 2012                    JONES DAY

17

18                                        By:

19                                              Susan M. Kayser

20                                        *Attorneys for Plaintiffs Chloé SAS,*
                                          *Alfred Dunhill Limited, Panerai AG,*
21                                        *Montblanc-Simplo GmbH, Cartier*
                                          *International AG, and Lange Uhren*
22                                        *GmbH*

23    WAI-3053525v1

24

25

26

27

28

50

**EXHIBIT A**

| Mark | Reg. No. or App. No. | Int'l Class | Goods |
|---|---|---|---|
| CHLOE | 1,491,810 | 18, 25 | **18:** handbags, purses,<br><br>**25:** bathrobes, bathing suits, coats, dresses, hats, jackets, shirts, blouses, trousers, skirts, scarves, shoes |
| CHLOE | 2,745,487 | 14 | Jewelry |
| Chloé | 3,291,996 | 18 | Goods made of leather and imitations of leather, namely, handbags, purses, traveling cases, traveling bags, luggage, backpacks, toiletry cases sold empty, credit card cases and holders, key cases, coin purses |
| Chloé | 1,182,862 | 14, 25 | **14:** jewelry-namely, dress jewelry<br><br>**25:** clothing-namely, belts, scarves, frocks, dresses, coats, costumes, suits, skirts, blouses, vests and pantsuits, hats, fur coats, jackets, stoles, capes |
| Chloé | 950,843 | 25 | Ladies' articles of clothing for outerwear-namely, frocks, dresses, coats, costumes, suits, skirts, blouses, vests and pant-suits; vests, hats and ties; and ladies' shoes |
| EDITH | 3,401,846 | 18 | Handbags purses, wallets |
| PADDINGTON | 3,398,517 | 18 | Handbags, purses, wallets, not intended for children |
| SEE BY CHLOE | 3,696,923 | 25 | Footwear |
| SEE BY CHLOE | 2,641,982 | 18, 25 | **18:** travelling bags, holdalls, tote bags, handbags, credit card case; purses, wallets, key cases, coin purses, parts and fittings for all the aforesaid goods<br><br>**25:** clothing, namely, trousers, skirts, suits, dresses, jackets, blousons, shirts, coats, cardigans, sweaters, blouses, shorts, t-shirts, pullovers, scarves |

| Mark | Reg. No. or App. No. | Int'l Class | Goods |
|------|---------------------|-------------|-------|
|  | 79/083,749 | 18, 25 | **18:** leather and imitations of leather; goods made of leather and imitations of leather, namely, wallets, coin purses, handbags, suitcases, travelling bags, credit card cases, key cases, backpacks, clutch bags, beach bags, shopping bags, briefcases, sling bags for carrying infants, travelling sets, namely, trunks, vanity cases sold empty, cosmetic bags sold empty; wallets, coin purses, handbags, suitcases, travelling bags, credit card cases, key cases, backpacks, clutch bags, beach bags, canvas, reusable, mesh and textile shopping bags, briefcases, sling bags for carrying infants, travelling sets, namely, trunks, vanity cases sold empty, cosmetic bags sold empty, umbrellas, parasols and walking sticks; hides, skins<br><br>**25:** clothing, namely, jackets, blouses, belts, cloaks, ponchos, jumpers, dresses, leggings, tights, shorts, scarves, jumpsuits, cardigans, suits, capes, jeans, coats, rompers; footwear; headwear |

**EXHIBIT B**

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| DUNHILL | 1,172,665 | 42 | Retail store services featuring the sale of smokers' accessories, man's clothing, haberdashery, toiletries, jewelry, leather goods, gift items, and many other items of various descriptions |
| DUNHILL | 843,270 | 18 | Umbrellas |
| DUNHILL | 843,178 | 14 | Watches |
| DUNHILL | 858,928 | 14 | Men's jewelry-namely, cuff links, tie bars, tie clasps, key chains, key rings |
| DUNHILL | 858,964 | 16 | Pens and pencils |
| dunhill | 540,389 | 18 | Billfolds, document cases and wallets, all being goods made of leather |
| dunhill | 1,799,883 | 14, 18 | **14:** Jewelry and watches<br><br>**18:** Luggage and small leather goods; namely, wallets, card cases, attaché cases |
| dunhill | 1,734,900 | 24, 25 | **24:** handkerchiefs<br><br>**25:** men's clothing, namely, ties, cravats, dress shirts, sport shirts, sweaters, belts, suspenders, gloves, hats, scarves, leather and suede coats and jackets, wool jackets, rainwear, underwear, sleepwear and robes |
| dunhill LINKS | 3,423,210 | 18, 24, 25, 28 | **18:** goods made of leather and imitations of leather, namely, luggage, trunks, traveling bags, bags, namely, carry-on bags, all purpose sports bags, flight bags, travel bags, tie bags for travel, shopping bags, holdalls, suit bags, backpacks, knapsacks, tote bags, shaving bags sold empty, duffle bags, overnight bags, shoe bags, cases, namely, suitcases, credit card cases, travel attaché cases designed to organize and hold passports, plane tickets and currency, and toiletry cases sold empty, attaché cases, briefcases, key cases, pouchettes, namely, a handheld carrying case with compartments for |

| Mark | Reg. No. | Int'l Class | Goods |
|------|----------|-------------|-------|
| | | | pens, notepads, calendars, money, credit cards and other personal items; suit bags, backpacks, knapsacks, wallets, purses, leather key fobs, notepad holders, umbrellas, walking sticks<br><br>**24:** textile fabrics for the manufacture of clothing, towels, golf towels, textile clothing labels, handkerchiefs, lap rugs<br><br>**25:** clothing, namely, shirts, jackets, blousons, trousers, pants, shorts, t-shirts, polo shirts, socks; knitwear, namely, sweaters, cardigans, fleece pullovers; waterproof clothing, namely, waterproof jackets and trousers; belts, gloves, training sneakers, scarves, ties, headwear, sun visors, hats, caps; footwear<br><br>**28:** Golf clubs, golf club covers, golf balls, golf tees, bags specifically adapted for sports equipment, golf club protectors, golf markers and golf gloves, golf score pads |
| **dunhill**<br>LONDON | 3,629,424 | 14, 16, 18, 25, 34 | **14:** key rings and key chains of precious metals or coated therewith; jewelry, cufflinks, tie bars, tie clips, necktie clips, tie pins, lapel pins, and collar and shirt studs; precious stones; horological and chronometric instruments, watches, clocks, watch straps, watch bracelets; key holders of precious metal; parts and fittings for all the aforesaid goods<br><br>**16:** writing instruments, pouches for writing instruments; gift cases for writing instruments; ink and refills for writing instruments, stationery; writing utensil cases; personal organizers; desk sets; pens, pencils; pen and pencil holders; paperweights, diaries; inkwells and ink stands; passport holders, check book holders, check book covers; pen and pencil cases; document holders, photo albums; bookends; pen nibs; money clips; parts and fittings for all the aforesaid goods<br><br>**18:** trunks and traveling bags; umbrellas, collars for pets; luggage, bags, namely, tote bags, beach bags, satchels, toiletry bags sold empty; cases, namely, suitcases; briefcases, attaché cases, holdalls, pouchettes, garment bags for travel, backpacks, credit card cases, key cases, wallets, coin purses, handbags<br><br>**25:** clothing, namely, shirts, pants, trousers, |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | jackets, evening jackets, tuxedos, blazers, windcheaters, blousons, fleece pullovers, quilted vests, suits, raincoats, coats, shorts, cardigans, sweaters, tank tops, waistcoats, t-shirts, polo shirts, casual shirts, business shirts, bathrobes, dressing gowns, socks, golf shirts, golf sweaters, golf trousers, golf shoes, swimwear, sleepwear, underwear, rainwear, waterproof jackets, sweat shirts, sweat pants, cummerbunds, gloves, footwear, hats, caps, sun visors, scarves, belts, ties |
| DUNHILL FACET | 3,763,362 | 14, 18 | **14:** Goods in precious metals or coated therewith, namely, key fobs, key rings, and key chains; cufflinks; horological and chronometric instruments, watches, clocks, watch straps, watch bracelets; parts and fittings for all the aforesaid goods<br><br>**18:** Goods made of leather and imitations of leather, namely, key chains, key cases, pocket wallets, coin purses, luggage tags; trunks and traveling bags, umbrellas, parasols and walking sticks; shooting sticks, namely, a combined walking stick and seat; canes; collars for pets; luggage; tote bags, duffle bags, carry on bags, all purpose sports bags, flight bags, tie bags for travel, barrel bags, shaving bags sold empty, overnight bags, business card cases, beach bags, satchels, toiletry bags sold empty, suitcases; briefcases, attaché cases, aftershave cases sold empty, document cases, pochettes, namely, hand-held carrying cases for documents and personal items; garment bags for travel, knapsacks, backpacks, credit card cases, key cases not made of leather, key wallets, wallets, coin purses not made of leather, handbags |
|  | 3,763,494 | 14, 16, 18, 25 | **14:** Key fobs, key rings and key chains of precious metals or coated therewith; household containers of precious metals or coated therewith; jewellery; cufflinks; tie bars; tie clips; necktie clips; tie pins; lapel pins; collar and shirt studs; precious stones; horological and chronometric instruments, watches, clocks, watch straps, watch bracelets; key holders of precious metals; parts and fittings for all the aforesaid goods<br><br>**16:** Writing instruments, pouches for writing instruments; gift boxes for writing instruments; |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | ink and refills for writing instruments, stationery; personal organisers, desk sets, pens, pencils; pen and pencil holders; paperweights, diaries; inkwells and ink stands; passport holders, cheque book holders, cheque book covers; pen and pencil cases; document holders and cases, albums for photographs; bookends; pen nibs; money clips; parts and fittings for all the aforesaid goods<br><br>**18:** Trunks and travelling bags; umbrellas, parasols and walking sticks; canes; collars for pets; luggage, bags and cases, tote bags, beach bags, satchels, toiletry bags sold empty; suitcases; briefcases, attaché cases, holdalls; pochettes, namely, hand-held carrying cases for documents and personal items; garment bags for travel, backpacks, credit card cases and holders, key cases, wallets, coin purses, handbags; parts and fittings for all the aforesaid goods<br><br>**25:** Clothing, namely, shirts, pants, trousers, jackets, evening jackets, tuxedoes, blazers, windcheaters, blousons, fleece pullovers, quilted vests, suits, raincoats, coats, shorts, cardigans, sweaters, tank tops, waistcoats, t-shirts, polo shirts, casual shirts, business shirts, bathrobes, dressing gowns, socks, golf shirts, golf sweaters, golf trousers, golf shoes, swimwear, sleepwear, underwear, rainwear, waterproof jackets, sweat shirts, sweat pants, cummerbunds, gloves, scarves, belts, ties; footwear and headgear, namely, hats, caps and sun visors |
|  | 1,322,065 | 14 | Men's jewelry, all made of precious metal- namely, cuff links, money clips, tie clasps |
|  | 3,748,138 | 14, 16, 18, 25 | **14:** goods in precious metals or coated therewith, namely, key rings and key chains of precious metals or coated therewith; jewelry; cufflinks; tie bars; tie clips; necktie clips; tie pins; lapel pins; collar and shirt studs; precious stones; horological and chronometric instruments, watches, clocks, watch straps, watch bracelets<br><br>**16:** writing instruments, pouches for writing instruments; gift cases for writing instruments; pen ink and refills, stationery; writing utensil cases; personal organizers; desk sets; pens; pencils; pen and pencil holders; paperweights; diaries; inkwells and ink stands; passport |

| Mark | Reg. No. | Int'l Class | Goods |
|------|----------|-------------|-------|
| | | | holders; check book holders; check book covers; pen and pencil cases; document holders and cases; picture albums; bookends; pen nibs; money clips<br><br>**18:** trunks and traveling bags; umbrellas; collars for pets; luggage; travel bags and travel cases; tote bags; beach bags; satchels; toiletry bags sold empty; suitcases; briefcases; attaché cases; holdalls; pouchettes, namely, hand held carrying cases for documents and personal items; garment bags for travel; backpacks; credit card cases and holders; leather key cases; wallets; coin purses; handbags<br><br><br>**25:** Clothing, namely, shirts, pants, trousers, jackets, evening jackets, tuxedos, blazers, windcheaters, blousons, fleece pullovers, quilted vests, suits, raincoats, coats, shorts, cardigans, sweaters, tank tops, waistcoats, t-shirts, polo shirts, casual shirts, business shirts, bathrobes, dressing gowns, sock, golf shirts, golf sweaters, golf trousers, golf shoes, swimwear, sleepwear, underwear, rainwear, waterproof jackets, sweat shirts, sweat pants, cummerbunds, gloves, footwear, hats, caps, sun visors, scarves, belts, ties |
| D-EIGHT | 3,053,189 | 14, 16, 18, 25, 34 | **14:** Goods, made all or in part of precious metals or coated therewith, namely, flasks, cups, key rings, key fobs and key chains, smokers' articles of precious metals or coated therewith, namely ashtrays, cigar and cigarette lighters, cigar cutters, cigar and cigarette cases; belt buckles of precious metals or coated therewith; jewelry, cufflinks; tie bars; tie clips; tie pins, lapel pins; horological and chronometric instruments, watches, clocks, watch straps, watch bracelets; parts and fittings for all the aforesaid goods<br><br>**16:** Writing instruments, pouches for writing instruments, gift cases for writing instruments, ink and refills, stationery; personal organizers, fountain pens, ball-point pens and pencils, pen and pencil holders; paperweights, diaries, inkwells and ink stands; passport holders, checkbook holders, document holders; parts and fittings for all the aforesaid goods<br><br>**18:** Goods made of leather and imitations of |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | leather, namely, leather key fobs, satchels, suitcases and backpacks; trunks and traveling bags; umbrellas, walking sticks; luggage, flight bags, tie bags for travel, carrying cases, tote bags, toiletry bags sold empty; shooting sticks; briefcases, attaché cases, document cases, holdalls, pochettes in the nature of a hand held carrying case with compartments for pens, notepads, calendars, money, credit cards and other personal items; suit-carriers, namely garment bags, credit card cases and holders, key cases, wallets, coin purses, personal organizers, handbags; parts and fittings for all the aforesaid goods<br><br>**25:** clothing, namely shirts, pants, trousers, suits, jackets, coats, shorts, cardigans, sweaters, waistcoats, t-shirts, polo shirts, dressing gowns, socks, swimwear, sleepwear, underwear, rainwear, raincoats, bandanas, footwear, and headgear in the nature of sun visors, hats and caps; braces, scarves, belts, ties, gloves, cravats |
|  | 2,852,116 | 14 | Watches |
| SENTRYMAN | 3,486,991 | 14, 16, 18, 28 | **14:** jewelry, cufflinks, tie bars<br><br>**16:** pens, writing instruments, desk accessories, namely, desk file trays, holders for desk accessories, and letter racks<br><br>**18:** large and small leather goods namely, trunks and traveling bags, collars for pets, luggage, bags, and cases, tote bags, beach bags, satchels, toiletry bags sold empty, suitcases, briefcases, attaché cases, holdalls, pochettes, namely a handheld carrying case with compartments for pens, notepads, calendars, money, credit cards, and other personal items; garment bags for travel, backpacks, credit card cases, credit card holders, wallets, coin purses, handbags<br><br>**28:** gifts and games, namely, playing cards, back gammon sets, chess sets, dice sets, bridge card boxes, jigsaw puzzles, and a poker and roulette kit for use in travel or recreational settings comprising a mini-roulette wheel, a chip holder, betting chips, a chip sweeper, a printed roulette playing mat, playing mat, playing cards poker |

| Mark | Reg. No. | Int'l Class | Goods |
|------|----------|-------------|-------|
|  |  |  | dice and a holding case for storing the same |
| SIDECAR | 2,893,171 | 18 | Umbrellas, briefcases, attaché cases, document cases; wallets, pochettes, namely, a hand held carrying case with compartments for pens, notepads, calendars, money, credit cards and other personal items; credit card cases; key cases; coin purses |

**EXHIBIT C**

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| PANERAI | 2,340,290 | 14 | Chronometers, watches |
| PANERAI | 2,673,704 | 16, 18, 25 | **16:** pencils<br><br>**18:** handbags<br><br>**25:** shirts, tee-shirts; belts, caps and hats |
| PANERAI COMPOSITE | 3,947,004 | 14 | Watches, chronometers, watch straps, watch bracelets, boxes of precious metal for watches |
| LUMINOR | 2,516,018 | 14 | Chronometers, watches and clocks |
| LUMINOR COMPOSITE | 3,889,408 | 14 | Watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
| LUMINOR DAYLIGHT | 3,035,995 | 14 | Watches, chronometers, wall clocks, watchbands, boxes of precious metal for watches and jewelry |
|  | 3,178,943 | 14 | Watches |
| RADIOMIR | 2,418,830 | 14 | Chronometers; watches and clocks |
| RADIOMIR COMPOSITE | 3,882,739 | 14 | Watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
|  | 3,756,691 | 14 | Watches |
| ARKTOS | 2,731,719 | 14 | Chronometers, watches, clocks |
| BLACK SEAL | 2,864,075 | 14 | Boxes and cases for watches; chronometers; watches and clocks |

Exhibit C<br>Page 63

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
|  | 2,323,571 | 14 | Chronometers; watches |
| L'ASTRONOMO | 3,947,005 | 14 | Watches, stopwatches, wall clocks, watch straps, boxes of precious metal for watches |
| LO SCIENZIATO | 3,927,967 | 14 | Watches, stopwatches, wall clocks, watch straps, boxes of precious metal for watches and jewelry |
| MARE NOSTRUM | 2,362,908 | 14 | Chronometers and watches |
| MARINA MILITARE | 3,174,281 | 14 | Watches, chronometers, clocks, watchbands, wristwatches, boxes of precious metal for watches and jewelry |
|  | 3,004,529 | 14 | Boxes and cases for watches;  chronometers, watches and wall clocks |
| SEAL | 2,288,561 | 14 | Chronometers, and watches |
| SEALAND | 2,624,232 | 14 | Cases of precious metals for watches, chronometers, watches |
| SLYTECH | 3,046,425 | 14 | Watches, chronometers, wall clocks, watch straps, boxes of precious metal for watches and jewelry |
| ZEROGRAPH | 3,857,560 | 14 | Watches and chronometers |

Exhibit C
Page 64

**EXHIBIT D**

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| MONTBLANC | 776,208 | 16 | Fountain pens, cases for fountain pens, ball point pens, ball point cartridges, ball point paste, mechanical pencils, lead for mechanical pencils |
| MONTBLANC | 1,884,842 | 14, 18 | **14:** jewelry; watches and time pieces <br><br> **18:** purses, handbags, small leather articles and accessories, namely wallets and billfolds, and luggage |
| MONTBLANC | 2,820,561 | 37, 42 | **37:** maintenance and repair of writing instruments and accessories for writing instruments <br><br> **42:** retail store services for luxury items, namely, stationery, desk sets, jewelry, watches, eyewear, leather goods, writing instruments and parts and fittings therefor; design services for others for luxury items, namely, stationery, leather goods, writing instruments and parts and fittings therefor |
| MONTBLANC | 2,415,189 | 25 | Clothing accessories, namely, dress belts made of leather with belt buckles of precious and semi-precious metals distributed in channels of commerce where luxury articles are sold and promoted |
| MONT BLANC | 2,515,092 | 16 | Stationery, namely, envelopes, writing paper, writing cards |
| MONT BLANC | 3,059,776 | 6, 8, 9, 21, 25, | **6:** money clips, key rings, knife handles, all being made of metal <br><br> **8:** pocket-knives, razors; cases for pocket knives, cases for razors <br><br> **9:** graduated rulers, barometers <br><br> **21:** drinking flasks not of precious metal; serving trays, butlers trays, cups, all being not of precious metal; shaving brushes, shaving brush stand |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | **25**: clothing accessories, namely, neckties, scarves and shawls distributed in channels of commerce where luxury articles are sold and promoted |
| MONTBLANC NIGHTFLIGHT | 3,251,925 | 18 | Leather and imitation leather and goods made of these materials, namely, wallets, purses, credit card holders, briefcases, attaché cases, handbags, pouches and bags made of leather, travelling bags, key cases, backpacks, leather bands and shoulder straps for handbags and luggage, boxes made of leather; small leather goods, namely, name card cases, vanity cases sold empty, suitcases and school bags |
| MONTBLANC PROFILE | 2,717,140 | 14 | Watches, clocks |
| MONTBLANC SUMMIT | 2,738,532 | 14 | Watches and chronometers |
|  | 839,016 | 2, 16 | **2**: fountain pen ink<br><br>**16**: fountain pens, cases for fountain pens, ball point pens, ball point cartridges, mechanical pencils, lead for mechanical pencils, desk stands for pens |
|  | 1,878,584 | 14, 18 | **14**: jewelry; watches and timepieces<br><br>**18**: purses, handbags, small leather articles and accessories, namely wallets and billfolds, and luggage |
|  | 2,346,953 | 25 | Accessories for clothing, namely belts |
| SOLITAIRE | 1,347,728 | 16 | Writing instruments-namely, pens |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
|  | 1,891,033 | 16 | Writing instruments; namely, pens and pencils |
|  | 1,723,665 | 16 | Writing instruments; namely, pens and pencils |
| BLACK MYSTERY | 3,752,471 | 16 | Writing instruments, in particular fountain pens, ball-point pens, pencils, felt-tip pens, document markers, pouches for writing instrument, gift cases for writing instruments, writing instrument inks and refills, stationery, diaries, paperweights, desk sets, desk stands for writing instruments and office implements, pen and pencil holders and parts and fittings for all the aforesaid goods |
| BOHÉME | 2,688,023 | 14, 16 | **14:** jewelry articles, namely, jewelry clips, brooches, pins, earrings, ear studs, rings, bracelets, chains, necklaces<br><br>**16:** Writing instruments, namely, fountain pens, ball-point pens, pencils, felt-tip pens; fountain pen ink cartridges and writing ink; ballpoint pen refills, felt tip pen refills |
|  | 3,606,193 | 16 | Writing utensils, namely, fountain pens, ballpoint pens, pencils, felt-tipped pens, roller ball pens, and text markers; pouches for writing utensils; gift cases for writing utensils; inks and cartridges, namely, writing inks, pen ink refills, and pen ink cartridges; stationery, diaries, paperweights, desk sets; holders for writing and office utensils, namely, pen holders, pencil holders, and holders for desk accessories; and structural parts for all aforesaid goods included in this class |
| ETOILE SECRETE | 3,454,035 | 14 | Cufflinks; tiepins; jewelry, including rings, bracelets, earrings, necklaces, and brooches; wristwatches; chronometers; clocks and alarm clocks; watch straps; jewelry boxes and watch boxes made of precious metal for storing |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | watches and jewellery |
| LA DAME BLANCHE | 3,366,186 | 14 | Watches and clocks; timekeepers, namely, chronometers; and jeweller's wares, namely, jewellery, and precious stones |
| LADYSTAR | 3,127,144 | 18 | Wallets, identity card and credit card cases, purses, briefcases, attaché cases; handbags, rucksacks, suitcases, travelling bags, walking sticks, whips, harness for horses, saddlery |
| LEONARDO | 2,875,587 | 16 | Pencils |
| MAGIE EN BLANC ET NOIR | 3,453,962 | 14 | Watches and clocks; timekeepers, namely, chronometers; and jeweller's wares, namely, jewellery, and precious stones |
| MEISTERSTUCK | 1,324,392 | 16 | Fountain pens, ballpoint pens and mechanical pencils including sets thereof, all made partially with precious metals and sold in specialty stores |
| SIGNATURE FOR GOOD | 3,933,739 | 16, 18 | **16:** writing instruments, including fountain pens, ball-point pens, pencils, felt-tip pens, roller ball pens, document markers; pouches for writing instrument; gift boxes for writing instruments; writing inks and pen ink refills for writing instruments; stationery; diaries; paperweights; desk sets; desk stands in the nature of holders for writing instruments and office implements; pen and pencil holders; and parts and fittings for all of the aforesaid goods, namely, fountain pen nibs, pen and pencil clips, pen and pencil bodies, and pen and pencil caps<br><br>**18:** wallets, purses, credit card holders, pouches of leather, pouches for holding make-up, travel documents, business papers, monies, and keys and other personal items; briefcases, attaché cases, handbags, travelling bags and all purpose carrying bags |
| STARISMA | 2,788,900 | 18 | Wallets, purses, credit card holders, briefcases, attache-cases, handbags, pouches of leather, travelling bags |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| STARWALKER | 2,759,073 | 16 | Fountain pens, ball-point pens, pencils, felt-tip pens, rollerballs, gift cases for writing instruments |
|  | 3,659,753 | 16 | Writing instruments, namely, pens |
|  | 2,975,592 | 16 | Writing instruments |

**EXHIBIT E**

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| CARTIER | 759,201 | 14 | Watches and clocks |
| CARTIER | 759,202 | 14 | Articles of jewelry for personal wear, not including watches; and the following goods of solid or plated silverware-namely, table flatware and hollow-ware, toilet articles, candelabra, bonbon-cases, jewelry cases, ((crosses, rosaries, ))and buckles |
| CARTIER | 414,435 | 18 | Combination pocketbooks and shopping bags, wallets, billfolds, key cases, card cases, leather clock cases, traveling cases, and overnight bags, both fitted and unfitted |
| CARTIER | 414,604 | 16 | Writing and letter paper-namely, letterheads, correspondence cards, envelopes with and without return address, envelope openers, ink stands, desk sets,, desk pads, desk calendars, address books, writing cases, memorandum books, pads, and fountain pens |
| CARTIER | 758,858 | 16 | Lead-pencils, magazine lead-pencils and pen holders |
| *Cartier* | 3,832,004 | 18 | Leather and imitation leather goods, namely, suitcases, traveling bags, briefcases, wallets, change purses, clutch bags, handbags, chests in the nature of luggage and suitcases, sets of traveling bags, trunks and suitcases, skins; umbrellas; small leather bags in the nature of sleeves and pouches for merchandise packaging |
| *Cartier* | 2,801,764 | 16 | Books and magazines in the field of applied arts, art, horology, jewelry |
| CALIBRE DE CARTIER | 3,864,499 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches being jewellery, key rings of precious metal or coated therewith; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | jewellery |
| ROTONDE DE CARTIER | 3,418,630 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
| AGRAFE | 2,699,360 | 14 | Jewelry |
| ASTROTOURBILLON | 3,953,567 | 14 | Watches, chronometers, clocks; watchbands, cases of precious metal for watches; all the aforesaid goods of Swiss origin |
| BAIGNOIRE | 2,092,409 | 14 | Jewelry, precious stones, watches and clocks |
| BALLERINE | 3,059,210 | 14 | Timepieces and jewelry products, particularly cuff links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watchbands, boxes of precious metal for watches and jewelry |
| BALLON BLEU | 3,476,888 | 14, 16, 18, 25 | **14:** Goods in precious metals and coated therewith, namely, cuff-links, tie clips, rings being jewelry, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery<br><br>**16:** Pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, rollerball pens, document markers, writing brushes; sealing waxes; pouches, cases and boxes for writing instruments; inks for writing instruments and ink refills for writing instruments; note paper, writing paper, note pads, memo pads; name cards, envelopes, diaries; calendars; paperweights, erasers, pencil sharpeners, paper knives, pen and pencil holders; paintings, engravings<br><br>**18:** Leatherware, namely, briefcases, |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | travelling sets in the nature of sets of suitcases and travelling bags, vanity cases sold empty, key cases; goods made of leather and imitations of leather, not included in other classes, namely, attaché cases, wallets, handbags, backpacks, travelling bags, wheeled tote bags, trunks, suitcases, purses not of precious metal, credit and business card cases, pouches; bands of leather in the nature of leather straps for use with bags; umbrellas, parasols, walking sticks, whips and saddlery<br><br>**25:** Clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats and stoles, hosiery, jackets, pullovers, pajamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts, braces in the nature of suspenders, gloves, mufflers, sashes for wear, scarves, shawls, suspenders, ties, bow ties; boots, shoes and slippers, caps and hats |
| CABOCHON | 3,032,397 | 18 | Goods made of leather or imitation leather, not included in other classes particularly document cases, wallets, handbags, back packs, traveling bags, suitcases, trunks, and carrying cases for a wide variety of goods; saddlery |
| DIAMANTS LEGERS | 3,814,704 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches being jewellery, key rings, watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery, with all of the aforementioned goods featuring and/or incorporating diamonds |
|  | 2,322,769 | 14 | Watches |
|  | 2,436,100 | 14 | Watches |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | |
| HAPPY BIRTHDAY | 2,247,421 | 18 | Leather goods, namely, handbags, and travelling bags |
| HAPPY BIRTHDAY | 2,666,131 | 14 | Rings, clocks |
| HAPPY BIRTHDAY | 3,418,755 | 16 | Pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, rollerballs, pouches, cases and boxes for writing instruments; note paper, note pads, memo pads, diaries; paperweights, paper knives, pens and pencil holders |
| HIMALIA | 2,934,297 | 14 | Cuff-links, rings, bracelets, earrings, necklaces, brooches; chronometers, watches and clocks |
| INDE MYSTERIEUSE | 3,708,882 | 14 | Goods of precious metals or coated therewith, namely, cuff-links, key rings, tie clips, and jewelry, including rings, bracelets, earrings, necklaces, and brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
| L'OFFICIER | 3,906,980 | 18 | Leatherwear, namely, briefcases, traveling sets comprising luggage, unfitted vanity cases, key cases, goods made of leather and imitations of leather not included in other classes, namely, attaché-cases, wallets, handbags, shopping bags, belt bags, backpacks, travelling bags, wheeled bags, trunks, suitcases, purses not of precious metal, card cases, pouches of leather; bands of leather, umbrellas, parasols, walking sticks, whips and saddlery |
| LE CIRQUE ANIMALIER | 3,537,349 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; key rings of precious metal; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |

| Mark | Reg. No. | Int'l Class | Goods |
|------|----------|-------------|-------|
| L⊖VE | 3,637,776 | 14, 16, 18, 25 | **14:** Goods of precious metals and coated therewith, namely, cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, and key rings; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry<br><br>**16:** Money clips, pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, roller ball pens, document markers, pouches, cases and boxes for writing instruments, writing inks and pen ink refills, diaries, calendars, paperweights, paper knives, pen and pencil holders<br><br>**18:** Leatherware, namely, briefcases, traveling luggage sets, unfitted vanity cases, and key cases, goods made of leather and imitations of leather, namely, attache-cases, wallets, handbags, backpacks, traveling bags, wheeled bags, trunks, suitcases, purses, name card cases, credit card cases, and pouches; umbrellas<br><br>**25:** Clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats, hosiery, jackets, pullovers, pyjamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts, braces, gloves, mufflers, scarves, shawls, ties, bow ties, boots, shoes, slippers, caps, and hats |
| LOVE BRACELET | 1,005,286 | 14 | Jewelry-namely, bracelets |
| Love Bracelet Design | 3,776,794 | 14 | Jewelry, namely, rings, bracelets, charms, earrings, made of precious metals |
|  | 3,898,366 | 14 | Horologic and chronometric instruments, namely, watches |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
|  | | | |
| Pasha de Cartier | 3,557,455 | 14 | Jewelry and horological instruments |
| PASHA SEATIMER | 3,318,649 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
|  | 3,211,038 | 14 | Horologic and chronometric instruments, namely, watches |
|  | 3,208,458 | 14 | Horologic and chronometric instruments, namely, watches |
| SUPERSTITIONS | 3,956,751 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, jewellery, key rings of precious metal, watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
|  | 3,282,739 | 14 | Horologic and chronometric instruments, namely, watches |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
|  | 3,282,847 | 14 | Horologic and chronometric instruments, namely, watches |
| TRINITY | 1,927,987 | 14 | Jewelry made of precious metal or coated therewith |
| YOU'RE MINE | 3,133,225 | 14 | Cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, pendulum clocks, watchstraps, boxes of precious metal for watches and jewellery |

**EXHIBIT F**

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| A. LANGE & SOHNE | 2,430,848 | 14 | Watches, watch movements, watch cases, and watch bracelets |
| A. LANGE & SÖHNE | 1,723,054 | 14 | Watches and chronographics; watch movements; watch cases and watch bracelets |
| A. LANGE & SÖHNE | 3,071,207 | 14 | Cuff links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry |
| LANGE | 2,448,703 | 14 | Watches, watch movements, watch cases, and watch bracelets |
| 1815 | 2,837,595 | 14 | Chronometric instruments, namely, watches, watch bracelets |
| CABARET | 3,010,578 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
| DATOGRAPH | 2,364,492 | 14 | Chronometers, parts for chronometers and watch bands |
|  | 2,730,858 | 14 | Chronometers, chronographs for use as watches |
| DOUBLE SPLIT | 2,852,979 | 14 | Watches, clocks, chronographs for use as watches and chronometers |
| LANGE ZEITWERK | 3,835,352 | 14 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, key rings made of precious metal, watches, |

| Mark | Reg. No. | Int'l Class | Goods |
|---|---|---|---|
| | | | chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |
| TOURBOGRAPH | 2,410,312 | 14 | Chronometric instruments, namely, watches, watch bands and parts for watches |
| ZERO-RESET | 2,422,336 | 14 | Chronometers, namely, parts of watches |

**PROOF OF SERVICE**

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300. On February 27, 2012, I served a copy of the within document(s):

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS EUROMED INTERNATIONAL TRADING CO., LIMITED, ORIENT-ONLINE CO. LTD., RICHENONLINE CO., LTD, WIN INTERNATIONAL TRADE CCTRUE INTERNATIONAL TRADE CO., LTD., FANCYSALER TRADING CO., FUZHOU SUNSHINE TRADE CO., LTD., HENGTAI INTERNATIONAL, KK FASHION LOVE ZONE, LOVE IN APPAREL TRADE CO., LTD., MELCHIC INTERNATIONAL TRADE CO, .LTD., MYSTOCKWATCH CO., LTD., SEVEN STAR REPLICASS, SHANGHAI TAOLAN INTERNATIONAL TRADE LIMITED COMPANY, SINOESTAR CO., LTD, V52 INTERNATIONAL TRADE CO., LTD., WIN-WIN TRADE CO., LTD., and WWW.ECWATCH.NET    [FILED UNDER SEAL]

    ☒    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Laurence F. Pulgram, Esq.
lpulgram@fenwick.com
Tyler G. Newby, Esq.
tnewby@fewwick.com
Leslie A. Kramer, Esq.
lkramer@fenwick.com
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, California 94104

Omar Wohabe, Esq.
OWohabe@wlony.com
Wohabe Law Offices LLP
405 Lexington Avenue
53rd Floor
New York, New York 10174

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

1        I declare that I am employed in the office of a member of the bar of this court

2  at whose direction the service was made.

3        Executed on February 27, 2012, at Los Angeles, California.

4

5

6                              Diane Finegan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Proof of Service