LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
LESLIE A. KRAMER (CSB No. 253313)
lkramer@fenwick.com
SEBASTIAN E. KAPLAN (CSB NO. 248206)
skaplan@fenwick.com
DAVID C. MARTY (CSB NO. 273417)
dmarty@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendants and Counterclaimants
Sawabeh Information Services Co.,
TradeKey (Pvt) Ltd. *and* Defendants
Waleed Abalkhail and Junaid Mansoor

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHLOE SAS, a French Corporation; ALFRED DUNHILL LIMITED, a UK Corporation; OFFICINE PANERAI AG, a Swiss Corporation; and MONTBLANC-SIMPLO GMBH, a German Limited Liability Company; CARTIER INTERNATIONAL A.G., a Swiss Corporation; and LANGE UHREN GMBH, a German Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>SAWABEH INFORMATION SERVICES CO. (d/b/a "SISCOM", tradekey.com, saudicommerce.com, and B2Bfreezezone.com), a Saudi Arabian Corporation; TRADEKEY (PVT) LTD, a Pakistani Corporation; WALEED ABALKHAIL; JUNAID MANSOOR; BOSUN INTERNATIONAL TRADE CO.; CCTRUE INTERNATIONAL TRADE CO., LTD.; EUROMED INTERNATIONAL TRADING CO., LIMITED; FANCYSALER | Case No. 11-cv-04147 GAF (MANx)<br><br>**TRADEKEY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY JONES DAY AS COUNSEL FOR PLAINTIFFS, OR IN THE ALTERNATIVE, FOR DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      October 15, 2012<br>Time:     9:30 a.m.<br>Dept.:     Courtroom 740<br>Judge:    The Hon. Gary A. Feess |

TRADING CO.; FUZHOU SUNSHINE TRADE CO., LTD; HENGTAI INTERNATIONAL; JAMILAH MROUEH; KK FASHION LOVE ZONE; LOVE IN APPAREL TRADE CO., LTD.; MELCHIC INTERNATIONAL TRADE CO., LTD; MYSTOCK WATCH CO., LTD; ORIENT-ONLINE CO., LTD; PARK CO. LTD; RICHEN-ONLINE CO., LTD; SEASON-ONLINE CO., LTD; SEASON-ONLINE CO. LTD-ELAINE; SEVEN STAR REPLICASS; SHANGHAI TAOLAN INTERNATIONAL TRADE LIMITED COMPANY; SINOESTAR CO., LTD; SUPEROCEANS CO., LTD.; V52 INTERNATIONAL TRADE CO., LTD; VERTEX ONLINE CO., LTD.; WIN INTERNATIONAL TRADE; WIN-WIN TRADE CO., LTD.; WWW.ECWATCH.NET; YONGCHUANG TRADE CORP; ZHONGSHENG TRADE CO., LTD; and JOHN DOES 1 through 20 inclusive,

Defendants.

SAWABEH INFORMATION SERVICES CO., a Saudi Arabian Corporation; TRADEKEY (PVT) LTD, a Pakistani Corporation,

Counterclaimants,

v.

COMPAGNIE FINANCIERE RICHEMONT S.A., a Swiss Corporation; CHLOE SAS, a French Corporation; ALFRED DUNHILL LIMITED, a UK Corporation; OFFICINE PANERAI AG, a Swiss Corporation; and MONTBLANC-SIMPLO GMBH a German Corporation; LANCE ELIOT SLOVES, an individual, COMPUTER FORENSIC SERVICES, INC., a Texas corporation, JONES DAY, and Does 1 Through 10 Inclusive,

Counterclaim Defendants.

TRADEKEY DEFENDANTS' MOTION TO DISQUALIFY, OR FOR DISCOVERY

CASE NO. 11-cv-04147 GAF (MANx)

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................... **Error! Bookmark not defined.**

BACKGROUND ..................................................... **Error! Bookmark not defined.**

    A.    AlSulaim's Representation of Defendants SISCOM and Abalkhail**Error! Boo**

    B.    Jones Day's Relationship with the AlSulaim Firm**Error! Bookmark not defi**

    C.    Jones Day Failed to Notify SISCOM and Mr. Abalkhail Prior to
        Taking Adverse Action Against Them **Error! Bookmark not defined.**

    D.    Meet and Confer Efforts With Jones Day Regarding the Conflict**Error! Book**

ARGUMENT.......................................................... **Error! Bookmark not defined.**

I.    AlSulaim and Jones Day Are Treated as Same Entity for Purposes of
    Analyzing Their Duties and Conflicts of Interest**Error! Bookmark not defined.**

II.    Jones Day Has Breached Its Duty of Loyalty to Existing Clients SISCOM
    and Abalkhail and is Subject to Automatic Disqualification**Error! Bookmark not d**

    A.    Concurrent Representation of Direct Adversaries Requires Automatic
        Disqualification ................................... **Error! Bookmark not defined.**

    B.    Jones Day Has Been Adverse to SISCOM and Abalkhail While
        Concurrently Representing Them Through its Saudi Affiliate**Error! Bookma**

III.    The TradeKey Defendants Are, in the Alternative, Entitled to Limited
    Discovery on the Facts Related to Jones Day's Conflict of Interest**Error! Bookmar**

CONCLUSION....................................................... **Error! Bookmark not defined.**

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TRADEKEY DEFENDANTS' MOTION TO
DISQUALIFY, OR FOR DISCOVERY

CASE NO. 11-cv-04147 GAF (MANx)

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Abubakar v. County of Solano*,
   No. Civ. S-06-2268, 2008 WL 336727 (E.D. Cal. Feb. 4, 2008) ...................... 19

5

6
*Beltran v. Avon Products, Inc.*,
   2:12-CV-02502-CJC, 2012 WL 2108667 (C.D. Cal. June 1, 2012) ........... 14, 15

7

8
*City & Cnty. of San Francisco v. Cobra Solutions, Inc.*,
   38 Cal. 4th 839, 135 P.3d 20 (2006) .................................................. 15

9

10
*Concat LP v. Unilever, PLC*,
   350 F. Supp. 2d 796 (N.D. Cal. 2004) ........................................... 16, 19

11

12
*Flatt v. Superior Court*,
   9 Cal. 4th 275, 885 P.2d 950 (1994) ..........................................passim

13

14
*Gomez v. Vernon*,
   255 F.3d 1118 (9th Cir. 2001) .......................................................... 13

15

16
*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
   820 F. Supp. 1212 (N.D. Cal. 1993) .................................................. 15

17
*In re County of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ............................................................ 12

18

19
*In re Mortgage & Realty Trust*,
   195 B.R. 740 (Bankr. C.D. Cal. 1996) .............................................. 13

20

21
*Merck Eprova AG v. ProThera, Inc.*,
   670 F. Supp. 2d 201 (S.D.N.Y. 2009) ................................................ 19

22

23
*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*,
   36 Cal. App. 4th 1832, 43 Cal.Rptr. 2d 327 (1995) ............................ 16

24

25
*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
   69 Cal. App. 4th 223, 81 Cal. Rptr. 2d 425 (1999) ............................. 20

26

27
*Mustang Enterprises, Inc. v. Plug-In Storage Sys., Inc.*,
   874 F. Supp. 881 (N.D. Ill. 1995) ...................................................... 14

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*People v. SpeeDee Oil Change Systems,*
   20 Cal. 4th 1135, 980 P.2d 371 (Cal. 1999) ...................................... 12, 14, 15, 18

*Responsible Citizens v. Sup. Ct.,*
   16 Cal. App. 4th 1717, 20 Cal.Rptr.2d 756 (1993) ............................................. 18

*State Compensation Ins. Fund v. WPS, Inc.,*
   70 Cal. App. 4th 644, 82 Cal. Rptr. 2d 299 (1999) ............................................ 13

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.,*
   6 Cal. App. 4th 1050, 8 Cal. Rptr 2d 228 (Cal. App. 1992) ........................ 15, 19

*Unified Sewerage Agency of Washington Cnty., Or. v. Jelco Inc.,*
   646 F.2d 1339 (9th Cir. 1981) .................................................................... 19

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.,*
   580 F.2d 1311 (7th Cir. 1978) .................................................................... 13

*Williams v. Reed,*
   29 Fed. Cas. 1386, 1390 (C.C.C. Me. 1824) ..................................................... 16

**OTHER AUTHORITIES**

ABA Formal Ethics Op. 84-351 ............................................................................. 2, 3

ABA Formal Op. 84-351 .................................................................................. 13, 14

California Rule of Professional Conduct 1-100 .................................................... 15

**CIVIL LOCAL RULES**

83-3.1.2 .................................................................................................................. 15

7-3 .......................................................................................................................... 9

**FEDERAL RULES OF CIVIL PROCEDURE**

16 ........................................................................................................................... 21

26(f) ....................................................................................................................... 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TRADEKEY DEFENDANTS' MOTION TO
DISQUALIFY, OR FOR DISCOVERY

CASE NO. 11-cv-04147 GAF (MANx)

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 15, 2012, at 9:30 a.m., or as soon thereafter as counsel may be heard, Defendants Sawabeh Information Services Co. ("SISCOM") and Tradekey (Pvt) Ltd., and Waleed Abalkhail (appearing specially) (together, the "Defendants" or "TradeKey Defendants")[1] will and hereby do move the Court to disqualify Jones Day as counsel for Plaintiffs in the above-captioned matter, or in the alternative, to permit limited discovery over the facts in exclusive possession of Jones Day related to conflicts raised by its prior and concurrent representation of both Plaintiffs and Defendants SISCOM and Abalkhail.  The TradeKey Defendants seek this disqualification on the grounds that an unwaived conflict of interest precludes Jones Day's continued representation of Plaintiffs adverse to the TradeKey Defendants.  Defendants' Motion is based upon: this Notice of Motion and Motion to Disqualify; Defendants' Memorandum of Points and Authorities in Support of this Motion to Disqualify; the Declaration of Waleed Abalkhail in Support thereof; the Declaration of Laurence Pulgram in Support thereof; the pleadings and records on file in this action; and such further facts and argument as may be presented prior to or at the hearing.  Pursuant to Local Civil Rule 7-3, this motion is made following the conference of counsel which took place on September 5, 2012.

Dated:  September 17, 2012

FENWICK & WEST LLP

By: _____
Laurence F. Pulgram

Attorneys for Defendants and Counterclaimants Sawabeh Information Services Co., TradeKey (Pvt) Ltd. *and* Defendants Waleed Abalkhail and Junaid Mansoor

---

[1] Defendant Waleed Abalkhail, appearing specially, joins this motion without waiver of any issues regarding personal jurisdiction.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

From the founding of Defendant Sawabeh Information Services Co. ("SISCOM") in 2003, through the initiation of this action in 2011, SISCOM and its founder, Waleed Abalkhail (the "Clients"), have used one of the leading law firms in Saudi Arabia, AlSulaim AlAwaji & Partners, International Law Firm ("AlSulaim") as their general outside counsel.  During that time, AlSulaim practiced as an affiliate in association with counsel for Plaintiffs in this action, Jones Day.  Both AlSulaim and Jones Day represented and continue to represent, to clients and the public, that they practice "in association with" each other and share common attorneys.  While actively representing the Clients in 2011, AlSulaim and Jones Day publicly announced that they had joined together to open and/or share three offices across Saudi Arabia, including the Riyadh office that had incorporated and serviced SISCOM.

Nonetheless, without ever terminating the Clients' representation—and contrary to Saudi Arabian law precluding a lawyer from acting adverse to any client for three years even after termination—Plaintiffs and Jones Day engaged in a secret investigation of its Clients, and then filed his action against them in May 2011. Further, despite its Saudi associates' longstanding allegiance to the Clients, Jones Day misrepresented to the Court in applying for an *ex parte* seizure order that the Clients could not be trusted in legal matters, and that giving the Clients prior notice of the lawsuit would result in the "immediate disappearance, deletion and/or destruction" of evidence. (Dkt. 7, at 7:22 – 8:6).  That misstatement was flatly inconsistent with Jones Day's duty of loyalty to the Clients.  It was also inconsistent with the knowledge of the lawyers who had incorporated SISCOM and had been representing it for the better part of a decade, but with whom conflicts and veracity apparently were never checked.  That misstatement, however, was the keystone to Plaintiffs' executing, without notice, the highly damaging shutdown of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the Clients' websites and the indiscriminate, wholesale copying of all of the Clients' and their customers' records and electronic communications.

Under these facts, the law provides for the "automatic" disqualification of Jones Day as counsel for Plaintiffs, given that firm's concurrent representation of the Clients. When a firm affiliates itself with another firm, and chooses to communicate that fact widely to its clients and the public, as Jones Day and AlSulaim have done, "there is no practical distinction between the relationship of affiliates under that arrangement and the relationship of separate office in a law firm." ABA Formal Ethics Op. 84-351. The duties and conflicts of AlSulaim are fully imputable to Jones Day.

Furthermore, as Plaintiffs' recent jurisdictional discovery motions have shown, the representation of the Clients included matters substantially related to this action. In establishing SISCOM and then acting as its sole general counsel for nearly a decade thereafter, AlSulaim obtained confidential information regarding the ownership, management, and organization of SISCOM—the very information as to which Plaintiffs are now seeking discovery and attempting to use against the Clients in this action. Worse, Jones Day has already demonstrated that it is able to obtain, and has obtained, access to confidential information learned by its Saudi affiliate relating to its work on potential restructuring of SISCOM's ownership in TradeKey PVT during 2011.

Having failed to obtain consent to proceed in the face of this conflict – and, apparently having failed even to check conflicts before filing the action – Jones Day should be disqualified. Alternatively, to the extent that Jones Day disputes the nature of its association with AlSulaim, the interests of justice require discovery of those facts, which, except as publicly disclosed, are in the exclusive possession of Jones Day/AlSulaim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## BACKGROUND

In August 2012, Counsel for Defendants first learned of documents revealing that, concurrently with Plaintiffs' investigation and prosecution of this action against the TradeKey Defendants, Jones Day was holding itself out as associated with the Saudi Arabian law firm, AlSulaim AlAwaji & Partners, that was acting as outside counsel for Defendants SISCOM and Waleed Abalkhail (the "Clients"). Declaration of Laurence Pulgram ("Pulgram Decl."), ¶ 2.  Defendants investigated the relationship between Jones Day and AlSulaim, as well as the attorney-client relationship between AlSulaim and the Clients.  That investigation has revealed not only that AlSulaim had been representing SISCOM and Mr. Abalkhail at the time Jones Day was simultaneously investigating and then filing this action, but also that—despite the denials of Jones Day—the nature of its affiliation with AlSulaim requires attribution of that affiliate's conflicts to Jones Day, precluding Jones Day's participation in this lawsuit.

### A.     AlSulaim's Representation of Defendants SISCOM and Abalkhail

In May of 2003, Defendant Waleed Abalkhail engaged attorneys in the Riyadh office of the prominent Saudi law firm AlSulaim AlAwaji & Partners, International Law Firm – aka International Law firm – (here, "AlSulaim") to establish and incorporate Sawabeh Information Services Co. (*i.e.*, now-Defendant SISCOM) and to provide advice regarding SISCOM's operations, finances, and management.  Declaration of Waleed Abalkhail ("Abalkhail Decl.") ¶ 2.[2]  Because SISCOM had not yet established any corporate accounts, AlSulaim invoiced Mr. Abalkhail personally for the costs associated with the formation of SISCOM in late May of 2003.  *Id.* ¶ 3, Exs. 1, 2; Pulgram Decl. ¶¶ 5, 6, Exs. 1, 2.[3]

---

[2] SISCOM was set up to continue an IT business first established in 1989.  *Id.*

[3] Mr. Abalkhail's declaration attaches the original Arabic versions of documents related to the AlSulaim representation of SISCOM. The Pulgram declaration contains side-by-side certified English-Arabic translations of the same documents. The certificate of translation is attached as Exhibit 8 to the Pulgram Declaration.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Since its formation, SISCOM has continued to use AlSulaim as its sole

2    outside counsel in Saudi Arabia.  Abalkhail Decl. ¶ 4.  Throughout this time, Mr.

3    Abalkhail's primary contact at the firm has been Osama AlSulaim, one of the firm's

4    name partners.  *Id.*  Mr. Abalkhail, in his personal capacity and on behalf of

5    SISCOM, communicated with Mr. AlSulaim dozens of times telephonically and at

6    the AlSulaim office during the intervening years, seeking legal advice about

7    numerous confidential matters, including the business operations, finances,

8    investments, and management of SISCOM and its related entities.  *Id.*

9    As recently as January of 2011—while Plaintiffs were already conducting

10   their extensive investigation of Defendants Tradekey, SISCOM, Abalkhail, and

11   Mansoor[4]–SISCOM and Mr. Abalkhail sought AlSulaim's assistance in the

12   formation of an additional entity, Amhar Investment Co. Ltd.  ("Amhar").

13   Abalkhail Decl. ¶ 5, Exs. 4; Pulgram Decl. ¶ 8, Ex. 4.  Amhar was created for the

14   purpose of restructuring SISCOM's investment in Defendant TradeKey (Pvt).

15   Abalkhail Decl. ¶ 5.  AlSulaim received confidential information about this subject

16   and advised the Clients on legal matters concerning it.  *Id.*  AlSulaim invoiced

17   SISCOM for fees arising from that work, and that invoice was paid from a

18   SISCOM account on January 16, 2011.   Abalkhail Decl.  ¶¶ 5-6, Exs. 5, 6; Pulgram

19   Decl. ¶¶ 9-10, Exs. 5, 6.  On January 17, 2011, AlSulaim wrote SISCOM to request

20   additional information needed in connection with further work AlSulaim was

21   continuing to perform in connection with the formation of Amhar.  Abalkhail Decl.

22   ¶ 6, Ex. 7; Pulgram Decl. ¶ 11, Ex. 7.  AlSulaim received additional information

23   and continued to perform services thereafter.  Abalkhail Decl. ¶6.

24   Neither SISCOM nor Mr. Abalkhail has ever received from AlSulaim (or

25

26   [4] Plaintiffs have acknowledged that their investigation began in May of 2010 and
     continued actively for the following year before filing suit in May of 2011. *See*
27   Declaration of Rob Holmes in Support of *Ex Parte* Application for a Temporary
     Restraining Order, Seizure Order, and Order to Show Cause, et seq., Dkt. 21, ¶ 4.
28

TRADEKEY DEFENDANTS' MOTION TO
DISQUALIFY, OR FOR DISCOVERY                    4              CASE NO. 11-cv-04147 GAF (MANx)

Jones Day) any indication that their decade-long attorney-client relationship with AlSulaim had terminated.  Abalkhail Decl. ¶ 7.  AlSulaim has retained the Clients' files and records.  *Id.*  Mr. Abalkhail believed that AlSulaim always remained his and SISCOM's counsel.  *Id.*  Likewise, at no time before or after the May 2011 filing of this lawsuit did Jones Day or AlSulaim notify SISCOM or Mr. Abalkhail of the conflict of interest resulting from Jones Day's representation of Plaintiffs in this case.  *Id.* ¶ 9.  Had such notice been provided, neither SISCOM nor Mr. Abalkhail would have authorized a waiver of the conflict.  *Id.* ¶ 9.

### B.    Jones Day's Relationship with the AlSulaim Firm

As far back as the time of AlSulaim's work on the incorporation of SISCOM, AlSulaim identified itself, both to its clients and to the public, as operating "In Association with Jones Day."  This phrase appeared immediately adjacent to AlSulaim's own name on formal invoices and communications with SISCOM and Mr. Abalkhail dating back to as early as May of 2003, and as recently as January of 2011.[5]  Abalkhail Decl. Exs. 1, 3, 7; Pulgram Decl. ¶¶ 5, 7, 11, Exs. 1, 3, 7. AlSulaim presently displays the phrase "Operating in Association with Jones Day" prominently on its public website, immediately adjacent to its own name in the same sized font.  *See* Pulgram Decl. ¶ 13, Ex. 9.  Also on the main page of its public website, AlSulaim displays the following message to visitors about its relationship with Jones Day:

> In order to ever increasing complexity [sic] of our client's requirements and to achieve the firm's expansion goals, we have associated with one of largest law firms in the world, Jones Day. This association between the two Firms reflects is [sic] a shift in the legal profession in the Kingdom of

---

[5] Jones Day's website and January 2011 press release refers to "re-establishing" a relationship with AlSulaim on January 1, 2011." Pulgram Decl. Ex. 11.  The same document refers to having "worked closely for many years" with AlSulaim before then.  *Id.*  Whatever the relationship between the firms at other times between 2003 and 2011, the record is clear that in 2003, 2004, and 2011 Jones Day was practicing "in association with" AlSulaim. *Id.* Ex. 1, 3, 7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Saudi Arabia, and will enable us to provide world class services in all
2   legal disciplines, including project finance, mergers and acquisitions,
3   conflict resolution, restructuring and intellectual property. Jones Day was
    established in 1893 and now have 38 locations worldwide.
4   http://www.jonesday.com

5   *Id.*

6       Jones Day, for its part, promotes the association in equal terms.  Its public

7   website states that "Jones Day practices in the Kingdom [of Saudi Arabia] in

8   association with Alsulaim Alawaji & Partners Law Firm, a Saudi firm established

9   in 1990 and with which Jones Day has worked closely for a number of years."

10  Pulgram Decl. ¶ 14, Ex. 10.  A press release from January of 2011, available on the

11  Jones Day website, announces the January 1, 2011 opening of the shared Jones

12  Day-AlSulaim office in Riyadh, and the pending opening of two further shared

13  offices in Jeddah and Alkhobar, to occur later in 2011.  Pulgram Decl. ¶ 15, Ex. 11

14  ("Opening associate offices in Riyadh, Jeddah and Alkhobar is a natural next step

15  as we seek to serve our clients' needs").  The press release states that "[t]hese

16  openings will bring the total number of Jones Day locations worldwide to 37."  *Id.*

17      Jones Day has publicly represented that it would practice in association with

18  AlSulaim to better service their clients in Saudi Arabia and globally.  Yusuf

19  Giansiracusa was an AlSulaim partner who was appointed by Jones Day as "partner

20  in charge" of the Riyadh office upon its January 1, 2011 opening.  *Id.*  Jones Day's

21  2011 press release quotes Giansiracusa as stating: "I am delighted to be back at

22  Jones Day and pleased that ***the Saudi clients I have represented for many years***

23  ***will have the benefit of the sophisticated legal services that Jones Day can offer*** in

24  key business centers around the world."  *Id.* (emphasis added).[6]  In a February 2012

---

25  [6] Like a number of other AlSulaim attorneys, Mr. Giansiracusa had, prior to joining
26  AlSulaim, worked at Jones Day.  Pulgram Decl. ¶ 27, Ex. 24. Named partner
    Ghassan Ibrahim Al Awaji previously "practiced with Jones Day, in Washington,
27  D.C."  *Id.*  AlSulaim's attorney Vernon A.A. Cassin "was a partner with the firm of
    Jones, Day, Reavis and Pogue from 1988 – 2001 and was the firm's Partner-in-
28  Charge in Riyadh."  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

press release, Jones Day writes, "The strategic alliance between Jones Day […] and Alsulaim Alawaji will provide ***Saudi clients and foreign clients doing business in the Kingdom seamless access*** to resources around the globe."  Pulgram Decl. ¶ 16, Ex. 12 (emphasis added).  Similarly, Jones Day's partner in charge in Jeddah, Mr. Habib, emphasized the intent of the associated firms to serve joint clients internationally and locally:

> We are very excited to join with Alsulaim Alawaji across the Kingdom. Jones Day has a long history in Saudi Arabia and together we are delighted to be able to serve our clients here both for their work in the Kingdom and their international ventures. We are also very pleased to be able to serve our clients from around the world who have investments and operations in this very important economy.

Pulgram Decl. ¶ 20, Ex. 16.

In addition to the Jones Day and AlSulaim firms' statements about their affiliation, other publicly available information shows the integration of the firms' presence in Saudi Arabia.  Jones Day's website identifies a "partner in charge" of each of the three shared Saudi offices.  *Id.* ¶ 14, Ex. 10.  Each of these three partners – Mr. Giansiracusa, Mr. Habib, and Oliver Passavant – appear on the AlSulaim website's page entitled  "Our Attorneys," which links directly to bios on Jones Day's website.  *Id.* ¶ 18-19, Exs. 14, 15.  AlSulaim's "Our Attorneys" page presently depicts and names seven current Jones Day attorneys (*id.*) while other AlSulaim attorneys are identified as formerly Jones Day. *See* n. 6, *supra.*  Further, each of Jones Day's three offices in Saudi Arabia share addresses with the AlSulaim firm.  Compare *id.* ¶ 14, Ex. 10 and  *id.* ¶ 17, Ex. 13.  Jones Day and AlSulaim also share identical P.O. Boxes at two of those three offices and likewise share the same phone numbers at two of those addresses.  Compare *id.* ¶ 14, Ex. 10 and *id.* ¶ 17, Ex. 13.  Jones Days' stated desire to enter three markets in Saudi Arabia (*id.* Ex. 11) resulted in AlSulaim opening new offices.  *Id.* ¶ 20, Ex. 16.  As Osama AlSulaim put it, "The opening of the Jeddah office with Jones Day is part of

our company's development plan. This plan extends our wide range of services by taking the advantage of Jones Day's expertise." *Id.* (also explaining that AlSulaim "opened a new office in Alkhobar").

### C. Jones Day Failed to Notify SISCOM and Mr. Abalkhail Prior to Taking Adverse Action Against Them

Despite the longstanding attorney-client relationship between the Clients and Jones Day's Saudi affiliate, neither Plaintiffs nor Jones Day gave notice to the Clients before initiating this action with an *ex parte* seizure that took SISCOM's business offline for a day, and its TradeKey PVT subsidiary's business offline for several days.  In fact, despite conducting a lengthy investigation, neither Jones Day nor Plaintiffs ever utilized Defendants' available notice procedure to assert purported infringement by TradeKey members, or to request removal of purportedly infringing members' listings.  Plaintiffs premised the need to obtain extraordinary relief without notice on a misrepresentation to the Court that SISCOM was likely to destroy evidence.  *See Ex Parte* Application for a Temporary Restraining Order, Seizure Order, and Order to Show Cause, et seq., Dkt. 7.  This is an allegation that Jones Day knew or should have know was not true by virtue of the past and concurrent representation of the Clients through their Saudi affiliate.

In addition, during the course of jurisdictional discovery, Plaintiffs have sought information directly related to the legal services Jones Day's Saudi affiliate performed for SISCOM and Mr. Abalkhail in establishing SISCOM, its ownership structure and related companies. Pulgram Decl. ¶ 25, Ex. 21 (Document Requests 3, 5).  On behalf of Plaintiffs, Jones Day has filed two motions to compel production of information identifying the management and ownership structure of SISCOM of TradeKey.  Dkt. 370 at 29, 31-32 (seeking documents on the corporate structure and management of SISCOM).  Plaintiffs have insisted that the ownership and organizational structure of SISCOM and TradeKey are both relevant to establishing

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

this Court's personal jurisdiction over Mr. Abalkhail (and Mr. Mansoor), and are relevant to SISCOM's purported liability for activity on TradeKey.com. *Id.*; First Amended Complaint, Dkt. 153, at ¶¶ 9, 15 (alleging that Mr. Abalkhail is personally liable by virtue of his ownership and management stakes in SISCOM); Plaintiffs' Opposition to Defendant Waleed Abalkhail and Junaid Mansoor's Motion to Dismiss, Dkt. 250 at 6, 21 (alleging that Mr. Abalkhail's ownership and management stakes in SISCOM subject him to this Court's jurisdiction and to personal liability).

### D.   Meet and Confer Efforts With Jones Day Regarding the Conflict

On August 20, 2012, counsel for Defendants notified Jones Day in writing of Defendants' belief that AlSulaim's duties and conflicts were attributable to Jones Day by virtue of their close association, and that Jones Day should accordingly withdraw from its representation of Plaintiffs in this matter.  Pulgram Decl. ¶ 21, Ex. 17.  Mr. John Edwards of Jones Day responded on September 5 that he had obtained information about various aspects of AlSulaim's representations of SISCOM and Mr. Abalkhail, and acknowledged that AlSulaim had represented SISCOM from 2003 to at least 2005.  *Id.*, ¶ 22, Ex. 18.  Mr. Edwards claimed, however, that the representation of SISCOM had "ended" in 2005, without stating how, and that the firm's services regarding Amhar, though paid for by SISCOM in 2011, were provided to Mr. Abalkhail (whom Plaintiffs have also sued), not SISCOM.  *Id.*  Mr. Edwards also claimed that, although Jones Day practices "in association with" AlSulaim, they were "separate entities."  *Id.*  Contrary to the public statements quoted above, Mr. Edwards' letter to Defendants asserted that Jones Day had "separate clients" and that "No Jones Day lawyer is a partner in AlSulaim, and vice versa."  *Id.; see* Pulgram Decl. Exs. 14, 15 (listing three Jones Day partners as "Our Attorneys" at AlSulaim).

A Rule 7-3 meet and confer call respecting this motion occurred later on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

September 5, 2012 between Mr. Edwards and counsel for Defendants.[7]  In that call,
Jones Day left any claim of purported independence unsubstantiated.  Mr. Edwards
was unable to provide answers to any of the following questions, responding in
each case that he simply did not know the answer:  (1) whether there is any
business entity in which Jones Day and AlSulaim share ownership, control, or
revenues; (2) whether Jones Day and AlSulaim share expenses, employees,
computer systems, and/or office costs in their Saudi offices; (3) whether Jones Day
conducted a conflicts check with AlSulaim before undertaking its current
representation of Plaintiffs; (4) whether Jones Day has ever conducted a conflicts
check with AlSulaim with regard to any client or matter; (5) whether any AlSulaim
attorney has ever represented or performed work for Plaintiffs in this or any matter;
and (6) whether there had been any termination of the AlSulaim's representation of
Mr. Abalkhail or SISCOM after January 2011.  *Id.* ¶ 23 and Ex. 19.

At the request of counsel for Defendants, Mr. Edwards agreed during that
September 5 conversation that he would look further into these questions.  *Id.*
Counsel for Defendants sent a follow up letter to Mr. Edwards listing these same
questions for his further consideration.  *Id.*  Mr. Edwards' eventual substantive
reply on September 10 provided answers to none of them.  *Id.* ¶ 24, Ex. 20.
Instead, Mr. Edwards' reply asserted that AlSulaim's work on Amhar was
completed in December 2010—apparently asserting that this particular work began
and ended before Jones Day's integration with AlSulaim into shared offices
beginning January 1, 2011.  *Id.* That assertion, too, is not consistent with the written
record. AlSulaim, in association with Jones Day, continued performing work on
Amhar on and after January 17, 2011.  Abalkhail Decl. Ex 7;  Pulgram Decl. Ex. 7.

Defendants' counsel also inquired on September 5 as to whether Jones Day
had made any effort to prevent the sharing of confidential information about the

[7] Jones Day declined to conduct the Rule 7-3 call earlier.  This motion is being filed
the first court day more than 10 days thereafter.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Clients by AlSulaim lawyers. *Id.* ¶ 23, Ex. 19. In response, Jones Day has not identified any attempt to erect any wall or procedure to protect the Clients' confidences. *Id.* Exs. 18, 20. This is despite the fact that one of Jones Day's partners in charge of its Saudi Arabian offices, Fahad Habib, is a litigator whom Jones Day's website lists as also practicing in the same Washington, D.C. office in which Plaintiffs' counsel is resident. *Id.* ¶¶ 18, 19, Exs. 14, 15. Worse, Mr. Giansiracusa, Jones Day's partner in charge of the Riyadh office, not only continues to work in the same office with Mr. Osama AlSulaim and those who performed the work for the Clients, he was himself apparently a member of the AlSulaim firm when those services were performed. *Id.* ¶27, Ex. 23

Further, although Mr. Edwards declined to provide most information that Defendants requested relevant to the existence of a conflict, he was quickly able to obtain from the attorneys at AlSulaim/Jones Day other facts about that firm's representation of the Clients– including non-public information relating to work on the ownership of SISCOM and TradeKey, as well the purported nature of certain work that the firm had performed for the Clients previously. *Id.* ¶ 24, Ex. 20; Abalkhail Decl. ¶¶ 5-7 (describing non-public information obtained by Jones Day).

<u>**ARGUMENT**</u>

### I. AlSulaim and Jones Day are Treated as Same Entity for Purposes of Analyzing their Duties and Conflicts of Interest

Jones Day has not yet disclosed the contractual terms that define its association with AlSulaim. Regardless, even without that disclosure, Jones Day and AlSulaim present themselves to and are perceived by their clients and the public as a combined entity serving their Saudi clients. This is no accident. Jones Day and AlSulaim intentionally presented an integrated offering to their clients, establishing shared offices and representing their ability to provide client services seamlessly and in combination. For purposes of determining their ethical obligations to clients, the law treats them as the same entity.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

This Court applies California State law on the imputation of duties, conflicts, and disqualification. *In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000). Under California law, duties and conflicts are imputed between attorneys and firms that hold themselves out to the public as closely associated. The California Supreme Court stated this rule without ambiguity: "[c]lients, and the public, should expect confidentiality and loyalty from attorneys who effectively declare they practice law in a close, personal, and continuing association." *People v. SpeeDee Oil Change Systems,* 20 Cal. 4th 1135, 1139, 980 P.2d 371, 374 (Cal. 1999). *SpeeDee Oil* considered the question of imputation of duties between a firm and an "of counsel" attorney associated with the firm. But it was not the title – "of counsel" – that influenced the Court. Rather it was the nature of the relationship that the title suggested to the public: a "close, personal, and continuing association." *Id.*

The Jones Day-AlSulaim relationship is sufficiently close and continuing as to impute AlSulaim's ethical obligations to the Clients to Jones Day. This affiliation is not a routine referral relationship. These attorneys practice together under the same roof, providing local and international services for the same clients, and presumably sharing costs. As discussed above, Jones Day has represented its association with AlSulaim as early as 2003, and has, in recent years, chosen to share physical offices, mailboxes, phone numbers, websites, and, by all appearances, attorneys with AlSulaim. The associated firms have opened new offices together where none previously existed. Jones Day has described itself as having worked "closely" with AlSulaim for many years, having "joined" to serve all needs of clients and described their relationship as one that "affords our Saudi clients seamless access to substantial resources wherever needed." Pulgram Decl. Ex. 12. This close, ongoing relationship is the type that, by *SpeeDee Oil's* reasoning, requires imputation of ethical obligations.

In an authoritative opinion of its Committee on Ethics and Professional

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Responsibility, the American Bar Association states that law firms that advertise themselves as practicing in association with one another must not be adverse to each other's clients:

> When a law firm lists another as 'affiliated' or 'associated' with it, potential clients of the listing firm are led to believe that lawyers with the 'affiliated' or 'associated' firm are available to assist in the representation, at least in matters that the designation may describe. The client ordinarily also expects that lawyers of the 'affiliated' or 'associated' firm will not simultaneously represent persons whose interests conflict with the client's interests…

ABA Formal Op. 84-351.[8] The Ethics committee recognized that under such circumstances, the firms should be treated as a single entity for the purposes of determining duties and conflicts:

> When a firm elects to affiliate or associate another with it and to communicate that fact to the public and clients, there *is no practical distinction between the relationship of affiliates under that arrangement and the relationship of separate offices in a law firm*.[9]  Under both the Model Rules and the Model Code, the Committee would ordinarily apply the same analysis to both arrangements to determine when the firms have a disqualifying conflict of interest treating the 'affiliated' or 'associated' firms

[8] Both the Ninth Circuit and the California appellate courts have cited Formal Opinions of the ABA's Committee on Ethics and Professional Responsibility as collateral authority on matters of professional responsibility. *See, e.g., Gomez v. Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001); *State Compensation Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656, 82 Cal. Rptr. 2d 299, 807 (1999) ("[T]he ABA Model Rules of Professional Conduct *may* be considered as a collateral source, particularly in areas where there is no direct authority in California and there is no conflict with the public policy of California.") (emphasis in original).

[9] Separated offices in a firm are treated as the same entity, and duties and conflicts are fully imputable between them. *In re Mortgage & Realty Trust*, 195 B.R. 740, 755 (Bankr. C.D. Cal. 1996) ("The imputation rule disqualifies all offices of a law firm."); *see also Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1321 (7th Cir. 1978) ("there is no basis for creating separate disqualification rules for large firms even though the burden of complying with ethical considerations will naturally fall more heavily upon their shoulders.")

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

for this purpose as a single firm.

*Id.* (emphasis added); *see also Beltran v. Avon Products, Inc.*, 2:12-CV-02502-CJC, 2012 WL 2108667, at *11 (C.D. Cal. June 1, 2012) (imputing conflicts from conflicted firm to associated firm and disqualifying associated firm where associated firm's involvement in the case would "taint the appearance of probity and fairness of the proceedings"); *Mustang Enterprises, Inc. v. Plug-In Storage Sys., Inc.*, 874 F. Supp. 881, 889-90 (N.D. Ill. 1995) *supplemented*, 94 C 6263, 1995 WL 55226 (N.D. Ill. Feb. 8, 1995) (following ABA Formal Op. 84-351, holding that affiliated firms should be treated as separate offices of the same law firm for conflict-of-interest purposes). Jones Day's operation through associated offices in Saudi Arabia should be treated for conflict purposes like any other office of the firm.

In determining whether an attorney should be disqualified from representation, the "the paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *SpeeDee Oil,* 20 Cal. 4th at 1145, 980 P.2d at 378. As the California Supreme Court stated, "[a]n attorney's duty of loyalty to a client is not one that is capable of being divided . . . ." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283, 885 P.2d 950, 955 (1994). Jones Day's proceeding against long-standing clients of its associated lawyers undermines the integrity of the bar and public trust in their legal counsel. Clients in this country and abroad are entitled to rely on the principle that, when their counsel actively promote their integration into a worldwide firm, that firm will not turn upon them. Otherwise, no client in an increasingly global legal services market would be assured that their counsel's designated associates would not simultaneously act against them.

In these circumstances, AlSulaim's duties and conflicts attach to Jones Day for the purpose of analysis of its duties to the Clients.

## II. Jones Day Has Breached Its Duty of Loyalty to Existing Clients SISCOM and Abalkhail and is Subject to Automatic Disqualification

### A. Concurrent Representation of Direct Adversaries Requires Automatic Disqualification

The imputation of AlSulaim's conflicts to Jones Day establishes concurrent representation of adverse parties, requiring Jones Day's disqualification under applicable law.

Attorneys practicing before this Court must comply with the standards of professional conduct required of members of the California State Bar, including the California Rules of Professional Conduct and relevant opinions of California courts. Central District of California Local Rule 83-3.1.2; California Rule of Professional Conduct 1-100. This Court applies state law in determining motions to disqualify counsel. *Beltran,* 2012 WL 2108667; *see also Image Technical Servs., Inc. v. Eastman Kodak Co.,* 820 F. Supp. 1212, 1215 (N.D. Cal. 1993). "The authority of a trial court to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers." *City & Cnty. of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846, 135 P.3d 20, 24 (2006) (internal quotation omitted).

Under California law, the duty of loyalty prohibits an attorney from representing a client where there is a current conflict of interest, specifically prohibiting concurrent representation of clients who have adverse interests. *See* Cal. Rule Pro. Conduct 3-310(C)(2). As the California Supreme Court has explained, "the most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation." *SpeeDee Oil, Inc.* 20 Cal. 4th at 1147. So sacrosanct is this duty that California courts impose a *per se and automatic* disqualification on both the individual attorney and the entire firm when duty of loyalty is compromised. *Id., Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1060, 8 Cal. Rptr 2d 228, 234 (Cal. App. 1992).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Even when the "the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 815 (N.D. Cal. 2004) (quoting *Flatt*, 9 Cal. 4th at 284). The California Supreme Court has emphasized the more stringent standard requiring disqualifications in cases of concurrent representation of adversaries:

> "Something seems radically out of place if a lawyer sues one of the lawyer's own present clients in behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the *lawyer's sense of loyalty* is askew." (Wolfram, Modern Legal Ethics (1986 ed.) § 7.3.2, p. 350, italics added.) It is for that reason, and not out of concerns rooted in the obligation of client confidentiality, that courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated.

*Flatt,* 9 Cal. 4th at 285; *id.* at 286 (the "mandatory rule of disqualification in cases of dual representations involving unrelated matters [is] analogous to the biblical injunction against 'serving two masters' (Matthew 6:24)") (emphasis in original); s*ee also Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832, 1840, 43 Cal.Rptr. 2d 327, 332 (1995) ("[w]here duty of loyalty applies, it requires a *per se*, or automatic disqualification").

This rule derives from the necessity to our legal system of maintaining the "existing client's sense of trust and security—features essential to the effective functioning of the fiduciary relationship." *Flatt*, 9 Cal. 4th at 282. Justice Story's admonition long ago is equally apt today: "When a client employs an attorney he has a right to presume, if the latter be silent on the point, that he has no engagements, which interfere, in any degree, with his exclusive devotion to the cause confided to him; that he has no interest, which may betray his judgment, or endanger his fidelity." *Williams v. Reed,* 29 Fed. Cas. 1386, 1390 (C.C.C. Me.

1824), quoted in *Flatt,* 9 Cal. 4th at 287.  The Clients of Jones Day and its affiliate have the right to presume their law firm's loyalty and to be free of lawsuits in this Court brought by those lawyers against them.  Those clients are also entitled not to be victimized by false representations to this Court, made by those very lawyers, that their clients will destroy records absent an ex parte seizure.[10]

The one exception to the required disqualification rule is where (i) the clients are adverse as to unrelated matters, (ii) the attorney provides full disclosure *and* (iii) both clients agree in writing to waive the conflict.  *Flatt*, 9 Cal. 4th at 286, n.4. This exception plainly does not apply here.  Here, the matters are, in fact related (as reflected in Plaintiffs' pleadings).  Moreover, and in any event, no disclosure was made nor consent sought from the Clients.

### B.  Jones Day Has Been Adverse to SISCOM and Abalkhail While Concurrently Representing Them Through its Saudi Affiliate

The record here demonstrates impermissible concurrent representation of adversaries.  Jones Day's Saudi affiliate has continuously represented SISCOM since 2003.  Further, as reasonably believed by SISCOM's President, Mr. Abalkhail, Jones Day's Saudi affiliate continued to represent SISCOM throughout the time of the secret investigation of this matter and then filing of this action. Abalkhail Decl. ¶¶ 4-7.  Mr. Abalkhail sought and received legal counsel from AlSulaim dozens of times since the firm helped establish SISCOM in 2003, and while AlSulaim served as ongoing outside counsel thereafter.  *Id.* ¶ 4. As recently as January 2011, Mr. Abalkhail and SISCOM paid AlSulaim to help form Amhar, a project as to which AlSulaim continued to provide services after January 17.  *Id.*

---

[10] Jones Day obtained the seizure, disconnection, and copying of all of SISCOM's and TradeKey's servers by representing to the Court that Defendants "can be expected to divest themselves of records and data of counterfeiting activity and any relevant business records absent the issuance of a seizure order without notice." Dkt. No. 9, Memo in Support of Application for TRO and Ex Parte Seizure, at 21.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

¶ 6.  At this same time, Plaintiffs were conducting their pre-filing investigation of Mr. Abalkhail, SISCOM, and its TradeKey subsidiary. *Id.* at ¶ 6; *see also* First Declaration of Rob Holmes in Support of *Ex Parte* Application for a Temporary Restraining Order, Seizure Order, and Order to Show Cause, et seq., ¶ 4, Dkt. 21, (stating that investigation began in May 2010).

In addition to AlSulaim promoting itself as being "associated with" Jones Day as early as 2003, Jones Day announced a renewal and expansion of its association with AlSulaim on January 1, 2011.  At no time before or after January 2011, however, did AlSulaim or Jones Day notify SISCOM that it no longer represented the company.  It never returned the Clients' files.  Abalkhail Dec. ¶ 7. Rather, after further cementing their association as of January 1, 2011, AlSulaim—sharing offices and personnel with Jones Day—continued to provide SISCOM and Mr. Abalkhail services without interruption.

Based on the eight year history of seeking legal advice and confiding in AlSulaim as his counsel, Mr. Abalkhail reasonably believed that the attorney client relationship continued.  *Id.* As the existing client, the reasonable expectation of Mr. Abalkhail, both personally and as the President of SISCOM, is the most relevant factor in finding that AlSulaim continued to represent the Clients.  *See, e.g., Responsible Citizens v. Sup. Ct.*, 16 Cal. App. 4th 1717, 1733, 20 Cal.Rptr.2d 756, 766 (1993) ("(O)ne of the most important facts involved in finding an attorney-client relationship is the expectation of the client based on how the situation appears to a reasonable person in the client's position"); *Flatt*, 9 Cal. 4th at 281, n.1.  Thus, AlSulaim's, and by association, Jones Day's representation of the Clients persisted through the Plaintiffs' investigation of the Clients and through the time Jones Day commenced this action against them, in breach of Jones Day's ethical duty of loyalty.  Jones Day's concurrent conflicting representation of both Plaintiffs and the Clients requires its automatic disqualification.  *SpeeDee Oil, Inc.* 20 Cal. 4th at

1147; *Truck Ins. Exch.* 6 Cal. App. 4th at 1060.

Even if Jones Day's had taken steps to end its representation of SISCOM before now, its concurrent representation while Plaintiffs were conducting their pre-litigation investigation and through the time they initiated this lawsuit in May 2011 requires *per se* disqualification. *See Unified Sewerage Agency of Washington Cnty., Or. v. Jelco Inc.*, 646 F.2d 1339, 1345 (9th Cir. 1981) ("present client" automatic disqualification standard applies for determining disqualification, even if the adverse clients are no longer both present clients: "If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client."); *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009) (*citing Unified Sewerage* with approval and applying per se disqualification for concurrent adverse representation, despite concurrency ending prior to motion). As multiple courts have recognized, an attorney cannot concurrently represent adverse parties and avoid a disqualifying conflict by dropping one of the clients like a "hot potato." *ProThera*, 670 F.Supp. 2d at 209, citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 435 F.Supp. 84, 95 (S.D.N.Y.), aff'd in part, rev'd in part on other grounds, 567 F.2d 225 (2nd Cir. 1977); *Abubakar v. County of Solano,* No. Civ. S-06-2268, 2008 WL 336727, at *4 (E.D. Cal. Feb. 4, 2008); *see also Truck Ins. Exch.* 6 Cal. App. 4th at 1056-1060; *Flatt,* 9 Cal. 4th at 288-289.

Moreover, even if Jones Day were to claim that it had created an "ethical wall" between AlSulaim and the Jones Day attorneys prosecuting this action (and it has never so claimed), absent a written waiver, an ethical wall could not cure the breach of the duty of loyalty that occurs from concurrent representation of adverse clients. *See Concat*, 350 F. Supp. 2d at 822 ("Although an ethical wall may, in certain limited circumstances, prevent a breach of confidentiality, it cannot, in the absence of an informed waiver, cure a law firm's breach of its duty of loyalty to its client.") Because neither Jones Day nor AlSulaim ever sought a conflict waiver

from the Clients, this exception is inapplicable, and Jones Day must be disqualified from suing them.

Finally, the danger to the Clients from Jones Day's continuing representation is compounded by the related nature of this action and the work performed on the Clients' behalves.  Plaintiffs contend that the ownership, operation and management of SISCOM and TradeKey form the basis both for personal jurisdiction over Mr. Abalkhail, and for the liability of SISCOM for purported acts of its subsidiary, TradeKey (Pvt).  *See* p. 8, *supra* (citing pleadings and motions to compel production of information about these topics).  These are the same topics about which Jones Day's Saudi affiliate received confidential information and advised the Clients from 2003 on, including when advising on the creation of Amhar in 2011.  Abalkhail Decl. ¶ 6.  Jones Day thus has access—through AlSulaim lawyers and the records they still hold—to a substantial amount of information provided in confidence and related to this case.  *Id.*  Jones Day's ability to obtain that information is further confirmed in its actual disclosure, in Mr. Edwards' letters, of confidential information that was known only to the AlSulaim lawyers.  *Id.*[11]

For all these reasons, the facts of record compel the conclusion that Jones Day may not proceed with its representation of Plaintiffs in this action, and the firm, if it continues to refuse to withdraw, must be disqualified.

---

[11] The relatedness of AlSulaim's representation of the Clients to the subject of this action would provide an alternative basis to disqualify, even assuming that there had been no concurrent representation of Plaintiffs.  Cal. Rule Pro. Conduct 3-310(E); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 236, 81 Cal. Rptr. 2d 425, 433 (1999) (confidential client information warranting disqualification includes "legal and organizational structure" of the company and "financial impact of pending claims").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### III.   The TradeKey Defendants Are, in the Alternative, Entitled to Limited Discovery on the Facts Related to Jones Day's Conflict of Interest

Should the Court find insufficient facts to conclude that automatic disqualification of Jones Day is required based on the record before it, the Defendants should, in the alternative, be permitted to take discovery into the facts – relevant to disqualification – that are exclusively within Jones Day's and its affiliate's possession.[12]

To the extent that Jones Day asserts that the nature of its relationship with AlSulaim cannot support imputation of AlSulaim's conflicts and duties, good cause exists for discovery into that relationship.  Jones Day has declined to explain the existence and nature of any joint entity or contractual relationship with AlSulaim, claiming that "it is not necessary . . . to respond to your questions on that point." *See* Pulgram Decl. ¶ 24, Exs. 19, 20.  Jones Day's co-listing of its attorneys on the AlSulaim website, as well as their numerous statements suggesting integrated service to clients, at a minimum justify discovery as to actual extent of shared resources, personnel, clients, office management, and conflicts systems, including, the nature of any agreements with AlSulaim and the other issues identified in Mr. Pulgram's letter requests.  *See id.*, Ex. 19.

In addition, discovery is warranted concerning Jones Day's access to information AlSulaim has received from and maintains about the Clients and their business activities.  This includes the nature and implementation of any "wall" or other steps to protect information that Jones Day may have taken (but has never identified) to protect confidences.  It also includes the actual communications between Jones Day and AlSulaim that have resulted in Jones Day already receiving

---

[12] Because the Court has not convened a Rule 16 conference and the parties have not completed a Rule 26(f) conference, Plaintiffs have asserted that discovery, other than with respect to jurisdiction, is not available. The TradeKey Defendants request an order permitting such discovery.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   information about the Clients, including non-public information.

2        Because Jones Day has declined to provide this information through informal

3   requests, formal discovery is warranted.[13]

4   ### **CONCLUSION**

5        For the foregoing reasons, Defendants SISCOM, TradeKey PVT and

6   Abalkhail respectfully request that Jones Day be disqualified as counsel for

7   Plaintiffs or, in the alternative, that the Court order discovery to proceed on the

8   issue of disqualification.

9

10   Dated:  September 17, 2012

                  FENWICK & WEST LLP

By: _Laurence F. Pulgram_____

        Laurence F. Pulgram

        Attorneys for Defendants and
        Counterclaimants Sawabeh Information
        Services Co., TradeKey (Pvt) Ltd. *and*
        Defendants Waleed Abalkhail and
        Junaid Mansoor

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[13] Discovery may also justified as to other claims of fact asserted by Plaintiffs in response to this Motion to the extent those facts are not of public record.