MARK A. FINKELSTEIN (State Bar No. 173851)
mafinkelstein@jonesday.com
JONES DAY
3161 MICHELSON DRIVE
SUITE 800
IRVINE, CA 92612-4408
949.851.3939
949.553.7539 (Facsimile)

SUSAN M. KAYSER (admitted *pro hac vice*)
skayser@jonesday.com
JESSICA D. BRADLEY (admitted *pro hac vice*)
jbradley@jonesday.com
LUCY JEWETT WHEATLEY (admitted *pro hac vice*)
lwheatley@jonesday.com
JONES DAY
51 LOUISIANA AVE, NW
WASHINGTON, DC 20001
202.879.3939
202.626.1700 (Facsimile)

Attorneys for Plaintiffs Chloé SAS, Alfred Dunhill Limited, Officine Panerai AG Montblanc-Simplo GmbH, Cartier International A.G., and Lange Uhren GmbH and Counterclaim Defendants Lance Sloves, Computer Forensic Services, Inc., Richemont International Limited, and Jones Day

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHLOÉ SAS, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SAWABEH INFORMATION SERVICES CO, *et al.*,<br><br>Defendants. | Case No: 11-CV-04147 GAF(MANx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT**<br><br>Date:    **January 7, 2013**<br>Time:    **9:30 AM**<br>Courtroom:  **740 - Roybal**<br>Judge:    **Hon. Gary A. Feess** |
| SAWABEH INFORMATION SERVICES CO, TRADEKEY (PVT) LTD<br><br>Counterclaimants,<br><br>v.<br><br>RICHEMONT INTERNATIONAL LIMITED; CHLOÉ SAS; ALFRED DUNHILL LIMITED; OFFICINE PANERAI AG, and MONTBLANC-SIMPLO GMBH; LANCE ELIOT SLOVES; COMPUTER FORENSIC SERVICES, INC.; JONES DAY; and Does 1 Through 10 Inclusive,<br><br>Counterclaim Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................... 1

II.     THE TRADEKEY DEFENDANTS CONTINUE TO FACILITATE
        COUNTERFEITING BY THE DEFAULT DEFENDANTS IN
        VIOLATION OF THIS COURT'S ORDERS ................................. 1

III.    LEGAL STANDARD ..................................................................... 6

IV.     THE TRADEKEY DEFENDANTS' FAILURE TO REMOVE THE
        DEFAULT DEFENDANTS' LISTINGS PUTS THEM IN
        CONTEMPT OF THE CONSENT INJUNCTION AND THIS
        COURT'S DEFAULT ORDER ....................................................... 7

        A.      The Tradekey Defendants Have Violated The Consent
                Injunction And The Default Order ...................................... 8

        B.      The Tradekey Defendants Have Not Substantially Complied
                With The Consent Injunction And The Default Order ......... 9

        C.      The Tradekey Defendants' Violations Were Not Based On A
                Good Faith And Reasonable Interpretation Of The Order ........ 13

V.      REQUESTED RELIEF ................................................................. 14

VI.     CONCLUSION ............................................................................ 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Henry Schein v. Certified Business Supply, Inc.*,
No. SA CV 03-1662 DOC, 2008 BL 314009 (C.D. Cal. Aug. 20, 2008)......7, 11

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ...............................................................6, 7, 9

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
456 U.S. 844 (1982) ...............................................................................15

*Louis Vuitton v. Akanoc Solutions*,
658 F.3d 936, 943 (9th Cir. 2011) ............................................................15

*Portland Feminist Women's Health Center v. Advocates for Life, Inc.*,
877 F.2d 787 (9th Cir. 1989) ..............................................................14, 15

*Verizon California Inc. v. OnlineNIC, Inc.*,
647 F. Supp. 2d 1110 (N.D. Cal. 2009)........................................................9

*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*,
689 F.2d 885 (9th Cir. 1982) ..................................................................6, 7

*Yurman Studio, Inc. v. Castaneda*,
No. 07 Civ. 1241 (SAS), 07 Civ. 7862 (SAS), 2009 BL 36198 (S.D.N.Y. Feb. 23, 2009) ...................................................................................10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(d) ..................................................................................9

## I.    INTRODUCTION

Plaintiffs move for contempt by the TradeKey Corporate Defendants of two court orders for their failure to remove listings and accounts of nine TradeKey members specifically identified by Plaintiffs and subject of the Consented Interim Injunction entered on June 20, 2011 ("Consent Injunction") and the Default Order entered on June 8, 2012.  Despite the clear language of both the Consent Injunction and Default Order to remove these nine TradeKey Members' listings and accounts, and having literally months (and in the case of the Consent Injunction over a year) to comply, and multiple notices and opportunities to comply, the TradeKey Corporate Defendants failed to take reasonable measures to ensure compliance with these court orders.  These listings are not "hidden" among the thousands of unauthorized sellers of Plaintiffs' goods that Plaintiffs advised TradeKey of in May 2011.  Rather, these nine TradeKey members were each specifically named as one of the twenty-seven TradeKey member co-defendants in either the original or amended Verified Complaint.

The evidence shows repeated failures by the TradeKey Corporate Defendants to remove easily identifiable listings and accounts of these nine members, who are also co-defendants.  Given the unambiguous language of the Consent Injunction and Default Order to remove these member listings and accounts and ensure they remained removed from the TradeKey.com website, there has been a clear lack of diligence by the TradeKey Corporate Defendants.  They should be found in contempt and further ordered to comply with the relief requested herein.

## II.    THE TRADEKEY DEFENDANTS CONTINUE TO FACILITATE COUNTERFEITING BY THE DEFAULT DEFENDANTS IN VIOLATION OF THIS COURT'S ORDERS

On May 13, 2011, Plaintiffs filed a Verified Complaint against the TradeKey Corporate Defendants, and among others, the following seven TradeKey members HengTai International, KK Fashion Love Zone, Love In Apparel Trade Co., Ltd., Melchic International Trade Co, Ltd., Orient-Online Co., Ltd, Richen-Online Co.,

Ltd, and www.Ecwatch.net for the offer for sale of counterfeit goods through TradeKey.com.  On October 21, 2011, Plaintiffs filed a Verified First Amended Complaint against the Defendants listed above, and added two additional TradeKey members Euromed International Trading Co. and Win International Trade (the nine TradeKey member defendants listed above are collectively, the "TradeKey Member Defendants").

The Complaint and Verified First Amended Complaint alleged that the TradeKey Member Defendants, among others, were sellers of counterfeit goods bearing Plaintiffs' registered trademarks. (Verified Complaint (Dkt. 1) ¶¶ 10, 76-103; Verified First Amended Complaint (Dkt. 153) ¶¶ 11, 122-159). These allegations were supported by declarations from Plaintiffs indicating that the TradeKey Member Defendants (among many others) were not authorized sellers of goods bearing Plaintiffs' trademarks. (Dkt. 12, 13, 16, 17, 19).

On June 20, 2011, this Court entered the Consent Injunction signed by counsel for Plaintiffs and the TradeKey Defendants. (Dkt. 85).  The Consent Injunction required that the TradeKey Defendants refrain from:

> (D) Actively assisting, advising, encouraging, inducing, or instructing any member of the Defendants' Websites in creating or posting Listings that TradeKey Defendants know or believe are for products that infringe Plaintiffs' Asserted Marks or for counterfeit or replica products bearing Plaintiffs' Asserted Marks;
>
> (E) Failing to remove or disable access to any Listing (1) identified by Plaintiffs as allegedly infringing Plaintiffs' Asserted Marks, or (2) that otherwise comes to the attention of the TradeKey Defendants and that they know or believe are for counterfeit or replica products bearing Plaintiffs' Asserted Marks; . . .
>
> (F) Facilitating, advising, inducing, assisting, aiding, abetting, or supplying the means with the purpose to cause any other person or business entity to engage in or perform any of the activities referred to in the above subparagraphs

(Dkt. 85 ¶¶D, E, F at p. 2:9-2:22).  "Listing" within the Consent Injunction was defined as "Product, Sell Offer, Buy Offer or Company listings". *Id.* ¶A, p. 1:18-19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The above referenced TradeKey Member Defendants (hereinafter, "Default Defendants") failed to answer or otherwise respond to the original or amended complaint and Plaintiffs moved for Default Judgment on February 27, 2012.  To support their Motion for Default Judgment, Plaintiffs produced extensive evidence of counterfeiting by each of the Default Defendants, including copies of openly infringing listings on TradeKey.com, and evidence of additional counterfeiting websites owned by Default Defendants linked to through TradeKey.com (*See id*. at ¶¶ 19-21, Ex. 4 (listings for HengTai; showing additional counterfeiting website); *id*. at ¶¶ 22-23, Ex. 5 (listings for KK Fashion Love Zone); *id*. at ¶¶ 24-25, Ex. 6 (listings for Love In Apparel Trade Co. Ltd.); *id*. at ¶¶ 26-28, Ex. 7 (listings for Melchic International Trade Co. Ltd., showing additional counterfeiting website); *id*. at ¶¶ 43-45, Ex. 14 (listings for www.Ecwatch.net, showing additional counterfeiting website); *id*. at ¶¶ 46-47, Ex. 15 (listings for Euromed International Trading Co., Ltd., showing additional counterfeiting website); *id*. at ¶¶ 48-50, Ex. 16 (listings for Win International Trade, showing additional counterfeiting website); *id*. at ¶¶ 51-52, Ex. 17 (listings for Richen-online); *id*. at ¶¶ 53-55, Ex. 18 (listings for Orient-online, showing additional counterfeiting website).  Plaintiffs served their Motion for Default  on the TradeKey Defendants' counsel via email, pursuant to the parties agreement. Proof of Service, Dkt. 211 at 6-7.

In response to Plaintiffs' motion, this Court granted Default Judgment against the Default Defendants, finding: "All Defaulting Defendants offer counterfeit and unauthorized replica goods for sale on the TradeKey site using Plaintiffs' marks." Memorandum and Order Regarding Motion for Default Judgment (Dkt. 261) at 7:3-4.

In its Memorandum and Order Regarding Motion for Default Judgment on April 6, 2012 and Order and Permanent Injunction on June 8, 2012 (together "Default Order"), this Court ordered that:

Ecommerce and auction websites having notice of this Order for Default Judgment and Permanent Injunction permanently delete and remove any and all accounts and listings associated with Defaulting Defendants.

Dkt. 261 at 28:22-29:2; Dkt. 306 ¶ (b)(4), p. 5:20-5:22.

Recent searches of the TradeKey.com website reveal that the TradeKey Defendants are not complying with the Consent Injunction or the Default Order. All nine of the Default Defendants, HengTai International, KK Fashion Love Zone, Love In Apparel Trade Co., Ltd., Melchic International Trade Co, Ltd., Orient-Online Co., Ltd, Richen-Online Co., Ltd, www.Ecwatch.net, Euromed International Trading Co. and Win International Trade, continued to have accounts and listings on TradeKey.com in November 2012. *See* Fifth Declaration of Rob Holmes ("Holmes Decl.") ¶¶ 2-21 (dated November 28, 2012) (attached hereto). This is in addition to the listings and accounts identified in February 2012.

Notably, Default Defendants Euromed International Trading Co. ("Euromed") and HengTai International ("HengTai") not only continue to have active Listings, but are currently Premium GoldKey Members of TradeKey. Holmes Decl. ¶¶ 2-6, 13-14. Default Defendant KK Fashion Love Zone identifies itself in its listing as a Premium SilverKey Member of TradeKey.com. *Id.* ¶ 8. Further, Default Defendants Orient-Online, Richen-Online, and Euromed International are still using Plaintiffs' trademarks in their listings. *Id.*, Ex. 12 at 110 (showing Panerai registration 2,323,571); Ex. 14 at 128, 130 (showing Panerai registrations 2,323,571 and 3178943; Cartier registration 759,201); Ex. 9 at 82, 85, 88 (showing Panerai registrations 2,340,290, 2,323,571 and 3,178,943; showing Chloé registration 1,491,810; showing Montblanc registrations 2,415,189 and 2,346,953).

By continuing to host listings by nine separate counterfeiter Default Defendants, the TradeKey Defendants have committed at least nine separate violations of the Consent Injunction and Default Order (and significantly more if each listing is counted separately). Default Defendant HengTai, a current GoldKey

member of TradeKey, continues to describe itself as a "wholesaler" of "Branded Handbags" (Holmes Decl. ¶ 6, Ex. 3 at 36), and to respond to requests sent through the TradeKey system to purchase "replicas". (*Id.* ¶¶ 3-5, Exs. 1-2). Default Defendant KK Fashion Love Zone identifies itself as a SilverKey member and offers purses and belts. (*Id.* ¶ 8, Ex. 5). Default Defendant Euromed, a current GoldKey member of TradeKey, continues to describe itself as a wholesaler and manufacturer of handbags and watches, and, on TradeKey.com, offers multiple goods bearing Plaintiffs' marks, including a Chloe bag, a Montblanc belt, and a Panerai watch. (*Id.* ¶¶ 13-14, Ex. 9 at 82, 85, 88).

Default Defendant www.Ecwatch.net continues to offer "brand watches" and watch boxes in its listings on TradeKey.com, and offers "more than 47 brands." (*Id.* ¶ 15, Ex. 10 at 101). Default Defendant Win International offers "wholesale and retail discount handbags" and is highlighted as a "Success Story" on TradeKey.com. (*Id.* ¶ 16, Ex. 11 at 103, 106). The "Success Story" notes that Win International's products include "prada, gucci, omega, oris, louis vuitton, dior, ed hardy, fendi". (*Id.*, Ex. 11 at 106). Default Defendant Richen-online advertises that it specifically deals in "swiss movement watch" and "fashion watches" of AAA quality. (*Id.* ¶ 17, Ex. 12 at 108). Richen-online continues to show pictures of a "Panerai" watch in a Sell Offer. (*Id.*, Ex. 12 at 110). Default Defendant Orient-online advertises that it deals in wholesale watches, and includes pictures of a "Panerai' watch and a Cartier watch in Sell Offers. (*Id.* ¶ 19, Ex. 14 at 128, 130). Default Defendant Melchic International offers "217 brands", states "we go pace with worldwide brands with sufficient resources and rapid styles updating", and claims to be a Gold member of TradeKey. (*Id.* ¶ 20, Ex. 15 at 139). Finally, Default Defendant Love In Apparel advertises that it deals in handbags and jewelry. (*Id.* ¶ 21, Ex. 16 at 143).

These known counterfeiters – identified by Plaintiffs in the original and amended verified complaints -- continue to openly offer for sale "wholesale"

branded goods on TradeKey.com such as handbags, watches and apparel. (*Id.* ¶¶ 2-21, Exs. 1-16). All of the Default Defendants openly identify themselves by the same name in their TradeKey.com listings as in the complaints. (*Id.*) Plaintiffs' investigator was able to locate each of the Default Defendants' listings by simple searches through the TradeKey.com homepage, which were completed in minutes for each. (*Id.* ¶ 22).

Further, the listings remain active – Plaintiffs' investigator was able to successfully send messages to a GoldKey member Default Defendant, a SilverKey member Default Defendant, and a free member Default Defendant through their TradeKey.com listings. (*Id.* ¶¶ 7,12, 18, Exs. 4, 8, 13). Through their TradeKey.com listings one can continue to buy counterfeit goods bearing Plaintiffs' trademarks. (*Id.* ¶¶ 4-5, 9-10, Exs. 2, 6). Plaintiffs' investigator purchased counterfeit handbags bearing Chloé trademarks from two of the Default Defendants, by contacting them through their listings on TradeKey.com. (*Id.*).

## III.   LEGAL STANDARD

A party alleging civil contempt must establish "by clear and convincing evidence" that the opposing party (1) violated a court order, (2) beyond substantial compliance, and (3) the violation was not based on a good faith and reasonable interpretation of the order. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The contempt need not be willful and there is no good faith exception to the requirement of obedience to a court order. *Id.* at 695.

Assuming a violation is established, a court can find that the violation was "beyond substantial compliance", the second element of the test for civil contempt, by finding that that the defendants did not make "every reasonable effort to comply with the court's order." *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir. 1982). Defendants must have committed more than "a few technical violations" to be found to not have substantially complied with a court

order. *Id.* at 891. If a defendant fails to "take all reasonable steps within the party's power to comply" with a court order, a finding that the party violated the order "beyond substantial compliance" is appropriate. *In re Dual-Deck*, 10 F.3d at 695.

When determining the third element of the test for civil contempt, whether the violation was not based on a good faith and reasonable interpretation of the order, the courts consider whether the language of the order in question was ambiguous and whether defendants' actions were "contrary to the plain language" of the order. *Henry Schein v. Certified Business Supply, Inc.*, No. SA CV 03-1662 DOC (ANx), 2008 BL 314009, at *9 (C.D. Cal. Aug. 20, 2008); *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982) (addressing whether language of order was ambiguous when making good faith determination). Regardless, the contempt need not be willful and there is no good faith exception to the requirement of obedience to a court order. *In re Dual-Deck.*, 10 F.3d at 695.

## IV.   THE TRADEKEY DEFENDANTS' FAILURE TO REMOVE THE DEFAULT DEFENDANTS' LISTINGS PUTS THEM IN CONTEMPT OF THE CONSENT INJUNCTION AND THIS COURT'S DEFAULT ORDER

*Over a year and half after this litigation was filed*, the TradeKey Defendants continue to facilitate sales by *known  counterfeiters* on their website TradeKey.com. Though the nine Default Defendants represent only a small fraction of the thousands of counterfeiters Plaintiffs' discovered on TradeKey.com, *the TradeKey Defendants failed to remove the listings or disable the accounts of these nine Default Defendants.*  In fact, for at least two of the Default Defendants, the TradeKey Defendants have allowed them to remain Premium Members receiving individualized services from TradeKey employees to facilitate their sale offers.  All of the Default Defendants continue to offer the same types of goods, such as watches and handbags, as they did eighteen months ago, and can be found on TradeKey.com with minimal time or effort by an outside browser of the website. (Holmes Decl. ¶ 22).

### A. THE TRADEKEY DEFENDANTS HAVE VIOLATED THE CONSENT INJUNCTION AND THE DEFAULT ORDER

The terms of the Consent Injunction and Default Order are clear – the TradeKey Defendants were required to:

- "permanently delete and remove any and all accounts and listings associated with Defaulting Defendants" (Default Order (Dkt. 306) ¶ (b)(4), p. 5:20-5:22); and

- "remove or disable access to any Listing [including Company listings] . . . identified by Plaintiffs as allegedly infringing"; (Consent Injunction (Dkt. 85) ¶¶E at p. 2:14-2:15); and

- refrain from "[a]ctively assisting . . . any member . . . in creating or posting Listings that TradeKey Defendants know or believe are for products that infringe Plaintiffs' Asserted Marks or for counterfeit or replica products bearing Plaintiffs' Asserted Marks" or "[f]acilitating . . . or supplying the means with the purpose to cause any other person or business entity to [infringe Plaintiffs' trademarks]." (*Id.* ¶¶D, E, F at p. 2:9-2:22)

By failing to remove the Default Defendants' listings on TradeKey.com, and by continuing to provide Premium Member services to several of those Default Defendants, the TradeKey Defendants are in violation of paragraphs D, E and F of the Consent Injunction and paragraph (b)(4) of the Default Order.

First, the Default Order and the terms of the Consent Injunction apply to the Default Defendants whose listings remain on TradeKey.com. The Default Defendants are specifically included within the list of "Defaulting Defendants" identified in the Default Order. *Compare* Default Order (Dkt. 301) at 6-8 (identifying Defendants) *with* Holmes Decl. ¶¶ 2-21 (identifying Defendants). Further, in accordance with the Consent Injunction, the Default Defendants were all "identified by Plaintiffs as allegedly infringing" in the Verified Complaint and Verified First Amended Complaint, and Motion for Default Judgment, and served on the TradeKey Defendants. Those same pleadings and associated orders certainly mean that these listings were identified by Plaintiffs as allegedly infringing or

otherwise came to the attention of the TradeKey Defendants and that they "know or believe[d]" that the Default Defendants' listings for wholesale designer handbags and watches were for products that infringed Plaintiffs' marks. *See, e.g.*, Verified Complaint (Dkt. 1) ¶ 10; Verified First Amended Complaint (Dkt. 153) ¶¶ 11, 20, 122-159; Memorandum and Order Regarding Motion for Default Judgment (Dkt. 261) at 7:3-4.

Second, the TradeKey Defendants are bound by the terms of the Consent Injunction and Default Order, as they received actual notice of both orders under Fed. R. Civ. P. 65(d). Both the Default Order and the Consent Injunction were orders issued in this case. Indeed, the TradeKey Defendants are parties to, and the TradeKey Defendants' counsel in fact negotiated, consented to, and signed the Consent Injunction on behalf of the TradeKey Defendants.

Accordingly, Plaintiffs have shown, by clear and convincing evidence, that the TradeKey Defendants have violated the Consent Injunction and Default Order.

### B. THE TRADEKEY DEFENDANTS HAVE NOT SUBSTANTIALLY COMPLIED WITH THE CONSENT INJUNCTION AND THE DEFAULT ORDER

The TradeKey Defendants have not "substantially complied" with the Consent Injunction or the Default Order. First, Plaintiffs have documented at least nine separate violations, which means that the TradeKey Defendants have continued to host listings for at least 50% of the defendants identified in the Default Order five months after the entry of the Default Order. Failing to remove or disable access to these listings and ensuring permanent deletion and removal of the accounts and listings for nine of eighteen members identified in the Default Order cannot be termed a merely "technical" violation. *See Verizon California Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110 (N.D. Cal. 2009) (finding contempt for seven separate violations of court order). There are not thousands of members subject of the Default Order, nor are these "hidden" listings. Nor has there been

insufficient time to permanently delete and remove all accounts and listings associated with the Default Defendants.

Second, it is obvious that the TradeKey Defendants have not taken "all reasonable steps within [their] power to comply" with the Consent Injunction. *See In re Dual-Deck*, 10 F.3d at 695.   The TradeKey Defendants should have removed these listings for the identified Default Defendants after the Consent Injunction was filed June 20, 2011, and then for the additional defendants added October 21, 2011.[1] They did not.  The TradeKey Defendants should have removed these listings after receiving Plaintiffs' Motion for Default filed February 27, 2012.  They did not. The TradeKey Defendants should have removed these listings and ensured their permanent deletion and removal after entry of the Default Order on June 8, 2012. They did not.   Plaintiffs' investigator, who can only access information that is publicly available, and thus unlike the TradeKey Defendants, would not have access to the IP addresses of members, payment records, or other information that identifies members, was able to find these nine Default Defendants on TradeKey.com, still selling branded goods, by only investing a few minutes per Defendant. (Holmes Decl. ¶ 22).  The TradeKey Defendants claim to be experts in search engine technology and to have hundreds of technically savvy employees, and yet apparently found it too burdensome to have even a single employee devote a few hours to complying with this Court's orders.  *See Yurman Studio, Inc. v. Castaneda*, No. 07 Civ. 1241 (SAS), 07 Civ. 7862 (SAS), 2009 BL 36198 (S.D.N.Y. Feb. 23, 2009), at *4 (granting contempt motion against website for trademark infringement for failure to remove Plaintiffs' trademarks and holding efforts at removal of marks "cannot be considered reasonably diligent when

---

[1] TradeKey should have removed the Listings for those TradeKey members in the Verified Complaint by June 2011, and the Listings for the two TradeKey members added to the Verified First Amended Complaint, after that pleading was filed on October 21, 2011.

plaintiffs were able to perform a manual search of the website and identify the violating instances within hours.").

Third, the TradeKey Defendants' violations "go to the heart of the [i]njunction" as opposed to being merely technical in nature. *Henry Schein v. Certified Business Supply, Inc.*, No. SA CV 03-1662 DOC (ANx), 2008 BL 314009, at *9 (C.D. Cal. Aug. 20, 2008). The fundamental issue in this litigation is that the TradeKey Defendants facilitate the sale of counterfeits of Plantiffs' brands by providing services to counterfeiter manufacturers and wholesalers, including by permitting these counterfeiters to post listings on TradeKey.com. In support of Plaintiffs' claims of contributory infringement by the TradeKey Defendants, Plaintiffs identified a group of counterfeiter members of TradeKey.com whose counterfeiting the TradeKey Defendants facilitated. The fact that eighteen months later, the TradeKey Defendants are still facilitating counterfeiting by these same members, are violations that go the heart of the Default Order and Consent Injunction.

In addition to going to the heart of this case, the violations are in no sense "technical". The listings by the Default Defendants remain functional – prospective customers can still send the Default Defendants a message through TradeKey.com to purchase counterfeit goods. (Holmes Decl. ¶¶ 7, 12, 18). The TradeKey Listings also continue to display the Default Defendants' contact information, allowing prospective customers in the United States and elsewhere in the world a second method to contact (and remain in permanent contact with) suppliers of counterfeits of Plaintiffs' brands. As found by this Court: "Defaulting Defendants offered for sale massive quantities of a wide variety of knock-off products bearing marks identical to Plaintiffs' trademarks . . . [and] required customers to buy in bulk." Memorandum and Order Regarding Motion for Default Judgment (Dkt. 261) at 21:2-5. The additional harm to Plaintiffs by the TradeKey Defendants' continued provision of a stable, searchable, and easily accessible internet platform for

counterfeiters to sell their replica/knock-off/"AAA" wholesale "branded" goods worldwide is significant.

Further, the violations by the TradeKey Defendants include not only allowing the Default Defendants to continue to use TradeKey.com to list offers to sell counterfeits, but also TradeKey's direct assistance of at least two Default Defendants who are GoldKey Premium Members. (Holmes Decl. ¶¶ 2-6, 13-14). HengTai and Euromed are GoldKey Members, which means they are paying the TradeKey Defendants a substantial annual sum for their membership, and in return are receiving personalized services to help them increase sales, including direct contact with a Dedicated Relationship Manager, who is a TradeKey employee. (First Declaration of Rob Holmes (Dkt. 21) ¶ 14). This indicates that the TradeKey Defendants' violations went further than merely failing to comply with the Default Order and Consent Injunction by removing Listings and accounts. The TradeKey Defendants were in fact actively subverting this Court's orders, and causing harm to Plaintiffs, by directly aiding known counterfeiters of Plaintiffs' brands (their GoldKey members) to find new customers for over a year after they told this court through the Consent Injunction that they would cease such activity.

There is no question that Listings and accounts remained on TradeKey.com for these Default Defendants in violation of both the Consent Injunction and Default Order. (Holmes Decl. ¶¶ 2-21, Exs. 1-16). Further, Plaintiffs' investigator conducted test buys from two of the Default Defendants by contacting them through their TradeKey.com listings. (*Id.* ¶¶ 4-5, 9-10, Exs. 2, 6). Plaintiffs' investigator purchased a handbag bearing the Chloé marks from Default Defendant HengTai and a handbag bearing the Chloé marks from Default Defendant KK Fashion Love Zone. *Id.* The TradeKey Defendants clearly are not substantially complying with either the Default Order or Consent Injunction when they have failed to remove these Listings and are still openly enabling the Default Defendants

to sell goods bearing Plaintiffs' marks in violation of the Consent Injunction and Default Order.

### C.   THE TRADEKEY DEFENDANTS' VIOLATIONS WERE NOT BASED ON A GOOD FAITH AND REASONABLE INTERPRETATION OF THE ORDER

There is no conceivable interpretation of the Consent Injunction or Default Order that would make it permissible for the TradeKey Defendants to continue to host listings and accounts for the Default Defendants on TradeKey.com.

Neither order is ambiguous, and the purpose of each order is clear.  The Consent Injunction was entered as a compromise to stop ongoing infringement for the duration of the litigation, and to avoid the issuance of a preliminary injunction. It unambiguously required Defendants to remove or disable access to all "Listings", including company listings, used to infringe Plaintiffs' trademarks and to stop providing services to counterfeiters identified by the Plaintiffs. (Dkt. 85 ¶ E).The Default Order required ecommerce websites to remove all accounts and listings associated with the Default Defendants. (Dkt. 261 at 28:22-29:2; Dkt. 306 ¶ (b)(4), p. 5:20-5:22). There is no reasonable reading of the "plain language" of either order that justifies the TradeKey Defendants' continued hosting of the Default Defendants Listings.

In addition, and beyond the unambiguous language of the orders, the fact that two of the Default Defendants are current GoldKey members further supports that no good faith defense is possible.  GoldKey members receive personalized industry specific guidance on their products, search engine optimization, and a host of other services in return for significant membership fees. (First Declaration of Rob Holmes (Dkt. 21) ¶¶ 6-14).  The TradeKey Defendants have actual knowledge of who their GoldKey members are and what they sell, (*id.* ¶¶ 6-26), and have been on notice since 2011 that the Default Defendants are counterfeiters.  Failure to ban and remove all of the Default Defendants' Listings and accounts reveals that the TradeKey Defendants are acting in bad faith.

## V.    REQUESTED RELIEF

Plaintiffs request that this Court issue a further order that:

1)    Requires the TradeKey Corporate Defendants to comply with the obligations in the Consent Injunction and Default Order by:

a)    Immediately and permanently removing and deleting all Listings (as defined by the Consent Injunction) and canceling all accounts related to all twenty-seven TradeKey member counterfeiters identified by the Plaintiffs as defendants in the Verified First Amended Complaint;

b)    Immediately and permanently deleting and removing any and all accounts and Listings associated with Default Defendants;

c)    Immediately and permanently ceasing to offer all services to the Default Defendants, including any accounts under an alias;

d)    Immediately and permanently deleting the Listings for the members identified in the Declarations of Dr. Volker Hillebrand (Dkt. 12); Tim King (Dkt. 13); Sebastian Huber (Dkt. 16); Jean Sebastien Gerondeau (Dkt. 17); and Catherine LeBrun (Dkt. 19); and

e)    Complying with all other obligations set forth in Paragraphs (D), (E), and (F) of the Consent Injunction and (b)(4) of the Default Order, including, but not limited to, refraining from actively assisting, inducing or instructing any member in creating or posting Listings that TradeKey Defendants know or believe are for products that infringe Plaintiffs' Asserted Marks or for counterfeit or replica products bearing Plaintiffs' Asserted Marks, and facilitating, advising, inducing, assisting, aiding, or supplying the means with the purpose to cause any other person to engage in any of the prohibited activities;

2)    Given the TradeKey Defendants' non-compliance with this Court's prior Orders, Plaintiffs further request that this Court impose the following conditions that will promote future compliance with the letter and spirit of the Consent Injunction and Default Order (*See Portland Feminist Women's Health*

*Center v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir. 1989) (definition of civil contempt includes that which is issued, " to coerce future compliance with the court's order. . . .")), by issuing an Order requiring the TradeKey Defendants to:

a)      Immediately and permanently refrain from facilitating, assisting, advising, inducing, or instructing any member of the Defendants' Websites in creating or posting Listings that TradeKey Defendants know or have reason to know (meaning actual or constructive knowledge)[2] are for products that infringe Plaintiffs' Marks or for counterfeit or replica products bearing Plaintiffs' Marks;

b)      Immediately and permanently refrain from facilitating, advising, inducing, assisting, aiding, abetting, or supplying the means for any GoldKey or SilverKey members (or other paying "premium" member of TradeKey.com) to offer to sell counterfeit or replica branded goods on TradeKey.com, including but not limited to prohibiting said paying "premium" members from offering wholesale watches, handbags, leather goods, or pens in the "Branded" or "Fashion" categories on TradeKey.com (or similar categories adopted by TradeKey.com in the future); prohibiting Listings for offers for wholesale "branded goods" that includes in any members' Listing a reference or link to the members' website where said website openly offers for sale goods bearing Plaintiffs' Marks or any/all wholesale "branded" handbags, watches, leather goods, or pens; and refraining from providing the means for any members' website to either link back to TradeKey.com or allow for consumers to contact the member at TradeKey.com;

---

[2] The standard for knowledge in contributory infringement cases as stated by the Supreme Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982) is that a defendant continued to supply its services to one whom it knows or has reason to know is engaging in trademark infringement. The Ninth Circuit in *Louis Vuitton v. Akanoc Solutions*, 658 F.3d 936, 943 (9th Cir. 2011) stated that a plaintiff must show that the defendant provided their services with actual or *constructive* knowledge of the counterfeiting, and clarified that "intent" was not required.

c)      Monitor at regular intervals, but at least weekly, the websites TradeKey.com, b2bfreezone.com, saudicommerce.com and any other website owned or controlled by the TradeKey Corporate Defendants to confirm each is in compliance with the Contempt Order;

d)      Notify all members cancelled pursuant to the Consent Injunction, Default Order, or further Contempt Order of this Court that their accounts are being cancelled due to suspected counterfeit activity, and that they cannot reapply for an account under their own name or an alias to offer for sale wholesale "branded" handbags, leather goods, watches, or pens, and providing Plaintiffs with written proof of such notice;

e)      Provide Plaintiffs with documentation of the deletion and removal of all Listings and cancellation of all accounts identified above, including date(s) of removal and name of member and account within seven (7) days of the Court's Order;

f)      Provide Plaintiffs with any and all available identifying information for counterfeiters identified by Plaintiffs, including payment information and information on any related accounts within thirty (30) days of the Court's Order; and

g)      Any other relief this Court deems appropriate.

3)      Plaintiffs further request that the Contempt Order include a provision that if there are further substantive violations of the Contempt Order by Defendants, that the Court issue sanctions against Defendants in the form of a fine payable to the Court and attorneys' fees payable to the Plaintiffs and/or other sanctions as deemed appropriate by this Court.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court find the TradeKey Corporate Defendants in contempt of the Consent Injunction and Default Order as to the Default Defendants; and further issue an order requesting the relief specified above in Section V and as set forth in the proposed Contempt Order submitted herewith.

Respectfully submitted,

Dated:  November 29, 2012                    JONES DAY

By:    */s/ Susan M. Kayser*
                                   Susan M. Kayser

*Attorneys for Plaintiffs*