LINK: 516

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:** (In Chambers)

### ORDER RE: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.
### INTRODUCTION

Several owners of luxury brands and associated trademarks brought this trademark action against 18 individuals who sold counterfeit versions of the trademarked goods and a group of offshore internet companies that promoted and facilitated the sale of these goods through several websites. Because the individual sellers have failed to respond to the complaint, the Court has entered their defaults. Now the Court addresses motions for partial summary judgment against the defendant internet companies on claims of contributory counterfeiting, contributory infringement, unfair competition and related state claims. The undisputed facts, and those without substantial controversy, definitively establish that counterfeit versions of the trademark owner's goods were in fact sold through the defendant internet companies' websites and that the defendant companies actively promoted and facilitated the sale of such goods. Accordingly, for these reasons and others discussed in greater detail below, the motion for partial summary judgment is **GRANTED.**

### II.
### PROCEDURAL BACKGROUND

The present lawsuit is brought by Plaintiffs Chloe SAS, Alfred Dunhill Limited, Officine Panerai AG, Montblanc-Simplo GmbH, Cartier International A.G., and Lange Uhren GmbH ("Plaintiffs"), manufacturers of trademarked luxury goods. Following an investigation into the activities of sellers operating over the internet and the owners of the websites where the business was conducted, Plaintiffs filed suit against TradeKey (PVT) Ltd., Sawabeh Information Services

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Co., ("SISCOM"), SISCOM's President, Waleed Abalkhail, TradeKey's CEO, Junaid Mansoor, and a number of individual TradeKey member sellers. (Docket No. 1 [Complaint ("Compl.")].) The operative complaint asserts that SISCOM and TradeKey (collectively, "TradeKey Defendants") facilitated the sale of counterfeit versions of Plaintiffs' products through their websites TradeKey.com; saudicommerce.com; and b2bfreezone.com. ("TradeKey websites"). According to the operative complaint, these defendants sold memberships to persons allowing them to operate through these websites where they would advertise and sell counterfeit versions of Plaintiffs' goods. The Court entered a Consent Interim Injunction in June 2011 when the case was still in its early stages, which required that the TradeKey Defendants refrain from creating or posting listings that infringe Plaintiffs' marks. (Docket No. 85 [Consent Injunction] ¶¶ D–F.)

Numerous member-sellers were named defendants, but most of them did not appear or respond to the allegations. (See Docket No. 261.) Accordingly, on motion of Plaintiffs, the Court on April 6, 2012, entered default judgment against the following named defendants: Cctrue International Trade Co., Ltd., ("Cctrue"), Fancysaler Trading Co. ("Fancysaler"), Fuzhou Sunshine Trade Co., Ltd. ("Fuzhou"), Hengtai International ("Hengtai"), Kk Fashion Love Zone ("Kk Fashion"), Love in Apparel Trade Co., Ltd. ("Love in Apparel"), Melchic International Trade Co., Ltd. ("Melchic"), Mystockwatch Co., Ltd. ("Mystockwatch"), Seven Star Replicass ("Seven Star"), Shanghai Taolan International Trade Limited Company ("Shanghai Taolan"), Sinoestar Co., Ltd. ("Sinoestar"), V52 International Trade Co., Ltd. ("V52"), Win-Win Trade Co., Ltd. ("Win-Win"), www.Ecwatch.net ("Ecwatch"), Euromed International Trading Co., Limited ("Euromed"), Orient-Online Co., Ltd. ("Orient-Online"), Richen-Online Co., Ltd. ("Richen-Online"), and Win International Trade ("Win International").

The only remaining defendants, the TradeKey Defendants, are those who allegedly facilitated the defaulting defendants' sale of counterfeit goods over the internet. Accordingly, Plaintiffs now move for partial summary judgment on their claims for (1) contributory counterfeiting; (2) contributory trademark infringement; (3) federal unfair competition; (4) California trademark infringement; and (5) California unfair competition. (Docket No. 531 [Motion for Summary Judgment ("Mem.")].)

## III.
## FACTS

The following facts are undisputed or without substantial controversy.

Plaintiffs manufacture and sell luxury goods that are distributed and marketed in their own boutiques and through limited authorized distributors. (Docket No. 531 [Statement of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Undisputed Facts ("SUF") ¶¶ 1–5, 6, 16, 18, 28, 29, 31, 42, 43,45–47, 52–56, 66, 67,69.) Defendant TradeKey (Pvt) Ltd. is a subsidiary of, and owned by, Defendant SISCOM, and operates the website www.TradeKey.com. (Id.¶ 78.) SISCOM owns the website www.TradeKey.com and TradeKey.com is a division of SISCOM. (Id. ¶¶ 79-80.) The sale of counterfeit goods is a large component of TradeKey's business, as evidenced by the "Replica Products" and "Replica Retention" divisions of TradeKey's sales department, and TradeKey keyword reports for fake branded products. (Id. ¶¶ 108–109.) In addition, a TradeKey employee represented to Plaintiffs' investigator that counterfeiting is one of the two biggest industries featured on TradeKey.com. (Id. ¶¶ 106–107, 190, 249–250.) TradeKey makes its revenue by charging for premium memberships—sellers may purchase either a SilverKey membership for an annual fee or $519 or a GoldKey membership for an annual fee of $3,000. (Id. ¶¶ 85–105.) Thus, the counterfeiting occurs on a large scale as TradeKey solicits wholesale buyers and distributors worldwide to become paying premium members of TradeKey.com. (Id. ¶¶ 83–84.) In addition to TradeKey.com, TradeKey also operates saudicommerce.com and b2bfreezone.com, which are effectively mirror sites. Searches performed on TradeKey.com, b2bfreezone.com, and saudicommerce.com return identical results. (Id. ¶¶ 81, 82.)

Plaintiffs hired investigator Rob Holmes and his company—IPCybercrime—to investigate possible counterfeiting of Plaintiffs' trademarks on the TradeKey Defendants' websites. Holmes paid the $3,000 fee for a GoldKey membership and was subsequently contacted by a TradeKey employee, Farooq Khalil ("Khalil"), who recommended that Holmes post as many products as possible, explaining search engine optimization, offering special packages, and reviewing his listings and product postings. (Id. ¶¶ 178–180, 183–184, 196, 203–205, 210–225, 228, 239.) In addition, TradeKey removed the word "replica" from the title of Holmes's homepage advertisement before it was posted on the TradeKey.com homepage and re-titled it "Fashion Handbag," in an apparent attempt to mask its counterfeit nature. (Id. ¶ 247.)

Holmes also discovered over 6,000 sellers offering branded products on TradeKey.com, including over 2,400 sellers with listings for CHLOE branded goods, over 200 sellers offering DUNHILL branded goods, over 850 sellers offering PANERAI branded goods, over 500 sellers offering MONTBLANC branded goods, over 1,900 sellers offering CARTIER branded goods, and at least two premium members offering A. LANGE & SOHNE branded goods. (Id. ¶¶ 132, 134, 136, 138, 140, 142.) Each Plaintiff has confirmed that none of the sellers on TradeKey.com were authorized by Chloe, Alfred Dunhill, Panerai, Montblanc, Cartier or Lange & Sohne, or their related companies, to sell genuine goods bearing Plaintiffs' marks. (Id. ¶¶ 133, 137, 139, 141, 143.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

    In addition, Holmes purchased eight Chloe handbags, (id. ¶¶ 251–274), one Alfred Dunhill belt, (id. ¶¶ 275–276), one Alfred Dunhill dress watch, (id. ¶ 278–279), five Panerai watches, (id. ¶ 281–295), two Montblanc watches, (id. ¶ 296–301), and four Cartier watches, (id.¶ 302–313), through sell offers posted by a variety of sellers on TradeKey.com.  Each of the Plaintiffs reviewed detailed photographs taken by IPCyberime of the purchased products and confirmed that each purchase was a counterfeit.  (Id. ¶¶ 253, 256, 259, 262, 265, 268, 271, 274, 277, 280, 283, 286, 289, 292, 295, 298, 301, 304, 307, 310, 313.)

## III.
## DISCUSSION

### A. LEGAL STANDARD

    Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Thus, when addressing a motion for summary judgment, the Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

    The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial, which it can meet by presenting evidence establishing the absence of a genuine issue or by "pointing out to the district court . . . that there is an absence of evidence" supporting a fact for which the non-moving party bears the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  To defeat summary judgment, the non-moving party must put forth "affirmative evidence" that shows "that there is a genuine issue for trial."  Anderson, 477 U.S. at 256–57.  This evidence must be admissible.  See Fed. R. Civ. P. 56(c), (e).  The non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the non-moving party must show that evidence in the record could lead a rational trier of fact to find in its favor.  Id. at 587.  In reviewing the record, the Court must believe the non-moving party's evidence, and must draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

**B. APPLICATION**

### 1. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CONTRIBUTORY COUNTERFEITING CLAIM

Plaintiffs contend that they "have established through uncontroverted evidence both the necessary predicate of underlying direct counterfeiting by TradeKey Members, and TradeKey Defendants['] contributory liability for the direct counterfeiting occurring on their website at TradeKey.com." (Mem. at 10.) The Court agrees.

*a. Plaintiffs Have Demonstrated Direct Counterfeiting by TradeKey Members*

To prevail on a claim for contributory counterfeiting, a plaintiff must first establish underlying direct counterfeiting. See Louis Vuitton Malletier v. Akanoc Solutions, 658 F.3d 936, 943 (9th Cir. 2011). A plaintiff establishes a claim for direct trademark counterfeiting by demonstrating (1) ownership of a valid trademark and (2) a defendant's use of that trademark in connection with the sale of goods, without authorization from the trademark owner, that is likely to cause confusion, deception, or mistake. 15 U.S.C. § 1114(1); Gucci Am. Inc. v. Pieta, No. CV 04-9626, 2006 WL 4725706, at *3 (C.D. Cal. Jan. 23, 2006). Significantly, "[a]n offer to sell [counterfeit goods] without more will suffice to establish liability [under the Lanham Act]." Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1312 (9th Cir. 1997).[1]

Defendants do not dispute that "Plaintiffs own valid and protectable trademark registrations for their respective marks, including CHLOE, PADDINGTON, EDITH, DUNHILL, PANERAI, MONTBLANC, CARTIER, and A. LANGE & SOHNE." (Mem. at 10 (citing SUF ¶¶ 7–14, 24–26, 33–40, 48–50).) However, Defendants do challenge the sufficiency and credibility of Plaintiffs' evidence that TradeKey members were selling counterfeit versions of Plaintiffs' products.

---

[1] The Court rejects Defendants' argument that "Shilon is inapplicable here because that case concerned direct infringement by a defendant that admitted to providing samples of actual counterfeit goods and offering to sell substantial quantities of such goods." (Docket No. 570 [Opposition ("Opp.") at 18.) While Defendants have correctly identified two minor points of distinction between the facts in Shilon and those at issue here, these factual distinctions do not alter the Shilon Court's clear holding that "[t]he [Lanham Act] does not require that the defendant be in possession of counterfeit goods at the time of the offer or that the defendant make an actual sale. An offer to sell without more will suffice to establish liability." 121 F.3d at 1312.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Plaintiffs insist that "TradeKey Members used exact copies of Plaintiffs' valuable registered trademarks in connection with listings on TradeKey.com offering for sale counterfeit CHLOE handbags; counterfeit DUNHILL watches and belts; counterfeit PANERAI watches; counterfeit MONTBLANC watches; counterfeit CARTIER watches; and counterfeit A. LANGE & SOHNE watches; the very goods for which Plaintiffs' Marks are registered. . . . . Such uses constitute use of a counterfeit mark in connection with the sale of goods." (Id. at 12 (SUF ¶¶ 144–177, 249–317).) Plaintiffs support these assertions with testimony from their investigator, Rob Holmes, who—as previously discussed in detail—"discovered over 6,000 sellers offering [Plaintiffs'] branded products on TradeKey.com, including over 2,400 sellers with listings for CHLOE branded goods, over 200 sellers offering DUNHILL branded goods, over 850 sellers offering PANERAI branded goods, over 500 sellers offering MONTBLANC branded goods, over 1,900 sellers offering CARTIER branded goods, and at least two premium members offering A. LANGE & SOHNE branded goods." (Id. at 7-8 (citing SUF ¶¶ 132, 134, 136, 138, 140, 142).) And "[e]ach Plaintiff has confirmed that none of the sellers on TradeKey.com were authorized by Chloe, Alfred Dunhill, Panerai, Montblanc, Cartier or Lange & Sohne, or their related companies to sell genuine goods bearing Plaintiffs' Marks, or were otherwise authorized sellers, manufacturers, suppliers, dealers, or distributors." (Id. at 8 (citing SUF ¶¶ 133, 135, 137, 139, 141).)

In addition, "Plaintiffs' investigator purchased eight Chloe handbags, one Alfred Dunhill belt, one Alfred Dunhill dress watch, five Panerai watches, two Montblanc watches, and four Cartier watches, through sell offers posted by a variety of sellers on TradeKey.com." (Id. at 8 (citing SUF 251–276, 278–79, 281–95, 296–313).) Each of the Plaintiffs then "reviewed detailed photographs taken by the investigator of the purchased products and confirmed that each purchase was a counterfeit." (Id. at 8 (citing SUF ¶¶ 253, 256, 25, 262, 265, 268, 271, 274, 277, 280, 283, 286, 289, 292, 295, 298, 301, 304, 307, 310, 313).)

Defendants' opposition portrays Plaintiffs' investigation as "sloppy, unprofessional, and completely unreliable," and asserts that Defendants have "identified several half-truths, falsehoods, and contradictory statements that cast serious doubt on the integrity and accuracy of the 'facts' and 'evidence' presented in Plaintiffs' moving papers." (Opp. at 7.) But the allegedly contradictory statements identified by Defendants are so minor that they fail to create a genuine issue of material fact. In particular, Defendants insist that "Plaintiffs submitted false declarations in which Rob Holmes claims to have purchased the goods for certain buys when, in fact, such items were purchased by Jason Holmes." (Id. (citing SGI ¶¶ 467, 485, 487, 495, 499, 501).) However, contrary to Defendants' implication that Plaintiffs attempted to conceal these details, "[o]n July 8, 2013, in advance of Defendants' depositions of Plaintiffs' investigators, Plaintiffs' counsel sent Defendants' counsel an email clarifying that on some occasions Rob

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Holmes directed Jason Holmes to place the order for a counterfeit good, and then Rob Holmes processed and photographed the item once it arrived at IPCybercrime's Dallas office." (Docket No. 577 [8/21/13 Declaration of Jessica D. Bradley ("8/21/13 Bradley Decl.")] ¶ 7.) Furthermore, whether Rob Holmes or another IPCybercrime employee placed some of the orders for counterfeit goods on TradeKey.com is completely immaterial to the determination that the goods in question are counterfeit. Because this apparent discrepancy in Rob Holmes's testimony was timely corrected by Plaintiffs and is largely irrelevant, Defendants' fail to present any persuasive argument that the "credibility [of Plaintiffs' investigators] is in serious doubt." (Opp. at 25.)

Defendants also fail to establish a material factual dispute with their contention that "IPC's evidentiary handling procedures fail to follow reliable procedures, creating issues of fact regarding the veracity of the physical evidence supporting Plaintiffs' counterfeiting claims." (Id. (citing United States v. Matta-Ballesteros, 71 F.3d 754, 768-69 (9th Cir. 1995), opinion amended at 98 F.3d 1100 (9th Cir. 1996) (chain of custody evidence must establish items are 'in substantially the same condition as when they were seized)).) Rather, they present the declaration of their expert, John Bagnall, who avers that "IPCybercrime did not maintain accurate chain of custody records with regard to the alleged counterfeit goods it purchased from the TradeKey.com website" and, further, that "it is apparent from the records kept by IPCybercrime that no purchases of the alleged counterfeit goods were made directly from the TradeKey.com website." (Bagnall Decl. ¶ 13.) However, even assuming there exist these alleged breaks in the chain of custody, the Court may nevertheless admit the evidence so long as it is "satisfied that in reasonable probability . . . [it] has not been changed in important respects." United States v. Weiner, 578 F.2d 757, 772 (9th Cir. 1978). Here, the only physical characteristic of the goods in question that is material to this case is whether they are, in fact, counterfeit replicas of Plaintiffs' products. Thus, to have changed the evidence at issue in this case in "important respects," IPCybercrime employees would have had to alter the goods they purchased to make them appear as though they were counterfeit. This argument is not only unpersuasive, but borders on the absurd—and in fact, Defendants seem to recognize its absurdity, as they refrain from following their "chain of custody" argument to its logical conclusion.

Finally, it is worth noting that the private investigators involved in this case have a substantial track record in federal court litigation. "Evidence adduced through Rob Holmes' and IPCybercrime's internet investigations has been relied on by multiple courts finding in favor of famous plaintiff brand owners such as Louis Vuitton, Chanel, Microsoft, Gucci, and others." (Docket No. 580 [Reply] at 18); see, e.g., Akanoc, 591 F. Supp. 2d at 1105; Chanel Inc. v. Doubinine, 2008 WL 4449631, at *6 (E.D.N.Y. Oct. 2, 2008); Microsoft Corp. v. V3 Solutions,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Inc., 2003 WL 22038593, at *5 (N.D. Ill. Aug. 28, 2003); Gucci Am., Inc. v. Wang Huoqing, 2011 WL 31191, at *4 (N.D. Cal. Jan. 3, 2011); Gaffigan and Tiffany (NJ) LLC v. Does 1-10, 689 F. Supp. 2d 1332, 1336 (S.D. Fla. 2010).

     Defendants' argument that "no purchases of the alleged counterfeit goods were made directly from the TradeKey.com website," (Bagnall Decl. ¶ 13), is similarly unavailing, as it is unsubstantiated and directly contradicted by the evidence put forth by Plaintiffs. However, even if this assertion were substantiated by the record, it would not defeat Plaintiffs' contributory counterfeiting claim. Much like eBay, TradeKey does not directly sell goods itself, but instead provides a platform through which vendors can market their goods. It is thus unsurprising that some purchases are ultimately processed through the independent websites of the vendors themselves—in fact, as discussed in detail below, these facts are entirely consistent with Plaintiffs' assertion that TradeKey engaged in contributory counterfeiting by assisting vendors in promoting their counterfeit products to interested buyers. Apart from this unspectacular observation regarding the ultimate processing of orders, the only other evidence Defendants offer in support of their theory that the investigators did not actually purchase the counterfeit goods in question is Bagnall's opinion that the aforementioned minor discrepancies in Rob Holmes's Declaration provide "reason to believe that purchases did not take place as asserted by Plaintiffs." (Id. ¶ 11.) This argument amounts to nothing more than conjecture and is simply insufficient to create a dispute of material fact. See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

     Finally, Defendants half-heartedly argue that Plaintiffs have failed to adequately demonstrate that the use of Plaintiffs' marks was for the purpose of selling counterfeit goods or that the allegedly counterfeit goods caused consumer confusion within the meaning of the Lanham Act. Defendants urge that "[f]or example, these listings could be using Plaintiffs' marks in a comparative fashion to advertise other goods" and insist that Plaintiffs' failure to engage in the "likelihood of confusion" analysis set forth in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), is fatal to their contributory counterfeiting claim. (Opp. at 17–18, 19.) But as Plaintiffs observe, "Defendants fail to provide the [C]ourt with a single example to substantiate th[e] . . . speculative argument that . . . 'these listings could be using Plaintiffs' marks in a comparative fashion . . . .'" (Reply at 5.) And with respect to Defendants' Sleekcraft argument, "[i]n cases involving counterfeit marks, it is unnecessary to perform the step-by-step [likelihood of confusion] examination because counterfeit marks are inherently confusing." Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004).

     Accordingly, the Court concludes that Plaintiffs have established the first prong of their contributory counterfeiting claim—direct counterfeiting by TradeKey members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

### *b. Plaintiffs Have Established that Defendants Engaged in Contributory Counterfeiting*

Having established the requisite underlying direct counterfeiting, Plaintiffs must now demonstrate that Defendants "continued to supply [their] services to one who [they] knew or had reason to know was engaging in trademark infringement." Akanoc, 658 F.3d at 942 (citing Inwood Labs, Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982)). Significantly, the Ninth Circuit "ha[s] never held that an express finding of intent is necessary to support liability for contributory copyright infringement." Id. at 943. Instead, "'intent may be imputed' as a result of 'a service provider's knowing failure to prevent infringing actions.'" Id. (quoting Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007). Furthermore, because Defendants "provide[] services rather than a product, [Plaintiffs] also need[] to establish that [Defendants] had '[d]irect control and monitoring of the instrumentality used by a third party to infringe' [Plaintiffs'] marks." Id. at 942 (quoting Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 984 (9th Cir. 1999)).

Plaintiffs have conclusively demonstrated that there is no factual dispute regarding these elements. They explain that "TradeKey Defendants operate a virtual 'swap meet' where they knowingly allow their members to engage in wholesale counterfeiting of Plaintiffs' marks." (Mem. at 14.) They point to the fact that "Defendants maintained 'REPLICA PRODUCTS' and 'REPLICA RETENTION' sales divisions . . . , clearly demonstrating their knowledge of the use of TradeKey.com to offer for sale counterfeit goods." (Id.) In addition,

> Defendants knowingly supplied the services of their B2B website to thousands of TradeKey members offering for sale counterfeit goods in bulk bearing Plaintiffs' Marks and further assisted Premium Members in offering for sale counterfeit goods bearing Plaintiffs' Marks, including choosing and adding keywords to their listings which drives TradeKey's search engine optimization of those listings (SUF ¶¶ 224-226, 242), higher priority ranking than free members leading to more buyer inquiries (SUF ¶¶ 96, 98, 100, 102, 119, 178-180), and marketing on search engines (SUF ¶ 103).

(Id. at 15.) Particularly persuasive is the First Declaration of Rob Holmes in which he recounts his conversations with a TradeKey employee—Farooq Khalil—who offered to assist Holmes in locating buyers for counterfeit goods through TradeKey.com. (Docket No. 21 [First Declaration of Robert Holmes ("First Holmes Decl.")].) Holmes states that when he "asked if it was a problem with TradeKey that [he wanted] to sell counterfeit luxury goods, [Khalil] replied that it was not." (Id. ¶ 8.) In fact, "[a]s far as the replica industry is concerned it's one of the

Case 2:11-cv-04147-GAF-MAN Document 582 Filed 10/08/13 Page 10 of 14 Page ID #:19566

LINK: 516

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

businesses that we rely on to get us a whole lot of revenue, you know . . . " (Docket No. 570-5 [Declaration of Farooq Khalil ("Khalil Decl.")] ¶ 24.)

Finally, with respect to the "control" inquiry under Akanoc, Plaintiffs explain that "TradeKey monitors and controls every aspect of its website and all of its members' listings," pointing to the fact that TradeKey "prevent[s] members from making any changes to listings," (SUF ¶ 127), and "chooses and adds keywords to [premium members'] products which drives [the] search engine optimization of these listings." (Mem. at 5 (citing SUF ¶¶ 116-117).)

Defendants offer no persuasive response, and clearly none that creates a genuine issue of material fact for trial. Defendants first insist that the Court should disregard Khalil's statements, both because they have been miscontrued by Plaintiffs and because Khalil was a low level employee. However, these arguments are unpersuasive because Khalil does not dispute that he made these statements to Plaintiffs' investigators. (See Khalil Decl. ¶¶17-24 (Khalil explicitly acknowledges that he made the statements in Plaintiffs' recordings).) Instead, Khalil maintains that he "did not understand that the term 'replicas' meant infringing or counterfeit goods" because "in [his] experience, 'replica' items refer to legitimate goods in a broad range of categories including apparel, art, electronics, home furnishings, models and furniture" and that he "did not mean to suggest that TradeKey permits or encourages counterfeit or infringing listings on its site." (Id.) But Khalil's insistence that he misunderstood the term "replica" is undermined by the plain language of his statements, their context, and the fact that "the investigators in their undercover identities as premium TradeKey members posted multiple listings that included the words 'replica' in connection with luxury goods and other language that indicated that they were selling unlawful counterfeits." (Reply at 12 (citing SGI 198-201, 206-209, 240-241)); see also Louis Vuitton S.A. v. Lee, 875 F.2d 584 (7th Cir. 1989) (finding clear error in lower court's finding that defendants did not intentionally sell counterfeits; holding that unfamiliarity with U.S. law or language issues did not undermine statements made by defendants showing knowledge that goods were fake); Jim Marshall Photography, LLC v. John Varvatos of Calif., Inc., No. C-11-06702, 2013 WL 3339048, at *4 (N.D. Cal. June 28, 2013) (When evidence produced by the nonmoving party is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts . . . .") And the Court agrees that "Defendants' attempt to distance themselves from employees who made damaging statements by characterizing these employees as 'low level' is directly refuted by Mr. Khalil's own testimony, the thousands of member listings offering 'replica' or fake goods, and the services TradeKey.com provided to the investigators." (Reply at 10.)

Also unavailing is Defendants' argument that, at the very least, SISCOM cannot be held liable for contributory counterfeiting because "TradeKey is SISCOM's subsidiary" and "[a]s a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

separate company, SISCOM is not liable for TradeKey's operation of its website . . . ." (Opp. at 14.) Plaintiffs are correct that this assertion "is in direct opposition to the undisputed facts," as "TradeKey.com is owned by and under SISCOM's **direct control** . . . ." (Reply at 14 (citing SGI 78-80) (emphasis added).)

The Court therefore concludes both that Plaintiffs have adequately demonstrated underlying counterfeiting activity, as well as the requisite knowledge and control on the part of TradeKey Defendants. Accordingly, Plaintiffs' motion is **GRANTED** with respect their claim for contributory counterfeiting.

### 2. PLAINTIFFS ARE ALSO ENTITLED TO SUMMARY JUDGMENT ON THEIR CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM

It appears to the Court that this cause of action is largely redundant and that, at the very least, Plaintiffs' claim for contributory trademark infringement is necessarily encompassed by their contributory counterfeiting claim in this case. The Court therefore believes it unnecessary to repeat the foregoing analysis, which is an approach that other courts in this circuit have adopted in the interest of efficiency. See, e.g., Feiya Cosmetics, LLC v. Beyond Beauty Intern., LLC, No. 10-00967, 2011 WL 4506182, at *9 (Aug. 29, 2011) (analyzing "contributory trademark counterfeiting" and "contributory trademark infringement" claims simultaneously under same standard). Accordingly, for the reasons discussed in IV.B.1. above, the Court concludes that Plaintiffs' motion should be **GRANTED** with respect to its contributory trademark infringement claim.

### 3. BECAUSE THEY HAVE DEMONSTRATED CONTRIBUTORY COUNTERFEITING AND TRADEMARK INFRINGEMENT, PLAINTIFFS PREVAIL ON THEIR FEDERAL AND STATE UNFAIR COMPETITION CLAIMS

To prevail on their claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove the same elements required for federal trademark infringement. See New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'"). And the central inquiry under California law is also "likelihood of confusion." See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) ("California statutory trademark infringement is proved if anyone uses a mark that is identical with, or substantially indistinguishable from, a mark registered in the state, on or in connection with goods or services for which the genuine mark is registered."); Walter v. Mattel, 210 F.3d 1108, 1111 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Counterfeiting—which is an attempt to "pass off" replica products as genuine goods—inherently involves this sort of "confusion." Thus, for the reasons set forth in detail in IV.B.1., the Court concludes that Plaintiffs are entitled to summary judgment on these claims. This conclusion is not altered by Defendants' insistence that the state law "claims are blocked by the Communications Decency Act, which states that '[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker or any information provided by another information content provider,' and expressly preempts any state law to the contrary." (Opp. at 20 (citing 47 U.S.C. ss 230(c)(1), (e)(3)).) As Plaintiffs observe, "Defendants cite no facts to show they meet the definition of an 'interactive computer service' under the statute." (Reply at 20.) Furthermore, "even if the statute did apply, state law unfair competition claims are not preempted where Plaintiffs allege tortious conduct related to something other than the content of third party advertisements." (Id. (citing Cybersitter, LLC v. Google, Inc., 905 F. Supp. 2d 1080, 1086-87 (C.D. Cal. 2012).) Plaintiffs' motion is therefore **GRANTED** with respect to its federal and state unfair competition claims.

### 4. PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21, 846 F.2d at 1180. Plaintiffs request that the Court enjoin Defendants from (1) permitting, allowing or facilitating customers, users, or members of www.TradeKey.com, www.saudicommerce.com and www.b2bfreezone.com, or any other website affiliated with the TradeKey Defendants to post or display listings to buy, sell, manufacture or distribute products bearing Plaintiffs' marks or any "colorable imitation" of Plaintiffs' marks; (2) displaying listings either using the Plaintiffs' marks or in response to search queries for Plaintiffs' marks on the Defendants' websites; (3) using Plaintiffs' marks as keywords, adwords, or any other type of metadata; and (4) allowing or advising any person or entity on how to create or post listings for products Defendants know or have reason to know infringe Plaintiffs' marks. (Docket No. 532 [Proposed Order] at 18.) Plaintiffs also request that "[w]ithin 30 days of this order the TradeKey Defendants" be required to "institute mechanism(s) and/or procedures to ensure compliance" with the injunction, "and shall provide to the Court written confirmation of their compliance." (Id.) Furthermore, upon receipt of written notice, including email, the enjoined parties must remove or disable access to any listing that (1) Plaintiffs identify as infringing or (2) otherwise comes to the attention of the TradeKey Defendants as infringing. (Id. at 19.) Finally, Plaintiffs request that Defendants be required to monitor their websites on an on-going basis "to confirm each such website is in compliance with this Order." (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Defendants' argument that the requested injunction is too broad is unpersuasive, particularly in light of the fact that in January of this year, the Court found Defendants in contempt of two court orders—a Consented Interim Injunction and a Default Order—that required TradeKey to remove listings and accounts of nine TradeKey members specifically identified by Plaintiffs.  (Docket No. 492 [1/4/13 Order].)  Accordingly, Plaintiffs' request for a permanent injunction is **GRANTED**.

### 5. THE COURT DEFERS RULING ON THE ISSUE OF DAMAGES

Defendants' two primary arguments in opposition to Plaintiffs' request for statutory damages are (1) that "[d]amages are prohibited by the innocent publisher limitation"; and (2) that "Defendants are entitled to 'have a jury determine the amount of statutory damages.'" (Opp. at 20, 23 (quoting Akanoc, 2010 WL 5598337 (N.D. Cal. Mar. 19, 2010)).)  With respect to Defendants' first argument, the innocent publisher limitation is inapplicable here because it applies only to publishers who posted paid advertisements in periodicals and had no knowledge of the goods being advertised.  See 60 Stat. 438 79th Cong. (1946).  However, Plaintiffs agree that "[t]he amount of the statutory damages . . . should be reserved for further briefing or evidentiary hearing." (Reply at 24.)  Thus, "[b]ecause Plaintiffs have not yet moved on the amount of statutory damages or presented this [C]ourt with the facts and argument to support the amount of statutory damages," the Court **DEFERS** rendering a final determination on the damages issue.

## IV.
## CONCLUSION

Accordingly, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**, with the caveat that the Court **DEFERS** ruling on the statutory damages issue.  Plaintiffs are to prepare and submit a proposed permanent injunction that enjoins the following:

(1) permitting, allowing, or facilitating customers, users, or members of www.TradeKey.com, www.saudicommerce.com, and www.b2bfreezone.com, or any other website affiliated with the TradeKey Defendants to post or display listings to buy, sell, manufacture or distribute products bearing Plaintiffs' marks or any "colorable imitation" of Plaintiffs' marks;

(2) displaying listings either using the Plaintiffs' marks or in response to search queries for Plaintiffs' marks on the Defendants' websites;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-4147 GAF (MANx) | Date | October 8, 2013 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

(3) using Plaintiffs' marks as keywords, adwords, or any other type of metadata; and

(4) allowing or advising any person or entity on how to create or post listings for products Defendants know or have reason to know infringe Plaintiffs' marks.

The proposed injunction should be submitted to the Court no later than the close of business on **Friday, October 11, 2013**.

In addition, Defendants are required to institute mechanisms or procedures to ensure compliance with this injunction within thirty days of this Order, and to submit written confirmation of compliance no later than **close of business Friday, November 1, 2013.** Finally, Defendants must monitor their websites on an on-going basis for compliance and must—upon written notice—remove or disable access to any listing that Plaintiffs identify as infringing or that otherwise comes to Defendants' attention as infringing Plaintiffs' marks.

**IT IS SO ORDERED.**