ERIK S. SYVERSON (221933)
esyverson@millerbarondess.com
STEVEN T. GEBELIN (261507)
sgebelin@millerbarondess.com
SCOTT LESOWITZ (261759)
slesowitz@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendants and Counter Claimants
Sawabeh Information Services Co. and
TradeKey (Pvt) Ltd., and Defendants Waleed Abalkhail
and Junaid Mansoor

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CHLOE SAS, et al. <br><br> Plaintiffs, <br><br> v. <br><br> SAWABEH INFORMATION SERVICES CO., et al., <br><br> Defendants. | CASE NO. 11-CV-04147 GAF (MANx) <br><br> [Assigned to the Honorable Gary A. Feess] <br><br> **COUNTERCLAIMANTS' OPPOSITION TO CROSS-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| SAWABEH INFORMATION SERVICES CO., TRADEKEY (PVT), et al. <br><br> Counter Claimants, <br><br> v. <br><br> RICHEMONT INTERNATIONAL LIMITED, et al. <br><br> Counterclaim Defendants. | Date: **December 16, 2013** <br> Time: **9:30 a.m.** <br> Dept.: **740** <br> Judge: **Hon. Gary A. Feess** <br><br> Action Filed: May 13, 2011 <br> Trial Date: Not Set |

# TABLE OF CONTENTS

I. **Factual Background** .................................................................................. 2

    A. Procedural History ............................................................................ 2

    B. The Allegations of the TACC Establish Plaintiffs' Wrongful Seizure. ............................................................................................. 3

II. **Legal Standard** ........................................................................................... 5

III. **Argument** .................................................................................................... 6

    A. "Wrongful Seizure" Under the Lanham Act May be Established by Allegations of "Bad Faith" or "Predominantly Legitimate" Items or a Prohibition from Doing Legal Acts .................................................. 6

        1. The TACC Establishes a Claim Based on Bad Faith. ................. 7

        2. The TACC Establishes a Claim Based on Predominantly Legitimate Items. ........................................................................ 8

        3. The TACC Establishes a Claim Based on Prohibition from Doing Legal Acts. ...................................................................... 10

    B. Trademark Liability Does Not Preclude a Wrongful Seizure Claim .. 11

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937,
   173 L.Ed.2d 868 (2009) .................................................................................... 5

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   910 F.2d 1049 (2d Cir.1990) ............................................................................. 7

*Burlington N. Santa Fe R. Co. v. Assiniboine &
   Sioux Tribes of Fort Peck Reservation*,
   323 F.3d 767 (9th Cir. 2003) ............................................................................. 5

*Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*,
   874 F. Supp. 1065 (C.D. Cal. 1994) ................................................................. 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F. 3d 259 (9th Cir. 1996) ............................................................................ 13

*Gen. Elec. Co. v. Speicher*,
   877 F.2d 531, (7th Cir. 1989) ........................................................................... 9

*Hal Roach Studios, Inc. v. Richard Feiner
   & Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989) ...................................................... 6

*Harris v. Cnty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) .......................................................................... 5

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................ 5

*Louis Vuitton Malletier SA v. Akanoc Solutions*,
   591 F. Supp. 2d 1098 (N.D.Cal. 2008) .......................................................... 13

*Martin's Herend Imports v. Diamond & Gem Trading*,
   112 F.3d 1296 (5th Cir.1997) ......................................................................... 12

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
   16 F.3d 1032 (9th Cir. 1994) .................................................................. 7, 9, 11

*Reebok Int'l Ltd. v. Su Youn Pak*,
   1989 WL 76225 (S.D.N.Y. June 30, 1989) ................................................... 10

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F. 3d 93, (2nd Cir. 2010) ........................................................................... 9

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 ................................................................................................... 5

*Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*,
   278 F.3d 523 (5th Cir. 2002) .................................................................... 11, 12

**STATUTES**

| | |
|---|---|
| 15 U.S.C. §§ 1114 | 10 |
| 15 U.S.C., § 1116 | 2, 4, 10, 11 |
| 15 U.S.C. § 1125 | 10 |
| Fed. Civ. R. P., Rule 11 | 10 |
| Fed R. Civ. P., Rule 12(c) | 5 |
| Fed.. R. Civ. P., Rule 56(d) | 5 |
| Fed. R. Civ. P., Rule 65(c) | 7 |
| Fed. R. Evid. § 201 | 5 |

**OTHER AUTHORITIES**

| | |
|---|---|
| Black's Law Dictionary, (9th ed. 2009) | 6 |
| Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984) | 6, 7, 12 |
| Senate Comm. on the Judiciary, S.Rep. No. 98-526, at 8 (1984) | 7 |

**TREATISES**

| | |
|---|---|
| McCarthy on Trademarks, at § 30: 37 | 12 |

## INTRODUCTION

Beginning on May 23, 2011 and continuing for approximately 64 hours, Counter-Defendants Chloe SAS, Alfred Dunhill Limited, Officine Panerai AG, and Montblanc-Simplo GmbH ("Plaintiffs") seized and took offline the servers leased by Counterclaimants TradeKey (PVT) Ltd. ("TradeKey") and Sawabeh Information Services Company ("SISCOM"), (collectively "Counterclaimants") from Liquid Web, Inc., which owned and operated the server facility located in Lansing, Michigan. During this seizure, Plaintiffs used an *ex parte* seizure order, relying on a statute designed to allow preservation of counterfeit goods from destruction by "fly by night" defendants, to instead shut down TradeKey's entire e-commerce website, TradeKey.com. TradeKey.com was shut down for the entire 64-hour period. SISCOM's completely unrelated webhosting facilities were shut down for 24 hours. During that shut down period, Plaintiffs seized records indiscriminately, including an overwhelming majority which were completely unrelated to any alleged counterfeiting of Plaintiffs' marks, delayed the return of key servers to operation after being informed of their import to returning the online business to operation, and falsely represented that they would expedite processing of critical servers while they instead worked on other servers of their preference.

Based on Plaintiffs' wrongful conduct during the course of their seeking, obtaining, and executing the *ex parte* seizure order, including their indiscriminate seizure of both online businesses and all of their records and servers, and subsequently delaying the businesses' return to operation, as well as their problematic application, Counterclaimants brought a claim for wrongful seizure under the Lanham Act.

Having received an order on summary judgment finding the Counterclaimants contributorily liable for counterfeiting of their marks, Plaintiffs now seek to establish through a motion for judgment on the pleadings that the Counterclaim fails as a matter of law. In doing so, Plaintiffs ignore the pleadings, misconstrue the law, and seek to establish facts prior to allowing Counterclaimants any discovery on the counterclaim.

Their motion should be denied.

## I. Factual Background

### A. Procedural History

Plaintiffs filed their complaint and an *ex parte* application for a seizure order pursuant to 15 U.S.C. § 1116(d) and received such an order on May 17, 2011. [*E.g.* Dkt. Nos. 1, 7, 32-33.] Pursuant to 15 U.S.C. § 1116, this Court held a hearing regarding the *ex parte* seizure and Plaintiffs' temporary restraining order on May 27, 2011. [Dkt. No. 45.] The Court held further proceedings regarding the *ex parte* seizure on June 13, 2011, and increased the Plaintiffs' 15 U.S.C. § 1116 bond requirement from $20,000 to $1.25 million in response Counterclaimants' request. [Dkt. Nos. 63, 64.]

Counterclaimants first filed counterclaims in this case on June 14, 2012. [Dkt. No. 309.] The order on Plaintiffs' first motion to dismiss granted the motion as to claims under the Stored Communications Act and certain claims under the Computer Fraud and Abuse Act, but denied the motion's request regarding "bad faith" allegations in support of the claim for Wrongful Seizure under the Lanham Act[1]. [Dkt. No. 460 ]. In response, Counterclaimants filed their Third Amended Counterclaims on February 14, 2013, re-alleging claims for violation of the Computer Fraud and Abuse Act and retaining their claims for Wrongful Seizure under the Lanham Act. [Dkt. No. 510 (the "TACC").] Plaintiffs successfully moved to dismiss the TACC's claim under the CFAA, but the court denied their request to strike related allegations. [Dkt. Nos. 569.] Plaintiffs also successfully moved for partial summary judgment against Counterclaimants on claims for contributory counterfeiting, contributory trademark infringement, and dependent federal and state unfair competition claims. [Dkt. No. 582, p. 11-12.]

---

[1] "Evaluation of the 'bad faith' component of the wrongful seizure claim therefore requires evaluation of the adequacy of Plaintiffs' investigation prior to requesting the Seizure Order—a matter far beyond the scope of the TACC." [Dkt 460 at p 8].

2

### B. The Allegations of the TACC Establish Plaintiffs' Wrongful Seizure.

The TACC makes clear that Counterclaimants allege claims for damages arising from Plaintiffs' "wrongful execution of an invalid *Ex Parte* Seizure Order to shut down TradeKey's e-commerce website for more than 60 hours, and SISCOM's website and IT outsourcing business for an entire business day in Saudi Arabia." TACC ¶ 1. Specifically, the TACC sets forth that Plaintiffs' wrongful conduct included:

- Improperly "seeking, obtaining, and purporting to execute an *ex parte* seizure order" (*Id.* ¶ 2(a));

- "indiscriminately accessing and copying" each and every one of the more than 40 servers for TradeKey and SISCOM and all of the files thereon "without limiting their seizure of servers or files to those for which they had cause to believe contained" the records subject to seizure under the Lanham Act, including SISCOM's servers, "despite the fact that those servers were separate from the TradeKey servers and did not operate the TradeKey.com website," and all TradeKey servers "even when Counterclaim Defendants knew or should have known they could copy the" relevant data from fewer servers "with minimal impact"; the harm of the seizure was compounded by Counterclaimants' delay in restoring critical servers, despite being advised of their necessity and falsely representing they would expedite copying and restoration of such critical servers, resulting in longer downtime and thereby creating a significant negative impact on TradeKey.com's Google PageRank; (*Id.* ¶¶ 2(b)- (e), 28);

- Improperly asserting in their *ex parte* application that the Counterclaimants were "untrustworthy and would destroy evidence" instead of informing the Court that SISCOM is a long standing legitimate Saudi consulting and IT business represented by Jones Day's associate firm in Saudi Arabia and that the TradeKey website is one of the "world's largest business-to-business Internet

3

portals … on which suppliers can advertise their ability to supply goods and materials to other businesses", with more than a million products listings in thousands of different categories of goods and services, and that the TradeKey website provided IP owners an effective method to notify and request removal of allegedly infringing materials (*See id.* ¶¶ 2(f), 22, 24, 31).

The TACC also sets forth facts showing that the "overwhelming majority" of the records seized by Plaintiffs are not related to any counterfeiting of Plaintiffs' marks. The SISCOM leased servers were entirely unrelated to the TradeKey.com website's operation and files, which was readily apparent during the seizure. *See, e.g. id.* at ¶¶ 2(c), 43-45, 56. The "overwhelming majority of products offered on the TradeKey site had nothing to do with luxury goods" and only a small fraction of a percent of listings even mentioned Plaintiffs' marks. *Id.* ¶ 25. Of the 42 Tradekey leased servers, the "overwhelming majority … had no relation to the [Plaintiffs'] trademarks and did not contain records relating to the alleged manufacture, sale, or receipt of counterfeits of [Plaintiffs'] registered marks." *Id.* ¶ 54.

The TACC also alleges other facts tending to show Plaintiffs' bad faith in the execution of the *ex parte* seizure order. Plaintiffs' seizure of the servers lasted much longer than should have been necessary. *Id.* ¶ 58. After being contacted by counsel of Counterclaimants, Plaintiffs failed to abide by their agreement to return six identified mission critical servers to service within four hours, but instead kept the TradeKey.com website offline for several days. *Id.* ¶¶ 60-61, 63-65. Plaintiffs initially refused to sequester the seized data. *Id.* ¶ 62.

As is abundantly clear within the claim for wrongful seizure itself, Plaintiffs seized numerous "items not authorized by 15 U.S.C. § 1116(d)(1)(A)", including unrelated data from SISCOM and TradeKey servers, both companies' network connectivity for an unnecessarily long period, and server uptime; Plaintiffs continued the seizure beyond the time frame allowed by the order; and Plaintiffs acted in bad faith. *Id.* ¶¶ 82-82.

## II. Legal Standard

In deciding a motion for judgment on the pleadings, the Court inquires whether the complaint at issue contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (finding *Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent). The Court may find a claim plausible when a plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference of misconduct, but the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks and citation omitted). In deciding such a motion, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012)(citing Fed. R. Evid. § 201). With regard to judicial records, judicial notice is limited to "undisputed matters of public record" and not disputed facts contained within such records. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

A motion for "judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment."[2] *Hal Roach Studios, Inc. v. Richard*

---

[2] To the extent the court is inclined to treat the motion as one for summary judgment, Counterclaimants respectfully request leave to conduct discovery on their claim pursuant to F.R.C.P 56(d), as the discovery period in this case has not yet commenced and there are factual issues set forth in its pleadings that Counterclaimants have not had the opportunity to conduct discovery on and that are within the province of Plaintiffs' knowledge. *See, e.g. Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003)(where "a

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989)(reversing grant of motion for judgment on the pleadings).

### III. Argument

So long as the TACC establishes a plausible claim for wrongful seizure, based on allegations of facts that allow an inference of the alleged wrongdoing, judgment on the pleadings is inappropriate. Because even a legitimately obtained ex parte seizure order may be used for a "wrongful seizure," and because the TACC sets forth multiple bases on which the Plaintiffs' seizure was wrongful, the motion should be denied.

### A. "Wrongful Seizure" Under the Lanham Act May be Established by Allegations of "Bad Faith" or "Predominantly Legitimate" Items or a Prohibition from Doing Legal Acts.

Congress intentionally left the definition of "wrongful seizure" to "case-by-case interpretation." *See* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984).

The definition of the terms provides first order guidance to the scope of claims by the targets of *ex parte* seizure orders. "Wrongful" is defined as "Characterized by unfairness or injustice" or "Contrary to law; unlawful" while a "seizure" is the "act or an instance of taking possession of a person or property by legal right or process; esp., in constitutional law, a confiscation or arrest that may interfere with a person's reasonable expectation of privacy." Black's Law Dictionary (9th ed. 2009). Under this guidance, any plaintiff's unfair, unjust, or unlawful seizure of a person or their property by an *ex parte* seizure under the Lanham Act exposes that plaintiff to liability for a wrongful seizure claim.

In aid to the plain meaning of the term, Congress did identify several guidelines for determining whether a seizure was wrongful. Congress indicated that a seizure

---

summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely.")

may be wrongful: (1) where an applicant acted in "bad faith" in seeking the order; or (2) if the goods seized are predominately legitimate merchandise, even if the plaintiff acted in good faith. *See,* Senate Comm. on the Judiciary, S.Rep. No. 98-526, at 8 (1984). Similar to the rule applicable in wrongful injunction proceedings, where "a party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing," a wrongful seizure prevents a party from doing something it had a legal right to do. *See, Nintendo of Am., Inc. v. Lewis Galoob Toys,* Inc., 16 F.3d 1032, 1036 (9th Cir. 1994) (citing *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1054 (2d Cir.1990).)

### 1. The TACC Establishes a Claim Based on Bad Faith.

The TACC is replete with allegations that can support liability on a bad faith claim. *See, e.g.* Section I.B, *supra*; TACC ¶¶ 82-83; [Dkt 460 at p 8]. Among other facts, Counterclaimants have alleged that the manner of execution of the order and the information omitted from the application evidence an intent to do something other than simply prevent a "bad faith tactic" of destruction or transfer of counterfeit merchandise, which the *ex parte* procedure was intended to remedy. *See,* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984). Indeed, the fact that Plaintiffs did not recover <u>any</u> merchandise from Counterclaimants, and they have never argued that Counterclaimants have ever had possession of any counterfeit merchandise, creates at least a question of fact that the order was sought for an improper purpose.

Counterclaimants have put forth facts establishing that Plaintiffs were aware that their alleged need for an *ex parte* seizure (as opposed to some noticed proceeding) was baseless. Counterclaimants' "'bona fide' status" is relevant to the wrongful seizure claim because seeking and executing an ex parte order against a legitimate business is wholly inappropriate unless there is specific reason to believe the targeted business would destroy counterfeit merchandise. *Clorox Co. v. Inland Empire*

*Wholesale Grocers, Inc.*, 874 F. Supp. 1065, 1069 (C.D. Cal. 1994)(alleged contributory infringer manufacturer had unlabeled generic products wrongfully seized). As set forth in the TACC, Counterclaimants are bona fide businesses and relevant information establishing that would have been available to Plaintiffs, such that seeking their ex parte order was "wholly inappropriate." Beyond Counterclaimants' legitimacy, all of the data and servers seized by Plaintiffs were located at a legitimate U.S. webhosting company, Liquid Web, Inc., and there was no reason to believe they would have failed to comply with any court notice. The TACC sets forth facts that provide a clear basis to establish Plaintiffs knew their claims, necessary for an *ex parte* seizure, were baseless.

In contrast to the sufficiency of those allegations, Plaintiffs' assertion that there has been a finding of probable cause to support the *ex parte* application is inapposite from the properly pled facts that support a finding of bad faith intent. (*See,* Plaintiffs' Memo at 10.) There has been no fact finding regarding the facts related to the subjective intent underlying Plaintiffs' claim that they acted without bad faith; there has been no discovery on the matter; and there is no binding determination that precludes the claim.

### 2. The TACC Establishes a Claim Based on Predominantly Legitimate Items.

The TACC clearly and repeatedly sets forth that (1) the separate and distinct SISCOM servers had no data relevant to Plaintiffs' claims of counterfeiting and were not involved in the operation of the TradeKey.com website; (2) the TradeKey servers were overwhelmingly comprised of files and records that were not relevant to Plaintiffs' claims of counterfeiting; and (3) the redundancy of TradeKey servers meant that any relevant data could have been copied without the complete interruption of both companies' lease of its servers and associated services. *See, e.g.* Section I.B, *supra*; TACC ¶¶ 2, 25, 37-42, 49, 58, 82-83.

Only a miniscule portion of the seized records, files, data, or servers were

actually relevant to Plaintiffs' claims of counterfeiting of their marks by third parties. Plaintiffs' argument that there have been "no wrongful seizure cases that allow a wrongful seizure claim based on intermingled non-segregable electronic data, as opposed to non-segregable non-infringing merchandise" is meritless and in flat contradiction to the facts set forth within the TACC. *See,* Plaintiffs' Memo at 13:20-21; TACC ¶ 58. Although Counterclaimants have been unable to find a similar case in which a party so egregiously abused an *ex parte* seizure order to take down a website with predominantly unrelated data, Plaintiffs would be similarly unable to find decisions approving of their tactics. Indeed, if Plaintiffs had instead sought to use an *ex parte* seizure order to shut down the eBay.com website, without using eBay's anti-infringement tools or sending notices of infringement, it would be the epitome of bad faith. *See, Tiffany (NJ) Inc. v. eBay Inc.*, 600 F. 3d 93, (2nd Cir. 2010)(eBay not liable for specific infringements appearing on website without specific knowledge of such infringements.); *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d at 1037 (wrongful injunction standard designed to discourage "parties from requesting injunctions based on tenuous legal grounds.")

   Plaintiffs' attempt to fashion a rule from *General Electric* and *Reebok* fails because both cases address situations where the plaintiff's seizure was **predominantly** of counterfeit **goods**. In *Gen. Elec. Co. v. Speicher*, the Seventh Circuit reversed the lower court's damages award and award of damages from the seizure bond to the counterfeiter, finding that the goods seized were used to infringe an unregistered mark. 877 F.2d 531, 537 (7th Cir. 1989). As such, the seizure of the goods covered by a common law mark was permitted by the trial court's broad order and the seized items were therefore predominantly counterfeit, justifying the plaintiff's taking of photographs (of seizable materials) and seizing some "documents having nothing to do with G.E. trademarks." *Id.* at 537-538. Here, the Plaintiffs seized **no goods** from Counterclaimants. Instead, they seized each Counterclaimant's entire business for days and copied the overwhelmingly irrelevant records wholesale.

Likewise, the citation to *Reebok Int'l Ltd. v. Su Youn Pak* is inapposite. 1989 WL 76225 (S.D.N.Y. June 30, 1989). In that case, on Plaintiff's motion for summary judgment and for sanctions pursuant to Rule 11, the court found the case was

> "the clearest possible case of violation of 15 U.S.C. §§ 1114 and 1125. Defendants were detected purveying goods identical to certain goods sold by plaintiffs and they were using exact 'knock-offs' of the REEBOK and STARCREST trademarks. Thus defendants were infringing, and indeed counterfeiting, registered trademarks in violation of § 1114 and were falsely designating the origin of goods in violation of § 1125. In all this, defendants were without question committing willful violations of law." *Id.* at *2."

The defendant's claim for wrongful seizure arose out of documents designated as

> (1) 'Assorted 1987 invoices'; (2) 'Account reference books A through Z'; (3) 'Assorted 1986 invoices'; (4) '1 Telephone and address book'; (5) '1 cash out book 10/85–4/87'; and (6) 'Assorted papers.' *Id.* at * 4.

The court dismissed the claim <u>on summary judgment</u>, finding that the documents were all within the scope of records authorized--those "books and records related to the manufacture, purchase, sale or distribution of counterfeit merchandise," and despite being in Korean and using a code, they were promptly returned. *Id.* Here, there was no code or foreign language employed to hide the records that would be available under an appropriate seizure order--instead, the TradeKey "redundant architecture, which serves the purposes of both load balancing and fault tolerance in the event that one of the servers fails, is commonly implemented for high-traffic web sites like TradeKey and was known or should have been known to the [Plaintiffs'] Seizure Team" which included a certified computer examiner. TACC ¶ 58. Moreover, unlike *Reebok*, the records seized were not predominately the type authorized for seizure by section 1116.

### 3. The TACC Establishes a Claim Based on Prohibition from Doing Legal Acts.

The TACC clearly sets forth that Counterclaimants were operating legal businesses prior to the execution of the *ex parte* seizure, such that the seizure stopped Counterclaimants' legitimate and legal acts, such as SISCOM's separate businesses as

operated through its servers, which had nothing to do with Plaintiffs' claims of counterfeiting and the overwhelming majority of the TradeKey business that involved no use of Plaintiffs' marks (which were mentioned in only a fraction of a percent of all posts), such that the TradeKey servers were overwhelmingly comprised of files and records that were not relevant to Plaintiffs' claims of counterfeiting.

A wrongful seizure, like a wrongful injunction, occurs "when it turns out the party" interrupted "had the right all along" to do the things the order interrupted and prevented it from doing. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). Even though a "court that complies with the applicable law in issuing a preliminary injunction does not 'wrongfully' issue it," the injunction may ultimately prove wrongful. *See, Id.* at fn 4 (injunction wrongful despite earlier appeal that upheld the district court's issuance of the preliminary injunction).

There has been no final determination that SISCOM had no right to operate its business conducted on its separate servers. Nor has there been a final determination that the entire business conducted on the TradeKey servers was in violation of Plaintiffs' rights. As such, there is no basis at this pleadings stage to determine that Counterclaimants cannot establish that they were prevented from doing what they "had the right" to do by the *ex parte* seizure.

**B.   Trademark Liability Does Not Preclude a Wrongful Seizure Claim.**

As with a "party who has been 'wrongfully enjoined'," the wrongful seizure claim is independent from an assertion that the order was "wrongfully issued." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036, n. 4 (9th Cir. 1994). Especially for *ex parte* seizure orders under 15 U.S.C. 1116, even if a party is found "liable under the Lanham Act for its representations in connection with the sale of its goods does not necessarily mean that the seizure was warranted." *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 531 (5th Cir. 2002). Instead, the *ex parte* seizure remedy must be narrowly construed, and is not coextensive with liability for any Lanham Act claim. *Id.* (citing *Martin's Herend Imports v. Diamond*

& *Gem Trading*, 112 F.3d 1296, 1306 (5th Cir.1997)). Rather, because "the primary focus of an ex parte seizure order is on the goods themselves, rather than any business practice or representation that may give rise to liability for trademark infringement or unfair competition," the seizure must actually be used to acquire counterfeit goods from the target. *Id.* (citing Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984) and McCarthy on Trademarks, at § 30: 37).

Moreover, even an ultimate finding of liability against a defendant "under the Lanham Act for its representations in connection with the sale of its goods does not necessarily mean that the seizure was warranted." *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 531 (5th Cir. 2002)(affirming jury verdict for wrongful seizure where defendant's alleged infringement was use of trademark in reference to product style on invoices and advertising materials). Instead, the *ex parte* seizure remedy must be narrowly construed, and is not coextensive with liability for any Lanham Act claim. *Id.* (citing *Martin's Herend Imports v. Diamond & Gem Trading*, 112 F.3d 1296, 1306 (5th Cir.1997)(importation of grey market goods infringement, but not counterfeiting for *ex parte* seizure)). Because "the primary focus of an *ex parte* seizure order is on the goods themselves, rather than any business practice or representation that may give rise to liability for trademark infringement or unfair competition." *Waco Int'l, Inc.* 278 F.3d at 532 (citing 130 Cong. Rec. H-12076 (October 10, 1984)("a seizure must be considered wrongful when the *material* to be seized is legitimate, non-infringing merchandise.")(emphasis added)).

Plaintiffs have not alleged or established that they seized **any goods** from Counterclaimants, let alone any that bear their registered trademarks. As in *Waco*, Plaintiffs' allegation is that Counterclaimants' "unauthorized use of a mark" but "not on the goods themselves precludes a finding that a seizure was sought wrongfully." *Waco Int'l, Inc.* 278 F.3d at 532. There is no support for this proposition. *Id.*

Instead, this is a **contributory** counterfeiting case. Plaintiffs have not pointed

to any decision permitting the seizure of the entire business and all records (but no goods) from a party alleged to have contributed to counterfeiting. Liability in this case is not premised on allegations that Counterclaimants ever even possessed counterfeit goods, based on a line of case law arising from trade shows. *See, e.g. Louis Vuitton Malletier SA v. Akanoc Solutions*, 591 F. Supp. 2d 1098 (N.D.Cal. 2008)(citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259 (9th Cir. 1996).)

Analogizing Plaintiffs' acts alleged in the TACC to Cherry Auction, the swap meet operator in *Fonovisa*, shows the absurdity of their argument that their overbroad and unlimited seizure cannot be found wrongful. Had the plaintiffs in *Fonovisa* sought and executed a seizure order in the manner done by Plaintiffs, they would have:

(1) failed to tell the issuing court about the banners at the entrance to the swap meet providing a tip-line to report intellectual property infringement to Cherry Auction for prompt removal of infringing vendors (TACC ¶ 31);

(2) failed to tell the Court that counterfeits of their goods were offered by only a small fraction of a percent of the millions of vendors (TACC ¶¶ 23-25);

(3) failed to tell the court that Cherry Hill and its parent company (running a completely separate construction and facilities maintenance business in an adjacent building) had relatively long histories as legitimate businesses in their industries (TACC ¶¶ 2(f), 4-5);

(4) ignored the fact that both Cherry Hill and its parent leased their property from a reputable business with significant local assets (37-45);

(5) ignored the fact that no counterfeits of the plaintiff's goods were actually at the swap meet or that any sales occurred at the swap meet, but instead the counterfeiting vendors invited interested customers to meet them at their separate store (TACC ¶ 22);

(6) used the seizure order to stop all people from coming or going from the buildings housing the business for both Cherry Hill and its parent, hanging

banners and placing outgoing voicemail greetings that told regular customers and referral sources that they were closed due to incompetence in serving their customers (TACC ¶ 26-29, 66);

(7) failed to tell the court they intended to interfere with the business of Cherry Hill and its parent for multiple days (TACC ¶ 52);

(8) used the closure to copy all records for Cherry Hill, all vendors of Cherry Hill, its parent, and all clients of its parent, despite the use of clear and industry standard filing systems to identify records, and the fact that an overwhelming majority of the files were unrelated to the counterfeit goods because only a small fraction of a percent actually offered counterfeit goods (TACC ¶¶ 54-58);

(9) represented to counsel for Cherry Hill and its parent that they would reopen the doors to the business in four hours while they finished copying necessary records, but instead held them out for additional days (TACC ¶¶ 60-63).

Clearly, this hypothetical seizure would at least raise issues of fact that it was "wrongful," even if it were established that Cherry Hill knew its swap meet was being used by counterfeiters. Likewise, the TACC establishes that in several respects, the Plaintiffs' *ex parte* seizure was well outside the usual scope of such orders intended to preserve counterfeit goods from destruction by fly by night businesses that sell them.

## Conclusion

Counterclaimants' TACC establishes that the *ex parte* seizure was unfair, unjust, and unlawful as set forth above.

///
///
///
///
///
///

For those foregoing reasons, Plaintiffs' Motion should be denied and Counterclaimants should be given the opportunity to litigate their claims.

DATED: November 25, 2013

Respectfully submitted,

MILLER BARONDESS, LLP

By: /s/ *Steven T. Gebelin*
    STEVEN T. GEBELIN
    ERIK S. SYVERSON
    SCOTT M. LESOWITZ
    Attorneys for Counter Claimants
    Sawabeh Information Services Co. and
    TradeKey (Pvt) Ltd.