1  ERIK S. SYVERSON (221933)
   esyverson@millerbarondess.com
2  STEVEN T. GEBELIN (261507)
   sgebelin@millerbarondess.com
3  SCOTT M. LESOWITZ (261759)
   slesowitz@millerbarondess.com
4  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:   (310) 552-4400
6  Facsimile:   (310) 552-8400

7  Attorneys for Defendants and Counterclaimants
   Sawabeh Information Services Co. and
8  TradeKey (Pvt) Ltd., and Defendants Waleed Abalkhail
   and Junaid Mansoor

9

10                **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

12

13  CHLOÉ SAS, *et al.*                    CASE NO. 11-cv-04147 GAF (MANx)

14        Plaintiffs,                      [Assigned to the Honorable Gary A.
15                                         Feess]
16  v.
                                           **FILED UNDER SEAL**
17  SAWABEH INFORMATION
18  SERVICES CO., *et al.*,                **DEFENDANTS OPPOSITION TO
                                           PLAINTIFFS' MOTION FOR
19        Defendants.                      PARTIAL SUMMARY JUDGMENT
                                           FOR STATUTORY DAMAGES
20                                         AGAINST SAWABEH
21  SAWABEH INFORMATION                    INFORMATION SERVICES CO.
22  SERVICES CO., *et al.*,                AND TRADEKEY (PVT) LTD**

23        Counterclaimants,

24
    v.                                     Date:       January 6, 2014
25                                         Time:       9:30 AM
26  RICHEMONT INTERNATIONAL                Crtrm:      740
    LIMITED, *et al.*,
27                                         Action Filed:   May 13, 2011
28        Counterclaim Defendants.         Trial Date:     Not Set

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................1

II.  FACTUAL BACKGROUND..................................................2

    A.   TradeKey Sought to Comply With and Protect IP Rights Holders. .....2

    B.   Calls About "Replica" Faux Listings by Plaintiffs' Investigators are Unrelated to Third Party Listings........................................4

    C.   Since the Inception of the Case, Defendants Acted to Prevent Infringement and Participate Fully in the Proceedings.........................5

III.  SUMMARY JUDGMENT IS UNAVAILABLE WHERE MATERIAL FACTS ARE DISPUTED OR UNPROVEN. ....................6

IV.  THE TRADEKEY DEFENDANTS ARE NOT WILLFUL INFRINGERS. ................................................................6

V.   PLAINTIFFS HAVE NOT PROVEN 77 CLAIMS FOR CONTRIBUTORY INFRINGEMENT. ....................................8

    A.   Defendants Had No Knowledge of Each Mark-Good Combination. ...9

    B.   At Most, Plaintiffs Claim is Limited to Actual Counterfeit Purchases. ................................................................9

    C.   Plaintiffs' Mark-Good Combination Identification is Faulty. ............10

VI.  PLAINTIFFS' ASSERTIONS REGARDING "DAMAGES" ARE LEGALLY IMPERMISSIBLE.................................................11

    A.   '█████████████████████████████████ ......12

    B.   ████████████████████████ .................13

    C.   Five Courts have Published Opinions Excluding Anson's Testimony. ................................................................15

VII. Plaintiffs' Claimed "Maximum" Statutory Damages are Contrary to Law.....................................................................16

    A.   Defendants Are Entitled to a Jury Determining Statutory Damages. .16

    B.   Plaintiffs Improperly Pick and Choose Factors to Seek A Windfall. .17

    C.   Plaintiffs' Analysis of Profits or Revenues Lost is Fatally Flawed. ....18

    D.   Plaintiffs Have Provided No Valuation of their Marks......................19

    E.   The Relevant "Size of Defendants' Operation" is Infinitesimal.........20

    F.   Deterrence Is Achieved Through any Award of Damages. .................20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES        CASE NO. 11-CV-04147 GAF (MANX)

171876.1

# TABLE OF CONTENTS

VIII.  Plaintiffs May Not Recover Attorneys' fees on Top of Statutory Damages. ...................................................................................21

IX.   RECOVERY IS SUBJECT TO LIMITATIONS AND LACHES ..........23

X.   PLAINTIFFS DENIED NECESSARY DISCOVERY. ..........................24

XI.   CONCLUSION. ...................................................................................25

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES          CASE NO. 11-CV-04147 GAF (MANX)

171876.1

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) ..27

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) .................................................................7

*Adobe Systems, Inc. v. Tilley*,
   No. C 09–1085 PJH, 2010
   WL 309249, *5–6 (N.D.Cal. Jan.19, 2010)..................................................24

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505,
   91 L.Ed.2d 202 (1986)....................................................................................6

*Anderson*, 477 U.S. at 255 .....................................................................................6

*Beachbody, LLC v. Johannes*,
   No. 11–1148PSG (RZx), 2011 WL 3565226, at *3 (C.D.Cal. Aug.12,
   2011) .....................................................................................................19, 20

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767 (9th Cir. 2003) ...............................................28

*California Scents v. Surco Products, Inc.*, 406 F3d 1102 (9th Cir. 2005)...............18

*Cartier v. Symbolix Inc.*,
   544 F. Supp. 2d 316 (S.D.N.Y. 2008) .........................................................19

*Chanel, Inc. v. Doan*,
   2007 WL 781976 at *6 (N.D. Cal. Mar. 13, 2007) .......................................21

*Chanel, Inc. v. Doan*,
   C 05 03464 VRW, 2007
   WL 781976 at * 5 (N.D. Cal. Mar. 13, 2007) ..............................................20

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) .......................................................................6

*Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152 (C.D. Cal 2001)..................................................................................................11

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir.2001) ..........................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .............13, 14

*Fancaster, Inc. v. Comcast Corp.*,
   832 F.Supp.2d 380 (D. NJ 2011)..................................................................17

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) .....................18

*Fuller v. City of Oakland, Calif.*,
   47 F.3d 1522 (9th Cir. 1995) ........................................................................19

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX (310) 552-8400

3

# TABLE OF AUTHORITIES

## (Cont'd)

*GoPets Ltd. v. Hise,*
      657 F.3d 1024 (9th Cir. 2011) ...................................................................18

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.,*
      955 F.2d 1143 (7th Cir. 1992) ......................................................................8

*Invision Media Servs., Inc. v. Glen J. Lerner*, 175 F. App'x 904, 906 (9th Cir.
      2006) ........................................................................................................25

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
      456 U.S. 844 (1982)) ....................................................................................9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)11, 15, 26

*K & N Eng'g, Inc. v. Bulat,*
      510 F.3d 1079 (9th Cir. 2007) ................................................................2, 24

*Kiobel v. Royal Dutch Petroleum Co.,*
      133 S.Ct. 1659 (2013) .................................................................................10

*Kumho Tire Co., Ltd. v. Carmichael,*
      526 U.S. 137 (1999) ..............................................................................13, 14

*Lindy Pen Co. Inc. v. Bic Pen Corp.,*
      982 F. 2d 1400 (9th Cir. 1993) ...........................................................passim

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
      194 F.3d 980 (9th Cir.1999) .........................................................................8

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa.
      2002) .........................................................................................................19

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions*, Inc., 658 F.3d 936
      (9th Cir. 2011) ........................................................................................9, 18

*Malletier v. Dooney & Bourke, Inc.,*
      525 F.Supp.2d 558 (S.D. NY 2007) ...........................................................17

*Meridian Transp. Res., LLC v. Magic Carrier Res. LLC,*
      518 F. Supp. 2d 1255 (D. Or. 2007) ...........................................................26

*Microsoft Corp. v. AT & T Corp,*
      550 U.S. 437 (2007) ..............................................................................10, 15

*Microsoft Corp. v. Coppola*, 2007 WL 1520964 (N.D. Cal. 2007).........................23

*Microsoft Corp. v. E&M Internet Bookstore*, Inc., 2008 WL 191346 (N.D. Cal.
      Jan. 22, 2008)............................................................................................24

*Microsoft v. MBC Enterprises,*
      120 Fed.Appx. 234 N.1 (10th Cir. 2004) ...................................................18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES          CASE NO. 11-CV-04147 GAF (MANX)

171876.1

TABLE OF AUTHORITIES

(Cont'd)

*Miller v. Glenn Miller Productions, Inc.,*
    454 F.3d 975 (9th Cir. 2006) ............................................................11, 12, 15

*Morrison v. National Australia Bank Ltd.,* 561 U.S. 247 (2010) ...........................10

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.,*
    638 F.3d 1137 (9th Cir. 2011) ..........................................................................22

*Panagacos v. Towery,*
    782 F. Supp. 2d 1183 (W.D. Wash. 2011) ......................................................28

*Philip Morris USA, Inc. v. Castworld Products, Inc.,*
    219 F.R.D. 494 (C.D. Cal. 2003) ......................................................................23

*Pom Wonderful, LLC v. Purely Juice, Inc.,* 2008 WL 4351842
    (C.D.Cal. Sept. 22, 2008) .................................................................................25

*Real View, LLC. v. 20-20 Technologies, Inc.,* 878 F.Supp.2d 282 (D. Mass
    2012) .................................................................................................................16

*Romero v. International Terminal Operating Co.,* 358 U.S. 354 (1959) ...............11

*Rosetta Stone Ltd. v. Google, Inc.,*
    676 F.3d 144 (4th Cir. 2012) ............................................................................10

*Sara Lee Corp. v. Bags of New York, Inc.,*
    36 F. Supp. 2d 161 (S.D.N.Y. 1999) ...............................................................23

*Sennheiser Elec. Corp. v. Eichler,*
    2013 WL 3811775 (C.D. Cal. July 19, 2013) ....................................20, 23, 24

Visa Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472 (9th Cir.1986) 28

*Watec Co., Ltd. v. Liu,*
    403 F.3d 645 (9th Cir. 2005) ............................................................................25

*YKK Corp. v. Jungwoo Zipper Co., Ltd,*
    213 F.Supp.2d 1195 (C.D. Cal. 2002) .............................................................16

## **STATUTES**

15 U.S.C. § 1117 ...................................................................................................21

17 U.S.C. § 504(c) ..........................................................................................17, 22

F. R. Civ. P. 56 ...........................................................................................6, 24, 25

Fed. R. Civ. P 39(a) ...............................................................................................17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# I.   INTRODUCTION

Plaintiffs' third motion for summary judgment in this case must be denied.  In an attempt to lead this Court to awarding a statutory damages larger than any reported award, Plaintiffs seek to usurp the jury's role in setting statutory damages, ignore the applicable law, improperly seek summary judgment on disputed and inadmissible evidence, and continue to misleadingly decouple evidence from the claims at issue.

*First*, Plaintiffs have not shown that the Defendants Sawabeh Information Services Co. and Tradekey (Pvt) Ltd. ("Defendants") were willfully contributing to third party infringement of Plaintiffs' marks.  Defendants were unaware of Plaintiffs' marks prior to this lawsuit, did not review the content of a vast majority of postings on the Tradekey.com website, and featured and enforced an IPR policy to remove infringement upon receipt of notice from rights holders.  Rather than use or even acknowledge the IPR policy, Plaintiffs continue to tout sales calls between low-level employees and Plaintiffs' investigators regarding "replica" products in faux listings on Plaintiffs' undercover account.  Even if these conversations gave Tradekey notice of "infringing" undercover listings, they are not evidence that the Defendants knew of listings by third parties which form the basis of Plaintiffs' claims, let alone evidence that Defendants willingly intended to facilitate infringement of Plaintiffs' marks.  Tradekey.com was not designed to harbor "rampant counterfeiting," but as a neutral communication platform directed to B2B buyers and sellers, listings including Plaintiffs' brands were a fraction of a percent of the millions of listings, vastly outnumbered by items such as raw materials, industrial supplies, and auto accessories.

*Second*, Plaintiffs seek to usurp the jury by asserting certain "factors supporting a maximum statutory damages amount."  Plaintiffs' election of statutory damages does not entitle them to a windfall recovery; the award must have a relationship to actual damages.  ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ rather than any

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES          CASE NO. 11-CV-04147 GAF (MANX)

171876.1

evidence regarding economic harm to Plaintiffs or Defendants' minimal benefit from the third party infringement. Plaintiffs ignore the purpose and guiding principles of statutory damages and mitigating evidence such as Defendants' IPR policy and efforts to remove noticed infringement. Plaintiffs also seek to expand the scope of underlying infringement in this case beyond the evidence of actual counterfeit goods in Tradekey.com advertisements. Plaintiffs fail to provide evidence that Defendants knew of any of the listings comprising their claims for 77 good-mark combinations. Plaintiffs further rely on inadmissible and inconclusive evidence, improper mark-offer combinations, and offers falling outside the statute of limitations.

*Third*, Plaintiffs ignore the Ninth Circuit's decision in *K & N Engineering*, which forecloses their request for attorneys' fees in addition to statutory damages.

*Finally*, Plaintiffs have refused Defendants' reasonable discovery requests regarding the value of Plaintiffs' brands, Plaintiffs' knowledge of the claims, and Plaintiffs' use of Tradekey.com to aid their anti-counterfeiting efforts.

## II.   FACTUAL BACKGROUND.

### A.   TradeKey Sought to Comply With and Protect IP Rights Holders.

TradeKey.com is not designed to facilitate the sale of counterfeit goods. Tradekey.com is a neutral information exchange platform through which users post about their businesses and connect to each other — suppliers list products for sale and buyers search for products and suppliers. [SGI 638-639] Tradekey.com was the second largest B2B platform in the world. [SGI 640] TradeKey has more than 32,000 product categories in which users can post listings for products, with more than a million products listed on any given day. [SGI 640] Products are widely distributed among several top-tier categories, including Apparel and Fashion, Automobiles, Chemicals, Construction & Real Estate, Electronics & Electrical, Gifts & Crafts, Health and Beauty, Home Supplies, and Industrial Supplies, each between 100,000 and 200,000 product listings, such that no top tier category comprises more than 16% of all product listings. [SGI 641-642] Only the three largest sub categories comprise

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES          CASE NO. 11-CV-04147 GAF (MANX)

171876.1

1  more than 1% of all product listings, and none are within Apparel and Fashion.  [SGI

2  643]  Approximately 0.13% of product listings used original Plaintiffs' names

3  (whether or not they were selling counterfeits of Plaintiffs' goods), and Plaintiffs'

4  estimate of all listings comprise only 0.28% of all listings.  [SGI 644, 604]

5      TradeKey.com has a published Intellectual Property Rights ("IPR") policy and

6  terms of use which prohibits members from using the service to infringe the

7  intellectual property rights of others.  [SGI 623-628]  TradeKey sought out the advice

8  of specialist counsel regarding compliance with IPR laws in 2006-2007.  [SGI 908].

9  The IPR policy was a direct result of the consultation.  [SGI 909]  The TradeKey legal

10  team developed and enforces TradeKey's IPR policy, including prompt response if it

11  became aware of listings on the site for potentially infringing goods.  [SGI 909, 628-

12  631]  TradeKey.com uses a "notice and takedown" system, which has been used in

13  removing thousands of listings of alleged infringing or counterfeit products at brand

14  owner request.  [SGI 631-636]  The legal team at TradeKey investigates complaints,

15  removes infringing listings, disables repeat infringers from the site, and maintains a

16  database of prohibited terms.  [SGI 633-636]  Despite these policies designed to

17  protect intellectual property rights, TradeKey does not have insight into the content of

18  a significant percentage of listings on its site.  [SGI 637]  Critically, the Plaintiffs

19  never used Tradekey.com's notice and takedown processes and tools.  Plaintiffs never

20  provided TradeKey with notice of infringing posts or goods appearing on

21  Tradekey.com.  [SGI 670-671]  Had Plaintiffs followed the prominent instructions and

22  provided notice to TradeKey, the infringement would have been removed without

23  resort to litigation.  [SGI 910].  It has never been a policy of TradeKey to encourage

24  conduct that constitutes infringement, nor has TradeKey ever had a "Replica Product"

25  or "Replica Retention" division, or any similar division or group.  [SGI 663, 904]

26      TradeKey does not sell products, and never learns whether products that are

27  listed or requested on the Tradekey.com site are sold.  [SGI 647-648]  Unlike auction

28  sites like eBay.com, or ecommerce sites like Amazon.com, Tradekey.com does not

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

3

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES        CASE NO. 11-CV-04147 GAF (MANX)

171876.1

process sales transactions or otherwise become involved in the purchase, sale, manufacture, warehousing or delivery of items listed on its site. [SGI 648-650] Instead, it serves as an intermediary for information exchange, like a search engine and bulletin board, through which vendors can list products for sale and buyers can locate sellers of products they need.  [SGI 638-639]  Unlike eBay or ecommerce sites, TradeKey.com does not earn revenue from the sales of products posted to its site. [SGI 647-653]  Instead, Tradekey.com generates revenue by selling premium memberships that provide additional advertising opportunities and prominence, and through advertising placed on the website by Google.  [SGI 653-661]

TradeKey never removed the term "replica" from listings in order to facilitate sales of counterfeit products.  [SGI 809, 811-813]  Prior to this litigation, TradeKey's CEO understood that in TradeKey's largest markets the term "replica" referred to "look alike" products responding to Western products or trends, and TradeKey used this as the accepted and operative meaning of the term.  [SGI 664]  TradeKey.com's keywords feature used an automated process, pulling information from user entries; thus TradeKey.com's suggestion of keywords containing "replica" was an automated response based on user content, not an attempt to facilitate counterfeiting.  [SGI 665] Tradekey.com's "optimization" algorithm automatically adds metadata field terms to match popular search terms that Google associates with the terms entered by a Tradekey.com user.  [SGI 666]  Account optimization is an automated process applicable to all goods tracking the most prevalent Google search results,  not an attempt to drive traffic based on infringing goods.  [SGI 667]  After learning of Plaintiffs' allegations, TradeKey added the "replica," "mirror image," and Plaintiffs' marks to its thousands of filters that block restricted searches and listings.  [SGI 669]

**B.    Calls About "Replica" Faux Listings by Plaintiffs' Investigators are Unrelated to Third Party Listings.**

During their investigation of Tradekey.com, Plaintiffs' investigators at IP Cybercrime had several conversations with Farooq Khalil, a member of TradeKey's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Sales Team.  [SGI 677]  Farooq and his fellow salesperson, Mr. Fahad, were low level employees tasked solely with selling upgrades, who had no authority or responsibility to speak on behalf of TradeKey regarding intellectual property matters or to perform intellectual property reporting or monitoring.  [SGI 680- 686]  During one conversation, Rob Holmes asked Farooq about the potential for removal of his "replica" products from Tradekey.com, to which Farooq responded (in his second language) by attempting to reassure Rob Holmes that listings complying with the Tradekey.com rules for IP Protection would not have problems.  [SGI 678]  Any statements by Mr. Khalil's regarding the lack of copyright rules on Tradekey.com and the volume of replica goods or lack of "genuine" products were contrary to TradeKey policy, would have been grounds for dismissal, and had no factual supporting basis. [SGI 679]  Mr. Khalil did not authorize or understand Mr. Holmes to be engaging in counterfeiting and did not have training or knowledge regarding TradeKey's optimization or keyword use.  [SGI 679-692]  TradeKey management had no knowledge of the content of these calls.  [SGI 682]

Despite the dispute regarding the content of the calls, the conversations reported by Plaintiffs' investigators were about, and in response to, listings on their own profiles, not any of the specific third party listings asserted by Plaintiffs in this motion.  [SGI 677-678, 181-182, 192, 205, 210-215, 222, 231, 471-547].  None of these conversations informed Tradekey management or persons with authority of the infringing activity claimed by Plaintiffs in this case.

C.   **Since the Inception of the Case, Defendants Acted to Prevent Infringement and Participate Fully in the Proceedings.**

After this case was filed, TradeKey added the terms "replica," and "mirror image," along with Plaintiffs' marks to its database of thousands of filters that block searches and listings from using restricted terms.  [SGI 669]  Upon learning of infringing listings not prevented by the filters, Defendants have taken steps to expeditiously remove them.  Furthermore, Defendants have participated fully in the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES        CASE NO. 11-CV-04147 GAF (MANX)

171876.1

proceedings before this Court, answering the complaint and bringing counterclaims, responding to jurisdictional discovery, presenting evidence in support of motions and oppositions, and making great efforts to obey orders from the Court. *See, e.g.* Dkt. Nos. 145-151, 300, 309, 407, 455, 468, 587. Even though Plaintiffs' takedown of all listings made by co-Defendants was not perfect, listings containing Plaintiffs marks were all removed. *See* Dkt. No. 492.

## III.   SUMMARY JUDGMENT IS UNAVAILABLE WHERE MATERIAL FACTS ARE DISPUTED OR UNPROVEN.

Summary judgment is only proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. § 56(a). The Court must view "the evidence in the light most favorable to the nonmoving party." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). The evidence of the opposing party "is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## IV.   THE TRADEKEY DEFENDANTS ARE NOT WILLFUL INFRINGERS.

In the Ninth Circuit, willful infringement under 15 U.S.C. 1117 is a high standard of culpability that has not been established by Plaintiffs' conclusory labels. "Willful [misconduct] carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F. 2d 1400, 1406 (9th Cir. 1993). The infringement must be "willfully calculated to exploit the advantage of an established mark." *Lindy Pen*, 982 F.2d at 1405; *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957–58 (9th Cir.2001) ("[W]illful" means "conduct that occurs with knowledge that the defendant's conduct

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

constitutes ... infringement. "[W]illful infringement is a question of fact that turns on the defendant's state of mind," which is "is often accompanied by questions of intent, belief, and credibility." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1046 (D. Or. 2008).

Here, Defendants did not willfully infringe or contribute to third party infringement of Plaintiffs' marks. Tradekey.com has millions of product listings. While Plaintiffs' brands appeared on a small fraction of a percent of all listings, inarguably legitimate categories such as industrial supplies and raw materials each represented four times or more as many listings. [SGI 643] Defendants did not even know of Plaintiffs' brands prior to the instant litigation. [SGI 896] Upon receiving notice of Plaintiffs' rights and claims, Defendants acted to block and remove listings, including Plaintiffs' marks and brands from appearing on Tradekey.com, using the available tools. [SGI 943] This was completely consistent with the longstanding IPR policy and terms of use implemented by TradeKey on advice of counsel and previously used by rights holders without any litigation. TradeKey sought to avoid intellectual property infringement, implemented policies designed to prevent infringement, and had its legal department ensure compliance.

The lowest level sales employees that spoke with Plaintiffs' investigators regarding "replica" goods were in violation of Tradekey policies, had no authority to act on trademark matters, had no basis in fact to assert that counterfeiting was acceptable on Tradekey.com, and would have been fired for any encouragement of counterfeiting activity. [SGI 679, 887] Even so, Plaintiffs' investigators only spoke about "replica" listings on their undercover account, not any third party infringement of any of the Plaintiffs' marks. As such, these calls could not have put Defendants on notice of the listings upon which Plaintiffs now base their claims, let alone prove that the Defendants willfully and maliciously intended to aid those third parties in their counterfeiting of Plaintiffs' marks.

Moreover, Plaintiffs' absurdly claim that Defendants' acts were willful because

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

7

they found third parties counterfeiting their goods that had listings on Tradekey.com during this case that <u>did not</u> reference Plaintiffs' marks.  Plaintiffs either claim (without evidentiary support) that Defendants knew these innocuous listings corresponded to offers for counterfeit goods on external websites or advance a proposition that would turn trademark law on its head.  A mark holder has the obligation to police the use of its mark.  In contrast, Defendants "cannot reasonably be expected to monitor the Internet" at large; parties providing internet services have no affirmative duty to seek out counterfeiting outside of their service.  *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir.1999); *see also Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) (marketplace operator "has no affirmative duty to take precautions against the sale of counterfeits" because the "reason to know" part of the standard for contributory liability "does not impose any duty to seek out and prevent violations.")  Indeed, trademark infringement that occurs on a user's own websites and beyond Tradekey.com cannot be a basis for contributory liability because Defendants have no "[d]irect control and monitoring of the instrumentality used" as the direct infringer's "means of infringement."  *Louis Vuitton Malletier, S.A. v. Akanoc Solutions*, Inc., 658 F.3d 936, 942 (9th Cir. 2011).

## V.   PLAINTIFFS HAVE NOT PROVEN 77 CLAIMS FOR CONTRIBUTORY INFRINGEMENT.

In the Ninth Circuit, a complete claim for contributory trademark infringement via an online service must demonstrate that the defendant (1) "continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement," and (2) was in a position to exert "[d]irect control and monitoring of the instrumentality used" as the direct infringer's "means of infringement."  *Akanoc Solutions*, 658 F.3d at 942 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES            CASE NO. 11-CV-04147 GAF (MANX)

171876.1

**A.     Defendants Had No Knowledge of Each Mark-Good Combination.**

Knowledge is an essential element of each of Plaintiffs' alleged mark-good combinations under their contributory counterfeiting claim.  Even assuming that Defendants had the ability to exert direct control and monitoring over the third party's means of infringement, Plaintiffs have not shown and cannot show that Defendants knew of each of the asserted mark-good combinations.  Defendants were unaware of Plaintiffs' brands prior to the instant litigation.  Plaintiffs' investigator did not point out the third party infringement to TradeKey's management or even to the low-level sales employees he spoke with regarding "replicas" on the undercover account.  Nor did the asserted listings use terms such as "counterfeit" or "fake" such that Defendants would have known of infringement even if they had made a cursory review.

**B.     At Most, Plaintiffs Claim is Limited to Actual Counterfeit Purchases.**

Plaintiffs' investigator only purchased six of the mark-good combinations from sellers who had listings on tradekey.com.  [SGI 251-313]  Plaintiffs actually took some measures to attempt to confirm that these items were counterfeit.  *Id.*  However, for the remaining 71 mark-good combinations, the Plaintiffs have provided no evidence that the sellers on Tradekey.com were actually selling items that included the Plaintiffs' marks or that were counterfeit.  *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012) ("for there to be liability for contributory trademark infringement, the plaintiff must establish underlying direct infringement").

Similarly, the investigators' purchases are the only evidence of allegedly counterfeit items reaching the United States or of transactions involving a United States party.  Defendants are not liable in this case for infringement that occurred wholly outside of the United States.  *See, e.g., Microsoft Corp. v. AT & T Corp,* 550 U.S. 437 441, 454-56 (2007) (the "presumption against extraterritoriality" barred collection of damages in American court for foreign IP violations); *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) (foreign investors had no US claim against American companies for fraudulent listing of stock in foreign exchanges);

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659 (2013) (foreigners may not claim violation of the Alien Tort Statute for purely foreign injuries) *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382-83 (1959) (foreign sailor injured aboard a foreign vessel in U.S. waters cannot assert a claim for damages under the Jones Act); *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152, 1171 (C.D. Cal 2001) ("However, the 'offer to sell' language was not intended to (and could not) extend the protection of a U.S. patent to allow the patentee to also prevent sales taking place in other countries. Our patent laws are limited to the United States.")  This is especially so here: Plaintiffs are European, Defendants are Saudi and Pakistani, and over 80-percent of users of Tradekey.com were not American.

### C.    Plaintiffs' Mark-Good Combination Identification is Faulty.

Plaintiffs' alleged mark-good combinations includes offers that are clearly inappropriate.

**Offers outside of the Statute of Limitations**.  The statute of limitations for Plaintiffs' claims is likely three years, or at most, four.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002); *c.f. Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 997 (9th Cir. 2006).  The first complaint in this case was filed on May 13, 2011.  Dunhill and Cartier were not named as parties until the FAC was filed October 21, 2011.  At best for Plaintiffs, the statute of limitations prohibits claims before May 13, 2007 for Chloé, Panerai, Montblanc, or Lange and October 21, 2007 for Dunhill and Cartier.  [SGI 917]

Despite this, Plaintiffs attempt to prove infringement of at least eight of their mark-good combinations with listings that were posted and expired before May 13, 2007.  [SGI 471, 472, 477, 478, 521, 538, 541, 543 and Defendants' objections thereto.]  These outside-of-the-statute-of-limitations listings are the only evidence Plaintiffs' provide regarding these eight mark-good combinations.  [SGI 918]

**Listings that do not contain Plaintiffs' Marks**.  Plaintiffs attempt to prove infringement of 33 of their mark-good combinations through the use of listings on

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX. (310) 552-8400

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES                    CASE NO. 11-CV-04147 GAF (MANX)

171876.1

1 Tradekey.com that in actuality do not include their trademarks.  [SGI 919; SGI 473,

2 480, 481, 483, 484, 486, 489, 490, 493, 494, 497, 498, 504, 506, 507, 508, 509, 510,

3 511, 512, 513, 514, 515, 516, 518, 522, 523, 524, 525, 526, 527, 530, 544 and

4 Defendants' objections thereto.]  In these screenshots, the trademarks that Plaintiffs

5 claim are being used in the listing are nowhere to be seen.  *Id.*  These screenshots are

6 the only evidence of infringement for these mark-good combinations and are not

7 evidence of Plaintiffs' trademarks in connection with an offer to sell.  [SGI 920]

8      **Listings Without Counterfeiting Indicators**.  Much has been made in this

9 case about the use of the term "replica" and whether Defendants should have known

10 the term means "counterfeit."  However, only five of the listings Plaintiffs used to

11 prove infringement of their mark-good combinations contain the term "replica."  [SGI

12 480, 522, 544, 545, 547]  None contained the terms "fake" or "counterfeit."  [SGI 921;

13 SGI 471-547 and Defendants' objections thereto.]  Thus, even if Defendants had

14 known what "replica" meant *and* reviewed those listings, this would have only

15 provided knowledge of five of the 77 alleged mark-good combinations.

16      **Claimed Infringement of Service Marks**.  Plaintiffs assert mark-good

17 infringement combinations for DUNHILL Reg. No. 1,172,665 and MONTBLANC

18 Reg. No. 2,820,561, which are registrations for "retail services," not any goods.  [SGI

19 471, 531]  Plaintiffs' evidence of infringements is only for wholesale goods product

20 listings, not "retail services."  *Id.*  There is no evidence of retail service infringement.

21 **VI.   PLAINTIFFS' ASSERTIONS REGARDING "DAMAGES" ARE**

22      **LEGALLY IMPERMISSIBLE.**

23      Plaintiffs claim that the "expert" report of Weston Anson "provides two

24 damages calculations for the sale of counterfeits of Plaintiffs' goods facilitated by

25 TradeKey.com," and an "actual damages calculation."  (Motion, 11:12-13; 19:23.)

26 Anson's report plays a pivotal role in Plaintiffs' arguments for maximum statutory

27 damages, discussed for three pages of their Motion.  (Motion 11:5-13:12; 19:6-23.)

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

11



MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

This is not surprising as at least five courts have refused to consider evidence offered by Anson. [SGI 922]  This Court should ignore Anson's opinions and strike his report.

**A.**

A plaintiff's damages in a trademark infringement case may be measured in one of two ways: either plaintiff's direct injury or the defendant's profits under a theory of unjust enrichment. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993).

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES          CASE NO. 11-CV-04147 GAF (MANX)

171876.1



1  ███████████████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  ███████████████████████████████████████████████

4  ███████████████████████████████████████████████████

5  ███████████████████████████

6  ████████████████████████████████████████

7  ██████████████████   But, the Plaintiffs engage in almost no direct retail sales of their

8  products in the United States, merely wholesales.  [SGI 985]  Similarly,

9  Tradekey.com provides services to wholesalers, not a retail sales platform to

10 consumers.  [SGI 938]  ██████████████████████████

11 ███████████████████████████████████████████████████

12 ████████████████████████████████████

13  **B.**  ██████████████████████████████████████

14 ███████████████████████████████████████████████████

15 ███████████████████████████████████████████████████

16 ███████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ██████████████████████████   The first complaint in this case was filed on

19 May 13, 2011.  The statute of limitations for the Plaintiffs claims should be three

20 years, or at most four years.  *Jarrow*, 304 F.3d at 838; *Glenn Miller Productions,* 454

21 F.3d at 997.  Thus, the earliest allowable claims arose on May 13, 2007.  ██████████

22 ███████████████████████████████████████████████████

23 ███████████████████████  ████  ████████████

24 ███████████████████████████████████████████████████

25 ████████████████████████████   But in an American court, a plaintiff

26 cannot collect for damages suffered exclusively abroad.  *See, e.g., Microsoft Corp. v.*

27 *AT & T Corp*, 550 U.S. at  454-56 (2007) (the "presumption against extraterritoriality"

28 barred damages in American court for foreign violations of patents), ██████████████

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400



report

this Court has found that Defendants' disabling of access to co-defendants' listings was not 100% effective, there was no claim that listings containing Plaintiffs' names remained. Dkt. No. 492. By May of 2011, Defendants had blocked the vast majority of accounts it believed were involved in the alleged counterfeiting of Plaintiffs goods and had disabled searches for the 31 trade names of the Plaintiffs. [SGI 943]

MILLER BARONDESS, LLP

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

14

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**C.    Five Courts have Published Opinions Excluding Anson's Testimony.**

Anson's status as an expert witness, and the reliability of his work, is highly questionable considering that at least five courts have excluded part or all of Anson's proposed expert testimony. [SGI 922]  The problems that Courts have identified with Anson and his work in previous cases are prevalent in the instant case.

The Central District of California previously excluded Anson's testimony, stating "Anson's report is completely unhelpful…" *YKK Corp. v. Jungwoo Zipper Co., Ltd*, 213 F.Supp.2d 1195, 1203 (C.D. Cal. 2002). [SGI 923]  Anson's opinions were excluded in a published opinion last year because his conclusions were "unreliable," he engaged in faulty analysis, and he did not provide adequate justification for his results. *Real View, LLC. v. 20-20 Technologies, Inc.*, 878 F.Supp.2d 282, 284-87 (D. Mass 2012). [SGI 924]  Portions of Anson's opinions were excluded under FRE 702 because his measure of loss of sales for Louis Vuitton were irrelevant and based on unreliable and unsupported contentions, and because of other serious errors. *Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 572-73 (S.D. NY 2007) ("the number of serious flaws that plague Mr. Anson's report and testimony, specifically on the issue of dilution, the probative value is substantially outweighed by the prejudicial effect and the serious potential to mislead the jury.") [SGI 925-926]  During a trial, Anson was excluded because his trial testimony showed he did not understand the statistical test he purportedly applied in his report. *Horne v. World Publications, LLC,* NO. 07-005798-CI-008 (Florida State Court, 2007) [SGI 927]  Finally, Anson's expert report was ignored as irrelevant to the trademark damages at issue, because although "Mr. Anson stated that Comcast's actions resulted in a loss of 'goodwill' to the fancaster mark, he admits that his proposed corrective advertising award has no relation to any damages to the mark." *Fancaster, Inc. v. Comcast Corp.*, 832 F.Supp.2d 380, 423 (D. NJ 2011). [SGI 928]

Anson has a demonstrated lack of integrity and honesty.  Anson intentionally

171876.1

violated a confidentiality clause in a clients' settlement agreement, admitting in his

deposition that despite knowing that a settlement was confidential, he approved a

public "e-mail blast" indicating the settlement was in the seven figures.  [SGI 932]  In

*Welles v. Turner Entertainment Company*, 08-cv-01399-JFW-PJW (C.D. Cal 2008),

the party that hired Anson moved to replace him as their expert because Anson lied to

them about taking mind-altering drugs prior to his deposition.  The party labeled

Anson as "untruthful and unreliable."  [SGI 929]  The Court granted the motion to

replace Anson because there was a complete breakdown of communication between

Anson and the client's law firm.  [SGI 930]

## VII.  Plaintiffs' Claimed "Maximum" Statutory Damages are Contrary to Law.

### A.     Defendants Are Entitled to a Jury Determining Statutory Damages.

As a fundamental issue, Defendants are entitled to have a jury determine the

amount of statutory damages unless Plaintiffs seek only the minimum available

award.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998)

(holding that, even though the Copyright infringement statute does not specifically

provide for jury trial, the Seventh Amendment gives defendants a right to a jury trial

on statutory damages); *Microsoft v. MBC Enterprises*, 120 Fed.Appx. 234, 240, N.1

(10th Cir. 2004) (applying *Feltner* to trademark statutory damages); *GoPets Ltd. v.*

*Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) (jury trial not required for determining

statutory damages because plaintiff requested the *minimum* statutory damages);

*Akanoc Solutions*, 658 F.3d 936 (part of jury's statutory damages award affirmed).

Plaintiffs' assertion that the Corporate Defendants have waived a jury trial on

the amount of statutory damages is meritless.  The individual Defendants Mansoor

and Abalkhail clearly included jury demands within their answer.  Dkt. No. 499.  Any

party's timely jury demand may be relied upon by all other parties "for the issues it

covers," each defendant "need not file their own demands."  *California Scents v. Surco*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

171876.1

1     *Products, Inc.*, 406 F3d 1102, 1106, 1109 (9th Cir. 2005) (internal quotes omitted)

2     (plaintiff may reasonably rely on counterclaimant's jury demand).  This follows from

3     the provision that a jury demand may be withdrawn only by written stipulation of all

4     parties. *See* Fed. R. Civ. P 39(a); *Fuller v. City of Oakland, Calif.* (9th Cir. 1995) 47

5     F3d 1522, 1531.

6          **B.**     **Plaintiffs Improperly Pick and Choose Factors to Seek A Windfall.**

7          In setting an award of statutory damages, subsection 1117(c) does not provide

8     explicit guidelines for courts to use in determining an appropriate statutory damage

9     award, so many courts have considered the following factors for the award of statutory

10    damages under an analogous provision of 17 U.S.C. § 504(c) of the Copyright Act:

11         "(1) the expenses saved and the profits reaped; (2) the revenues lost by the
plaintiff; (3) the value of the copyright; (4) the deterrent effect on others

12         besides the defendant; (5) whether the defendant's conduct was innocent or
willful; (6) whether a defendant has cooperated in providing particular

13         records from which to assess the value of the infringing material produced;
and (7) the potential for discouraging the defendant."

14         *Cartier v. Symbolix Inc.*, 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008).

15         Despite the use of these factors to guide an award, Plaintiffs are not entitled to

16    use their election for statutory damages to gain a windfall. *See Lindy Pen Co., Inc.*,

17    982 F.2d at 1405 (9th Cir. 1993), *Beachbody, LLC v. Johannes*, No. 11–1148PSG

18    (RZx), 2011 WL 3565226, at *3 (C.D.Cal. Aug.12, 2011).  In internet counterfeiting

19    cases concerning willful infringement of multiple marks, courts have been inclined to

20    either award a maximum without multiplication or lower the per mark award. *Louis*

21    *Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002)

22    (awarding total award of $1,000,000 for six Louis Vuitton marks and $500,000 for

23    two Oakley marks against defaulting internet retailer with significant sales that

24    continued to sell counterfeits after receiving notices of infringement and summons).

25         To prevent a windfall, statutory damages must bear a "plausible relationship" to

26    a Defendant's infringing activities and the profits Defendants may have realized from

27    those activities. *See, e.g. Sennheiser Elec. Corp. v. Eichler*, 2013 WL 3811775 (C.D.

28    Cal. July 19, 2013) (limiting statutory damages to a multiple of defaulting defendants'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

17

171876.1

infringing sales will "counteract the profitability of counterfeiting and execute the punitive purposes of the statute"); *Chanel, Inc. v. Doan,* C 05 03464 VRW, 2007 WL 781976 at * 5 (N.D. Cal. Mar. 13, 2007) (statutory damages award of three times defaulting defendant's estimated profits from infringement); *Beachbody, LLC*, 2011 WL 3565226, at *3 (limiting statutory trademark award to $70,000 against defaulting counterfeiter). Despite the need for some relation, Plaintiffs seek maximum statutory damages, and attempt to support their astronomical damages requests by picking and choosing factors and misstating facts or the factors in their favor.

### C.    Plaintiffs' Analysis of Profits or Revenues Lost is Fatally Flawed.



An appropriate analysis would instead focus either on the actual damages to Plaintiffs' marks caused by Defendants' activities, or on Defendants' net profits attributable to its culpable conduct. *See, e.g. Lindy Pen*, 982 F.2d at 1407-08 (trademark damages measured by harm to mark or defendant's direct benefit); *Chanel, Inc. v. Doan*, 2007 WL 781976 at *6 (N.D. Cal. Mar. 13, 2007) (statutory damages based on estimated profits of defaulting defendant counterfeit retailer).

OPPOSITION TO MPSJ #3- STATUTORY DAMAGES                    CASE NO. 11-CV-04147 GAF (MANX)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

171876.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400



Defendants have attempted to seek discovery on this issue, but have been denied any non-public information.  Gebelin Decl. ¶¶ 9-16, *see also* Section X, *infra*.

On the second measure, Plaintiffs allege that 0.28% of all listings on the Tradekey website in 2011 contained their brands.  [SGI 604]  During the relevant period from 2007 to 2011, ▮

Plaintiffs' brands appeared on less than a third of a percent of Tradekey.com listings.  And although Plaintiffs have directed the court to traffic reports for Tradekey.com to assert knowledge of "replica" traffic, Plaintiffs have not pointed to evidence that their marks generated traffic to the Tradekey.com website.  Moreover, it is generally permissible to use trademarks as keywords to drive traffic.  *See Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1148 (9th Cir. 2011).

Based on the legally permissible approximate damages in this case, maximum statutory damages on a multitude of Plaintiffs' marks is completely inappropriate.

**D.    Plaintiffs Have Provided No Valuation of their Marks.**

Rather than actually present evidence of the value of the marks at issue in this case, Plaintiffs provide a handful of platitudes and conclusory assertions regarding the value or recognition of their "brands."  Memo at 21:-22:9.  Based on the conclusory

1  self-serving evidence, Defendants have attempted to seek discovery on this issue, but

2  have been denied any non-public information.  Gebelin Decl. ¶ 12.  As a result,

3  Defendants have been unable to mount an opposition to this portion of the motion.

4  *See* Section X, *infra*.  There is no evidence that Defendants' sought to capitalize on

5  the value of Plaintiffs' marks; the marks were unknown to Defendants prior to this

6  litigation and were removed from Tradekey.com upon notice of Plaintiffs' claims.

7      **E.**    **The Relevant "Size of Defendants' Operation" is Infinitesimal.**

8      Plaintiffs improperly point to the size of TradeKey as a whole rather than the

9  vanishingly small proportion of Tradekey.com that is at issue in this case.  As

10  repeatedly stated above, Plaintiffs' brands appeared on approximately 0.28% of all

11  listings on Tradekey.com.  Large "operations" justifying increased statutory damage

12  awards are those operations that are specifically directed to counterfeiting.  *See, e.g.*

13  *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 167 (S.D.N.Y. 1999)

14  ("methodical long-time operation of a counterfeit Coach factory" that sought to

15  mislead and conceal its counterfeiting); *Philip Morris USA, Inc. v. Castworld*

16  *Products, Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (Defendant with "total disregard

17  for the Federal Rules of Civil Procedure" that "imports 8,000,000 counterfeit

18  cigarettes, having a street value of millions of dollars").  Here, Defendants operated a

19  neutral internet site through which it unknowingly provided services used by third

20  parties to advertise goods infringing Plaintiffs' marks.  The vast majority of

21  Defendants' operations are separate and apart from the contributory counterfeiting at

22  issue.  This factor favors a small award, not maximum statutory damages.

23      **F.**    **Deterrence Is Achieved Through any Award of Damages.**

24      Plaintiffs assert that the need for deterrence favors a large award against

25  Defendants.  Although the "need to deter" merits some statutory damage award, even

26  in more egregious cases than this, the award need not "be substantial to achieve this

27  goal," because "any award would have a deterrent effect on other would-be infringers

28  and would discourage Defendants from committing future infringement." *Sennheiser*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

171876.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX (310) 552-8400

1    *Elec. Corp.*, 2013 WL 3811775 (request for $200,000 per mark statutory damages in

2    default proceedings for willful selling of counterfeit goods on eBay was excessive and

3    would be a windfall, instead awarding $2,000 per violation.) (Citations omitted.);

4    *Microsoft Corp. v. Coppola*, 2007 WL 1520964 (N.D. Cal. 2007) (Defendant sold

5    counterfeit copies of Microsoft products and continued after Microsoft warned him of

6    illegal activity and asked him to stop.  Court found demanded maximum statutory

7    damages to be excessive and a potential windfall, and instead awarded statutory

8    damages of $1,000 per trademark violation and $1,500 per copyright violation.) *see*

9    *also Adobe Systems, Inc. v. Tilley*, No. C 09–1085 PJH, 2010 WL 309249, *5–6

10    (N.D.Cal. Jan.19, 2010) ("[W]hile the plaintiff in a trademark or copyright

11    infringement case is entitled to damages that will serve as a deterrent, it is not entitled

12    a windfall").  Moreover, Defendants have taken affirmative steps to avoid future

13    contributions to infringement and to remove repeat infringers.  This factor does not

14    favor any increase in the statutory damages award.

15    **VIII.  Plaintiffs May Not Recover Attorneys' fees on Top of Statutory Damages.**

16         Plaintiffs' motion ignores the applicable Ninth Circuit authority regarding its

17    request for an award of attorneys' fees.  Simply put, the Ninth Circuit has read 15

18    U.S.C. § 1117 "as a whole" because "the statute lays out an integrated scheme for

19    plaintiffs in trademark infringement actions to recover damages and attorney's fees,"

20    whereby a plaintiff may recover actual damages and exceptional case attorneys' fees

21    under § 1117(a), attorneys' fees and treble damages for counterfeits under § 1117(b),

22    or statutory damages for counterfeits under § 1117(c).  *K & N Eng'g, Inc. v. Bulat*, 510

23    F.3d 1079, 1081-1082 (9th Cir. 2007).  Thus, Plaintiffs' "election to receive statutory

24    damages under § 1117(c) precludes an award of attorney's fees." *Id*. at 1082.

25         Plaintiffs' unpublished cases all fail to address *K & N* and are otherwise

26    inapplicable.  *C.f. Sennheiser Electronic Corp.*, 2013 WL 3811775, at * (default

27    judgment on request for $600,000, instead awarding $135,000 in statutory damages

28    and $6,300 in attorneys' fees pursuant to L.R. 55-3 without discussion of *K & N*

171876 1

*Eng'g*); *Microsoft Corp. v. E&M Internet Bookstore*, Inc., 2008 WL 191346 (N.D. Cal. Jan. 22, 2008) (awarding $45,000 for statutory copyright and trademark damages and $5,000 in copyright attorney fees under 17 U.S.C. § 505 against counterfeit seller that received multiple notices of infringement); *Pom Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D.Cal. Sept. 22, 2008) (false advertising case).

Moreover, Plaintiffs have failed to show that this case is "exceptional" under the applicable standards in the Ninth Circuit. "While the term 'exceptional' is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen*, 982 F.2d at 1409. However, even a finding of willful or intentional infringement "is insufficient on its own to support an award of fees in the absence of some aggravating circumstance or heightened level of culpability." *Invision Media Servs., Inc. v. Glen J. Lerner*, 175 F. App'x 904, 906 (9th Cir. 2006); *see also Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005). Aggravating circumstances such as a failure to participate in proceedings or failure to provide discovery are not at issue in this case. Defendants operated and implemented a IPR policy prohibiting infringing material and providing for expedient removal of infringing content upon receipt of notice from rights holders based on the advice of counsel. Defendants did not know of Plaintiffs marks prior to this suit. Although Defendants previously allowed listings to use the term "replica," it was based on an understanding that the term was used for lookalike goods, not illegal or counterfeit goods. Defendants have fully participated in this case, have provided discovery in this case including the statistical information regarding user count and revenue used by Plaintiffs in this very motion. Indeed, cases where a simple "cease and desist letter" would have likely stopped ongoing infringement are the antithesis of an "exceptional" case. *Meridian Transp. Res., LLC v. Magic Carrier Res. LLC*, 518 F. Supp. 2d 1255, 1264 (D. Or. 2007). Here, had Plaintiffs provided notice of their marks and infringement by third parties to TradeKey pursuant to the IPR policy the third party

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

infringers' use of Tradekey.com could have been stopped prior to Plaintiffs' suit.

## IX.   RECOVERY IS SUBJECT TO LIMITATIONS AND LACHES.

Plaintiffs' motion completely ignores the applicable statue of limitations to their trademark claims, seeking to include damages estimates and mark-good combinations well beyond the limitations period. *See* sections V.C and VI.B above. Limitations is "a bar to monetary relief for the period outside the statute." *Jarrow*, 304 F.3d at 837.

Beyond the absolute limit of the statute of limitations on recovery, Plaintiffs' claims in this action may be further limited by the doctrine of laches. Laches is an equitable time limitation on a party's right to bring suit, and it is well established that laches as a valid defense to Lanham Act claims. *Jarrow*, 304 F.3d at 835. A defense of laches shows that (1) the plaintiff's delay in filing suit was unreasonable and (2) the defendant would suffer prejudice caused by the delay if the suit were to continue. *Id.* at 838. If suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable. *Id.* at 836. An unreasonable delay is one that extends from "the time the plaintiff knew or should have known about its potential cause of action" and is typically longer that the statute of limitations. *Id.* at 838. Prejudice is shown where a defendant will "incur damages which likely would have been prevented by earlier suit," including situations where a plaintiff allowed damages to escalate when notice to an alleged infringer would have stopped infringement. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992).

In support of this very motion Plaintiffs have presented evidence of publicly available Tradekey.com listings they allege infringe their trademarks dating to 2006. [*E.g.* Dkt. No. 616 at Exs. 1, 2, 7, 8 ]. Plaintiffs' investigator started his account on Tradekey.com in May 2006. [SGI 675] Defendants implemented the IPR policy on Tradekey.com between 2006 and 2007. [SGI 908] As a result, Plaintiffs could have reported third party infringement on the website and had listings and repeat infringers removed without litigation and before additional listings were made to Tradekey.com, including any premium members listing infringing goods after the policy was

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

1  implemented.  Instead, Plaintiffs appear to have slept on their rights and allowed

2  infringement to accumulate in order to increase a potential award against Defendants.[2]

3  **X.    PLAINTIFFS DENIED NECESSARY DISCOVERY.**

4        Pursuant to Federal Rule of Civil Procedure 56(d), the non-moving party on a

5  summary judgment motion may receive "time to obtain affidavits or declarations or to

6  take discovery" where it can show that "for specified reasons, it cannot present facts

7  essential to justify its opposition."  F. R. Civ. P. 56(d).  Where "a summary judgment

8  motion is filed so early in the litigation, before a party has had any realistic

9  opportunity to pursue discovery relating to its theory of the case, district courts should

10 grant any Rule [56(d)] motion fairly freely."  *Burlington N. Santa Fe R. Co. v.*

11 *Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir.

12 2003).  Moreover, "where, as in the present litigation, no discovery whatsoever has

13 taken place, the party making a Rule [56(d)] motion cannot be expected to frame its

14 motion with great specificity as to the kind of discovery likely to turn up useful

15 information, as the ground for such specificity has not yet been laid."  *Id*.  A court

16 must liberally construe a Rule 56(d) motion and "should continue a summary

17 judgment motion upon a good faith showing by affidavit that the continuance is

18 needed to obtain facts essential to preclude summary judgment."  *Visa Int'l Serv. Ass'n*

19 *v. Bankcard Holders of Am.,* 784 F.2d 1472, 1475 (9th Cir.1986).  Where a party "has

20 resisted all discovery to date" but then provides evidence by "declaration in support of

21 his motion, fairness dictates that [the opposing party] be allowed to conduct limited

22 discovery" regarding the declarants' assertions.  *Panagacos v. Towery*, 782 F. Supp.

23 2d 1183, 1193-94 (W.D. Wash. 2011).

24       This case has not entered the open discovery period pursuant to Federal Rule of

25

26

27  [2] It is possible that Plaintiffs also found Tradekey.com to be a valuable tool in their
    anti-counterfeiting efforts to aid them in finding third parties at high levels of the
28  chain of distribution.  However, Plaintiffs have refused to provide discovery on this
    topic, among others.  *See* Gebelin Decl. ¶ 15, section X, *infra*.

24

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

Civil Procedure 26.  Gebelin Decl. ¶ 9.  As a result, and in preparation for their opposition to the instant motion, Defendants requested certain discovery relevant to the motion from Plaintiffs pursuant to Federal Rule of Civil Procedure 56(d).  *Id*. ¶ 10. In response, Plaintiffs permitted Defendants to take the deposition of the expert Weston Anson, provided certain redacted emails between Anson and counsel, and produced some publically available information regarding Plaintiffs' businesses, including printouts of websites mentioning Plaintiffs.  *Id*. ¶¶ 11, 14.  Despite Defendants' willingness to forgo a deposition, Plaintiffs refused to provide discovery responses to limited and focused interrogatories and related document requests regarding the facts presented by Plaintiffs in this motion.  *Id*. ¶ 12-15

Specifically, Defendants have been unable to challenge Plaintiffs' assertions in support of their motion regarding damages to their marks, the value or recognition of their brands, the extent of Plaintiffs' anti-counterfeiting efforts and digital anti-counterfeiting efforts, take discovery regarding mitigating factors such as Plaintiffs' use of Tradekey.com to find and stop third party counterfeiters, or facts regarding Plaintiffs' prior awareness of infringement on the Tradekey.com website.  Gebelin Decl. ¶ 15.  Defendants have a good faith basis to believe that discovery will uncover information that will assist them in resisting Plaintiffs' motion.  *Id*. ¶ 16.  As a result, if the Court is inclined to grant any portion of Plaintiffs' motion, Defendants request the opportunity to conduct the discovery resisted heretofore by Plaintiffs.

## XI.    CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs motion and allow the case to proceed towards a jury trial.


DATED:  December 30, 2013        Respectfully submitted,

MILLER BARONDESS, LLP

By:/s/ *Erik S. Syverson*

ERIK S. SYVERSON
Attorneys for Defendants and Counterclaimants
Sawabeh Information Services Co. and TradeKey
(Pvt) Ltd.; and Defendants Waleed Abalkhail and
Junaid Mansoor

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400