UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**

## ORDER RE:  STATUTE OF LIMITATIONS & MARK-GOOD COMBINATIONS

## I.
## INTRODUCTION

Several owners of luxury brands ("Plaintiffs") brought this trademark action against:  (1) eighteen individuals and corporations who sold counterfeit versions of Plaintiffs' goods (the "Defaulting Defendants"); (2) two offshore internet companies that promoted and facilitated the sale of these goods (the "Tradekey Defendants"); and (3) two individual executives of the internet companies (the "Individual Defendants").  Over the past several years, Plaintiffs' claims against each of these Defendants have progressed substantially.  Judgment was entered against the last of the Defaulting Defendants in December 2013, and partial summary judgment concerning liability has been granted as to both the Tradekey and Individual Defendants.  With liability apparently established, it seemed that the only thing left for trial was a damages determination.

As the case marched on, however, the Parties sussed out two unresolved issues.  First, the Tradekey and Individual Defendants (collectively, the "Moving Defendants") assert that some portion of the damages sought against them should be barred by applicable statutes of limitations.  (Docket No. 730 [Def. Statute of Limitations Brief ("Def. SoL Mem.")].)  Plaintiffs naturally disagree, indicating that the particular offers to sell the counterfeit goods at issue here were:  (1) continuing violations, with end-dates inside the statutory period; and (2) discovered just before the action was filed, with the late discovery tolling any statute of limitations.  (Docket No. 731 [Pl. Statute of Limitations Brief ("Pl. SoL Mem.")].)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|----------|------------------------|------|-------------------|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Second, while the Court previously made a general finding of trademark infringement and contributory counterfeiting, no individualized inquiry into the pertinent mark-good combinations has yet been conducted. The Moving Defendants now ask that 56 of the 75 combinations claimed by Plaintiffs be thrown out for lack of actual infringement. (Docket No. 737 [Def. Mark-Good Combination Brief ("Def. Mark Mem.")].)  Plaintiffs oppose, pointing to specific evidence of infringement for all 75 combinations. (Docket No. 738 [Pl. Mark-Good Combination Brief ("Pl. Mark Mem.")].)

Both issues will be treated as motions in limine, used for determining the extent of the upcoming damages trial. After evaluating the Parties' theories, the Court agrees that the at-issue offers to sell counterfeit goods represented continuing wrongs. Plaintiffs' claims are therefore timely as to all 75 instances of alleged infringement. The Moving Defendants' attempt to limit the scope of the case on this basis must therefore be **DENIED**. The Court also finds that there is undisputed evidence of infringement for all but one of the 75 mark-good combinations. The pending request that the combinations be excluded from a damages trial will therefore be **DENIED** in large measure, but **GRANTED in part**. The Court sets forth its reasoning, in further detail, below.

**II.**
**BACKGROUND**

**A. HISTORY OF THE CASE**

Plaintiffs Chloé SAS, Alfred Dunhill Limited, Officine Panerai AG, Montblanc-Simplo GmbH, Cartier International A.G., and Lange Uhren GmbH—collectively, Plaintiffs—each manufacture trademarked luxury goods. They filed this suit following an investigation into the activities of internet merchants who sold infringing, counterfeit versions of their products. The operative complaint makes claims against three different sets of Defendants. (Docket No. 153 [First Amended Compl. ("FAC")].)

The first set of Defendants—the Defaulting Defendants—are the actual sellers of infringing products. None of these Defendants ever appeared in the case, and default judgments have been entered against them. (Docket No. 261 [4/6/12 Order]; Docket No. 618 [12/6/13 Order].)

The second set of Defendants—the Tradekey Defendants—are two companies that facilitated the sales of infringing products by providing an online medium used by the Defaulting Defendants. The Court previously granted Plaintiffs' motion for partial summary judgment

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

against the Tradekey Defendants, finding both of them liable for contributory counterfeiting, contributory trademark infringement, and federal and state unfair competition.  (Docket No. 582 [10/8/13 Order].)  However, it deferred ruling at that time on the issue of damages.  (Id.)

The third set of Defendants—the Individual Defendants—are executives working for the Tradekey Defendants.  Much as the Tradekey Defendants facilitated the Defaulting Defendants' counterfeiting, the Individual Defendants guided the Tradekey Defendants' actions.  Like their claims against the Tradekey Defendants, Plaintiffs' causes of action against the Individual Defendants are for contributory counterfeiting, contributory infringement, and federal and state unfair competition.  Also like the Tradekey Defendants, the Individual Defendants have already been found liable on each of these claims.  (Docket No. 700 [3/18/13 Order].)

**B.  THE PRESENT BRIEFING**

While both the Tradekey and the Individual Defendants have already been found liable, the extent of that liability has not yet been established.  Specifically, the Court has not considered whether every single purportedly illicit offer for sale identified by Plaintiffs can actually be pursued as an infringement upon their trademarks.

Plaintiffs have submitted images from the Tradekey Defendants' website that supposedly substantiate their claims of infringement.  (Docket No. 739 [Tradekey Website Screenshots ("Screenshots")].)  These screenshots depict every offer upon which Plaintiffs' 75 infringement claims depend.  (Id. at Ex. 2–Ex. 77.[1])  That is, they reveal hundreds of offers to sell goods, each of which ostensibly infringes upon one of 75 different trademarks.  Although many marks were infringed upon by multiple offers—for instance, Exhibit 2 includes three separate offers to sell three different "Dunhill" watches—only one claim of infringement per mark is before the Court.  (Id. at Ex. 2.)

Most of the images provided by Plaintiffs include both the dates on which illicit offers were originally made, and the dates the screenshots were taken.  (See, e.g., id. at 308.[2])  A review of these dates reveals that all of the readily dateable screenshots were taken after May 17,

---

[1] There is neither an Exhibit 1 nor an Exhibit 61.  This leads to some divergence between the Parties' numerical references.  Plaintiffs retain Exhibits 1 and 61 as blank placeholders, related to claims that have now been dismissed.  The Moving Defendants adjust the entire numbering system, so that numbers 1 and 61 are used.  For the sake of simplicity, the Court adopts Plaintiffs' numbering system.

[2] Screenshot page numbers refer to the bold numbers in the bottom right corner of each page of Exhibits 2–77.

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
| --- | --- | --- | --- |
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

2008—the statute of limitations cutoff date—but some of the offers were originally made several years earlier.  (<u>E.g.</u>, <u>id.</u>) (where the original offer was made in 2006, but recorded by Plaintiffs in 2011.)  Moreover, some of the offers provide an "expiry date," and a subset of these expirations had passed long before May 2008.  (<u>See, e.g.</u>, <u>id.</u> at 310) (listing an offer date of Jaunary 21, 2006, and an "expiry date" of February 21, 2006.)  That is to say, even though these offers were accessible during the statutory period, the terms of the offers suggest that they may have expired before that time.

Further complicating matters, a handful of exhibits include images with neither offer, nor expiration, nor screenshot dates.  (<u>Id.</u> at Ex. 14, 19, 24, 28, 29, 56.)  However, even these more deficient instances can be dated directly.  Each of the images in these exhibits—and, for that matter, the images in every other exhibit too—includes a website copyright date, providing an alternative method of identifying the year in which a screenshot was taken.[3]  (<u>Id.</u>)  For almost every image, this copyright identification reveals that the offer was accessible online after May 2008.  (<u>Id.</u> at Ex. 2–55, 57–77.)  And even the one exception to this rule—the lone screenshot in Exhibit 56, which cuts off before copyright information has been provided—indicates that the offer was made by a third-party that had only been a "Member Since Apr 2009."  (<u>Id.</u> at Ex. 56.)  That is, the seller had only been using the Tradekey Defendants' website since 2009, and thus the posting of even this offer must have been made after 2009.  (<u>Id.</u> at Ex. 56.)

Finally, as noted briefly above, many exhibits include multiple images of infringing offers.  (<u>See, e.g.</u>, Ex. 2) (including screenshots of three separate offers to sell infringing products.)  In each such exhibit, only one trademark is at issue.  (<u>Id.</u>)  Thus, even if one of the offers to sell is *outside* the statutory period, another offer *inside* the period might independently redeem that particular trademark.

**III.**
**DISCUSSION**

Both the statute of limitations briefing and the mark-good combination briefing rely almost exclusively upon the website screenshots offered by Plaintiffs.  Pertinent to the statute of limitations briefing, these exhibits reveal that several offers to sell counterfeit goods were

---

[3] Individual webpages accessible from the main page of a website—for instance, a specific news article accessible through the Los Angeles Times website—may remain online and substantively unchanged for years.  Thus, an article from 2007 can be readily viewed in 2014.  The article will appear much the same as it did in 2007, with one pertinent exception:  a continuously updated copyright notification, indicating the year in which a visitor is accessing the webpage, will appear at the bottom of the page.  So, if a screenshot of that Los Angeles Times article included a copyright date of 2014, it would indicate that the article was available online in 2014.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

originally made long before this litigation began.  For instance, Exhibit 2 includes an offer first made in 2006, while the case was filed in 2011.  (Screenshots at 308.)  At the Moving Defendants request, the Court will consider whether the applicable statute of limitations bars damages on such offers.

The screenshots also form the basis of Plaintiffs' 75 infringement claims.  That is, they reveal offers to sell a multitude of goods that infringe upon 75 of Plaintiffs' trademarks.  The Court will consider whether—based on these images—it would be appropriate to conduct a damages trial for all 75 infringement claims.[4]

**A.  STATUTE OF LIMITATIONS DEFENSE**

Plaintiffs' claims are based principally on violations of the Lanham Act, 15 U.S.C. §§ 1114, 1116 and 1125.  (FAC ¶¶ 184–219.)  Because the Lanham Act does not include its own statute of limitations, federal courts borrow from analogous state law in order to provide one. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 836 (9th Cir. 2002).  In California, this means that "Lanham Act claims are subject to a three-year statute of limitations which [begins] to run upon [a plaintiff's] actual or constructive knowledge of the wrong."  Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 857 (9th Cir. 2002) (citing Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991) and Cal. Civ. Proc. Code § 338(d)).  This case was filed on May 17, 2011, so if Plaintiffs knew of any injuries prior to May 2008, a claim arising out of those injuries would be untimely.

While the Parties agree as to the length of statutory period, they disagree about its effect. (Pl. SoL Mem. at 3, 5–6; Def. SoL Mem. at 3–5.)  The Moving Defendants believe that "the claims at issue here are subject to the Uniform Single Publication Act."  (Def. SoL Mem. at 3.) This act specifies that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance."  Cal. Civ. Code § 3425.3.  Relying on this language, the Moving Defendants maintain that Plaintiffs completely incurred their injuries as to each mark as soon as a counterfeit version was first offered for sale—and the screenshots provided by Plaintiffs indicate that some offers for counterfeit goods, infringing 28 of the 75 alleged marks, were initially made prior to May 2008.  (Def. SoL Mem. at 8–9) (citing Screenshots at Ex. 2, 6–8, 16, 32–33, 35, 39–41, 43, 47, 51–52, 57–58, 64–65, 68–69, 71–77.)

---

[4] Only 56 mark-good combinations have been contested.  The Court will therefore limit the present inquiry to these 56 items.

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

On first glance, this argument appears to have some slight merit. "The single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication." Yeager v. Bowlin, 693 F.3d 1076, 1081 (9th Cir. 2012) (quoting Roberts v. McAfee, Inc., 660 F.3d 1156, 1166–67 (9th Cir. 2011). If the totality of Plaintiffs' injuries occurred when an initial offer to sell counterfeit goods was made, the single-publication rule may well be applicable.

Unfortunately for the Moving Defendants, the injury Plaintiffs suffered cannot be isolated to initial offers for sale. Courts throughout this Circuit have been quite clear: "trademark 'infringement is a continuing wrong, and the statute of limitations is no bar except as to damages beyond the statutory period.'" Novell, Inc. v. Unicom Sales, Inc., 2004 U.S. Dist. LEXIS 16861, at *13 (N.D. Cal. Aug. 17, 2004) (quoting Jarrow, 304 F.3d at 837). That is to say, if a defendant infringes a trademark, he does not escape all liability simply by saying that he has infringed for more than three years. Accordingly, "even assuming a statute of limitations defense may bar some portion of [Plaintiffs'] trademark infringement claim, [they] would still be entitled to pursue damages based on the infringement activity that occurred within the statute of limitations period." Sonoma Foods v. Sonoma Cheese Factory, 2007 U.S. Dist. LEXIS 96733, at *9 (N.D. Cal. Apr. 3, 2007).

In this case, there is every indication that all 28 of the trademarks infringed upon prior to May 2008 were still being infringed within the statutory period. Specifically, the screenshot and copyright dates for virtually every instance or image of infringement in the 28 contested exhibits falls sometime after 2008. (See Screenshots at 308–309, 310–311, 312–313, 332–333, 335–336, 337–338, 339–340, 341–342, 343–344, 346–347, 348–349, 350–351, 352–353, 458–459, 644–645, 646 C, 647 C, 649, 651, 653, 655, 658, 660, 662, 664, 666, 668, 670, 678, 681, 683, 686, 687–688, 691, 693, 696, 698, 701, 704, 706, 708, 711, 712–714, 716, 718, 720, 743, 745, 747, 748, 752–753, 756, 760, 769, 788, 791, 792–793, 796, 799, 810, 813, 816, 818, 820, 823, 837, 839, 840–842, 861, 862, 863, 864, 870, 871, 874, 877, 905, 906–907, 911, 920–921, 922–924, 925–927, 928–930, 931–933, 934–936, 938–939, 940–942, 943–945, 946–947, 948–949, 950–951, 952–953, 954–955, 962–963, 964–965, 966–967, 968–969, 970–971, 972–973, 975, 977–978, 979–980, 981–982, 983–984, 985, 986, 987–989, 990–992, 993–994, 995–996, 997–998, 999–1000, 1001–1002, 1003–1004, 1005–1006, 1008–1009, 1010–1011, 1012–1014, 1015–1016, 1017–1018, 1019–1021, 1022–1023, 1024–1026, 1027–1028, 1029–1030, 1031–1032, 1034–1035, 1036–1037, 1038–1039, 1040–1041, 1042–1044, 1045–1046, 1047–1048, 1049–1050, 1051–1052, 1053–1054, 1056–1057, 1058–1059, 1060–1061, 1062–1063, 1064–1065, 1066–1067, 1068–1069, 1070–1071, 1072–1073, 1074–1075, 1076–1077, 1079–1080, 1081–1082, 1084–1085, 1087–1088.) That is to say, each of these offers was apparently available online within 3 years of the filing of this action.

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

Admittedly, no screenshot or copyright date can be found for a handful of offers. (Id. at 749, 750, 757, 758, 770, 797, 824, 825, 826, 827, 828, 829, 830, 831, 832, 833, 859–860, 865, 866, 875–876, 902–903, 909–910.) But most of these have another easily discernable date that puts them within the statutory period. (See id. at 749, 757, 758, 770, 797, 825, 826, 827, 828, 829, 833, 865) (each of which has either a posting or expiration date later than May 17, 2008.) They too may therefore be said to have caused some injury within the statutory period.

Only the slim remainder—page numbers 750, 824, 830, 831, 832, 859–860, 866, 875–876, 902–903, and 909–910—cannot be definitively linked to some time after May 2008. These particular screenshots must therefore be rejected as a basis for conducting a damages inquiry.[5] However, while the screenshots shall not be considered any further, every exhibit with such a stale screenshot—specifically, Exhibits 39, 51, 57, 58, 64, and 65—has at least one other screenshot that adequately documents an infringement within the statutory period. (See, e.g., id. at 748, 825, 861, 877, 904, 911.) Accordingly, even after the May 2008 cutoff date, infringement was still occurring on the Tradekey Defendants' website for all 28 disputed trademarks. The Moving Defendants were still facilitating infringement of each mark, and the contested claims must therefore survive the Court's limited documentary purge.

**B. MARK-GOOD COMBINATIONS**

The Moving Defendants also believe that 56 of the 75 mark-good violations described in this action cannot be held against them. (Def. Mark Mem. at 7–37) (objecting to the trademarks evidenced in Exhibits 2–8, 10, 13–14, 16, 18–19, 21–22, 24–25, 27–34, 36, 38–46, 50–58, 60, 62, 64–65, 68–70, 73–77.) The Court will therefore evaluate these mark-good combinations to determine whether each has been properly supported.

**1. THE ELEMENTS OF PLAINTIFFS' INFRINGEMENT AND COUNTERFEITING CLAIMS**

Prevailing on a claim for contributory counterfeiting requires that a plaintiff meet a two part test. First, the plaintiff must establish that there was underlying direct counterfeiting. See Louis Vuitton Malletier v. Akanoc Solutions, 658 F.3d 936, 943 (9th Cir. 2011). Second, the

---

[5] Plaintiffs have a second argument in favor of continuing to use these screenshots, but it ultimately falls short. They claim that they did not have any knowledge of the infringement until they began investigating this case in 2010. (Pl. SoL Mem. at 4–5) (citing Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 857 (9th Cir. 2002).) However, the evidence cited in support of this proposition only reflects the fact that Plaintiffs' investigator visited the Tradekey Defendants' website in 2010. (Docket No. 630 [Statement of Genuine Issues] ¶ 112.) It does not state that this was the first time he did so. Accordingly, Plaintiffs have not adequately established when their investigation began.

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

plaintiff must demonstrate that a defendant "continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement." Id. at 942 (citing Inwood Labs, Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982)).

A plaintiff meets the first prong of this test—establishing a claim for direct trademark counterfeiting—by demonstrating (1) ownership of a valid trademark and (2) a defendant's use of that trademark in connection with the sale of goods, without authorization from the trademark owner, that is likely to cause confusion, deception, or mistake. 15 U.S.C. § 1114(1); Gucci Am., Inc. v. Pieta, 2006 U.S. Dist. LEXIS 96701, at *9 (C.D. Cal. Jan. 23, 2006). Significantly, "[a]n offer to sell [counterfeit goods] without more will suffice to establish liability [under the Lanham Act]." Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1312 (9th Cir. 1997).

The second prong of the test does not require "an express finding of intent . . . to support liability for contributory copyright infringement." Akanoc, 658 F.3d at 943. Instead, "'intent may be imputed' as a result of 'a service provider's knowing failure to prevent infringing actions.'" Id. (quoting Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007)).

**2. APPLICATION**

The Court will address each of the two prongs of a counterfeiting/infringement inquiry: first, whether direct counterfeiting actually occurred, and second, whether the Moving Defendants had the necessary intent to support such a claim against them.

*a. The First Infringement Prong:  Direct Counterfeiting*

To establish a claim for direct counterfeiting—and thus, for trademark infringement—Plaintiffs must demonstrate (1) ownership of a valid trademark and (2) the Moving Defendants' use of that trademark in connection with the sale of goods, without Plaintiffs' authorization, in a manner likely to cause confusion, deception, or mistake. 15 U.S.C. § 1114(1); Pieta, 2006 U.S. Dist. LEXIS 96701, at *9. Significantly, "[a]n offer to sell [counterfeit goods] without more will suffice to establish liability [under the Lanham Act]." Shilon, 121 F.3d at 1312.

The Parties do not dispute the validity of Plaintiffs' trademarks. (Def. Mark Mem. at 4–7; Pl. Mark Mem. at 1–3.)  Moreover, none of the goods included in Plaintiffs' exhibits were sold by authorized distributors of Plaintiffs' marks.  (See Pl. Mark Mem. at 4 n.3) (collecting declarations that support this conclusion.)  Accordingly, the Parties instead focus their attention

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

on the applicability of Plaintiffs' trademarks to the offers reflected in Exhibits 2 through 77. (Def. Mark Mem. at 7–37; Pl. Mark Mem. at 5–10.)  That is, they focus on whether Plaintiffs' trademarks were used "in connection with the sale of . . . any goods" in a manner that was "likely to cause confusion."[6]  <u>Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply</u>, 106 F.3d 894, 899 (9th Cir. 1997) (<u>quoting</u> 15 U.S.C. § 1114(1)(a)).  After reviewing Exhibits 2 through 77, it is clear that at least one screenshot can adequately serve as evidence of infringement for all but one of Plaintiffs' 56 disputed mark-good combinations.

What follows now is an unfortunately boring, and truly repetitious, evaluation of each of the 56 contested mark-good combinations.  The Court will principally address the appropriateness of Plaintiffs' trademark infringement and counterfeiting claims arising out of the offers for sale.

### i.  Exhibit-Specific Analysis:  Dunhill Marks

The mark-good combination reflected in Exhibit 2 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Dunhill"—which is protected in connection with the sale of watches.  (Docket No. 742-1 [Table of Trademark Claims ("Table")] at 6.)  And the screenshots in Exhibit 2—which offer watches for sale—include references to both (1) "Dunhill," in the sale listing, and (2) "best quality," (Screenshots at 308), "excellent quality," (<u>id.</u> at 310), and "AAA quality," (<u>id.</u> at 312), in the description of goods.  As the Court has explained in the past, this conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Moreover, contrary to the Moving Defendants' suggestion, a protected mark need not appear "on" the good offered for sale; it must only be used "in connection with" the sale.  15 U.S.C. § 1114(1)(a) (prohibiting the use in "advertising of any goods or services *on or in connection with*" a protected mark) (emphasis added).  And using the word "Dunhill" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.  As will soon become apparent, similar reasoning holds sway for many of the other disputed mark-good combinations.

The combination reflected in Exhibit 3 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Dunhill"—which is protected in connection with the

---

[6] The Moving Defendants claim that trademark infringement occurs only when the infringing good bears "marks or designs that [are] *identical* to the 'registered, genuine mark.'" (Def. Mark Mem. at 4) (emphasis added.) They cite no caselaw for this "identicality" proposition.  In light of the Ninth Circuit's lesser, and clearly stated, "confusion" standard, the Court declines the invitation to engage in a higher level of scrutiny.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

sale of men's jewelry, namely, cufflinks, tie bars, and tie clasps.  (Table at 6.)  And the screenshots in Exhibit 3—which offer relevant men's jewelry—include references to both (1) "Dunhill," in the sale listing, and (2) "high quality," (Screenshots at 315), and "100% quality," (id.), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Dunhill" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 4 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Dunhill"—which is protected in connection with the sale of pens and pencils.  (Table at 6.)  And the screenshots in Exhibit 4—which offer pens and pencils—include references to both (1) "Dunhill," in the sale listing, and (2) "A++ quality," (Screenshots at 318), "original box," (id.), "1:1 quality," (id. at 320), "actual products," (id. at 322), and "99% similar," (id. at 324), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Dunhill" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 5 includes a number of clear indicia of infringement. The mark at issue is a design mark—a stylized version of the word "Dunhill"—which is protected in connection with the sale of wallets.  (Table at 6.)  And the screenshots in Exhibit 5—which offer wallets—include both (1) images of the stylized "Dunhill," (Screenshots at 327), and (2) the phrases "made from original editions," (id.), and "Dunhill Purse Wallet," (id.), in the description of goods.[7]  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized version of the word "Dunhill" in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 6 includes a number of clear indicia of infringement. The mark at issue is a design mark—a stylized version of the word "Dunhill"—which is protected in connection with the sale of small leather goods, namely, attaché cases.  (Table at 7.) And the screenshots in Exhibit 6—which offer attaché cases—include both (1) images of the stylized "Dunhill," (Screenshots at 332), and (2) the phrases "made from original editions," (id.),

---

[7] Both here and elsewhere, the Court has deliberately excluded examples of potentially infringing language from those screenshots where it does not appear that the trademark has actually been infringed.  Because at least one infringing offer has been made with regard to all 75 trademarks, this exclusion has little bearing on the outcome of the pending motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

and "Dunhill Purse Wallet case briefcase," (id.), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized version of the word "Dunhill" in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 7 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a stylized version of the word "Dunhill"—which is protected in connection with the sale of watches.  (Table at 7.)  And the screenshots in Exhibit 7—which offer watches—include both (1) images of the stylized "Dunhill," (Screenshots at 335)[8], and (2) the phrases "excellent quanlity [sic]," (id.), "replicas," (id. at 337), "branded watches," (id. at 343), and "AAA quality," (id.), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized version of the word "Dunhill" in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 8 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a stylized version of the word "Dunhill"—which is protected in connection with the sale of men's clothing, namely, belts.  (Table at 7.)  And the screenshots in Exhibit 7—which offer belts—include both (1) images of the stylized "Dunhill," (Screenshots at 346), and (2) the phrases "Dunhill belt," (id. at 346, 348), "replicas," (id. at 350), and "Grade AAA," (id. at 352), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized version of the word "Dunhill" in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

### ii.  Exhibit-Specific Analysis:  Cartier Marks

The combination reflected in Exhibit 10 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Cartier"—which is protected in connection with the sale of watches.  (Table at 8.)  And the screenshots in Exhibit 10—which

---

[8] Some of the images in the present filing have been degraded as a result of the printing process.  To aid its determinations—and at Plaintiffs' suggestion, (Pl. Mark Mem. at 7)—the Court has periodically consulted higher resolution images attached as exhibits to Docket No. 616.  Apart from the increased image clarity, these exhibits are identical to the Screenshots provided with the pending briefing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

offer watches for sale—include references to both (1) "Cartier," in the sale listing, and (2) "replica," (Screenshots at 359), "mirror image," (id. at 361), "Cartier Santos 100," (id. at 364), "99% similar," (id. at 366), "100% superior quality," (id. at 369), "AAA+ quality," (id. at 371), "AAA+ Grade," (id. at 372), "professional brand name watches supplier," (id. at 374), "we supply Brand watch," (id. at 376), "replica watches," (id. at 378), "Sell Cartier Ballon Bleu de Watch," (id. at 380), "Ballon blue de cartier watch," (id. at 382), "perfect clones," (id. at 384), "sell cartier gent watches," (id. at 386 A), "Wholesale Cartier," (id. at 387), "high quality replicas," (id. at 389), "Replicate . . . Cartier," (id. at 392), "high quality replicas," (id. at 395), and "brand replicas watches," (id. at 398), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Cartier" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 13 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Cartier"—which is protected in connection with the sale of wallets. (Table at 10.) And the screenshots in Exhibit 13—which offer wallets for sale—include references to both (1) "Cartier," in the sale listing, and (2) "1:1 quality with label, serial number, authenticity card and care booklet," (Screenshots at 447), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Cartier" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 14 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Cartier"—which is protected in connection with the sale of pocketbooks and shopping bags. (Table at 10.) And the screenshots in Exhibit 14—which offer handbags for sale—include references to both (1) "Cartier," in the sale listing, and (2) the phrase "all bags are come [sic] with . . . correct serial numbers," (Screenshots at 450 B), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Cartier" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 16 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Cartier"—which is protected in connection with the sale of pen holders and pencils. (Table at 11.) And the screenshots in Exhibit 16—which offer pen boxes for sale—include references to both (1) "Cartier," in the sale listing, and (2) "99% similar," (Screenshots at 458), in the description of goods. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Cartier" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 18 includes a number of clear indicia of infringement. The mark at issue is a design mark—a stylized version of the word "Cartier"—which is protected in connection with the sale of "leather and imitation small leather bags in the nature of sleeves and pouches for merchandise packaging." (Table at 11.) And the screenshots in Exhibit 18—which offer "sleeves and pouches"—include both (1) images of a word that at least closely resembles the stylized "Cartier" (Screenshots at 464), and (2) the phrase "Iphone 4G Cartier case," (id.), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the stylized version of the word "Cartier" in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 19 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Calibre de Cartier"—which is protected in connection with the sale of watches. (Table at 11.) And the screenshots in Exhibit 19—which offer watches for sale—include references to both (1) "Calibre de Cartier," in the sale listing, and (2) "brand watches," (Screenshots at 467 B), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Calibre de Cartier" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 21 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Ballon Bleu"—which is protected in connection with the sale of watches. (Table at 12.) And the screenshots in Exhibit 21—which offer watches for sale—include references to both (1) "Ballon Bleu,"[9] in the sale listing, and (2) "replica watches," (Screenshots at 498), "Swiss quality Cartier watches," (id. at 500 B), "Swiss movement watch," (id. at 501), "Product: . . . Cartier . . . watches," (id. at 503), "Brand watch," (id. at 505), "original packaging . . . cards and manual," (id. at 507 B), "Swiss made," (id. at 508), and "AAA grade quality," (id. at 508), in the description of goods. This conjunction of a

---

[9] And a few minor variants, such as "Blue Ballon," (Screenshots at 507 B), and "Balloon Bleu," (id. at 508).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|----------|------------------------|------|-------------------|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Ballon Bleu" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 22 includes a number of clear indicia of infringement.  The mark at issue is a three-dimensional design mark—a stylized watch, with "two curved and round edged tracks positioned parallel on the lateral side of a watch case"—which is protected in connection with the sale of watches and jewelry.  (Table at 12; FAC at 200.)  And the screenshots in Exhibit 22—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, (Screenshots at 513), and (2) the phrases "replica watch supplier," (id.), "99% similar," (id.), "Swiss movement," (id.), and "Cartier watches," (id.), in the description of goods.  This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 24 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a stylized version of the word "Love"—which is protected in connection with the sale of jewelry, namely, bracelets.  (Table at 13.)  And the screenshots in Exhibit 24—which offer bracelets—include both (1) images of a bracelet with the stylized letters "ove"—the "L" is missing, (Screenshots at 537)—and (2) the phrase "good quality. [sic] cartier jewellery [sic]," (id.), in the description of goods.  Only part of Plaintiffs' stylized "Love" can be seen in the image; however, the primary distinguishing characteristic of this trademark is its use of a letter "o" that resembles the Greek letter theta "Θ" in its capitalized form.  And the bracelet in Exhibit 24 has this unique "o."  The appearance of this substantially similar protected mark, alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized version of the word "Love" in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 25 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Love Bracelet"—which is protected in connection with the sale of jewelry, namely, rings and bracelets.  (Table at 14.)  And the screenshots in Exhibit 25—which offer bracelets for sale—include references to both (1) "Love Bracelet" in the sale listing, and (2) "professional silver jewelry manufacturer," (Screenshots at 542 B), "Cartier Love Bracelet," (id. at 543), "high quality," (id.), and "top quality," (id. at 545),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the words "Love Bracelet" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 27 includes a number of clear indicia of infringement.  The mark at issue is a three-dimensional design mark—a stylized watch, with a rather extensive delineating description—which is protected in connection with the sale of watches.  (Table at 15; FAC at 212.)  And the screenshots in Exhibit 27—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, (Screenshots at 584), and (2) the phrases "Cartier Watches, 100% superior quality," (id.), "AAA grade," (id. at 586 B), and "AAA+ grade," (id. at 587), in the description of goods.  This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The mark at issue in Exhibit 28 is a design mark—a stylized version of the words "Pasha de Cartier"—which are protected in connection with the sale of watches.  (Table at 15.)  However, while the *non*-stylized words "Pasha de Cartier" appear multiple times throughout Exhibit 28, the Court can find no instance of anything even resembling the properly stylized format, as shown in the trademark registration.  (See FAC at 214.)  Accordingly, Plaintiffs shall be precluded from offering evidence of damages arising out of this trademark at trial.

The combination reflected in Exhibit 29 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Pasha Seatimer"—which is protected in connection with the sale of watches.  (Table at 16.)  And the screenshots in Exhibit 29—which offer watches for sale—include references to both (1) "Pasha Seatimer" in the sale listing, and (2) "Upgraded model," (Screenshots at 594), "Solid Stainless Steel," (id. at 596), "Wholesale . . . Cartier watches," (id. at 598 A), "Self Winding Automatic . . . Movement," (id. at 599), "automatic movement," (id. at 601), and "all appropriate markings, wordings and engravings," (id. at 603), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the words "Pasha Seatimer" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 30 includes a number of clear indicia of infringement.  The mark at issue is a three-dimensional design mark—a stylized watch, with a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

rather extensive delineating description—which is protected in connection with the sale of watches. (Table at 17; FAC at 216.) And the screenshots in Exhibit 30—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, along with a characteristic square in the middle of the watch face, (Screenshots at 607), and (2) the phrases "Swiss . . . Automatic Movement," (id.), "all kinds of branded watches," (id. at 609), "Self Winding Automatic . . . Movement," (id. at 611), "original packing," (id. at 613), "original boxes, cards, tags, workpapers," (id. at 615), "forged case construction," (id. at 617), "original box packing," (id. at 619), "all appropriate markings," (id. at 621), "Wholesale . . . Cartier Watches," (id. at 623), "original . . . various brand," (id. at 25), and "AAA grade quality," (id. at 627), in the description of goods. This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 31 includes a number of clear indicia of infringement. The mark at issue is a three-dimensional design mark—a stylized watch, with a rather extensive delineating description—which is protected in connection with the sale of watches. (Table at 18; FAC at 217.) And the screenshots in Exhibit 31—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, along with a characteristic square face and alternating metal links, (Screenshots at 630), and (2) the phrases "serious wholesales [sic] and retailers," (id.), "replica," (id. at 632), "very high quality," (id. at 634), "authentic quality," (id. at 636), "hot selling Cartier watches," (id. at 638), and "high quality replicas," (id. at 640), in the description of goods. This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 32 includes a number of clear indicia of infringement. The mark at issue is a three-dimensional design mark—a stylized watch, with a rather extensive delineating description—which is protected in connection with the sale of watches. (Table at 19; FAC at 219.) And the screenshots in Exhibit 32—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, along with a characteristic rectangular and sloped watch face, (Screenshots at 644), and (2) the phrases "brand watch," (id.), "really professional," (id. at 648), "high in quality," (id. at 650), "high imitation products," (id. at 652), and "world famous brand watches," (id. at 654), in the description of goods. This conjunction of a protected design

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 33 includes a number of clear indicia of infringement. The mark at issue is a three-dimensional design mark—a stylized watch, with a rather extensive delineating description—which is protected in connection with the sale of watches. (Table at 19; FAC at 220.) And the screenshots in Exhibit 30—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, along with a characteristic square watch face and art deco Roman numerals, (Screenshots at 657), and (2) the phrases "brand watch" (id.), "AAA quality," (id. at 659), "compellent [sic] quality," (id. at 661), "Quality: AAAA," (id. at 663), "come with serial number," (id. at 665), "AAA quality designer watches," (id. at 667), and "98% perfectly accurate markings," (id. at 669), in the description of goods. This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 34 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Trinity"—which is protected in connection with the sale of "jewelry made of precious metal or coated therewith." (Table at 19.) And the screenshots in Exhibit 34—which offer jewelry for sale—include references to both (1) "Trinity" in the sale listing, and (2) "cartier . . . fashion silver jewelry," (Screenshots at 672), and "all kinds of custom jewelry," (id.), in the description of goods. This conjunction of a protected name or mark alongside suggestions of similarity is more than sufficient to support a finding of counterfeiting. Using the word "Trinity" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

### iii.  Exhibit-Specific Analysis:  Chloé Marks

The combination reflected in Exhibit 36 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of bathrobes. (Table at 21; FAC at 93.) And the screenshots in Exhibit 36—which offer a bathrobe for sale—include references to both (1) "Chloe" in the sale listing, and (2) "specialized in high quanlity [sic] . . . apparel," (Screenshots at 722), in the description of goods. While the Moving Defendants argue that the item in the offer is a "coat," the characteristic belt around the waist and soft-looking texture suggest, instead, a bathrobe. (Id.) Moreover, the Court notes that the pertinent trademark registration would actually include

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

coats—though this usage is admittedly included in Exhibit 38.  (FAC at 93) (describing the mark's usefulness "for:  aprons, bathrobes, . . . coats . . .".) The conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 38 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of coats.  (Table at 21; FAC at 93.)  And the screenshots in Exhibit 38—which offer coats for sale—include references to both (1) "Chloe" in the sale listing, and (2) a "Chloe wind coat," (Screenshots at 733), "perfect replicas!!," (id. at 735), and how the seller "can supply many brand name productions," (id. at 738), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 39 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of dresses.  (Table at 22; FAC at 93.)  And the screenshots in Exhibit 39—which offer dresses for sale—include references to both (1) "Chloe" in the sale listing, and (2) "export especial high quality," (Screenshots at 742), "favourable hand feeling," (id. at 744), "highest quality products," (id. at 746), "best quality apparel," (id. at 748), and "authentic quality," (id. at 750), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 40 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of blouses.  (Table at 22; FAC at 93.)  And the screenshots in Exhibit 40—which offer blouses for sale—include references to both (1) "Chloe" in the sale listing, and (2) "high quality silk cloth," (Screenshots at 752), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

The combination reflected in Exhibit 41 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of skirts. (Table at 22; FAC at 93.) And the screenshots in Exhibit 41—which offer skirts for sale—include references to both (1) "Chloe" in the sale listing, and (2) "high quality material," (Screenshots at 755), "Chloe green silk skirt," (id. at 758), and "manufactory of chloe [sic] skirts," (id. at 759), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 42 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of scarves. (Table at 22; FAC at 93.) And the screenshots in Exhibit 42—which offer scarves for sale—include references to both (1) "Chloe" in the sale listing, and (2) "authentic quality," (Screenshots at 762), and "100% authentic quality," (id. at 764), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 43 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of shirts. (Table at 23; FAC at 93.) And the screenshots in Exhibit 43—which offer shirts for sale—include references to both (1) "Chloe" in the sale listing, and (2) "the Topest [sic] quality fashion products," (Screenshots at 768), and "100% mirror copy," (id.), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 44 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of shoes. (Table at 23; FAC at 93.) And the screenshots in Exhibit 44—which offer shoes for sale—include references to both (1) "Chloe" in the sale listing, and (2) an ability to provide wares as a "manufacturer . . . of tops [sic] quality name brand products," (Screenshots at 772), "professional shoes manufacturer," (id. at 774), "high quality," (id. at 775), "Chloe boot 100% satisfied," (id. at 776), and "original tags," (id. at 777), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 45 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of jackets.  (Table at 23; FAC at 93.)  And the screenshots in Exhibit 45—which offer jackets for sale—include references to both (1) "Chloe" in the sale listing, and (2) "engage[ment] in manufacturing" branded apparel, (Screenshots at 779), and "origin bags, tags, labels," (id.), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.  The Moving Defendants' objection that the Court should combine "jackets" in Exhibit 45 and "coats" in Exhibit 37 into a single category is defeated by the simple fact that jackets and coats are not identical.  See, e.g., Lifted Research Group, Inc. v. Salem, 2009 U.S. Dist. LEXIS 44850, at *13–14 (N.D. Cal. May 15, 2009) (treating jackets and coats separately).

The combination reflected in Exhibit 46 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Chloe"—which is protected in connection with the sale of jewelry.  (Table at 23; FAC at 93.)  And the screenshots in Exhibit 46—which offer jewelry for sale—include references to both (1) "Chloe" in the sale listing, and (2) "wholesale . . . Chloe . . . Necklace, Bracelet, Earring," (Screenshots at 783), and "AAA quality," (id.), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 50 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a stylized version of the word "Chloé"—which is protected in connection with the sale of ladies' shoes.  (Table at 24.)  And the screenshots in Exhibit 50—which offer ladies' shoes—include both (1) images of ladies' shoes with the stylized word "Chloé," (Screenshots at 807), and (2) the phrase "professional shoes manufacturer," (id.), in the description of goods.  While the stylized "Chloé" is somewhat fuzzy in the screenshot, it can certainly be made out as very similar to Plaintiffs' mark.  The appearance of this substantially similar mark, alongside mentions of Chloe and suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized version of the word "Chloé" in a sale picture certainly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 51 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Edith"—which is protected in connection with the sale of handbags.  (Table at 26; FAC at 98.)  And the screenshots in Exhibit 51—which offer handbags for sale—include references to both (1) "Edith" in the sale listing, and (2) "brand new with tags," (Screenshots at 809), "authentic quality," (id. at 811), "comes with Chloe tag," (id. at 814), "excellent quality," (id. at 817), "rated as 'it' bag," (id. at 819), "replica handbag," (id. at 822), "authentic cards, tags and dustbags," (id. at 824), "unsurpassed craftsmanship," (id. at 825), "fashional [sic] bags," (id. at 827), "AAA+ quality," (id. at 828), "wholesale . . . Chloe Edith bag," (id. at 829), "100% New," (id. at 830), "world supplier of . . . Chloe Edith bag," (id. at 831), "designer bags," (id. at 832), and "famous branded good quality," (id. at 833), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Edith" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 52 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Paddington"—which is protected in connection with the sale of handbags.  (Table at 26; FAC at 99.)  And the screenshots in Exhibit 52—which offer handbags for sale—include references to both (1) "Paddington" in the sale listing, and (2) "replica," (Screenshots at 835), "new authentic," (id. at 838), and "comes with Chloe dustbag and carebook," (id. at 840), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Paddington" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 53 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Paddington"—which is protected in connection with the sale of wallets.  (Table at 26; FAC at 99.)  And the screenshots in Exhibit 52—which offer wallets for sale—include references to both (1) "Paddington" in the sale listing, and (2) "French zipped calf wallet," (Screenshots at 845), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Paddington" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|----------|------------------------|------|-------------------|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

The combination reflected in Exhibit 54 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"See by Chloe"—which is protected in connection with the sale of handbags. (Table at 26; FAC at 101.) And the screenshots in Exhibit 54—which offer handbags for sale—include references to both (1) "See by Chloe" in the sale listing, and (2) "chic crossbody bag from See by Chloe," (Screenshots at 848), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the words "See by Chloe" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

### iv. Exhibit-Specific Analysis:  A. Lange & Sohne Marks

The combination reflected in Exhibit 55 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"A. Lange & Sohne"—which is protected in connection with the sale of watches. (Table at 26; FAC at 224.) And the screenshots in Exhibit 55—which offer watches for sale—include references to both (1) "A. Lange Sohne [sic]" in the sale listing, and (2) "designer watches wholesale," (Screenshots at 851), and "excellent quality," (id. at 853), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the words "A. Lange Sohne [sic]" in the title of a sale listing certainly qualifies as using a substantially similar protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 56 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Lange"—which is protected in connection with the sale of watches. (Table at 27; FAC at 227.) And the screenshots in Exhibit 56—which offer watches for sale—include references to both (1) "Lange" in the sale description, and (2) "perfect clones," (Screenshots at 857), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Lange" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

### v. Exhibit-Specific Analysis:  Montblanc Marks

The combination reflected in Exhibit 57 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Montblanc"—which is protected in connection with the sale of pens. (Table at 29; FAC at 153.) And the screenshots in Exhibit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

57—which offer pens for sale—include references to both (1) "Montblanc" (or "Mont Blanc") in the sale listing, and say (2) "don't hesitate and believe your eyes," (Screenshots at 859), "AAAAA quality," (id. at 861), "wholesale designer pens," (id. at 862), "come with cards, tags, booklets," (id. at 863), "high-grade pens and services," (id. at 864), "brand name pens," (id. at 865), "fashion . . . pens," (id. at 866), "OEM factory," (id. at 867), "original box and label," (id. at 869), and "replica," (id. at 871), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Montblanc" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 58 includes a number of clear indicia of infringement. The mark at issue is a three-dimensional design mark—a stylized pen, with a characteristic grid pattern—which is protected in connection with the sale of pens. (Table at 29; FAC at 180.) And the screenshots in Exhibit 58—which offer stylized pens—include both (1) pens that closely resemble the diagram provided in Plaintiffs' trademark registration, (Screenshots at 873), and (2) the phrases "gradeAAA+ [sic]," (id.), "high-grade pens," (id. at 875), and "designer pens," (id. at 877), in the description of goods. This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a pen similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 60 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Montblanc"—which is protected in connection with the sale of watches. (Table at 29; FAC at 154.) And the screenshots in Exhibit 60—which offer watches for sale—include references to both (1) "Montblanc" in the sale listing, and (2) "high quality . . . watches," (Screenshots at 884 B), "all kinds of brand watches," (id. at 886), and "supply more then [sic] 20 brands [sic] watches," (id. at 887), in the description of goods. This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using the word "Montblanc" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 62 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Montblanc"—which is protected in connection with the sale of "clothing accessories, namely, belt buckles." (Table at 30; FAC at 156.) And the screenshots in Exhibit 62—which offer belt buckles for sale—include references to both (1) "Montblanc" in the sale listing, and (2) "super AAA, top quality," (Screenshots at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

891), and "supply from manufacturer," in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Montblanc" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 64 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a stylized star design—which is protected in connection with the sale of pens.  (Table at 30; FAC at 162.)  And the screenshots in Exhibit 64—which offer pens—include both (1) images of a pen with the stylized star design, (Screenshots at 902), and (2) the phrases "high-grade pens," (id.), "packaging with original box and label," (id. at 904), and "AAAAA quality," (id. at 906), in the description of goods.  Each of the pens in Exhibit 64 are marked with the stylized star.  The appearance of this protected mark, alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized star in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 65 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a stylized star design and clear pen cap—which is protected in connection with the sale of pens.  (Table at 31; FAC at 181.)  And the screenshots in Exhibit 65—which offer pens—include both (1) images of a pen with the stylized design, (Screenshots at 909), and (2) the phrases "high-grade pens," (id.), and "name branded pens," (id. at 911), in the description of goods.  Each of the pens in Exhibit 65 are marked by the stylized, clear pen cap.  The appearance of this protected mark, alongside the Montblanc name, and with suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the stylized cap in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

### vi.  Exhibit-Specific Analysis:  Panerai Marks

The combination reflected in Exhibit 68 includes a number of clear indicia of infringement.  The mark at issue is a design mark—a "bridge watch shape design,"—which is protected in connection with the sale of watches.  (Table at 12; FAC at 200.)  The Parties dispute whether this supposedly two-dimensional design can be applied to three-dimensional objects.  Neither Party provides any pertinent caselaw, but in reviewing the screenshots in Exhibit 68, it is plain that they do incorporate the claimed "bridge shape design"—which appears in silhouette in every offer—as a visual element surrounding the crowns of each offered watch.  (Screenshots at 920, 922, 925, 928, 931, 934.)  Moreover, Panerai's name, and the phrases "revered and

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

legendary . . . movement," (id. at 920), "original packing," (id. at 922), "exquisite workmanship," (id. at 925), "replica watches," (id. at 928), "replicate good watches," (id. at 931), and "brand name watch," (id. at 934), all appear in the description of goods. This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a silhouette so similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 70 includes a number of clear indicia of infringement. The mark at issue is a design mark—a stylized arrow design—which is protected for Plaintiff Panerai in connection with the sale of watches. (Table at 33; FAC at 147.) And the screenshots in Exhibit 70—which offer watches—include Panerai's name and both (1) images of watches with the stylized arrow, (Screenshots at 958), and (2) the phrase "99% similar," (id.), in the description of goods. While the stylized arrow is somewhat fuzzy, it can certainly be made out as very similar to Plaintiffs' mark. The appearance of this substantially similar mark, alongside mentions of Panerai and suggestions of similarity or authenticity, is more than sufficient to support a finding of counterfeiting. Using the stylized arrow in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 73 includes a number of clear indicia of infringement. The mark at issue is a three-dimensional design mark—a stylized watch, with a rather extensive delineating description and unique bridge design—which is protected in connection with the sale of watches. (Table at 39; FAC at 136.) And the screenshots in Exhibit 73—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, along with a characteristic bridge design, (Screenshots at 1034), and (2) the phrases "Wholesale Panerai Luminor," (id.), "leader in the field," (id. at 1036), "directly from authorized dealer," (id. at 1038), "as if purchased new from authorized dealer," (id. at 1040), "AAA grade quality," (id. at 1024), "founder of the trend," (id. at 1045), "branded name watch," (id. at 1047), "Panerai homeage [sic]," (id. at 1049), "replica watches," (id. at 1051), "reliable brand watches supplier," (id. at 1052), "specialized in replica watches," (id. at 1053), and "come with beautiful box and card," (id. at 1054), in the description of goods. This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting. Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 74 includes a number of clear indicia of infringement. The mark at issue is a simple word mark—"Radiomir"—which is protected in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|----------|------------------------|------|-------------------|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

connection with the sale of watches.  (Table at 41; FAC at 137.)  And the screenshots in Exhibit 74—which offer watches for sale—include references to both (1) "Radiomir" in the sale listing, and (2) "100% exact markings," (Screenshots at 1056), "AAA grade quality," (id. at 1058), "all brand replica watches," (id. at 1060), "come with orginal [sic] cards, tags," (id. at 1062, 1064, 1066, 1068, 1070, 1072), "AAA grade quality," (id. at 1074), and "Swiss movement," (id. at 1076), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using the word "Radiomir" in the title of a sale listing certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 75 includes a number of clear indicia of infringement.  The mark at issue is a three-dimensional design mark—a stylized watch, with a rather extensive delineating description and unique rounded square face—which is protected in connection with the sale of watches.  (Table at 41; FAC at 139.)  And the screenshots in Exhibit 75—which offer stylized watches—include both (1) watches that closely resemble the diagram provided in Plaintiffs' trademark registration, along with a characteristic face (Screenshots at 1079), and (2) the phrases "100% exact markings," (id.), and "leader in the field," (id. at 1081), in the description of goods.  This conjunction of a protected design alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Using a watch similar to Plaintiffs' trademark in a sale picture certainly qualifies as using a protected mark "in connection with" an offer to sell.

The combination reflected in Exhibit 76 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Arktos"—which is protected in connection with the sale of watches.  (Table at 42; FAC at 140.)  And the screenshots in Exhibit 76—which offer watches for sale—include references to both (1) "Arktos" on the face of the watch in the sale image, (Screenshots at 1084), and (2) "high quality branded name watch," (id.), in the description of goods.  This conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting.  Allowing the word "Arktos" to appear in the sale image itself certainly qualifies as using a protected mark "in connection with" an offer to sell.

Finally, the combination reflected in Exhibit 77 includes a number of clear indicia of infringement.  The mark at issue is a simple word mark—"Black Seal"—which is protected in connection with the sale of watches.  (Table at 41; FAC at 141.)  And the screenshots in Exhibit 77—which offer watches for sale—include references to both (1) "Black Seal" on the face of the watch in the sale image, (Screenshots at 1087), and (2) "replica watches" with "100% exact markings," (id.), in the description of goods.  This conjunction of a protected name or mark

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-04147 GAF (MANx) | Date | September 5, 2014 |
|---|---|---|---|
| Title | Chloe SAS et al v. Sawabeh Information Services Co | | |

alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to
support a finding of counterfeiting.  Allowing the words "Black Seal" to appear in the sale image
itself certainly qualifies as using a protected mark "in connection with" an offer to sell.

### b.  The Second Infringement Prong:  Intent

The Court has already determined that "intent may be imputed" to the Moving
Defendants because they "knowing[ly] fail[ed] to prevent infringing actions."  (See 10/8/13
Order at 9 and 3/18/13 Order at 10) (citing Akanoc, 658 F.3d at 943).  In light of the facts
against them—that the Moving Defendants deliberately established a haven for trademark
infringement and counterfeiting—this finding may be applied across all 75 mark-good
combinations under review.  That is to say, the Court's previous findings of intent still stand; an
individualized inquiry into whether the Moving Defendants were actually aware of each
infringement in this case is unnecessary.

### 3.  FINAL DEFENSES

Last of all, the Court notes that the Moving Defendants objected to many of the direct
infringement findings on statute of limitations grounds.  (See, e.g., Def. Mark Mem. at 7–9, 11,
13, 22–35, 37.)  For the reasons given above, these objections are largely without merit, and a
duplicative statute of limitations analysis would be pointless.

## IV.
## CONCLUSION

For the reasons given above, Plaintiffs' claims are timely as to all 75 instances of alleged
infringement.  The Moving Defendants' effort to invoke a statute of limitations defense must
therefore be **DENIED**.  Moreover, there is sufficient evidence of infringement to continue on all
but one of Plaintiffs' marks.  The Moving Defendants' mark-good exclusion request is therefore
**GRANTED in part** and **DENIED in part**.  The case will proceed to a damages trial concerning
Exhibits 2–27, 29–60, and 62–77.

**IT IS SO ORDERED.**