JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHLOE SAS, *et al.*,<br><br>     Plaintiffs,<br><br>vs.<br><br>SAWABEH INFORMATION SERVICES CO., *et al.*,<br><br>     Defendants. | CASE NO. CV 11-04147 MMM (MANx)<br><br>JUDGMENT FOR PLAINTIFFS |

On April 6, 2013, Judge Gary A. Feess entered an order granting the motion for default judgment filed by plaintiffs Chloe SAS, Alfred Dunhill Limited, Officine Panerai AG, Montblanc-Simplo GmbH, Cartier Interational AG, and Lange Uhren GmbH's (collectively, "plaintiffs") against defendants Cctrue International Trade Co., Ltd., ("Cctrue"), Fancysaler Trading Co. ("Fancysaler"), Fuzhou Sunshine Trade Co., Ltd. ("Fuzhou"), Hengtai International ("Hengtai"), Kk Fashion Love Zone ("Kk Fashion"), Love in Apparel Trade Co., Ltd. ("Love in Apparel"), Melchic International Trade Co., Ltd. ("Melchic"), Mystockwatch Co., Ltd. ("Mystockwatch"), Seven Star Replicass ("Seven Star"), Shanghai Taolan International Trade Limited Company ("Shangain Taolan"), Sinoestar Co., Ltd. ("Sinoestar"), V52 International Trade Co., Ltd. ("V52"), Win-Win Trade Co., Ltd. ("Win-Win"), www.Ecwatch.net

("Ecwatch"), Euromed International Trading Co., Limited ("Euromed"), Orient-Online Co., Ltd. ("Orient-Online"), Richen-Online Co., Ltd. ("Richen-Online"), and Win International Trade ("Win International").[1]

On December 6, 2013, Judge Feess entered an order granting plaintiffs' motion for default judgment against defendants Yongchuang Trade Corp. ("Yongchuang"), Vertex Online Co., Ltd. ("Vertex"), Superoceans Co., Ltd. ("Superoceans"), and Season-online Co., Ltd. ("Season-online).[2]

On October 8, 2013, Judge Feess granted partial summary judgment in plaintiffs' favor on claims against defendants Sawabeh Information Services Co. ("SISCOM") and TradeKey PVT, Ltd. ("TradeKey"), finding these defendants liable for contributory counterfeiting, contributory infringement, and unfair competition.[3] On March 18, 2014, he granted plaintiffs' motion for partial summary judgment against defendants Waleed Abalkhail and Junaid Mansoor, finding them liable for contributory counterfeiting, contributory infringement, and unfair competition.[4]

On February 19, 2015, the court entered a stipulated order in plaintiffs' favor that awarded minimum statutory damages under the Lanham Act against SISCOM, TradeKey, Abalkhail and Mansoor.[5] Accordingly,

IT IS ORDERED AND ADJUDGED

---

[1] Memorandum and Order Regarding Motion for Default Judgment, Docket No. 261 (Apr. 6, 2012).

[2] Minutes (In Chambers): Memorandum & Order Re: Motion for Default Judgment, Docket No. 617 (Dec. 6, 2013).

[3] Minutes (In Chambers): Order Re: Plaintiffs' Motion for Partial Summary Judgment, Docket No. 582 (Oct. 8, 2013).

[4] Minutes (In Chambers): Redacted Order Re: Motions for Partial Summary Judgment and Motion for Judgment on the Pleadings, Docket No. 700 (Mar. 18, 2014).

[5] Stipulated Order Entering Judgment for Plaintiffs for Statutory Damages, Docket No. 892 (Feb. 19, 2015); see also *Ex Parte* Application for Summary Adjudication as to Minimum Statutory Damages, Docket No. 889 (Feb. 12, 2015).

1. That plaintiffs recover $480,000 in statutory damages under the Lanham Act from Cctrue;

2. That plaintiffs recover $240,000 in statutory damages under the Lanham Act from Fancysaler;

3. That plaintiffs recover $600,000 in statutory damages under the Lanham Act from Fuzhou;

4. That plaintiffs recover $480,000 in statutory damages under the Lanham Act from Hengtai; and

5. That plaintiffs recover $240,000 in statutory damages under the Lanham Act from Kk Fashion;

6. That plaintiffs recover $180,000 in statutory damages under the Lanham Act from Love in Apparel;

7. That plaintiffs recover $360,000 in statutory damages under the Lanham Act from Melchic;

8. That plaintiffs recover $180,000 in statutory damages under the Lanham Act from Mystockwatch;

9. That plaintiffs recover $120,000 in statutory damages under the Lanham Act from Seven Star;

10. That plaintiffs recover $120,000 in statutory damages under the Lanham Act from Shanghai Taolin;

11. That plaintiffs recover $240,000 in statutory damages under the Lanham Act from Sinoestar;

12. That plaintiffs recover $240,000 in statutory damages under the Lanham Act from V52;

13. That plaintiffs recover $420,000 in statutory damages under the Lanham Act from Win-Win;

14. That plaintiffs recover $480,000 in statutory damages under the Lanham Act from Ecwatch;

15. That plaintiffs recover $60,000 in statutory damages under the Lanham Act from

|  |  |
|---|---|
|  | Euromed; |
| 16. | That plaintiffs recover $120,000 in statutory damages under the Lanham Act from Win International; |
| 17. | That plaintiffs recover $540,000 in statutory damages under the Lanham Act from Richen-online; |
| 18. | That plaintiffs recover $300,000 in statutory damages under the Lanham Act from Orient-Online; |
| 19. | That plaintiffs recover $100,000 in statutory damages under the Lanham Act from Yongchuang; |
| 20. | That plaintiffs recover $1,500,000 in statutory damages under the Lanham Act from Vertex; |
| 21. | That plaintiffs recover $1,900,000 in statutory damages under the Lanham Act from Superoceans; |
| 22. | That plaintiffs recover $1,100,000 in statutory damages under the Lanham Act from Season-online; |
| 23. | That Cctrue, Fancysaler, Fuzhou, Hengtai, Kk Fashion, Love in Apparel, Melchic, Mystockwatch, Seven Star, Shanghai Taolan, Sinoestar, V52, Win-Win, Ecwatch, Euromed, Orient-Online, Richen-Online, Win International, Yongchuang, Vertex, Superoceans, and Season-online (collectively, the "Defaulting Defendants"); their officers, agents, servants, employees, and attorneys, and all persons acting in concert and participation with them who receive actual notice of this judgment, are enjoined from: |
| a. | using any of plaintiffs' marks, or any colorable imitation thereof or any mark confusingly similar thereto or likely to dilute by blurring and/or tarnishing any of Plaintiffs' Marks, or counterfeit reproductions thereof, in advertising, marketing, promoting, selling, offering for sale, designing, creating, manufacturing, distributing, delivering, shipping, importing, or exporting any goods or services or facilitating, inducing, or assisting any of the activity set forth above; |

4

    b.    using any of plaintiffs' marks, or any colorable imitation thereof or any mark confusing similar thereto or likely to dilute by blurring and/or tarnishing any of plaintiffs' marks, or counterfeit reproductions thereof, in any text or content including, without limitation, any part of keywords; mobile application or optimization; applications; metatags; metadata; creating, buying, or selling of links; blogs; on-line postings; domain names; forums; social media; or otherwise in any way that directs customers to the Defaulting Defendants or Defaulting Defendants' websites, including search engine optimization; or in any way that constitutes or leads to advertising or optimizing;

    c.    operating or hosting any websites used by the Defaulting Defendants to sell or offer goods using any of plaintiffs' marks or any colorable imitation thereof or any mark confusingly similar thereto or likely to dilute by blurring and/or tarnishing any of plaintiffs' marks, or counterfeit reproductions thereof;

    d.    making or employing any other use of plaintiffs' marks, or any colorable imitation thereof or any mark confusingly similar thereto or likely to dilute by blurring and/or tarnishing any of plaintiffs' marks, or counterfeit reproductions thereof;

    e.    using any false designation of origin, false description or representation, or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that the Defaulting Defendants' activities, including the sale of goods bearing counterfeit plaintiffs' marks, are in any way sponsored, licensed, endorsed, authorized, affiliated, or connected with and/or originated from plaintiffs;

    f.    doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers, consumers, or investors into the belief that the products or services promoted, offered, or sponsored by Defaulting Defendants emanate from or originate with plaintiffs or their licensees, or are somehow sponsored, licensed, endorsed, authorized, affiliated, or connected with

1                 plaintiffs and/or originate from plaintiffs;

       g.    secreting, destroying, altering, removing, deleting any electronic copies, or otherwise dealing with the unauthorized products or offers to sell or means of making such marks and products, or any books, documentation or records thereto (electronic or otherwise) which contain any information relating to selling, marketing, offering for sale, advertising, promoting, displaying, designing, creating, importing, manufacturing, producing, distributing, or circulating of all unauthorized products which infringe plaintiffs' marks;

       h.    otherwise competing unfairly with plaintiffs or any of their authorized retailers or dealers in any manner; and

       i.    facilitating, inducing, assisting, aiding, abetting, or supplying the means for any other person or business entity to engage in or perform any of the activities referred to in the above subparagraphs (a) through (h), or effecting any assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (h).

24.    That Defaulting Defendants are directed to:

       a.    permanently delete, remove and recall from all websites, blogs, online auctions, stores, shops, markets, outlets, catalogues, or other channels of commerce (and all of the foregoing applying to electronic forms in addition to brick and mortar or paper), any listings for goods bearing plaintiffs' marks, or replicas/copies of goods bearing plaintiffs' marks, or that otherwise bear, contain, display, or utilize plaintiffs' marks, or any mark confusingly similar thereto, or likely to dilute by blurring and/or tarnishing any of plaintiffs' marks, or counterfeit reproductions thereof;

       b.    in accordance with § 36 of the Federal Trademark Act, 15 U.S.C. § 1118, deliver up for destruction all counterfeit goods that bear plaintiffs' marks, and/or any replicas/copies of goods bearing plaintiffs' marks, or goods that otherwise bear,

contain, display, or utilize plaintiffs' marks, or any mark confusingly similar thereto, or any mark likely to dilute by blurring and/or tarnishing any of plaintiffs' marks, or counterfeit reproductions thereof, that are in Defaulting Defendants' possession, custody, or control and all means of making the same;

    c.    in accordance with § 36 of the Federal Trademark Act, 15 U.S.C. § 1118, deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, receptacles, advertising and promotional matter, electronic files, and other materials in the possession or control of Defaulting Defendants (and all of the foregoing applying to electronic files and copies in addition to paper copies) bearing plaintiffs' marks, or any mark confusingly similar thereto, or any mark likely to dilute by blurring and/or tarnishing any of plaintiffs' marks, or counterfeit reproductions thereof;

25. That Defaulting Defendants file with the court and serve on plaintiffs' counsel within thirty (30) days after service on Defaulting Defendants of this judgment, a report in writing under oath, setting forth in detail the manner and form in which each of the Defaulting Defendants has complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

26. That plaintiffs recover $71,000 in statutory damages under the Lanham Act from TradeKey, SISCOM, Waleed Abalkhail, and Junaid Mansoor, jointly and severally;

27. That TradeKey, SISCOM, Waleed Abalkhail, and Junaid Mansoor, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this judgment, are enjoined from:

    a.    permitting, allowing, or facilitating customers, users, or members of www.TradeKey.com, www.saudicommerce.com, and www.b2bfreezone.com, or any other website affiliated with them to post or display listings to buy, sell, manufacture, or distribute products bearing plaintiffs' marks or any colorable imitation of plaintiffs' marks;

    b.    displaying listings either using the plaintiffs' marks or responding to search

7

1                       queries for plaintiffs' marks on the websites;

2           c.    using plaintiffs' marks as keywords, adwords, or any other type of metadata; and

3           d.    allowing or advising any person or entity on how to create or post listings for

4                  products they know or have reason to know infringe plaintiffs' marks;

5     28.    That TradeKey, SISCOM, Waleed Abalkhail, and Junaid Mansoor, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this judgment, are directed to monitor their websites on an ongoing basis for compliance and must, upon written notice, remove or disable access to any listing that plaintiffs identify as infringing, or that otherwise comes to their attention as infringing plaintiffs' marks; and

11     29.    That the action be, and is hereby, dismissed.

DATED: February 27, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE